1

2

3

4

5

6

7    **UNITED STATES DISTRICT COURT**
     **WESTERN DISTRICT OF WASHINGTON**
     **AT SEATTLE**

8

9    STATE OF WASHINGTON; STATE OF          NO.
     CONNECTICUT; STATE OF MARYLAND;
10   STATE OF NEW JERSEY; STATE OF NEW       EMERGENCY MOTION FOR
     YORK; STATE OF OREGON;                  TEMPORARY RESTRAINING ORDER
11   COMMONWEALTH OF                         (WITH NOTICE TO ADVERSE PARTY)
     MASSACHUSETTS; COMMONWEALTH
12   OF PENNSYLVANIA; and the DISTRICT
     OF COLUMBIA,                            **NOTING DATE: JULY 30, 2018**
13
                    Plaintiffs,
14
          v.
15
     UNITED STATES DEPARTMENT OF
16   STATE; MICHAEL R. POMPEO, in his
     official capacity as Secretary of State;
17   DIRECTORATE OF DEFENSE TRADE
     CONTROLS; MIKE MILLER, in his official
18   capacity as Acting Deputy Assistant Secretary
     of Defense Trade Controls; SARAH
19   HEIDEMA, in her official capacity as Director
     of Policy, Office of Defense Trade Controls
20   Policy; DEFENSE DISTRIBUTED; SECOND
     AMENDMENT FOUNDATION, INC.; and
21   CONN WILLIAMSON,

22                  Defendants.

23

24

## I. INTRODUCTION AND RELIEF REQUESTED

Pursuant to Fed. R. Civ. P. 65, the States move the Court to enter a temporary restraining order enjoining the Government Defendants[1] from the following to avoid immediate and irreparable harm to the States and the nation. For unknown reasons, the Federal Government has put the country in a clear and present danger of the irreversible proliferation of untraceable and, if made with non-metal components, undetectable guns. In violation of the Administrative Procedure Act, Defendants have reversed a longtime position with no notice or rationale that will allow the software code for the production of 3-D printed guns, known as Computer Aided Design (CAD) files, to become widely available for download via the internet on August 1, 2018. The States move the Court to grant the following relief to avoid immediate and irreparable nationwide harm:

1. An order temporarily suspending and enjoining implementation or enforcement of the Government's July 27, 2018 temporary modification of the United States Munitions List (USML) Category I to exclude the technical data at issue;

2. An order temporarily suspending and enjoining actions enforcing, or the effect of, the Government's July 27, 2018 letter to Defense Distributed advising that the Published Files, Ghost Gunner Files, and CAD Files are approved for public release (i.e., unlimited distribution) in any form and are exempt from the export licensing requirements of the International Traffic in Arms Regulations (ITAR);

3. An order temporarily suspending and enjoining actions enforcing, or the effect of, the Government's acknowledgement and agreement that the temporary modification

---

[1] As defined in the States' Complaint, the Government Defendants are the United States Department of State; Secretary of State Michael R. Pompeo; Directorate of Defense Trade Controls; Acting Deputy Assistant Secretary of Defense Trade Controls Mike Miller; and Director of Policy, Office of Defense Trade Controls Policy Sarah Heidema. Because this motion seeks relief against the Government Defendants only, all references to "Defendants" are references to the Government Defendants.

EMERGENCY MOTION FOR                    1
TEMPORARY RESTRAINING ORDER
(WITH NOTICE TO ADVERSE PARTY)

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

of USML Category I permits "any United States person" to "access, discuss, use, reproduce, or otherwise benefit from" the technical data at issue, and permits any such person to access, discuss, use, reproduce or otherwise benefit from the Published Files, Ghost Gunner Files, and CAD Files;

4.  An order requiring the Government to suspend the temporary modification of the USML until a final determination of this matter, and that the temporary modification shall have no legal force or effect during the term of such suspension; and

5.  Grant such other and further relief as may be appropriate.

3-D printed guns are functional weapons that are often unrecognizable by standard metal detectors and untraceable because they contain no serial numbers. Anyone with access to the CAD files and a commercially available 3-D printer could readily manufacture, possess, or sell such a weapon—regardless of their age, mental health status, or criminal history. The Federal Government is well aware of the security concerns that these undetectable guns would cause. Until very recently, the Government prohibited the distribution over the internet of CAD files for the automated production of 3-D printed weapons by including such files on the USML and making them subject to the ITAR, which is administered by the Directorate of Defense Trade Controls (DDTC) within the Department of State. Further, the Government has stated in the years of court filings involving the very downloadable guns at issue here that it was "particularly concerned that [the] proposed export of undetectable firearms technology could be used in an assassination, for the manufacture of spare parts by embargoed nations, terrorist groups, or to compromise aviation security overseas in a manner specifically directed at U.S. persons." *Def. Distributed v. U.S. Dep't of State*, No. 1:15-cv-00372-RP (W.D. Tex.), ECF No. 32 (filed 06/10/15), at 10.

In June 2018, however, the Government completely reversed its position on the

EMERGENCY MOTION FOR
TEMPORARY RESTRAINING ORDER
(WITH NOTICE TO ADVERSE PARTY)

2

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

dissemination of the CAD files—not publicly or in accordance with a valid administrative process, but by entering an under-the-radar settlement with a private company known as Defense Distributed. The breadth of the settlement is truly stunning. The Government has sought to create new law by entering and fulfilling the terms of a Settlement Agreement—which was only recently made public—rather than following the appropriate statutorily prescribed procedures. In fulfilling its obligations under this Settlement Agreement, the Government committed numerous violations of the Administrative Procedure Act, as detailed in the Argument section.

Cody Wilson, the president of Defense Distributed, has repeatedly and adamantly claimed that the "temporary modification" of the USML enacted pursuant to the Settlement Agreement will effectively negate all gun violence prevention efforts. Among other things, the day the Settlement Agreement was made public, Wilson tweeted a photo of a tombstone announcing the death of "American gun control." He also stated: "All this Parkland stuff, the students, all these dreams of 'common sense gun reforms'? No. The internet will serve guns . . . No amount of petitions or die-ins or anything else can change that." Although the Government's deregulation of the CAD files in question is nominally "temporary," it permits Wilson—and anyone else—to immediately disseminate the files by making them publicly available for instant download. Wilson and Defense Distributed have announced that they intend to release the files on August 1, 2018.

The States' extensive and comprehensive firearms-regulation laws are seriously undermined by the Government's actions. Once the files are publicly released, anyone with access to a commercially available printer—regardless of their age, mental health status, or criminal history—will be able to download the files and use them to make functional weapons at home that can evade metal detectors, that are untraceable because they contain no serial numbers, and that use bullets that are forensically untraceable to the weapon. The resulting harm

1  will be irreparable: if the files are widely released on August 1, 2018, as threatened, they cannot

2  be clawed back.

## II.    FACTUAL AND STATUTORY BACKGROUND

### A.    The Arms Export Control Act

The Arms Export Control Act (AECA), 22 U.S.C. § 2751 *et seq.*, authorizes the

President, "[i]n furtherance of world peace and the security and foreign policy of the United

States . . . to control the import and the export of defense articles and defense services."  22

U.S.C. § 2778(a)(1). The purpose of AECA is to reduce the international trade in arms and avoid

destabilizing effects abroad through arms exports. 22 U.S.C. § 2751. Under AECA, "[t]he

President is authorized to designate those items which shall be considered as defense articles and

defense services for the purposes of this section and to promulgate regulations for the import and

export of such articles and services." 22 U.S.C. § 2778(a)(1). Items designated as defense articles

or services constitute the United States Munitions List (USML). *Id.* at § 2778(a)(1).

Category I of the USML lists articles, services, and related technical data for "Firearms,

Close Assault Weapons and Combat Shotguns." Among other things, Category I of the USML

includes all firearms up to .50 caliber, and all "technical data" directly related to such firearms.

*See* 22 C.F.R. § 121.1(I)(a). Technical data is information that "is required for the design,

development, production, manufacture, assembly, operation, repair, testing, maintenance or

modification of defense articles." *Id.* § 120.10(a). Technical data includes "information in the

form of blueprints, drawings, photographs, plans, instructions or documentation," and exempts

information already in the public domain, as defined in section 120.11. *Id.* § 120.10.

Executive Order 13637 delegates the President's AECA authority to the State

Department. In turn, the State Department has promulgated the ITAR, which is administered by

the DDTC. See 22 C.F.R. §§ 120-130. The DDTC is tasked with maintaining, reviewing and

clarifying the USML. ITAR allows the Deputy Assistant Secretary for Defense Trade Controls to order the temporary modification of any ITAR regulation. However, it may do so only "in the interest of the security and foreign policy of the United States." 22 C.F.R. § 126.2.

Before removing any item from the USML, the Executive Branch must give at least 30 days' notice to the International Relations Committee of the House of Representatives and to the Committee on Foreign Relations of the Senate. 22 U.S.C. § 2778(f)(1). Such notification must be made in accordance with the procedures applicable to reprogramming notifications under section 634A(a) of the Foreign Assistance Act of 1961, 22 U.S.C. § 2394-1. *Id.* Additionally, "[d]esignations including changes in designations, by the Secretary of items or categories that shall be considered as defense articles and defense services subject to export control under section 38 (22 U.S.C. 2778) shall have the concurrence of the Secretary of Defense." Executive Order 13637, § 1(n).

For situations where there is doubt that a particular item to be exported falls on the USML, ITAR contains a commodity jurisdiction (CJ) procedure. 22 C.F.R. § 120.4. Upon written request, the DDTC will determine whether a certain item, service, or data is within the jurisdiction of ITAR. *Id.* "State, Defense and Commerce" must "resolve commodity jurisdiction disputes in accordance with established procedures. State shall notify Defense and Commerce of the initiation and conclusion of each case." *Id.* § 120.4(f).

**B.      Defense Distributed Tried to Distribute CAD Files in 2013**

Defense Distributed is a Texas corporation founded by Cody Wilson, a self-described "crypto-anarchist" who believes that "governments should live in fear of their citizenry." His company's objective is for everyone in the world to have access to guns, and to make meaningful gun regulation impossible.

In or around early May 2013, Defense Distributed posted its CAD files on DEFCAD.org,

EMERGENCY MOTION FOR
TEMPORARY RESTRAINING ORDER
(WITH NOTICE TO ADVERSE PARTY)

5

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

a website it created to serve as an open-source repository for weapons designs, including data to automatically manufacture the "Liberator" pistol. The Liberator is a plastic firearm which contains 6-oz piece of steel, which can be easily removed, enabling it to avoid detection in walk-through metal detectors. As the Federal Government stated in a court filing in April 2018, these CAD files are "indispensable to a three-dimensional ('3-D') printing process used to create firearms and their components."

C.     **The Federal Government Requested Defense Distributed To Immediately Remove CAD Files From the Internet Shortly After They Were Posted**

On May 8, 2013, the Office of DDTC sent Defense Distributed a letter requesting that Defense Distributed remove ten specific CAD files from public access "immediately" and advised that Defense Distributed could submit a request for CJ determination for the files. Defense Distributed removed the files from public access and submitted a CJ determination.

The DDTC completed its review of Defense Distributed's CJ requests and determined that six of those files were subject to ITAR control: (i) the Liberator pistol; (ii) the .22 caliber electric pistol; (iii) the 5.56/.223 muzzle brake; (iv) the Springfield XD- 40 tactical slide assemble; (v) the sub-caliber insert; and (vi) the VZ-58 front sight. Separately, Defense Distributed also submitted a CJ determination request for the "Ghost Gunner," an automated firearms metal milling machine. In April 2015, the DDTC determined that the Ghost Gunner machine itself was not subject to the jurisdiction of the State Department, but that the "project files and data files for producing a defense article on a 3D printer or similar device constituted technical data on that defense article that would be subject to ITAR regulation."

D.     **Defense Distributed's Lawsuit Against the Federal Government**

In May 2015, Defense Distributed sued the Federal Government in a Texas federal district court, seeking an injunction to prevent the Government from regulating Defense

EMERGENCY MOTION FOR
TEMPORARY RESTRAINING ORDER
(WITH NOTICE TO ADVERSE PARTY)

6

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

Distributed's dissemination of the CAD files. In defending against that lawsuit, the Government stated it was "particularly concerned that [the] proposed export of undetectable firearms technology could be used in an assassination, for the manufacture of spare parts by embargoed nations, terrorist groups, or to compromise aviation security overseas in a manner specifically directed at U.S. persons." *Def. Distributed v. U.S. Dep't of State*, No. 1:15-cv-00372-RP (W.D. Tex.), ECF No. 32 (filed 06/10/15), at 10.

Along with its opposition to Plaintiffs' preliminary injunction motion, the Government submitted an affidavit from Lisa V. Aguirre, who was then the Director of the Office of Defense Trade Controls Management. Among other things, Director Aguirre stated that: (i) "[t]he 'Liberator' firearm included in DD's CAD designs presents a specific and unique risk to the national security and foreign policy interests of the United States"; (ii) making the CAD files available online would provide terrorist organizations with firearms, which could be used against the United States or its allies; and (iii) "[a]cess to weapons technology coupled with the uncontrolled ubiquitous means of productions . . . could contribute to armed conflict, terrorist or criminal acts, and seriously undermine global export control and non-proliferation regimes designed to prevent the dangerous and destabilizing spread and accumulation of weapons and related technologies." *Def. Distributed v. U.S. Dep't of State*, No. 1:15-cv-00372-RP (W.D. Tex.), ECF No. 32-1 (filed 06/10/15), ¶ 35.

**E. The District Court Denies Defense Distributed's Preliminary Injunction Motion, the Fifth Circuit Affirms, and the Federal Government Moves To Dismiss**

Defense Distributed moved for a preliminary injunction, but the federal district court accepted the Government's arguments and declined to preliminarily enjoin the Government's regulation of the CAD files. In doing so, the court found that "[f]acilitating global access to firearms undoubtedly increases the possibility of outbreak or escalation of conflict."

EMERGENCY MOTION FOR
TEMPORARY RESTRAINING ORDER
(WITH NOTICE TO ADVERSE PARTY)

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

*Def. Distributed v. U.S. Dep't of State*, 121 F. Supp. 3d 680, 691 (W.D. Tex. 2015).

On appeal, the Fifth Circuit affirmed the district court's refusal to enjoin the Government's enforcement efforts, focusing on both the national security implications of the CAD files and the permanent nature of the internet:

> Even if Plaintiffs–Appellants eventually fail to obtain a permanent injunction, the files posted in the interim [if a preliminary injunction issued] ***would remain online essentially forever***, hosted by foreign websites such as the Pirate Bay and freely available worldwide . . . Because those files would never go away, a preliminary injunction would function, in effect, as a permanent injunction as to all files released in the interim. ***Thus, the national defense and national security interest would be harmed forever.***

*Def. Distributed v. United States Dep't of State*, 838 F.3d 451, 461 (5th Cir. 2016) (emphasis added). On January 8, 2018, the Supreme Court denied Defense Distributed's petition for a writ of certiorari. *Def. Distributed v. Dep't of State*, 138 S. Ct. 638 (2018).

After the district court lifted the stay of proceedings pending appeal, the Government moved to dismiss Defense Distributed's complaint, arguing that the CAD files at issue "can unquestionably facilitate the creation of defense articles abroad" and that "the Department of State has consistently and reasonably concluded that it is not possible to meaningfully curtail the overseas dissemination of arms if unfettered access to technical data essential to the production of those arms is permitted." If the Government were not permitted to regulate the dissemination of the CAD files, it argued, "they could be used to threaten U.S. national security, U.S. foreign policy interests, or international peace and stability."

**F.      The Settlement With Defense Distributed is Announced One Day After the Comment Period For the Rulemaking Required Under the Settlement Closed**

Shortly after the Federal Government moved to dismiss, it apparently finalized in April 2018 a Settlement Agreement with Defense Distributed.[2] The Settlement Agreement,

---

[2] The Settlement Agreement is available on DDTC's website at the following link: https://www.pmddtc.state.gov/sys_attachment.do?sys_id=46108f31dbaf9b40529d368d7c96198d. Compl. Ex. 6.

EMERGENCY MOTION FOR
TEMPORARY RESTRAINING ORDER
(WITH NOTICE TO ADVERSE PARTY)

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

however, was not executed by the parties until June 29, 2018, and was not made public until July 10, 2018.

Pursuant to Paragraph 1 of the Settlement Agreement, the Federal Government has committed to:

a. "draft and . . . fully pursue, to the extent authorized by law (including the Administrative Procedure Act), the publication in the Federal Register of a notice of proposed rulemaking and final rule, revising USML Category I to exclude the technical data that is the subject of the [Defense Distributed] Action";

b. "announce[ ], while the above-referenced rule is in development, . . . a temporary modification, consistent with [ITAR], of USML Category I to exclude the technical data that is the subject of the Action . . . on or before July 27, 2018";

c. "issu[e] . . . a letter to Plaintiffs on or before July 27, 2018, signed by the Deputy Assistant Secretary for Defense Trade Controls, advising that the Published Files, Ghost Gunner Files, and CAD Files are approved for public release (i.e., unlimited distribution) in any form and are exempt from the export licensing requirements of the ITAR"; and

d. "acknowledge[ ] and agree[ ] that the temporary modification of USML Category I permits any United States person . . . to access, discuss, use, reproduce, or otherwise benefit from the technical data that is the subject of the Action, and that the letter to Plaintiffs permits any such person to access, discuss, use, reproduce or otherwise benefit from the Published Files, Ghost Gunner Files, and CAD Files."

While it did not publicly announce the Settlement or its terms until July 10, the Government published notices of proposed rulemaking by the State and Commerce Departments

on May 24, 2018, which would remove Plaintiffs' CAD files from the USML Category I. *See* International Traffic in Arms Regulations: U.S. Munitions List Categories I, II, and II, 83 Fed. Reg. 24,198 (May 24, 2018); Control of Firearms, Guns, Ammunition and Related Articles the President Determines No Longer Warrant Control Under the United States Munitions List (USML), 83 Fed. Reg. 24,166 (May 24, 2018). The public comment period for both notices concluded on July 9, 2018, the day before the Settlement Agreement became public.

**G.     The Federal Government's Actions Assist in the Release of the CAD Files, and the Timing of the Rulemaking Apparently Would Prevent the Government From Regulating CAD Files in the Future**

The notice proposes to remove all non-automatic firearms up to .50 caliber (and any related technical data) from the USML under the jurisdiction of the State Department, and move jurisdiction over these products over to the Commerce Department. Commerce's Proposed Rule, filed the same day, describes how its Export Administration Regulations (EAR) will apply to items no longer controlled under the USML. The Proposed Rule provides that Commerce cannot restrict the export of technology already in the public domain, including through posting on publicly available sites on the internet. See 15 C.F.R. §§ 734.3(b)(3), 734.7(a)(4).

If Defendants' improper deregulation of the CAD files at issue is not enjoined, and Defense Distributed makes its repository of files available online, Commerce will be unable to make an independent determination about whether national security or other concerns warrant restricting the unlimited dissemination of those files in accordance with the EAR.

**H.     The Federal Government Complied With Its Obligations Under the Settlement Agreement**

On July 27, 2018, as promised, DDTC published a notice on its website entitled "Temporary Modification of Category I of the United States Munitions List." This notice states that "the Acting Deputy Assistant Secretary for Defense Trade Controls has determined that it is in the interest of the security and foreign policy of the United States to temporarily modify

EMERGENCY MOTION FOR
TEMPORARY RESTRAINING ORDER
(WITH NOTICE TO ADVERSE PARTY)

10

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1  United States Munitions List (USML) Category I to exclude" the technical data described in the

2  Settlement Agreement. Also on July 27, 2018, as promised, the Acting Deputy Assistant

3  Secretary for DDTC which stated that "I approve the Published Files, Ghost Gunner Files, and

4  CAD Files for public release (i.e., unlimited distribution). As set forth in ITAR § 125.4(b)(13),

5  technical data approved for public release by the cognizant U.S. government department or

6  agency is not subject to the licensing requirements of the ITAR." *Def. Distributed v. Grewal*,

7  No. 1:18-cv-00637 (W.D. Tex.), ECF No. 1-2 (filed 07/29/18).

8         On July 27, 2018, the parties filed a stipulation of dismissal with prejudice.

9                              **III.    ARGUMENT**

10  **A.    Standard for Granting Temporary Relief**

11        To obtain a temporary restraining order, the States must establish 1) a likelihood of

12  success on the merits; 2) that irreparable harm is likely in the absence of preliminary relief; 3)

13  that the balance of equities tips in the States' favor; and 4) that an injunction is in the public

14  interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S. Ct. 365, 172 L. Ed. 2d 249

15  (2008); Fed. R. Civ. P. 65(b)(1); *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d

16  832, 839 n. 7 (9th Cir. 2001). And while the States can establish all of these factors, "[h]ow

17  strong a claim on the merits is enough depends on the balance of harms: the more net harm an

18  injunction can prevent, the weaker the plaintiff's claim on the merits can be while still supporting

19  some preliminary relief." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1133 (9th Cir.

20  2011) (quoting *Hoosier Energy Rural Elec. Co-op., Inc. v. John Hancock Life Ins. Co.*, 582 F.3d

21  721, 725 (7th Cir. 2009)). Thus, while the States' claims on the merits are extremely strong,

22  temporary relief would be appropriate even if they were less clearly meritorious given how

23  sharply the balance of harms tips in the States' favor.

24

## B. The States Have Standing

The States have standing to bring this action because their sovereign interests are directly at stake. The Federal Government's "temporary modification" of the USML Category I purports to permit "any United States person" to use CAD files downloaded from the internet to manufacture their own undetectable and untraceable weapons via an automated 3-D printing process. This directly contravenes the States' comprehensive regulatory schemes—duly enacted by their respective legislatures and well within the scope of their sovereign police powers—that prohibit certain persons from possessing firearms, such as minors, persons convicted of violent felonies, the mentally ill, and persons subject to various protection and no-contact orders. This is a direct, facial attack on the States' sovereignty for which the States have standing to seek redress. *See Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex. rel. Barez*, 458 U.S. 592, 601 (1982) (states have sovereign interests in their "power to create and enforce a legal code"); *Bowen v. Pub. Agencies Opposed to Social Sec. Entrapment*, 477 U.S. 41, 51 n.17 (1986) (there is "no question" that states have standing to sue to preserve their sovereignty where sovereign interests have been interfered with or diminished).

The Government's authorization of the release of CAD files for the automated production of 3-D printed weapons further diminishes the States' sovereignty by seriously jeopardizing the States' ability to enforce their public safety laws, including those regulating who may possess firearms; what type of firearms and weapons they may possess; the manner in which firearms may be used; and the purchase and sale of firearms, including tracking serial numbers and ownership information. In addition, the imminent widespread availability of undetectable and untraceable weapons will make it far more difficult for the States to protect the safety of those within their borders, including through effective law enforcement measures that depend on the ability to track and forensically identify weapons, and the use of metal detectors in government

EMERGENCY MOTION FOR
TEMPORARY RESTRAINING ORDER
(WITH NOTICE TO ADVERSE PARTY)

12

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

buildings and other public places. *See, e.g., State of Ohio ex rel. Celebrezze v. U.S. Dep't of Transp.*, 766 F.2d 228, 233 (6th Cir. 1985) ("[t]he threatened injury to a State's enforcement of its safety laws is within the zone of interests" sufficient to confer standing); cf. *Maine v. Taylor*, 477 U.S. 131, 137 (1986) (observing in another context that "a State clearly has a legitimate interest in the continued enforceability of its own statutes").

## C.      The States are Likely To Prevail on the Merits

The States are likely to succeed on the merits of their claims. The APA provides that a person suffering a legal wrong because of agency action or adversely affected or aggrieved by agency action is entitled to judicial review. 5 U.S.C. § 702. A final agency action for which there is no other adequate remedy in a court is subject to judicial review. *Id*. § 704. A reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . (A) arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law . . . ; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; [or] (D) without observance of procedure required by law . . ." *Id*. § 706(2).

The APA defines "agency action" to include "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." *Id*. § 551(13); *see id*. § 551(6) (defining "order" to mean "the whole or a part of a final disposition, whether affirmative, negative, injunctive, or declaratory in form, of an agency in a matter other than rule making but including licensing"). Agency action is "final" if two conditions are met. First, the action must mark the end of the agency's decision-making process. Second, the action must be one by which "rights or obligations have been determined," or from "which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997). A settlement agreement can qualify as final agency action. *United States v. Carpenter*, 526 F.3d 1237, 1241-42 (9th Cir. 2008).

EMERGENCY MOTION FOR
TEMPORARY RESTRAINING ORDER
(WITH NOTICE TO ADVERSE PARTY)

13

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

Defendants may argue that their decisions are unreviewable under 5 U.S.C. § 701(a) because they touch on foreign policy, but that is clearly not the case. The foreign-policy exception to reviewability is rarely used and applies when an agency decision requires "balancing complex concerns involving security and diplomacy resources." *Legal Assistance for Vietnamese Asylum Seekers v. Dep't of State*, 104 F.3d 1349, 1353 (D.C. Cir. 1997) (holding that the State Department's decision to deny a consular visa was committed to agency discretion). For instance, in *U.S. Ordnance, Inc. v. Dep't of State*, 432 F. Supp. 2d 94, 98 (D.D.C. 2006), the Court held that a delegation of authority to deny an applications for licenses to export M16 machine guns was not reviewable before the decision was vacated as moot, 231 F. App'x 2 (D.C. Cir. 2007). In contrast, where the State Department's actions are mandatory and non-discretionary, federal jurisdiction exists and section 701(a) does not preclude review. *See Rivas v. Napolitano*, 714 F.3d 1108, 1111 (9th Cir. 2013) (the doctrine of consular nonreviewability does not apply, and federal jurisdiction exists when the consular office allegedly fails to carry out "a nondiscretionary, ministerial duty"); *Patel v. Reno*, 134 F.3d 929, 931–32 (9th Cir. 1998) ("when the suit challenges the authority of the consul to take or fail to take an action as opposed to a decision taken within the consul's discretion, jurisdiction exists").  This case does not involve a balancing of complex concerns involving security. Instead, it involves mandatory, ministerial statutory and administrative requirements that were not met. These requirements include giving notice to two congressional committees, 22 U.S.C. § 2778(f)(1), and seeking "the concurrence of the Secretary of Defense," Executive Order 13637, § 1(n), when removing an item from the USML. It appears to be undisputed that these ministerial requirements were not met. In short, the States are challenging action that "is not committed to [Defendants'] discretion," and therefore section 701(a) does not preclude judicial review.

While unlikely to be raised by Defendants, the States note that the ACEA's limited

EMERGENCY MOTION FOR
TEMPORARY RESTRAINING ORDER
(WITH NOTICE TO ADVERSE PARTY)

14

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

exception to judicial review does not apply to a decision to remove an item from the Munitions List. 22 U.S.C. § 2778(h) provides that the executive's affirmative designation of an item as a defense article to be placed on the USML is not subject to judicial review. Subsection (h) expressly refers to the executive's action under subsection (a): "[t]he designation by the President (or by an official to whom the President's functions under subsection (a) have been duly delegated) . . . of items as defense articles or defense services for purposes of this section shall not be subject to judicial review." 22 U.S.C. § 2778(h) (emphasis added). Here the States are not challenging the federal defendants' designation of the computer code at issue as defense articles, but instead their decision to remove the code from the USML. The express terms of subsection (h) are clear, and they do not apply to the agency action challenged here.

### 1. The federal government's actions are in excess of the statutory jurisdiction and not in accordance with law

"When an agency has taken action without observance of the procedure required by law, the Court must set it aside." *Wilderness Watch, Inc. v. Creachbaum*, 225 F. Supp. 3d 1192, 1201 (W.D. Wash. 2016), *aff'd*, No. 17-35117, 2018 WL 3470257 (9th Cir. July 19, 2018). Defendants' actions exceeded their statutory power in four ways.

First, Defendants' enactment of a "temporary modification" of the USML Category I so as to exclude CAD files used for the production of 3-D printed guns constitutes final agency action that is *ultra vires* and should be set aside by the Court. Defendants also issued a letter stating that the CAD files were exempt from the export licensing requirements of the ITAR that effectively removed the items for USML Category I. Defendants may only exercise the authority conferred to them by statute. Neither AECA nor ITAR confer upon Defendants the power to modify the USML Category I, temporarily or otherwise, without 30 days' notice to the relevant Congressional committees and without concurrence of the Defense Department. *See* 22 U.S.C.

EMERGENCY MOTION FOR
TEMPORARY RESTRAINING ORDER
(WITH NOTICE TO ADVERSE PARTY)

15

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

§ 2778(f)(1); Executive Order 13637, § 1(n).

No notice of any kind was given—Defendants did not provide advance notice of the proposed temporary modification to the House Committee on Foreign Affairs and to the Committee on Foreign Relations of the Senate, as is required by the statute, and did not receive the concurrence of the Secretary of Defense, as is required by the delegating executive order, before enacting the modification on July 27, 2018. According to Rep. Engel, Ranking Member of the House Committee on Foreign Affairs, notice of the terms of the settlement has not been provided by the President or the State Department.[3]

Second, Defendants also lack statutory authority to determine that the files should be removed from the Category I list and to issue a letter stating that the files are exempt from the export licensing requirements of the ITAR pursuant to 22 C.F.R. § 125.4(b)(13) without following the "established procedures" for commodity jurisdiction. "The commodity jurisdiction procedure is used with the U.S. Government if doubt exists as to whether an article or service is covered by the U.S. Munitions List. It may also be used for consideration of a redesignation of an article or service currently covered by the U.S. Munitions List. The Department must provide notice to Congress at least 30 days before any item is removed from the U.S. Munitions List." 22 C.F.R. § 120.4(a).

Here, Defendants took one position for nearly 3 years in court filings and a CJ. Those admissions establish that, if Defendants want to change their past position on whether the CAD files are covered by the U.S. Munitions List, they must follow the CJ procedure.

Third, while ITAR allows the Deputy Assistant Secretary for Defense Trade Controls to order the temporary modification of any ITAR regulation, it may do so only "in the interest of

---

[3]  https://democrats-foreignaffairs.house.gov/news/press-releases/engel-decries-state-department-policy-allow-3-d-gun-printing.

EMERGENCY MOTION FOR
TEMPORARY RESTRAINING ORDER
(WITH NOTICE TO ADVERSE PARTY)

16

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

the security and foreign policy of the United States." 22 C.F.R. § 126.2. The temporary modification enacted by DDTC on July 27, 2018 is not in the interest of the security and foreign policy of the United States, and, upon information and belief, Defendants have made no determination otherwise. Indeed, it is hard to fathom how allowing the proliferation of undetectable plastic guns is in the interest of security and foreign policy of the United States.

Finally, Defendants lack statutory authority to permit "any United States person" to "access, discuss, use, reproduce, or otherwise benefit" from CAD files for the automated production of 3-D printed weapons, as this would allow "any United States person" to manufacture, possess, and sell firearms made from the files. As such, this provision would violate numerous provisions of the States' respective statutory schemes regulating firearms, including laws that promote public safety by keeping guns out of the hands of minors, persons convicted of violent felonies, the mentally ill, and persons subject to various protection and no-contact orders. For similar reasons, this provision would also violate numerous provisions of the federal Gun Control Act, including 18 U.S.C. § 922(x)(2) (possession by minors) and § 922(g) (possession by felons and domestic abusers). Defendants lack any authority to amend, rescind, or waive any portion of these laws.

## 2.    The Federal Government's actions were arbitrary and capricious

Under the APA, a court must set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law," 5 U.S.C. § 706(2)(A). An agency's reversal of its position may be arbitrary and capricious if the agency offers no reasoned explanation for ignoring or countermanding its earlier factual findings. *Standing Rock Sioux Tribe v. United States Army Corps of Eng'rs*, 255 F. Supp. 3d 101, 141 (D.D.C. 2017). "Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect

of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

Defendants have provided no explanation for the Government's complete reversal of its position on the files at issue, including its action to grant a "temporary modification" to exclude the files from ITAR jurisdiction and to issue a letter stating that the files are exempt from ITAR's export licensing requirements. The Government has released no reports, studies, or analyses to explain why downloadable guns should be removed from ITAR regulation. It appears that Defendants have also failed to consider or acknowledge the serious national security concerns or the threat to public safety posed to the States, created by the dissemination of these files.

It is also arbitrary and capricious because it is contrary to the purposes of AECA, which requires the State Department to administer AECA to reduce the international trade in arms and avoid destabilizing effects abroad through arms export. See 22 U.S.C. § 2751. It is also arbitrary and capricious because it is an extreme infringement of the States' sovereign rights to exercise their police power by enacting and enforcing public safety laws that restrict certain persons' possession of firearms and regulate the manufacture, use, sale, and transfer of guns.

**D.     The States Will Suffer Irreparable Harm in the Absence of Preliminary Relief**

In addition to being likely to succeed on the merits, the States and their residents will also suffer irreparable harm in the absence of preliminary relief. *Winter*, 555 U.S. at 20. Irreparable harm is harm "for which there is no adequate legal remedy, such as an award of damages." *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014). The States meet this test.

The States will suffer irreparable harm unless the Court issues a TRO prior to August 1,

EMERGENCY MOTION FOR
TEMPORARY RESTRAINING ORDER
(WITH NOTICE TO ADVERSE PARTY)

18

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

2018, to preserve the status quo. The States learned on or about July 27, 2018 that the Federal Government had enacted a "temporary modification" of the USML Category I to permit the dissemination of downloadable guns. As a direct result of the "temporary modification," Cody Wilson and Defense Distributed have announced that they intend to make files for the automated manufacture of 3-D printed weapons universally available for download on August 1, 2018. If these files are publicly released, anyone with access to a commercially available 3-D printer— regardless of their age, mental health status, or criminal history—will be able to download the files and instantly use them to make functional weapons at home that can evade metal detectors, are untraceable because they contain no serial numbers, and use bullets that are forensically untraceable to the weapon. The resulting harm will be irreparable: if the files are publicly released on August 1, 2018, they cannot be clawed back. As one gun-safety activist—the father of a teenager who was killed in the Parkland, Florida school shooting—succinctly put it: "At 12:01 on the 1st of August, it's going to be too late."[4]

In the wake of the unexpected news that the Government had reversed its previous position and was suddenly permitting the release of blueprints for the automated production of 3-D printed weapons, members of Congress and the public scrambled to respond. Forty members of the House of Representatives have signed a letter calling for a hearing to be held before August 1, 2018, but it remains unclear whether their efforts will succeed in time.[5]

The Defense Distributed website advertises that the "age of the downloadable gun begins" on August 1, 2018.[6] If a TRO does not issue before August 1, 2018, the harm that will result could be enormous and irreparable. Cody Wilson and Defense Distributed have repeatedly

---

[4]     https://www.washingtonpost.com/news/post-nation/wp/2018/07/27/lawmakers-are-attempting-to-prevent-the-spread-of-3-d-printed-guns-it-may-be-too-late/?noredirect=on&utm_term=.6cfceebbbdb8.
[5]     https://www.washingtonpost.com/news/post-nation/wp/2018/07/27/lawmakers-are-attempting-to-prevent-the-spread-of-3-d-printed-guns-it-may-be-too-late/?noredirect=on&utm_term=.6cfceebbbdb8.
[6] https://defdist.org/.

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

and adamantly that the "temporary modification" of the USML Category I will effectively negate all gun violence prevention efforts and usher in era of universally available, on-demand weapons. On July 10, 2018, the day the Settlement Agreement was made public, Wilson tweeted a photo of a tombstone announcing the death of "American Gun Control."[7] Wilson stated: "What's about to happen is a Cambrian explosion of the digital content related to firearms."[8]

Not only does Wilson intend to post his own CAD files for the automatic production of the "Ghost Gunner" and the "Liberator" pistol, among other weapons—he plans to make the software available on an open-source basis, and open the site to user contributions, creating a "searchable, user-generated database of practically any firearm imaginable."[9] Wilson says: "All this Parkland stuff, the students, all these dreams of 'common sense gun reforms'? No. The internet will serve guns, the gun is downloadable . . . No amount of petitions or die-ins or anything else can change that."[10]

To be sure, some CAD files for the automated production of 3-D printed weapons have been illegally available on the "dark web" prior to the Government's recent deregulation of their dissemination. This does not lessen the urgency of the need for a TRO to preserve the status quo. For one thing, while these older files may still be available, they may be piecemeal and not always reliable.[11] The downloadable guns that Defense Distributed intends to make publicly available on August 1 are full, 3-D printable files for complete guns. Not only that, but Cody Wilson has since 2013 "developed a trove of other 3-D printable weapon blueprints, including Assembly AR-15s and AR-10s"[12] that he also intends to publish on August 1, 2018.

---

[7] https://twitter.com/Radomysisky/status/1016765282017337344.
[8] https://www.wired.com/story/a-landmark-legal-shift-opens-pandoras-box-for-diy-guns/.
[9] *Id.*
[10] *Id.*
[11] https://news.vice.com/en_us/article/ev8xjn/get-ready-for-the-new-era-of-3d-printed-guns-starting-august-1
[12] https://www.washingtonpost.com/news/postnation/wp/2018/07/18/meet-the-man-who-wants-tobring-

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

Furthermore, legally permitting the files to be made available openly on an easily accessible website, and advertised publicly, will make them accessible to a much broader swath of the public. 3-D printed weapons are quickly becoming more accessible in financial terms as well. A 2017 study by the RAND Corporation found that on the dark web, the average gun cost $1,200, whereas the 3-D model for a gun cost only around $12.[13] In 2013, the first "Liberator" pistol that Wilson created was produced using a secondhand Stratasys Dimension SST 3D printer that cost $8,000.[14] Now, a Stratasys Dimension SST 3D printer is available for purchase on eBay for as little as $2,500.[15] Wilson also used a 3-D printer in 2013 to create a "lower" for an AR-15 semiautomatic rifle (i.e., the portion of the weapon that contains its operating parts, including the trigger group and magazine port), and stated at that time that anyone could replicate his efforts with "9 to 12 hours" of print time, $150 to $200 in parts, and a $1,500 3-D printer.[16]

Needless to say, if a TRO does not issue, the release of the CAD files on August 1, 2018 will irreparably harm the States by seriously undermining their ability to enforce their comprehensive statutory schemes regulating the possession, licensing, registration, and use of firearms and dangerous weapons. These laws promote public safety by keeping guns out of the hands of those who, for various reasons, should not have access to them, such as minors, persons convicted of violent felonies, the mentally ill, and persons subject to various protection and no-contact orders. Absent the issuance of a TRO prior to August 1, 2018 to preserve the status quo, the release of the CAD files will cripple the States' ability to enforce their firearm and dangerous

---

on-the-age-of-downloadable-guns-andmay-have-alreadysucceeded/?utm_term=.3fc838e31666.
[13] https://all3dp.com/3d-printed-gun-designs-surface-on-dark-web-for-12/.
[14] https://www.forbes.com/sites/andygreenberg/2013/05/05/meet-the-liberator-test-firing-the-worlds-first-fully-3d-printed-gun/#6559333f52d7.
[15] https://www.ebay.com/itm/Stratasys-Dimension-SST-3D-Printer-with-Cartridges/223077923795?hash=item33f07afbd3:g:7NsAAOSwrBdasDPt.
[16] https://arstechnica.com/tech-policy/2013/03/download-this-gun-3d-printed-semi-automatic-fires-over-600-rounds/.

EMERGENCY MOTION FOR
TEMPORARY RESTRAINING ORDER
(WITH NOTICE TO ADVERSE PARTY)
21
ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

weapons regulations—to the great detriment of the public and public safety.

As detailed in the Complaint, each of the States has laws prohibiting certain persons from obtaining or possessing firearms—for example, minors, persons convicted of felonies, persons subject to protection and no-contact orders, and persons who are mentally ill. If such persons are able to print their own firearms at home using the CAD files and a commercially available 3-D printer, they will be able to skirt these legal prohibitions with ease. The fact that 3-D printed weapons are largely undetectable and untraceable makes them all the more dangerous in the hands of those who are more likely to misuse them, including for criminal purposes.

As detailed in the Complaint, each of the States also has laws in place that are designed to prevent guns from falling into the wrong hands. These include laws requiring gun purchasers to provide identifying information such as their name, address, and date of birth; laws requiring gun dealers to ensure that serial numbers are recorded so that purchased guns can be traced; and laws providing for background checks of gun purchasers, whether conducted by dealers or those who transfer ownership at gun shows and online. Again, releasing the CAD files and enabling guns to be produced at home using a 3-D printer will make it far easier for black-market dealers, traders, and purchasers to evade the States' laws as outlined above.

In addition, as detailed in the Complaint, public safety in all of the States is threatened by the fact that their law enforcement officials will have no reliable means of detecting 3-D printed weapons using standard equipment such as metal detectors, and no means of tracing such weapons because they have no serial numbers, and cannot be forensically linked to the bullets they shoot. For example, as to Washington, two of the State's most preeminent law enforcement officers, Seattle Police Chief Carmen Best and King County Sheriff Mitzi Johanknecht, attest that the imminent dissemination of "ghost guns" will have a serious adverse impact on the public safety in the City of Seattle and King County. *See* Complaint, Ex. 2, ¶ 8 (Johanknecht Decl.)

("Ghost guns are an extreme risk to public safety that would disrupt the ability of law enforcement to conduct, solve and prevent violent crimes."); Complaint, Ex. 3, ¶ 8 (Best Decl.) ("Such a world would be much more dangerous for the public, and for the SPD officers whose job it is to protect the public.").

**E.      The Balance of Equities and Public Interest Sharply Favor Preliminary Relief**

Lastly, a preliminary injunction is appropriate where: (1) the balance of equities tips in favor of the applicants; and (2) an injunction is in the public interest. *Winter*, 555 U.S. at 20. Since this case involves the government, the balance of equities factor merges with the fourth factor, public interest. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2013). As the Supreme Court recently emphasized, "the purpose of such interim equitable relief is not to conclusively determine the rights of the parties, but to balance the equities as the litigation moved forward." *Trump v. Int'l Refugee Assistance Project*, 137 S. Ct. 2080, 2087 (2017).

Furthermore, "[t]he basic function of a preliminary injunction is to preserve the status quo pending a determination of the action on the merits." *Chalk v. U.S. Dist. Court Cent. Dist. Cal.*, 840 F.2d 701, 704 (9th Cir. 1988); *see also Leigh v. Salazar*, 677 F.3d 892, 902 (9th Cir. 2012) ("Preliminary injunctions normally serve to prevent irreparable harm by preserving the status quo pending a trial or other determination of the action on the merits.").

The balance tips sharply in favor of the States. They have shown a strong likelihood of extreme, irreparable, concrete harm to public safety. Meanwhile, as detailed above, the Federal Government's actions do nothing to further its purpose in AECA to reduce the international trade in arms and avoid destabilizing effects abroad through arms exports—indeed, the Government's actions appear by all accounts to undermine this purpose. Finally, a temporary restraining order will not harm the Government. The requested relief is narrowly tailored and will put the Government in the same position that it was for the last 3 years, which is consistent with the CJ.

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1    **F.      No Security Should Be Required as a Condition for Granting the TRO**

2          Fed. R. Civ. P. 65(c) provides that the "court may issue a preliminary injunction or a

3    temporary restraining order only if the movant gives security in an amount that the court

4    considers proper to pay the costs and damages sustained by any party found to have been

5    wrongfully enjoined or restrained." In the Ninth Circuit, the district court "retains discretion" to

6    waive this requirement. *Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011). The Court should

7    not require the States to provide a monetary security deposit because the relief sought will not

8    cause Defendants to suffer any damages. The States are not aware of any cost to Defendants

9    from maintaining the items at issue here on the USML. Defendants have maintained the subject

10   computer code on the USML for over three years, and it will not impose a cost to place it back

11   on the Munitions List for the time necessary to resolve this litigation. Under these circumstances,

12   the Court should exercise its discretion and decline to require the States to provide a security

13   deposit.

14
                            **IV.      CONCLUSION**
15
          For the foregoing reasons, the State asks this Court to grant a temporary restraining order
16
     until such time as the Court can further consider the merits.
17
          DATED this 30th day of July, 2018.
18

19                                      Attorney General

20                                      */s/ Jeffrey Rupert*
                                        JEFFREY RUPERT, WSBA #45037
21                                      Division Chief
                                        KRISTIN BENESKI, WSBA #45478
22                                      Assistant Attorney General
                                        TODD BOWERS, WSBA #25274
23                                      Deputy Attorney General
                                        JEFF SPRUNG, WSBA #23607
24                                      Assistant Attorney General

JeffreyR2@atg.wa.gov
KristinB1@atg.wa.gov
ToddB@atg.wa.gov
JeffS2@atg.wa.gov
*Attorneys for Plaintiff State of Washington*

GEORGE JEPSEN
Attorney General of Connecticut

*/s/ Kimberly Massicotte*
KIMBERLY MASSICOTTE, CT-04111
Associate Attorney General
JOSEPH RUBIN, CT-00068
Associate Attorney General
MAURA MURPHY OSBORNE, CT-19987
Assistant Attorney General
Connecticut Office of Attorney General
55 Elm St.
P.O. Box 120
Hartford, CT 06141-0120
*Attorneys for Plaintiff State of Connecticut*

BRIAN E. FROSH
Attorney General of Maryland

*/s/ Julia Doyle Bernhardt*
JULIA DOYLE BERNHARDT
JENNIFER KATZ
Assistant Attorneys General
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, MA 21202
(410) 576-7291
jbernhardt@oag.state.md.us
jkatz@oag.state.md.us
*Attorneys for Plaintiff State of Maryland*

GURBIR GREWAL
Attorney General of New Jersey

*/s/ Jeremy M. Feigenbaum*
JEREMY M. FEIGENBAUM
Assistant Attorney General
Office of the Attorney General
Richard J. Hughes Justice Complex
25 Market Street, 8th Floor, West Wing
Trenton, NJ 08625-0080

EMERGENCY MOTION FOR
TEMPORARY RESTRAINING ORDER
(WITH NOTICE TO ADVERSE PARTY)

25

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

(609) 376-2690
Jeremy.Feigenbaum@njoag.gov
*Attorneys for Plaintiff State of New Jersey*

BARABARA D. UNDERWOOD
Attorney General of New York

*/s/ Barbara D. Underwood*
BARBARA D. UNDERWOOD
Attorney General of New York
28 Liberty Street
New York, NY 10005

MAURA HEALEY
Attorney General of Commonwealth of
Massachusetts

*/s/ Jonathan B. Miller*
JONATHAN B. MILLER
Assistant Attorney General
Office of the Massachusetts Attorney General
One Ashburton Place
Boston, MA 02108
617-963-2073
Jonathan.Miller@state.ma.us
*Attorneys for Plaintiff Commonwealth of
Massachusetts*

JOSH SHAPIRO
Attorney General of Commonwealth of
Pennsylvania

*/s/ Josh Shapiro*
JOSH SHAPIRO
Attorney General
Office of the Attorney General
Strawberry Square, 16th Floor
Harrisburg, PA 17120
(717) 787-3391
*Attorneys for Plaintiff Commonwealth of
Pennsylvania*

KARL A. RACINE
Attorney General for the District of Columbia

*/s/ Robyn Bender*
ROBYN BENDER
Deputy Attorney General

EMERGENCY MOTION FOR
TEMPORARY RESTRAINING ORDER
(WITH NOTICE TO ADVERSE PARTY)

26

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

Public Advocacy Division
JIMMY ROCK
Assistant Deputy Attorney General
Public Advocacy Division
*Attorneys for Plaintiff District of Columbia*

EMERGENCY MOTION FOR
TEMPORARY RESTRAINING ORDER
(WITH NOTICE TO ADVERSE PARTY)

27

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

# DECLARATION OF SERVICE

I hereby certify that on July 30, 2018, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will serve a copy of this document upon all counsel of record.

DATED this 30th day of July, 2018, at Seattle, Washington.

*/s/ Jennifer D. Williams*
JENNIFER D. WILLIAMS
Paralegal

EMERGENCY MOTION FOR
TEMPORARY RESTRAINING ORDER
(WITH NOTICE TO ADVERSE PARTY)

28

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744