# Exhibit D

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DEFENSE DISTRIBUTED, et al., | § | Case No. 15-CV-372-RP |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| U.S. DEPARTMENT OF STATE, et al., | § | |
| | § | |
| Defendants. | § | |

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
JOINT EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER

Plaintiffs Defense Distributed, Second Amendment Foundation, Inc., and Conn Williamson hereby submit their Memorandum of Points and Authorities in Opposition to Joint Emergency Motion for Temporary Restraining Order.

Dated: June 27, 2018                           Respectfully submitted,

*/s/ Matthew Goldstein*                        */s/ Josh Blackman*
Matthew Goldstein                              Josh Blackman
D.C. Bar No. 975000*                           Virginia Bar No. 78292
Snell & Wilmer                                 1303 San Jacinto Street
One Church Avenue, Suite 1500                  Houston, Texas 77002
Tucson, Arizona 85701                          202.294.9003/Fax: 713.646.1766
520.882.1248                                   joshblackman@gmail.com
mgoldstein@swlaw.com

*/s/ Alan Gura*                                */s/ David S. Morris*
Alan Gura                                      David S. Morris
Virginia Bar No. 68842*                        Texas State Bar No. 24032877
Gura PLLC                                      FISH & RICHARDSON P.C.
916 Prince Street, Suite 107                   One Congress Plaza, Suite 810
Alexandria, Virginia 22314                     111 Congress Avenue
703.835.9085/Fax 703.997.7665                  Austin, Texas 78701
alan@gurapllc.com                              512.472.5070/Fax 512.320.8935
                                               dmorris@fr.com

*Admitted pro hac vice

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
JOINT EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER

SUMMARY OF ARGUMENT

The putative intervenor groups lack any basis to obtain injunctive relief. Quite apart from their complete lack of standing, briefed separately on the motion for intervention, (1) the relief these groups seek is flatly barred by statute and court rule; (2) the Groups are not suffering any injury that needs to be remedied; (3) relief would harm the parties and reward inequitable behavior; and (4) frustrate the public interest in promoting settlements and democratic self-government.

ARGUMENT

I.   STATUTES AND COURT RULE FLATLY BAR THE GROUPS FROM SUCCEEDING ON THE MERITS.

On May 24, 2018, the Department of State published a proposed rule in the Federal Register seeking to transfer responsibility for the licensing of firearms exports from the ITAR U.S. Munitions List ("USML") to the Department of Commerce Export Administration Regulations ("EAR") Commerce Control List. 83 Fed. Reg. 24,198 (May 24, 2018). While the EAR will require licenses for exports of firearms, the EAR does not impose a prior restraint on so-called "technical data"—that is, public speech. As a result, following the effective date of the final rule, Plaintiffs, and everyone else in the United States, will be free to publish the technical data that is the subject of this action.

The Groups now mount a collateral attack to the State Department rule by challenging the parties' Settlement Agreement in this action, which requires the State Department's performance of the following actions, in relevant part:

(a)  Defendants' **commitment to draft and to fully pursue, to the extent authorized by law (including the Administrative Procedure Act),** the publication in the Federal Register of a notice of proposed rulemaking and final rule, revising USML Category I to exclude the technical data that is the subject of the Action."

(b)  Defendants' announcement, while the above-referenced final rule is in development, of a **temporary modification**, consistent with the International Traffic in Arms Regulations (ITAR), 22 C.F.R. § 126.2, of USML Category I to exclude the technical data that is the subject of the Action. The announcement will appear on the DDTC website, www.pmddtc.state.gov, on or before July 27, 2018.

(c)  Defendants' issuance of a letter to Plaintiffs on or before July 27, 2018, signed by the Deputy Assistant Secretary for Defense Trade Controls, advising that the Published Files, Ghost Gunner Files, and CAD Files are **approved for public release** (i.e., unlimited distribution) in any form and are exempt from the export licensing requirements of the ITAR because they satisfy the criteria of 22 C.F.R. § 125.4(b)(13).

(d)  **Defendants' acknowledgment and agreement** that the temporary modification of USML Category I permits any United States person, to include DD's customers and SAF's members, to access, discuss, use, reproduce, or otherwise benefit from the technical data that is the subject of the Action, and that the letter to Plaintiffs permits any such person to access, discuss, use, reproduce or otherwise benefit from the Published Files, Ghost Gunner Files, and CAD Files.

More specifically, the Groups seek injunctive relief under the Administrative Procedure Act ("APA") and "constitutionally-mandated Separations of Powers" to enjoin the State Department from committing to draft and to fully pursue an amendment to the regulations to remove certain firearms from the ITAR USML under Section 1(a) of the Settlement Agreement; and from issuing licenses for public speech concerning technical data on firearms through the authorizations provided at sections 1(b)-(d) of the Settlement Agreement.

And they seek to enjoin "the parties," TRO Mot., Dkt. 97, including "the plaintiffs," Proposed Order, Dkt. 97-2, from executing the Settlement Agreement.

The Groups cannot obtain the relief they request because the Court lacks jurisdiction to review Department of State decisions on what articles to designate on the USML; lacks jurisdiction to review State Department license decisions under the Arms Export Control Act ("AECA"); because no Congressional notification requirements apply to the State Department's performance under the Settlement Agreement, and because the Court lacks jurisdiction to question or supervise Plaintiffs' exercise of their Rule 41 rights.

A.  **AECA Section 2778(h) Precludes the Court from Reviewing the State Department's Decision to Remove Defense Articles from the USML.**

The AECA provides that "[t]he President is authorized to designate those items which shall be considered as defense articles and defense services for the purposes of this section and to promulgate regulations for the import and export of such articles and services." 22 U.S.C. § 2778(a)(1). The items so designated constitute the ITAR USML. *Id.*

As a preliminary matter, Section 1(a) of the Settlement Agreement does not require the removal of anything from the USML. Rather, it only requires that the State Department commit to draft and fully pursue removal of the technical data at issue in this action from the USML, "to the extent authorized by law (including the Administrative Procedure Act)."

Even if the Settlement Agreement requires removal of the subject technical data from the USML, the AECA expressly bars the Court from reviewing such State Department designations of articles under the ITAR because 22 U.S.C. § 2778(h) expressly, clearly, and unequivocally precludes judicial review of such decisions:

> **(h) Judicial review of designation of items as defense articles or services**
>
> The designation by the President (or by an official to whom the President's functions under subsection (a) have been duly delegated), in regulations issued under this section,

of items as defense articles or defense services for purposes of this section **shall not be subject to judicial review**.

22 U.S.C. § 2778(h) (emphasis added).

**B.     The Court Lacks Jurisdiction to Review State Department License Decisions Under the APA because of a Clear Delegation of Authority and Lack of Judicially Manageable Standards.**

The Groups are challenging the State Department's agreement to provide an order temporarily modifying the ITAR, an accompany acknowledgement of same, and a letter to Plaintiffs approving or otherwise licensing the publication of the technical data at issue. These State Department licensing decisions are not subject to judicial review under the APA because the AECA's delegation of authority to control arms exports is decidedly one involving foreign affairs and national security—matters clearly within the State Department's discretionary authority; and the lack of judicially manageable standards precludes review.

Whether an agency action is committed to the discretion of an agency depends on the nature of the delegation of authority and the statutory language. *See Webster v. Doe*, 486 U.S. 592, 599-600 (1988). This narrow exception to judicial reviewability is especially prevalent in cases involving agency decisions relating to foreign affairs and national security because these cases involve "judgments on questions of foreign policy and the national interest" that are not "fit for judicial involvement." *See Dist. No. 1, Pac. Coast Dist., Marine Eng'rs' Beneficial Ass'n v. Mar. Admin.*, 215 F.3d 37, 42 (D.C. Cir. 2000). Here, the AECA clearly provides authority to the President, or his delegate, to issue a license when he determines that such action is "consistent with the foreign policy interests of the United States," 22 U.S.C. § 2751, and "in

furtherance of world peace and the security and foreign policy of the United States." *Id.* § 2778(a)(1).

In addition, where the language of a statute provides no justiciable standard by which a court can review the agency's exercise of its delegated authority, the matter is treated as committed to the agency's discretion. *See Webster*, 486 U.S. at 600 (a statute allowing the Director of the CIA to terminate employment of any employee whenever he found termination "advisable" for the national interest "fairly exude[d] deference" and thereby precluded judicial review under the APA). In particular, if the statute uses language that permits an executive official, such as the President or another agency official, to take action that the official "deems" in the "national interest," these statutes have been consistently interpreted to preclude judicial review under the APA. *See Zhu v. Gonzales*, 411 F.3d 292, 295 (D.C. Cir. 2005) (construing a statute, which allows the Attorney General to waive a requirement if waiver is in the "national interest," as being committed to the discretion of the Attorney General).

*U.S. Ordnance, Inc. v. U.S. Department of State*, is especially relevant to articles at issue in this present case. 432 F.Supp.2d 94 (2006). In *U.S. Ordnance*, Plaintiff challenged the State Department's denial of a license to export M16 machine guns. After noting the broad scope of the AECA delegation of authority to the President in matters of foreign affairs and national security, the court held that "given the clear statutory language and the absence of judicially manageable standards to guide the Court's review, it must reject plaintiffs invocation of the APA and decline to review the agency's denial of plaintiff's applications for licenses to export M16 machine guns." *Id*. at 99. For the reasons stated in *U.S. Ordnance,* this Court must reject Intervenors' attempt to challenge State Department licensing decisions under the APA based on

5

the clear statutory authority conferred to the Department of State and lack of judicially manageable standards. During oral arguments, counsel for the Groups should be asked to explain why they failed to reference the fact that decisions concerning the issuance of license are not subject to judicial review.

### C. No Congressional Notification Requirements Apply to the Settlement Agreement.

Throughout various sections of their briefings and proposed Complaint in Intervention, the Groups claim that the State Department failed to provide Congressional notification for the Settlement Agreement. However, they fail to cite any section of the AECA that actually imposes a Congressional notification requirement to the Settlement Agreement.

The AECA contains various Congressional notification requirements.[1] Specifically, the statute requires the State Department to formally notify Congress before issuance of any license or other approval for export sales of "Major Defense Equipment" that exceed certain dollar-value thresholds, before the approval of exports of commercial communications satellites to certain destinations and persons, and before approval of certain other transactions. *See e.g.,* 22 U.S.C. §§ 2776(c), 2776(d). In addition, as cited by the Groups, the President must provide Congressional notifications in advance of removing an item from the USML. *Id.* at § 2778(f)(1). However, no Congressional notification requirements apply to the State Department's obligations under the terms of the Settlement Agreement.

Specifically, no Congressional notification requirement applies to the State Department issuance of a license to publish technical data. Nor is Congressional notification required for the

---

[1] *See e.g.,* Matthew A. Goldstein, "Addressing Congressional Notification Requirements

State Department to make a commitment to draft and to fully pursue, to the extent authorized by law (including the Administrative Procedures Act), the publication in the Federal Register of a notice of proposed rulemaking and a final rule, revising USML Category I to exclude the technical data that is the subject of the Action. Critically, the Settlement Agreement does not require the State Department to remove anything from the USML. It only requires that the State Department commit to draft and pursue such change in compliance with the APA and any other applicable laws, to include the AECA and its Congressional notification requirements. That's it.

Further, no Congressional notification requirements apply to the State Department's issuance of a temporary order suspending or modifying the ITAR under Section 126.2. Here, Intervenors confuse and conflate the difference between a temporary order under ITAR Section 126.2 and actual removal of an article from the USML requiring Congressional notification. ITAR Section 126.2 permits the State Department to "**order** the **temporary** suspension or modification of any or all of the regulations of this subchapter in the interest of the security and foreign policy of the United States." 22 C.F.R. 126.2 (emphasis added). Such suspension is a temporary order that does not remove anything from the USML. In sharp contrast, removal of a defense article from the USML is a permanent act that requires rulemaking and Congressional notification.

Plaintiffs further note that at Count I of their proposed Complaint in Intervention, the Groups claim that "Defendants lack statutory authority to determine that the Plaintiffs' CAD files should be removed from the Category I list without following the 'established procedures' for commodity jurisdiction." Pr.Compl. ¶ 80. Here, the Groups misunderstand the established

---

— Best Practices," WorldECR, Issue 71 (August 2018).

7

scope and purpose of the ITAR commodity jurisdiction procedure. ITAR Section 120.4 is used for case-by-case determinations of whether a particular product (i.e., XYC Company's widget) is on the USML, and not for determinations on whether to remove entire classes of items from the USML. *Karn v. United States Department of State* illustrated this point::

> Designating an export such that it is subject to the AECA and the ITAR requires first describing the type of item in the regulations, and second, if asked by a potential exporter, confirming that the item in question is or is not covered by such description. The commodity jurisdiction procedure provides the latter function... 925 F.Supp. 1, 7 (D.D.C. 1996)

The commodity jurisdiction process simply does not apply to temporary modifications of the ITAR under 126.2 or other licensing decisions. Nor does it apply to agency decisions to amend the regulations to transfer export jurisdiction of defense articles to the Department of Commerce.

D.     **The Court Cannot Constrain the Plaintiffs' Right to Dismiss Their Action.**

Fed. R. Civ. P. 41(a)(1) provides Plaintiffs two avenues to voluntarily dismiss their action, without court intervention. The case law tends to focus on this rule's first subdivision: allowing for dismissal without consent prior to service of an answer or motion for summary judgment. However, the considerations appear equally applicable to the second method of court-free dismissal: one stipulated to by the parties.

Without question, Plaintiffs can at this time proceed under *either* subdivision to dismiss their case, although the settlement agreement contemplates the stipulation of Rule 41(a)(1)(ii). The Department of Justice currently has the stipulation in hand.

The rights of Rule 41 are absolute. A Rule 41(a)(1) dismissal

> itself closes the file. There is nothing the defendant can do to fan the ashes of that action into life and the court has no role to play. This is a matter of right running to the plaintiff and may not be extinguished or circumscribed by adversary or court. There is not even a perfunctory order of court closing the file. Its alpha and omega was the doing of the plaintiff alone. He suffers no impairment beyond his fee for filing.

*Am. Cyanamid Co. v. McGhee*, 317 F.2d 295, 297 (5th Cir. 1963); *Amerijet Int'l, Inc. v. Zero Gravity Corp. (In re Amerijet Int'l, Inc.)*, 785 F.3d 967, 973 (5th Cir. 2015). "Subject to certain restrictions not here relevant, Federal Rule of Civil Procedure 41(a)(1) on its face grants a plaintiff an unconditional right . . . ." *Pilot Freight Carriers, Inc. v. International Brotherhood of Teamsters*, 506 F.2d 914, 915 (5th Cir. 1975). "The court ha[s] no power or discretion to deny plaintiffs' right to dismiss or to attach any condition or burden to that right." *Williams v. Ezell*, 531 F.2d 1261, 1264 (5th Cir 1976).

Insofar as the Groups purport to have the Court enjoin the Plaintiffs from dismissing their complaint (if they are satisfied that the Government has lived up to its obligations under the settlement agreement), their motion must fail. Nor can they intervene in the case for the purpose of frustrating Plaintiffs' unconditional Rule 41 rights.

Rule 41 is the other side of the ITAR coin. ITAR forbids judicial review of licensing decisions. Rule 41 forbids judicial interference in the right of dismissal where it applies. There can be no success on the merits.

II. THE GROUPS WOULD NOT SUFFER IRREPARABLE HARM WERE THEIR MOTION DENIED.

As noted in our other briefing, the Settlement Agreement does not purport to restrict the Groups' activities in any way. They remain free to pursue their institutional interests against those of the Plaintiffs.

Nor can the Court determine that national security—the interest secured by ITAR—

would be harmed by virtue of the Settlement Agreement. If the Court cannot question the Government's national security claims when those are asserted to defeat Plaintiffs' speech rights, the Court cannot purport to override the Government's considered judgment that the settlement agreement *does not* harm national security. And, as discussed in our opposition to the Group's intervention, there is an innocuous reason why the government now takes the position it does: While this case was being litigated, the Obama and Trump Administrations have engaged in a sophisticated and detailed plan to transition the regulation of certain technical data from the jurisdiction of the State Department to the jurisdiction of the Commerce Department.

This Court has already settled the threshold question: Plaintiffs face irreparable harm from the continued suppression of their speech rights. "The Court . . . has little trouble concluding Plaintiffs have shown they face a substantial threat of irreparable injury." *Defense Distributed* v. *Dept. of State*, 121 F. Supp. 3d 680, 689 (W.D. Tex. 2015).

III. THE EQUITIES, AND THE PUBLIC INTEREST, FAVOR DENIAL OF THE MOTION.

Plaintiffs' constitutional rights, and the parties' interest, as well as the judicial interest, in settling disputes, surely outweigh this transparent public relations stunt. And Plaintiffs renew their objections to the last-minute ambush tactics employed here. These tactics continue well into this day with this morning's unwarranted supplemental briefing that raise novel arguments and points of law. (Plaintiffs moved separately to strike portions of those last-minute pleadings). The First Amendment secures the Groups an ample array of fora in which to express themselves and seek attention for their cause. This Court, and this case, is not the place to question the Government's exercise of its foreign policy powers.

Previously, the parties disputed which public interest—the exercise of constitutional

10

rights, or the rights of a democratic polity to its government—should prevail. Here, these interests are no longer opposed, but aligned in favor of denying the motion. And to these interests should be added the interest in encouraging settlements and sparing the Court of controversies that no longer arise under Article III.

CONCLUSION

The motion for temporary restraining order should be denied.

Dated: June 27, 2018                                Respectfully submitted,

*/s/ Matthew Goldstein*                             */s/ Josh Blackman*
Matthew Goldstein                                   Josh Blackman
D.C. Bar No. 975000*                                Virginia Bar No. 78292
Snell & Wilmer                                      1303 San Jacinto Street
One Church Avenue, Suite 1500                       Houston, Texas 77002
Tucson, Arizona 85701                               202.294.9003/Fax: 713.646.1766
520.882.1248                                        joshblackman@gmail.com
mgoldstein@swlaw.com

*/s/ Alan Gura*                                     */s/ David S. Morris*
Alan Gura                                           David S. Morris
Virginia Bar No. 68842*                             Texas State Bar No. 24032877
Gura PLLC                                           FISH & RICHARDSON P.C.
916 Prince Street, Suite 107                        One Congress Plaza, Suite 810
Alexandria, Virginia 22314                          111 Congress Avenue
703.835.9085/Fax 703.997.7665                       Austin, Texas 78701
alan@gurapllc.com                                   512.472.5070/Fax 512.320.8935
                                                    dmorris@fr.com

*Admitted pro hac vice

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a) on July 27, 2018, and was served via CM/ECF on all counsel who are deemed to have consented to electronic service.  Local Rule CV-5(b)(1).

By: <i>/s/ Alan Gura</i>
Alan Gura