# Exhibit A

# U.S. Department of State
## Diplomacy in Action

## Department Press Briefing - July 31, 2018

Heather Nauert
Spokesperson
Department Press Briefing
Washington, DC
July 31, 2018

(//video.state.gov/detail/video/5816284692001/?autoStart=true)
TRANSCRIPT:

3:44 p.m. EDT

**MS NAUERT:** Hi, everybody. How are you? Nice to see you all.

A couple brief announcements to start out, before we take your questions. The first, I want to say that we're excited that last week, the 2018 International AIDS Conference in Amsterdam, the U.S. President's Emergency Plan for AIDS Relief, also known as PEPFAR, announced several African countries are now on pace to reach HIV epidemic control by the year 2020 with U.S. Government support. It's a remarkable achievement, given how AIDS and PEPFAR has been devastating to so many communities around the world. HIV and AIDS was devastating Africa just 15 years ago when the PEPFAR program began. PEPFAR --

**QUESTION:** I think you might want to go back. I think you just misspoke. AIDS has been devastating, not PEPFAR.

**QUESTION:** Not PEPFAR.

**MS NAUERT:** Obviously, yes. That is what I would mean.

**QUESTION:** Okay. Just sorry.

**MS NAUERT:** PEPFAR also joins Sir Elton John, the Duke of Sussex, and other partners to launch the $1.2 billion MenStar Coalition, which will expand the diagnosis and treatment of HIV infections in men, particularly in Africa. Pending congressional approval, PEPFAR plans to contribute more than $800 million towards MenStar's goals in the next year and reach an additional one million men with lifesaving HIV treatment. Pending final congressional approval, PEPFAR also announced $360 million in planned investments for key populations over the next 12 months, which will expand their access to quality, lifesaving HIV services.

Thanks to the generosity of the American people, the United States is proud to remain the largest donor to the global HIV/AIDS efforts in the world. Our leadership and investments have not only helped change the course of the HIV/AIDS pandemic, but also ensured HIV programs are having the greatest possible impact with every dollar.

I'd be happy – if any of you are interested in further information on this, I'd be happy to connect you with some of colleagues who've been working on this on a daily basis and for years.

Next, I'd like to build on Secretary Pompeo's closing remarks at the international religious freedom and interfaith dialogue that took place here at the State Department. He announced that he would deliver several exchange programs to help promote religious freedom at the people-to-people and civil society level. In addition to the International Visitor Leadership Program that was announced by the Secretary, our Bureau of Educational and Cultural Affairs will be implementing several initiatives around religious freedom, including a two-way professional exchange fellows program, bringing foreign participants into the United States and sending Americans abroad on religious freedom issues. This will include 20 foreigners coming to the United States and seven American midlevel professionals, who will be nominated by State Department staff, and they will be heading overseas. There will also be a second professional fellows program, which will include participants from Central Europe, Albania, Bulgaria, Hungary, Romania, and Slovakia.

Our Study of the U.S. Institutes for Student Leaders and scholarship academics program will focus on religious pluralism in the United States. Thirty-eight students and scholars from around the world will explore U.S. history, society, and institutions within the context of religious pluralism and interfaith dialogue next summer, basically seeing how we all happen to live together and cooperate with one another.

We'd also like to mention that we are funding a program to conserve cultural heritage sites of minority communities in northern Iraq. The sites were targeted for destruction by ISIS and other terror groups. The funding will come through our Ambassador's Fund for Cultural Preservation.

And happy to update you on all of these deliverables from the ministerial as we get more information on all of them. With that, I'd be happy to take your questions.

**QUESTION:** Can I just – before we get to kind of the news of the day or the news of this morning, I just wanted to find out from you if you had any additional details about this incident with a cyclist in Tajikistan. Because there seems to be conflicting claims or conflicting accounts of who was responsible. ISIS has taken responsibility; I believe the Tajiks have blamed at least one, if not two other groups. Do you guys know anything and – beyond what has – what the embassy has --

**MS NAUERT:** Well, we've certainly seen the reports that ISIS has taken responsibility for the attack in which two Americans died. And while we're talking about this, we'd like to express our deepest condolences to the families of those Americans and those others who were senselessly killed in Tajikistan. We cannot confirm who was responsible for that attack at this time. The U.S. Government is providing its assistance to the Government of Tajikistan as they spearhead this investigation, and we'll provide more information as we get it.

**QUESTION:** Do you know – does that include FBI people going or --

**MS NAUERT:** I can't confirm any of that. I'd have to refer you to the FBI.

**QUESTION:** Okay. And then if no one else has a question on this, I just want to shift --

**QUESTION:** I had a follow-up.

**MS NAUERT:** Okay. Hi.

**QUESTION:** I mean, is Tajikistan cooperating with you on this investigation? And also what advice are you giving to American travelers now?

**MS NAUERT:** Yeah. So they are cooperating with the State Department. The State Department has offered its help, as have our colleagues at our embassy that are stationed there. The embassy has not issued any additional security alerts after this event. We encourage U.S. citizens though to, please, maintain awareness of their surroundings, to take the precautions that are all recommended. We put out a security message on July the 30th, so you could certainly take a look at that. And I will always make my plug for this: We encourage all U.S. citizens, as they travel overseas, to enroll in our STEP program. That enables the State Department and government officials to reach you if we should need to in the case of an emergency.

**QUESTION:** So then off the subject, I just wanted to ask you briefly – I'm sure other people will have more questions about it – about these 3D printer guns.

**MS NAUERT:** Sure.

**QUESTION:** The President tweeted this --

**MS NAUERT:** Which, by the way, before we get to that, we have a new person here who's covering the State Department: Courtney from *The Wall Street Journal.* Is she here today? Hi, Courtney.

**QUESTION:** Hi.

**MS NAUERT:** I just want to welcome you on board.

**QUESTION:** Thank you.

**MS NAUERT:** Courtney McBride. Have you all met Courtney yet? No. Okay. Well, she's here, and you'll be working with Jessica Donati?

**QUESTION:** That's right.

**MS NAUERT:** Right? Okay. Holler if you need anything.

All right, Matt. Go ahead.

Case 2:18-cv-01115-RSL   Document 35-1   Filed 08/07/18   Page 5 of 46

**QUESTION:** Okay. That was a – (laughter) – I forgot where I – oh, guns, right.

**MS NAUERT:** Yes.

**QUESTION:** The 3D printed guns. So the President tweeted this morning that he is going to look into this. I understand that this is not really the State Department's issue, or won't be soon the State Department's issue anymore, but given the amount of public opposition to this and the amount of concern on Capitol Hill that's been raised, is the Secretary planning to do anything to stop these downloads from becoming available, as they would at 12:01?

**MS NAUERT:** Sure. Let's back up a little bit and talk about the issue, because I think there's a lot of misinformation and a lot of misunderstanding about this issue. You turn on cable news, and this is – seems to be the lead story on pretty much every channel, every network out there. I think we need to put some things in perspective. This is obviously a heated situation; a lot of people have interest in this story.

A lot of people have been ignoring this fact for quite some time since this story began: At least since the year 2013, these CAD files, these computer-assisted design files, have been available online; they've been legal for U.S. citizens to actually download these CAD designs for quite some time now. They've been able to get these designs and print out these 3D guns in the United States. The reason that the State Department got involved, our only equity in this, is because of our role in controlling foreign access to U.S. defense technology. In simpler words, the State Department wants to prevent the wrong people from acquiring weapons overseas. That is the State Department's equity in this.

This has obviously gone through a legal process. The Department of Justice was advising the State Department on this entire legal matter. The Department of Justice suggested that the State Department and the U.S. Government settle this case, and so that is what was done. We were informed that we would've lost this case in court, or would have likely lost this case in court based on First Amendment grounds. We took the advice of the Department of Justice, and here we are right now.

I think ultimately what this gets down to is a domestic case where it's a domestic gun control issue that needs to be addressed not just by Congress but also by law enforcement. And so I imagine there will be many conversations held here at the federal level, to have conversations about the next steps that should happen now. Obviously, you know there are pending lawsuits as a result of this, so we're not going to be able to say a whole lot more on this. Department of Justice certainly has a piece.

**QUESTION:** Right, okay. But my – all that is welcome information to have heard. But my question was: Is the Secretary going to do anything? Because it is within his power, until this authority gets shifted to the Commerce Department, to do something to prevent these downloads from becoming available. And then --

**MS NAUERT:** Matt, let me say that these have been available for several years now, more than several years now. Pardon me.

**QUESTION:** Okay. So the uproar --

Case 2:18-cv-01115-RSL   Document 35-1   Filed 08/07/18   Page 6 of 46

**MS NAUERT:** And so they have been available not just from this one website, but many websites. I'm not defending that at all, but I want folks to know this is not something that has only recently become available, and it is – in fact, whether people like it or not, it is legal for American citizens to download this information.

**QUESTION:** So you're saying --

**MS NAUERT:** And so that's why I go back and say that this is a domestic gun control issue that certainly needs to be addressed, and that's a conversation that perhaps we should have in this country.

**QUESTION:** So you're – the uproar, the hullaballoo that happens is unwarranted in this building's opinion?

**MS NAUERT:** I think it would be wise for news organizations and people having conversations about this to be aware that at least since the year 2013 these have been available.

**QUESTION:** Okay.

**MS NAUERT:** These computer-assisted designs for making these 3D guns have been available online for several years.

**QUESTION:** Last one from me on this. You said that one of the reasons the State Department got involved – the equity, the State Department equity – was to make sure that the wrong – you wanted to prevent the wrong people from acquiring weapons overseas.

**MS NAUERT:** Overseas, yes.

**QUESTION:** So that does not apply – I realize it's not the State Department's remit, but wouldn't the federal government, of which the State Department is an agency, want to prevent the wrong people from acquiring guns domestically as well?

**MS NAUERT:** That is not – I would imagine so, Matt, but you know that that's not in the State's Department lane to comment on those domestic issues.

Okay, anything else on this? Okay, let's move on.

**QUESTION:** A follow-up on Iran.

**MS NAUERT:** Hi, Lesley.

**QUESTION:** Or not a follow-up. Can we start a string on it? So the President said yesterday he would be willing, if they are – the Iranians are willing to have talks with no preconditions. A few hours later, the Secretary went out on CNBC and basically said they are – there would be conditions. Does this mean that the Secretary disagrees with what the President said?

**MS NAUERT:** No, and I'd – I'm glad you asked me that question because I'd like to clarify this, and I would encourage everybody to go back and read the transcript. This is another example where – on basically every television channel, you look at the television channel and they're trying to claim that there's a split between the State House and the White Department on this – on the White House, the White House – and the White House on this very issue.

Okay, and so I'm going to read from the transcript so you all can hear right here exactly what was said:

"**QUESTION:** The President…said he would meet with the president of Iran with no preconditions. Are you onboard with that? Is that a good idea?"

"**SECRETARY POMPEO:** I am indeed. We have said this before. We – the President wants to meet – the President wants to meet with folks to solve problems."

Both the Secretary and the President have addressed this numerous times that we would be willing to sit down with Iran and have conversations about the future of that country. This is nothing new. The State Department has said this, and the White House has said this.

**QUESTION:** So the Secretary –

**QUESTION:** So far your main message today seems to be don't watch television news. (Laugher.)

**MS NAUERT:** Yeah, there are two key stories where people are misinterpreting things and not reading the fine print.

**QUESTION:** This is your former profession.

**MS NAUERT:** And not reading the fine print. Yes, I know, it is.

**QUESTION:** But he says that he is --

**QUESTION:** Yeah, but he said more than that.

**QUESTION:** He said more than that.

**MS NAUERT:** He did – he did say more than that. He did say more than that.

**QUESTION:** And then – and then he finished it by saying --

**MS NAUERT:** But what is important is that we would be willing to sit down and have these conversations. Secretary Pompeo addressed this when he was in California about a week and a half ago at his meeting over at the Reagan Library, as well as the President. The President has said this too.

**QUESTION:** Wait --

Case 2:18-cv-01115-RSL   Document 35-1   Filed 08/07/18   Page 8 of 46

**QUESTION:** Heather, part of his --

**MS NAUERT:** Go ahead.

**QUESTION:** Part of his response, though, he said if they would treat their own people with respect, reduce their foreign malign behavior, and enter – or discussions that would prevent their proliferation. And then he finished it by saying, "Then we'd be prepared to sit down." So those seemed like conditions, "then we'd be prepared to sit down." Or is it no conditions, he agrees with the President?

**MS NAUERT:** I think the President and the Secretary of State both said that we would be prepared to sit down. Would we like a change – change in Iranian behavior? Absolutely, and that's why you heard the Secretary speak so forcefully about the types of changes in Iranian behavior that the United States Government and many other countries around the world would like to see. We hope that behavior will change. Certainly, the people of Iran hope that that behavior will change so that they can have a better future themselves.

**QUESTION:** But he'd be willing to talk first before those changes?

**MS NAUERT:** The President said that, and the Secretary have both said that.

**QUESTION:** Okay, can I just --

**QUESTION:** So --

**MS NAUERT:** Hi, Michelle. Go right ahead.

**QUESTION:** Can I – can I just follow up on my question first?

**MS NAUERT:** Okay.

**QUESTION:** Because I'm trying to get through. Is that – so if he agrees that this is the case, has there been any outreach to the Iranians or from the Iranians to try to engage in talks?

**MS NAUERT:** Not that I'm aware of. Not that I – I don't have any calls, I don't have any meetings or schedules to announce at this point. Okay?

**QUESTION:** Okay, so it is at --

**MS NAUERT:** Hi, Michelle.

**QUESTION:** Hi. Even though the Secretary has said what he said, obviously there's enough vagueness there because he seemed to be saying two things at the same time. I mean, that's why there's been confusion and there continues to be questions. So hopefully you understand, he says yes, I'd be willing to do that, and then he seems to list preconditions. So from what you said just now, is it accurate to say that the U.S. would be willing to sit down with Iran without preconditions?

**MS NAUERT:** The Secretary said this yesterday, as did the President. I'd refer you back to the White House for any additional clarification from the President, but I think both have been clear that we would be willing to sit down for that reason. And part of that is, what does the State Department --

**QUESTION:** Without preconditions?

**MS NAUERT:** What does the State Department do? The State Department does diplomacy. Diplomacy is always our preferred approach. That is what we do here, and that is what the Secretary does here in serving this administration.

**QUESTION:** So this is without preconditions then, right?

**MS NAUERT:** I think I answered that question. The Secretary answered that yesterday.

**QUESTION:** Okay, I'm just making sure.

**MS NAUERT:** The President answered that last night.

**QUESTION:** But you won't just say it, and I don't know why.

**MS NAUERT:** The Secretary answered that yesterday, and the President answered that yesterday as well.

**QUESTION:** But the Secretary said yes in response to preconditions, but then he went on to list what sounded like very tough preconditions.

**MS NAUERT:** Those are all the things that we are asking the Iranian regime to do.

**QUESTION:** Right, right.

**MS NAUERT:** We hope that this country, that that regime, will lead to a better life, will change its policies so that its people can live a better life.

**QUESTION:** So the --

**MS NAUERT:** We hope that they will be willing to do things, and it's not just the United States asking.

**QUESTION:** Right. Well, why can't you just say yes or no?

**MS NAUERT:** It's not just the United States asking for that. It's many countries around the world asking for that as well.

**QUESTION:** Right. But why can't you just answer yes or no? Is Pompeo also willing to sit down with Iran without preconditions?

**MS NAUERT:** Michelle, I think I answered that question for you. The Secretary said that yesterday.

**QUESTION:** Okay. So it's accurate --

**MS NAUERT:** The President said that yesterday as well.

**QUESTION:** So it's accurate to say without preconditions then?

**MS NAUERT:** The Secretary said that yesterday.

**QUESTION:** Why can't you say yes?

**MS NAUERT:** The Secretary said that yesterday, and the President said that yesterday. I don't know how you're not hearing that, okay?

**QUESTION:** I just don't understand why you answer this way.

**MS NAUERT:** I'll move on. Laurie, go right ahead.

**QUESTION:** Yeah. Well, I have one question. Are you discouraged by the fact that the Iranians have said you have to return to the – they've rejected you? They said you've got to return to the (inaudible) ---

**MS NAUERT:** No, not in the least. Not in the least. They are certainly entitled to do that.

**QUESTION:** Okay. Then my question --

**MS NAUERT:** We prefer diplomacy. They prefer to export their malign behavior around the world, as we have seen them do for many, many decades. We prefer a diplomatic approach.

**QUESTION:** I can understand that. I have two questions, one on Turkey. Turkey has failed to release Pastor Brunson, and you've complained very strongly, and there are other issues involving Turkey, like its plans to purchase the S-400. Are sanctions a real possibility if these matters are not resolved?

**MS NAUERT:** Well, certainly the Vice President addressed that just a few days ago where he talked about the very real risk of sanctions for the Government of Turkey. That is something that the United States Government has had numerous conversations with the Government of Turkey about. In terms of precise sanctions or forecasting exact sanctions, that I'm not going to be able to do. We would certainly like Pastor Brunson to be sent home now. It's long

overdue. It's been a long time coming. He is innocent. We have – continue to have concerns about his longstanding detainment in Turkey. A step in the right direction certainly that he is under house arrest, but that's certainly not far enough. We'd like him to be brought home.

**QUESTION:** Okay. And on Syria --

**MS NAUERT:** Let's stay. Anything else on Turkey before we get back to Syria? Do you have – go ahead. Anybody else have anything on Turkey?

**QUESTION:** Yeah, on Turkey.

**MS NAUERT:** Okay. Hi.

**QUESTION:** So Heather, do you share the same optimism from Ambassador-at-Large for Religious Freedom Brownback said the other day that he's confident and there's a real prospect for Pastor Brunson to come home soon?

**MS NAUERT:** I'm not going to – it's a very sensitive matter. We would like Pastor Brunson to be brought home very soon. We've having conversations with the government. As you all know, Secretary Pompeo spoke with his counterpart over the weekend to continue the conversations about Pastor Brunson. I'm not going to say a whole lot because we want – it's obviously a sensitive matter.

Okay, anything else on Turkey?

**QUESTION:** I do.

**MS NAUERT:** Okay. Hi.

**QUESTION:** The court's decision today to make – to keep the pastor under house arrest, does that complicate the situation for you in trying to get him released?

**MS NAUERT:** Again, it's an ongoing conversation.

Okay, anything else on Turkey?

**QUESTION:** Yeah, just one thing because this is a question that's come up numerous times. Does the United States believe that the court – that the judicial system in Turkey is independent of the executive?

**MS NAUERT:** The – yeah.

**QUESTION:** You make these appeals or these demands of President Erdogan and of his administration, of his government, and yet their response is, well, our hands are tied because it's the court's decision and the courts in Turkey are independent.

**MS NAUERT:** Yeah. Matt, as I'm sure you can appreciate --

**QUESTION:** And so continuing --

**MS NAUERT:** As I'm sure you can appreciate, we'd like to bring our guy home.

**QUESTION:** Okay. But continuing to make this call and demand --

**MS NAUERT:** We would also like to bring home the three locally employed staff who have also been detained, which, by the way, I want to point out to all of you – we've spoken about our locally employed staff who've been detained in Turkey for far too long as well. There was a piece in a local newspaper here that claimed that the State Department had not been advocating for their release. I want to let you all know that that is flat-out untrue, that we've had lots of engagements with our – with Turkish counterparts about getting our locally employed staff out of prison as well, despite what you may have read in the papers. I just wanted to make that clear while we were talking about this.

**QUESTION:** Right, understood. But when you continue to make demands of the Turkish executive branch and then threaten sanctions and say that if they're not released, that suggests that you don't believe that the Turkish courts are independent.

**MS NAUERT:** I'm sure you can imagine we would like to bring our people home and get our people out of jail. I will be limited in terms of what I can say about the situation there. It is obviously very delicate.

Hi, Said.

**QUESTION:** Thank you, Heather. And on the Palestinian-Israeli issue, are you concerned that UNRWA schools may not be able to open come the new school season?

**MS NAUERT:** I'm sorry, what's the question?

**QUESTION:** UNRWA. The UNRWA schools may not be able to open next month as scheduled, and hundreds, maybe thousands, maybe tens of thousands of kids not being able to go to school, and clinics not opened and so on, because of the withheld funds – withheld American funds.

**MS NAUERT:** Look, United States remains still among the if not the --

**QUESTION:** I understand.

**MS NAUERT:** -- largest contributor to UNRWA. Back in January, it wasn't that long ago that we announced $60 million to UNRWA. As you all know, the funding decision has not been finalized for the remainder of this year. We have very often expressed our concerns about the structure and the funding – the funding streams that go into UNRWA. In terms of what is happening with the beginning of the school year, I'm afraid I've just – it's not something I've been extremely focused on.

Case 2:18-cv-01115-RSL    Document 35-1    Filed 08/07/18    Page 13 of 46

**QUESTION:** But you cannot compare – you cannot compare the United States to any other country. I mean, the U.S. is big and large and powerful and wealthy and has been in the forefront of giving aid to Palestinian refugees. I mean, that would dramatically cut on their ability to access education, health care --

**MS NAUERT:** Well, Said, I would just go back and remind you that the United States Government, the taxpayers here in the United States, have provided $60 million to UNRWA not only to sustain schools, but also to health services related to UNRWA. Other countries are now involved in the burden sharing and that is something that we certainly support and applaud them for doing that.

**QUESTION:** A follow-up, Heather?

**QUESTION:** Two more quick ones on this issue --

**MS NAUERT:** Yeah, uh-huh, and then I'll move on to Barbara.

**QUESTION:** -- on the issue of the refugees.

**MS NAUERT:** Yeah.

**QUESTION:** There's also an effort on Capitol Hill to basically designate – or not designate – determine, decide, whatever they call it, that there are only 30,000 or 40,000 Palestinian refugees and not the 5 million. Are you aware of this? Because they are basing this on some sort of a report done or edited or whatever by the State Department. Are you aware of that?

**MS NAUERT:** I'm not familiar with what Congress is looking into or some of the legislation that they may be proposing. I'd just have to look into that for you.

**QUESTION:** And lastly – I promise – the Israelis sentenced --

**MS NAUERT:** That's what you said last time. (Laughter.)

**QUESTION:** Yeah, well, I didn't say last – but this time, the last question: The Israelis sentenced a Palestinian Israeli poet, 36-year-old woman, to five months in prison for writing a poem that says, "Resist, my people resist." There are 150 literary American figures including Pulitzer Prize winners and so on called on Israel to release this Palestinian Israeli woman. Are you – would you do the same thing? Would you (inaudible) --

**MS NAUERT:** I could tell you I'm not aware of this particular case, but I think you know how we support free speech, just like having you here each and every day at the briefing, okay?

**QUESTION:** Speaking of --

**QUESTION:** (Off-mike.)

**QUESTION:** Syria?

**QUESTION:** Just to follow up on UNRWA --

**QUESTION:** (Off-mike.)

**MS NAUERT:** Okay, okay. Hold on. Hold on.

**QUESTION:** Heather, speaking of jailed poets --

**MS NAUERT:** Matt, hold on, hold on. We've done, like – hold on one second. Let me come back to you. Barbara, go right ahead.

**QUESTION:** Just to follow up on the UNRWA question --

**MS NAUERT:** Yes.

**QUESTION:** -- you're probably aware of this letter from 70 members of Congress to Mr. Pompeo asking that the funding be restored to UNRWA and to USAID. Also there was a letter at the beginning of the month from the seven former ambassadors, the letter in May from the 13 senators, and all of them are saying it's not just a humanitarian crisis; it's a security one, a security issue for Israel and Jordan. So can – is there any plan to – I mean, what's the holdup with the restoring the funds? What's the reform that needs to happen? And is there any sort of urgency around it given the concerns that are expressed and the fact that UNRWA seems to be in meltdown at the moment with the layoffs and the protests?

**MS NAUERT:** Yeah. So, I mean, I can tell you no decision has been made about the possible additional U.S. funding for UNRWA. That is still something that – that final decision has not been made at this point yet. I mean, we don't comment as a general matter on the Secretary's correspondence, if it's coming from the Hill or elsewhere.

And your last question was?

**QUESTION:** Well, I just wanted to know what more had to be done, like what reform was it?

**MS NAUERT:** Well, financial reforms.

**QUESTION:** Yeah.

**MS NAUERT:** Because every year around this time – and I will repeat it once again – UNRWA needs emergency funding. And so we think that they need a more stable source of revenue than just relying on the United States and they need to make reforms. We've talked about this a lot. This is something the United Nations has covered --

**QUESTION:** And do you see the --

**MS NAUERT:** -- the United Nations has covered this extensively as well, so that they aren't in a position where every year around the same time they have to do emergency appeals. So they need to come up with more sources of revenue, more countries paying in and contributing to this program.

**QUESTION:** And there have been more countries --

**QUESTION:** (Off-mike.)

**QUESTION:** -- paying in, but still it seems that the situation is pretty dire – at least, as you know, the protests this week. So that hasn't – there's not a reconsideration or an urgency about it?

**MS NAUERT:** Barbara, I can tell you that we certainly condemn the attempted violence on UNRWA officials, against UNRWA staff members, and the threats of violence on – that is something that we're following very closely. But UNRWA's financial situation has been untenable for a very long time. We are paying close attention to this and we'll keep monitoring as it goes on, but --

**QUESTION:** Heather, just on the aid – the issue of aid and jailed poets, last week you guys freed up some aid after an extended review for Egypt, quite a bit of aid, despite the fact that there are still very serious human rights concerns about the situation in Egypt. Shortly after the aid was freed up, they sentenced a bunch of people to death for taking part in a protest. Today they've jailed a poet for three years for exercising freedom of speech. So I'm just wondering, one, if you have anything to say about these two things, your releasing of the aid and then these continuing incidents which I presume but don't know that you would condemn.

**MS NAUERT:** That's the question?

**QUESTION:** Yeah. What's your response to that? And then --

**MS NAUERT:** Okay. I didn't hear a – I didn't --

**QUESTION:** Sorry.

**MS NAUERT:** There wasn't a question mark at the end of that. Matt, this is a matter that we take seriously, whether it's freedom of speech or a government detaining individuals. These are the types of conversations that sometimes we have publicly about other governments, and many times we have those conversations in private. Sometimes those conversations are done privately because we find it to be more effective to have conversations one-on-one instead of broadcasting them through the press. I will check in with our Egypt desk, my colleagues on the desk that handles Egypt, and see if I have anything more for you on that.

**QUESTION:** Well, can you say how effective you think your private conversations have been since the – since they'd sentenced dozens of people to death shortly after the aid --

**MS NAUERT:** Matt, I will look in to see if I can find additional information for you on that.

**QUESTION:** Thank you.

**MS NAUERT:** Hi, Conor.

**QUESTION:** (Off-mike.)

**QUESTION:** North Korea.

**MS NAUERT:** Yeah.

**QUESTION:** Syria.

**QUESTION:** North Korea.

**MS NAUERT:** Go ahead.

**QUESTION:** There was a report in *The Washington Post* last night that North Korea is moving ahead on production of intercontinental ballistic missiles, but that's also been confirmed through some satellite images showing this site is still active. I wonder if you had any reaction to that, but specifically, do you believe that them continuing to build the ICBMs would violate the joint declaration from Singapore?

**MS NAUERT:** Yeah. What we're going on is the commitment that Chairman Kim made to our President, and that is the commitment to denuclearize, and that is something that we certainly anticipate, that he will hold up his end of the bargain and his commitment on that. In terms of that specific report, I've seen it. We're all very well aware of that report. That would fall under an intelligence matter, which is just something I'm not going to be able to get into.

While we're talking about North Korea, I'd like to highlight something that's taking place tomorrow, and tomorrow will be the repatriation ceremony for the remains of fallen U.S. service members from many years ago. That'll take place I think about a few hours from now at Osan Air Base, and the State Department will be represented there and we're looking forward to being a part of that. While we are on this topic of conversation, I would just like to reiterate once again that we owe a profound debt of gratitude to those American service members who gave their lives in service to their country so long ago. We are working diligently to bring them home. Their sacrifices and their lives have not been forgotten and we're pleased to be able to have representation at that.

We see that as Chairman Kim fulfilling part of the commitment that he made to the President to return the remains of our fallen service members. That's a commitment that he made at the Singapore summit, and so I just wanted to mention that as well.

I'd also like to highlight something that did not get reported, and the fact is that the United States Government did not pay for the repatriation of those remains. There was a lot of speculation; there was some misreporting that the U.S. Government was paying for those remains. I just want to make it clear here that North Korea did not ask for any money nor did we offer any money for the remains of those fallen Americans.

**QUESTION:** Can I follow up on that?

**MS NAUERT:** Okay.

**QUESTION:** Can I follow up on that?

**QUESTION:** Can I follow up also?

**MS NAUERT:** Sure, go right ahead.

**QUESTION:** So in the past, it's been proven that the remains were not actually the remains that they said they were. How do we know that these are the remains that they say they are?

**MS NAUERT:** Yeah, a good question and a fair question. We certainly hope that they are. There is a lot of work that has left to be done on that front. The Vice President will be a part of the ceremony, and I don't want to get ahead of the Vice President on this, certainly, but he'll be a part of the ceremony or the events when those remains are brought to Hawaii, and that's where we have the top forensics investigators who will be looking into this. That will be their job. That will be in the DOD lane, so they can best comment on that, but we certainly hope that they are what Chairman Kim and the North Korean Government presented them to be.

**QUESTION:** So you'll have forensic investigators on site at the repatriation ceremony?

**MS NAUERT:** I can't say that at all --

**QUESTION:** Okay.

**MS NAUERT:** -- because that would be really a DOD matter. There will be DOD representatives available tomorrow at Osan Air Base who will be taking – taking that – part in that.

**QUESTION:** So they'll be taking part in it. Okay. Thank you.

**MS NAUERT:** Yeah. I can only cover the State Department of it, okay?

Okay, a couple more questions, then we've got to wrap. Hi, Nick.

**QUESTION:** Just following up on this morning's call with a senior State Department official who did not rule out the possibility of a meeting with Secretary Pompeo's North Korean counterpart, is he seeking a meeting with the North Korean --

**MS NAUERT:** I can tell you as we go to ASEAN – and we leave tomorrow, as you know – North Korea will be a participant at the ASEAN meetings. They have been for many years now. We will be in some of the same meetings as North Korean Government officials. I certainly can't preclude any interaction taking place, but we have no meetings on the schedule; nothing is planned.

**QUESTION:** (Inaudible) But is he seeking a meeting?

**MS NAUERT:** I have not asked that question. That's the information that I have to give to you right now. Okay?

**QUESTION:** Syria?

**QUESTION:** (Off-mike.)

**MS NAUERT:** Okay. Okay, hold on.

**QUESTION:** Despite – despite the progress --

**MS NAUERT:** Go ahead.

**QUESTION:** -- that was made on repatriation of remains, when was the last time you would say that there was progress in discussions on denuclearization?

**MS NAUERT:** We continue to have conversations with the North Korean Government frequently and we're – we keep pushing ahead.

**QUESTION:** Syria?

**QUESTION:** Well, is there still progress?

**MS NAUERT:** I'm not giving you a readout of every single meeting. As you know, our conversations and our consultations continue at the working level and in the government.

**QUESTION:** (Off-mike.)

**QUESTION:** North Korea? North Korea?

**MS NAUERT:** Hi, Janne. And then we're going to have to go.

**QUESTION:** Yeah, on North Korea, two days ago North Korea say that it would not denuclearize unless sanctions were completely lifted.

**MS NAUERT:** Yeah, not happening. Not happening. Our sanctions remain in place; they remain firmly in place. As the Secretary goes to ASEAN, he will certainly have conversations with his counterparts from other governments about the importance of maintaining those sanctions and keeping sanctions in place. That is in large part what brought Kim Jong-un to the table, those sanctions that have been tough on the North Korean Government. Certainly more needs to be done. Countries that have agreed to the UN Security Council resolutions and agreed to those sanctions need to make sure that they are fully enforcing those sanctions. There's still work left to be done.

**QUESTION:** The U.S. --

**MS NAUERT:** Okay, guys, I've got to wrap. But – okay, very last thing. Yeah, go right ahead.

**QUESTION:** Yeah. Cambodia. Do you have anything on the election over the weekend? And as the country is heading toward a one-party state, do you have – how concerned is the United States over the arbitrary detention of opposition leaders and activists?

**MS NAUERT:** This is something that we've been following closely for a long time. This is not something that just happened overnight in Cambodia. Remember six or eight months ago, when you and Matt and I were having the conversation about the crackdown on independent media in Cambodia, right. It was your first job as a newspaperman, Matt?

**QUESTION:** Not first. Close, but --

**MS NAUERT:** Back in the 1820s. (Laughter.) When Matt was reporting for – what is it, *The Phnom Penh Post*, is that right?

**QUESTION:** I was at *The Cambodia Daily*.

**MS NAUERT:** *Cambodia Daily*. At any – I just – but it is a serious situation, as we've seen how that government has made it extremely difficult, if not impossible, for news organizations to do their job. That certainly ties into the election that we just saw. Those elections were neither free, they certainly were not fair, and they did not represent the will of the Cambodian people. We have all seen stories about how people were strongly encouraged to vote. And how did they end up voting? Well, they ended up drawing in pictures or putting names that really weren't on the ballot as a form of protest.

The entire thing is a serious setback to the democratic and economic progress that has been made in Cambodia. We call on the Government of Cambodia to take tangible actions to promote reconciliation by allowing media and civil society organizations to operate. They should also free political prisoners. There's a lot of work that Cambodia has left to do. The White House just put a statement out on that, so for any additional information, I'd refer you over to the White House statement. Their statement was strong and good.

**QUESTION:** Syria?

**MS NAUERT:** I've got to leave it at that. I will look forward to seeing many of you on the trip. Looking forward to our press engagements with you and our meetings.

**QUESTION:** Thank you.

**MS NAUERT:** Thanks.

(The briefing was concluded at 4:18 p.m.)

DPB # 37

Case 2:18-cv-01115-RSL   Document 35-1   Filed 08/07/18   Page 20 of 46

The Office of Website Management, Bureau of Public Affairs, manages this site as a portal for information from the U.S. State Department.

External links to other Internet sites should not be construed as an endorsement of the views or privacy policies contained therein.

Note: documents in Portable Document Format (PDF) require Adobe Acrobat Reader 5.0 or higher to view, download Adobe Acrobat Reader (http://get.adobe.com/reader/).

Exhibit B

| | |
|---|---|
| **From:** | Rupert, Jeffrey (ATG) |
| **To:** | Eric.Soskin@usdoj.gov; stuart.j.robinson@usdoj.gov |
| **Cc:** | Sprung, Jeff (ATG); Bowers, Todd (ATG); Beneski, Kristin (ATG); Williams, Jennah (ATG); Summers, Grace (ATG); Jones, Zach (ATG) |
| **Subject:** | RE: Washington v. U.S. Department of State |
| **Date:** | Wednesday, August 1, 2018 3:19:12 PM |

Stuart,

As we discussed, the States propose that the States file their preliminary injunction motion on Monday, August 6 at noon Pacific and that the Defendants file their memorandum in opposition by Wednesday, August 8 at midnight Pacific.  If this is agreeable, let me know.

In our earlier call, we discussed when the administrative record would be submitted, but did not reach agreement as to the date for the submission. When will the record be submitted?  It appears that the administrative record is very small.

Jeff

Jeff Rupert

Washington Attorney General's Office

Complex Litigation Division

Division Chief

206-389-2116

JeffreyR2@atg.wa.gov

_____

**From:** Rupert, Jeffrey (ATG)
**Sent:** Wednesday, August 1, 2018 1:43 PM
**To:** 'Eric.Soskin@usdoj.gov' <Eric.Soskin@usdoj.gov>
**Cc:** Sprung, Jeff (ATG) <JeffS2@ATG.WA.GOV>; Bowers, Todd (ATG) <ToddB@ATG.WA.GOV>; Beneski, Kristin (ATG) <KristinB1@ATG.WA.GOV>; Williams, Jennah (ATG) <JennahW@ATG.WA.GOV>; Summers, Grace (ATG) <GraceS1@ATG.WA.GOV>
**Subject:** Washington v. U.S. Department of State

Eric,

I left you a voicemail about this, but had yet to hear back.  Will the federal defendants agree to a preliminary injunction?  If not, please contact me to discuss a briefing schedule for the preliminary injunction motion and the submission of the administrative record.

Jeff

Jeff Rupert

Washington Attorney General's Office

Complex Litigation Division

Division Chief

206-389-2116

JeffreyR2@atg.wa.gov

# Exhibit C

| | |
|---|---|
| **From:** | Rupert, Jeffrey (ATG) |
| **To:** | Robinson, Stuart J. (CIV); joel.ard@immixlaw.com |
| **Cc:** | Soskin, Eric (CIV); Bowers, Todd (ATG); Sprung, Jeff (ATG); Beneski, Kristin (ATG); Jones, Zach (ATG); Williams, Jennah (ATG); Summers, Grace (ATG) |
| **Subject:** | RE: Washington v. U.S. Department of State |
| **Date:** | Wednesday, August 1, 2018 4:48:28 PM |

Stuart,

The States do not agree to that time frame.  How about the States file their preliminary injunction motion by noon Pacific on Sunday, August 5 and the Defendants file their opposition by 11:59 pm PT on Wednesday, August 8?

When are you proposing to file the administrative record?

Jeff


Jeff Rupert
Washington Attorney General's Office
Complex Litigation Division
Division Chief
206-389-2116
JeffreyR2@atg.wa.gov



**From:** Robinson, Stuart J. (CIV) <Stuart.J.Robinson@usdoj.gov>
**Sent:** Wednesday, August 1, 2018 4:33 PM
**To:** Rupert, Jeffrey (ATG) <JeffreyR2@ATG.WA.GOV>; joel.ard@immixlaw.com
**Cc:** Soskin, Eric (CIV) <Eric.Soskin@usdoj.gov>; Bowers, Todd (ATG) <ToddB@ATG.WA.GOV>; Sprung, Jeff (ATG) <JeffS2@ATG.WA.GOV>; Beneski, Kristin (ATG) <KristinB1@ATG.WA.GOV>; Jones, Zach (ATG) <ZachJ@ATG.WA.GOV>; Williams, Jennah (ATG) <JennahW@ATG.WA.GOV>; Summers, Grace (ATG) <GraceS1@ATG.WA.GOV>
**Subject:** RE: Washington v. U.S. Department of State

Jeff,

The Federal Defendants propose that Plaintiffs file their motion for preliminary injunction by 11:59pm PT on Friday, August 3, and that Defendants file their opposition by 11:59pm PT on Wednesday, August 8.

Sincerely,
Stuart

**From:** Rupert, Jeffrey (ATG) [mailto:JeffreyR2@ATG.WA.GOV]
**Sent:** Wednesday, August 01, 2018 6:53 PM
**To:** joel.ard@immixlaw.com
**Cc:** Soskin, Eric (CIV) <ESoskin@civ.usdoj.gov>; Robinson, Stuart J. (CIV) <strobins@CIV.USDOJ.GOV>; Bowers, Todd (ATG) <ToddB@ATG.WA.GOV>; Sprung, Jeff (ATG) <JeffS2@ATG.WA.GOV>; Beneski, Kristin (ATG) <KristinB1@ATG.WA.GOV>; Jones, Zach (ATG) <ZachJ@ATG.WA.GOV>; Williams, Jennah (ATG) <JennahW@ATG.WA.GOV>; Summers, Grace (ATG) <GraceS1@ATG.WA.GOV>
**Subject:** Washington v. U.S. Department of State

Joel,

I was informed by Josh Blackman that he will be withdrawing and that I should contact you. I just left you a voicemail about a proposed schedule for the preliminary injunction briefing.  The States proposed to USDOJ that the States file their preliminary injunction motion by Monday, August 6 at noon Pacific and that the Defendants file their memorandums in opposition by Wednesday, August 8 at midnight Pacific.  I have yet to hear USDOJ's response, but is that agreeable to you?

Jeff

Jeff Rupert
Washington Attorney General's Office
Complex Litigation Division
Division Chief
206-389-2116
JeffreyR2@atg.wa.gov

# Exhibit D

| | |
|---|---|
| **From:** | Rupert, Jeffrey (ATG) |
| **To:** | Robinson, Stuart J. (CIV); Soskin, Eric (CIV) |
| **Cc:** | Sprung, Jeff (ATG); Beneski, Kristin (ATG); Jones, Zach (ATG); Williams, Jennah (ATG); Summers, Grace (ATG) |
| **Subject:** | Washington v. U.S. Department of State -- meet and confer |
| **Date:** | Sunday, August 5, 2018 11:01:49 AM |

Stuart,

The States have repeatedly asked when the Administrative Record will be submitted, but neither you nor your clients have stated when this will be provided.  Please provide available times for a telephone call on Monday, August 6, to meet and confer about your clients' submission of the Administrative Record.

This case was filed on July 30th. The States propose that your client submit the Administrative Record by August 7 at 11:59 pm PDT. Based on statements by your clients' press spokesperson, it appears that the Administrative Record is very small and that this time frame would be more than sufficient for the Record to be submitted. Further, the States' motion is due on August 9 and this submission date would allow the States time to incorporate the Record into their filing. We look forward to discussing this with you.

If the parties are unable to resolve this matter, we will raise this with the Court.

Jeff


Jeff Rupert
Washington Attorney General's Office
Complex Litigation Division
Division Chief
206-389-2116
JeffreyR2@atg.wa.gov

# Exhibit E

| | |
|---|---|
| **From:** | Rupert, Jeffrey (ATG) |
| **To:** | Robinson, Stuart J. (CIV); Soskin, Eric (CIV) |
| **Cc:** | Sprung, Jeff (ATG); Beneski, Kristin (ATG); Jones, Zach (ATG); Williams, Jennah (ATG); Summers, Grace (ATG) |
| **Subject:** | RE: Washington v. U.S. Department of State -- meet and confer |
| **Date:** | Monday, August 6, 2018 10:57:44 AM |
| **Importance:** | High |

Stuart and Eric,

I have yet to hear from either of you as to when you are available today to meet and confer.  I would prefer to informally resolve this issue with you as this appears to be a task that your client can easily and expeditiously accomplish.  However, if you are unwilling to discuss when the administrative record will be submitted, I will raise this with Court.  Please advise by today at 5 pm Eastern/2 pm Pacific whether you will meet and confer today regarding your clients' submission of the Administrative Record.

Jeff


Jeff Rupert
Washington Attorney General's Office
Complex Litigation Division
Division Chief
206-389-2116
JeffreyR2@atg.wa.gov


**From:** Rupert, Jeffrey (ATG)
**Sent:** Sunday, August 5, 2018 11:02 AM
**To:** 'Robinson, Stuart J. (CIV)' <Stuart.J.Robinson@usdoj.gov>; Soskin, Eric (CIV) <Eric.Soskin@usdoj.gov>
**Cc:** Sprung, Jeff (ATG) <JeffS2@ATG.WA.GOV>; Beneski, Kristin (ATG) <KristinB1@ATG.WA.GOV>; Jones, Zach (ATG) <ZachJ@ATG.WA.GOV>; Williams, Jennah (ATG) <JennahW@ATG.WA.GOV>; Summers, Grace (ATG) <GraceS1@ATG.WA.GOV>
**Subject:** Washington v. U.S. Department of State -- meet and confer

Stuart,

The States have repeatedly asked when the Administrative Record will be submitted, but neither you nor your clients have stated when this will be provided.  Please provide available times for a telephone call on Monday, August 6, to meet and confer about your clients' submission of the Administrative Record.

This case was filed on July 30th. The States propose that your client submit the Administrative Record by August 7 at 11:59 pm PDT. Based on statements by your clients' press spokesperson, it appears

that the Administrative Record is very small and that this time frame would be more than sufficient for the Record to be submitted. Further, the States' motion is due on August 9 and this submission date would allow the States time to incorporate the Record into their filing. We look forward to discussing this with you.

If the parties are unable to resolve this matter, we will raise this with the Court.

Jeff


Jeff Rupert
Washington Attorney General's Office
Complex Litigation Division
Division Chief
206-389-2116
JeffreyR2@atg.wa.gov

# Exhibit F

| | |
|---|---|
| **From:** | Soskin, Eric (CIV) |
| **To:** | Rupert, Jeffrey (ATG); Robinson, Stuart J. (CIV) |
| **Cc:** | Sprung, Jeff (ATG); Beneski, Kristin (ATG); Jones, Zach (ATG); Williams, Jennah (ATG); Summers, Grace (ATG) |
| **Subject:** | Re: Washington v. U.S. Department of State -- meet and confer |
| **Date:** | Monday, August 6, 2018 12:24:55 PM |

Jeff,

Stuart is temporarily unavailable today. He asked that I share this response with you:

---
As I explained in our call with chambers last week, the Government will be submitting an opposition and likely one or more declarations on August 15. Further, the Court's briefing schedule, Dkt. No. 30, does not contemplate an "administrative record" in connection with proceedings on the forthcoming motion. To the extent an "administrative record" is required, it will be provided consistent with Local Civil Rule 79.
Thanks,
Stuart

----


Sent from my Verizon, Samsung Galaxy smartphone
-------- Original message --------
From: "Rupert, Jeffrey (ATG)" <JeffreyR2@ATG.WA.GOV>
Date: 8/6/18 2:00 PM (GMT-05:00)
To: "Robinson, Stuart J. (CIV)" <strobins@CIV.USDOJ.GOV>, "Soskin, Eric (CIV)" <ESoskin@civ.usdoj.gov>
Cc: "Sprung, Jeff (ATG)" <JeffS2@ATG.WA.GOV>, "Beneski, Kristin (ATG)" <KristinB1@ATG.WA.GOV>, "Jones, Zach (ATG)" <ZachJ@ATG.WA.GOV>, "Williams, Jennah (ATG)" <JennahW@ATG.WA.GOV>, "Summers, Grace (ATG)" <GraceS1@ATG.WA.GOV>
Subject: RE: Washington v. U.S. Department of State -- meet and confer

Stuart and Eric,

I have yet to hear from either of you as to when you are available today to meet and confer.  I would prefer to informally resolve this issue with you as this appears to be a task that your client can easily and expeditiously accomplish.  However, if you are unwilling to discuss when the administrative record will be submitted, I will raise this with Court.  Please advise by today at 5 pm Eastern/2 pm Pacific whether you will meet and confer today regarding your clients' submission of the Administrative Record.

Jeff


Jeff Rupert
Washington Attorney General's Office
Complex Litigation Division

Division Chief
206-389-2116
JeffreyR2@atg.wa.gov

---

**From:** Rupert, Jeffrey (ATG)
**Sent:** Sunday, August 5, 2018 11:02 AM
**To:** 'Robinson, Stuart J. (CIV)' <Stuart.J.Robinson@usdoj.gov>; Soskin, Eric (CIV)
<Eric.Soskin@usdoj.gov>
**Cc:** Sprung, Jeff (ATG) <JeffS2@ATG.WA.GOV>; Beneski, Kristin (ATG) <KristinB1@ATG.WA.GOV>;
Jones, Zach (ATG) <ZachJ@ATG.WA.GOV>; Williams, Jennah (ATG) <JennahW@ATG.WA.GOV>;
Summers, Grace (ATG) <GraceS1@ATG.WA.GOV>
**Subject:** Washington v. U.S. Department of State -- meet and confer

Stuart,

The States have repeatedly asked when the Administrative Record will be submitted, but neither you
nor your clients have stated when this will be provided.  Please provide available times for a
telephone call on Monday, August 6, to meet and confer about your clients' submission of the
Administrative Record.

This case was filed on July 30th. The States propose that your client submit the Administrative Record
by August 7 at 11:59 pm PDT. Based on statements by your clients' press spokesperson, it appears
that the Administrative Record is very small and that this time frame would be more than sufficient
for the Record to be submitted. Further, the States' motion is due on August 9 and this submission
date would allow the States time to incorporate the Record into their filing. We look forward to
discussing this with you.

If the parties are unable to resolve this matter, we will raise this with the Court.

Jeff

Jeff Rupert
Washington Attorney General's Office
Complex Litigation Division
Division Chief
206-389-2116
JeffreyR2@atg.wa.gov

Exhibit G

| | |
|---|---|
| **From:** | Rupert, Jeffrey (ATG) |
| **To:** | Robinson, Stuart J. (CIV); Soskin, Eric (CIV) |
| **Cc:** | Sprung, Jeff (ATG); Beneski, Kristin (ATG); Jones, Zach (ATG); Williams, Jennah (ATG); Summers, Grace (ATG) |
| **Subject:** | RE: Washington v. U.S. Department of State -- meet and confer |
| **Date:** | Tuesday, August 7, 2018 11:11:34 AM |

Stuart,

As we discussed, the States proposed that your clients submit the Administrative Record by Monday August 13, which your clients are unwilling to do.  In an effort to compromise, the States proposed that your clients submit the Administrative Record by Wednesday, August 15.  You indicated that you needed to consult with your clients about this proposal.  I requested that you respond to this proposal by noon Pacific today, and that if we did not hear a response, we would file our motion to compel as the parties' prior communications indicate that the parties fundamentally disagree as to whether the submission of the record should be expedited in this case.

Once the motion to compel is filed, the States indicated that they intended to request a call with the Court to set an expedited briefing schedule for this motion.  You indicated that you or Eric would be available tomorrow morning for such a call.

If I have incorrectly summarized our call, please contact me.

Jeff


Jeff Rupert
Washington Attorney General's Office
Complex Litigation Division
Division Chief
206-389-2116
JeffreyR2@atg.wa.gov




**From:** Robinson, Stuart J. (CIV) <Stuart.J.Robinson@usdoj.gov>
**Sent:** Tuesday, August 7, 2018 8:54 AM
**To:** Rupert, Jeffrey (ATG) <JeffreyR2@ATG.WA.GOV>; Soskin, Eric (CIV) <Eric.Soskin@usdoj.gov>
**Cc:** Sprung, Jeff (ATG) <JeffS2@ATG.WA.GOV>; Beneski, Kristin (ATG) <KristinB1@ATG.WA.GOV>; Jones, Zach (ATG) <ZachJ@ATG.WA.GOV>; Williams, Jennah (ATG) <JennahW@ATG.WA.GOV>; Summers, Grace (ATG) <GraceS1@ATG.WA.GOV>
**Subject:** RE: Washington v. U.S. Department of State -- meet and confer

Jeff,

We are certainly willing to meet and confer on this issue. Our position, however, is that Defendants are not required to produce an administrative record in connection with the forthcoming motion for a preliminary injunction because we intend to move to dismiss the Amended Complaint, because Plaintiffs are not entitled to a record before they move for a preliminary injunction, and because Local Civil Rule 79 provides that any record should be filed "(1) within thirty days of the filing of the complaint or petition when the administrative agency is the plaintiff or petitioner; or (2) with the answer or return when the administrative agency is the defendant or respondent."

If you would like to discuss further, I will be available 10:45am-noon PT.

Sincerely,
Stuart

Stuart Robinson
Trial Attorney
Federal Programs Branch
U.S. Department of Justice, Civil Division
415-436-6635

---

**From:** Rupert, Jeffrey (ATG) [mailto:JeffreyR2@ATG.WA.GOV]
**Sent:** Monday, August 06, 2018 5:59 PM
**To:** Soskin, Eric (CIV) <ESoskin@civ.usdoj.gov>; Robinson, Stuart J. (CIV) <strobins@CIV.USDOJ.GOV>
**Cc:** Sprung, Jeff (ATG) <JeffS2@ATG.WA.GOV>; Beneski, Kristin (ATG) <KristinB1@ATG.WA.GOV>; Jones, Zach (ATG) <ZachJ@ATG.WA.GOV>; Williams, Jennah (ATG) <JennahW@ATG.WA.GOV>; Summers, Grace (ATG) <GraceS1@ATG.WA.GOV>
**Subject:** RE: Washington v. U.S. Department of State -- meet and confer

Eric,

I just left you a voicemail. The parties appear to be at an impasse as to when the Administrative Record should be produced in this case, but it is important that we attempt to resolve this dispute before raising this with the Court. Are you or Stuart available later today or tomorrow morning before 1 pm Eastern/10 am Pacific for a telephone call to meet and confer about this dispute? If you call later this afternoon, please call Jeff Sprung (206-326-5492) as I will be unavailable. The States had demanded that the Record be submitted by August 7, 2018 but are willing to give your client until Monday, August 13, 2018 to submit the record as a compromise. This is 14 days after the filing of the Complaint, and, based on statements from your client, the Record is very small.

Alternatively, would you confirm in writing that the Government's position is that it will not submit the Administrative Record until its responsive pleading is due in November 2018 and that the parties are at an impasse. If the parties are at an impasse, the States intend to file a motion to compel the submission of the Record.

Jeff Rupert
Washington Attorney General's Office

Complex Litigation Division
Division Chief
206-389-2116
JeffreyR2@atg.wa.gov

---

**From:** Soskin, Eric (CIV) <Eric.Soskin@usdoj.gov>
**Sent:** Monday, August 6, 2018 12:25 PM
**To:** Rupert, Jeffrey (ATG) <JeffreyR2@ATG.WA.GOV>; Robinson, Stuart J. (CIV) <Stuart.J.Robinson@usdoj.gov>
**Cc:** Sprung, Jeff (ATG) <JeffS2@ATG.WA.GOV>; Beneski, Kristin (ATG) <KristinB1@ATG.WA.GOV>; Jones, Zach (ATG) <ZachJ@ATG.WA.GOV>; Williams, Jennah (ATG) <JennahW@ATG.WA.GOV>; Summers, Grace (ATG) <GraceS1@ATG.WA.GOV>
**Subject:** Re: Washington v. U.S. Department of State -- meet and confer

Jeff,

Stuart is temporarily unavailable today. He asked that I share this response with you:

---
As I explained in our call with chambers last week, the Government will be submitting an opposition and likely one or more declarations on August 15. Further, the Court's briefing schedule, Dkt. No. 30, does not contemplate an "administrative record" in connection with proceedings on the forthcoming motion. To the extent an "administrative record" is required, it will be provided consistent with Local Civil Rule 79.
Thanks,
Stuart
----


Sent from my Verizon, Samsung Galaxy smartphone
-------- Original message --------
From: "Rupert, Jeffrey (ATG)" <JeffreyR2@ATG.WA.GOV>
Date: 8/6/18 2:00 PM (GMT-05:00)
To: "Robinson, Stuart J. (CIV)" <strobins@CIV.USDOJ.GOV>, "Soskin, Eric (CIV)" <ESoskin@civ.usdoj.gov>
Cc: "Sprung, Jeff (ATG)" <JeffS2@ATG.WA.GOV>, "Beneski, Kristin (ATG)" <KristinB1@ATG.WA.GOV>, "Jones, Zach (ATG)" <ZachJ@ATG.WA.GOV>, "Williams, Jennah (ATG)" <JennahW@ATG.WA.GOV>, "Summers, Grace (ATG)" <GraceS1@ATG.WA.GOV>
Subject: RE: Washington v. U.S. Department of State -- meet and confer

Stuart and Eric,

I have yet to hear from either of you as to when you are available today to meet and confer.  I would prefer to informally resolve this issue with you as this appears to be a task that your client can easily

and expeditiously accomplish.  However, if you are unwilling to discuss when the administrative record will be submitted, I will raise this with Court.  Please advise by today at 5 pm Eastern/2 pm Pacific whether you will meet and confer today regarding your clients' submission of the Administrative Record.

Jeff


Jeff Rupert
Washington Attorney General's Office
Complex Litigation Division
Division Chief
206-389-2116
JeffreyR2@atg.wa.gov


---

**From:** Rupert, Jeffrey (ATG)
**Sent:** Sunday, August 5, 2018 11:02 AM
**To:** 'Robinson, Stuart J. (CIV)' <Stuart.J.Robinson@usdoj.gov>; Soskin, Eric (CIV) <Eric.Soskin@usdoj.gov>
**Cc:** Sprung, Jeff (ATG) <JeffS2@ATG.WA.GOV>; Beneski, Kristin (ATG) <KristinB1@ATG.WA.GOV>; Jones, Zach (ATG) <ZachJ@ATG.WA.GOV>; Williams, Jennah (ATG) <JennahW@ATG.WA.GOV>; Summers, Grace (ATG) <GraceS1@ATG.WA.GOV>
**Subject:** Washington v. U.S. Department of State -- meet and confer

Stuart,

The States have repeatedly asked when the Administrative Record will be submitted, but neither you nor your clients have stated when this will be provided.  Please provide available times for a telephone call on Monday, August 6, to meet and confer about your clients' submission of the Administrative Record.

This case was filed on July 30th. The States propose that your client submit the Administrative Record by August 7 at 11:59 pm PDT. Based on statements by your clients' press spokesperson, it appears that the Administrative Record is very small and that this time frame would be more than sufficient for the Record to be submitted. Further, the States' motion is due on August 9 and this submission date would allow the States time to incorporate the Record into their filing. We look forward to discussing this with you.

If the parties are unable to resolve this matter, we will raise this with the Court.

Jeff

Jeff Rupert
Washington Attorney General's Office
Complex Litigation Division
Division Chief
206-389-2116
JeffreyR2@atg.wa.gov

Exhibit H

| From: | Robinson, Stuart J. (CIV) |
|---|---|
| To: | Rupert, Jeffrey (ATG); Soskin, Eric (CIV) |
| Cc: | Sprung, Jeff (ATG); Beneski, Kristin (ATG); Jones, Zach (ATG); Williams, Jennah (ATG); Summers, Grace (ATG) |
| Subject: | RE: Washington v. U.S. Department of State -- meet and confer |
| Date: | Tuesday, August 7, 2018 11:24:46 AM |

Jeff,

The Federal Defendants do not agree to produce an administrative record by August 15.

Sincerely,
Stuart

---

**From:** Rupert, Jeffrey (ATG) [mailto:JeffreyR2@ATG.WA.GOV]
**Sent:** Tuesday, August 07, 2018 2:12 PM
**To:** Robinson, Stuart J. (CIV) <strobins@CIV.USDOJ.GOV>; Soskin, Eric (CIV) <ESoskin@civ.usdoj.gov>
**Cc:** Sprung, Jeff (ATG) <JeffS2@ATG.WA.GOV>; Beneski, Kristin (ATG) <KristinB1@ATG.WA.GOV>;
Jones, Zach (ATG) <ZachJ@ATG.WA.GOV>; Williams, Jennah (ATG) <JennahW@ATG.WA.GOV>;
Summers, Grace (ATG) <GraceS1@ATG.WA.GOV>
**Subject:** RE: Washington v. U.S. Department of State -- meet and confer

Stuart,

As we discussed, the States proposed that your clients submit the Administrative Record by Monday August 13, which your clients are unwilling to do.  In an effort to compromise, the States proposed that your clients submit the Administrative Record by Wednesday, August 15.  You indicated that you needed to consult with your clients about this proposal.  I requested that you respond to this proposal by noon Pacific today, and that if we did not hear a response, we would file our motion to compel as the parties' prior communications indicate that the parties fundamentally disagree as to whether the submission of the record should be expedited in this case.

Once the motion to compel is filed, the States indicated that they intended to request a call with the Court to set an expedited briefing schedule for this motion.  You indicated that you or Eric would be available tomorrow morning for such a call.

If I have incorrectly summarized our call, please contact me.

Jeff


Jeff Rupert
Washington Attorney General's Office
Complex Litigation Division
Division Chief
206-389-2116
JeffreyR2@atg.wa.gov

**From:** Robinson, Stuart J. (CIV) <Stuart.J.Robinson@usdoj.gov>
**Sent:** Tuesday, August 7, 2018 8:54 AM
**To:** Rupert, Jeffrey (ATG) <JeffreyR2@ATG.WA.GOV>; Soskin, Eric (CIV) <Eric.Soskin@usdoj.gov>
**Cc:** Sprung, Jeff (ATG) <JeffS2@ATG.WA.GOV>; Beneski, Kristin (ATG) <KristinB1@ATG.WA.GOV>;
Jones, Zach (ATG) <ZachJ@ATG.WA.GOV>; Williams, Jennah (ATG) <JennahW@ATG.WA.GOV>;
Summers, Grace (ATG) <GraceS1@ATG.WA.GOV>
**Subject:** RE: Washington v. U.S. Department of State -- meet and confer

Jeff,

We are certainly willing to meet and confer on this issue. Our position, however, is that
Defendants are not required to produce an administrative record in connection with the
forthcoming motion for a preliminary injunction because we intend to move to dismiss the
Amended Complaint, because Plaintiffs are not entitled to a record before they move for a
preliminary injunction, and because Local Civil Rule 79 provides that any record should be
filed "(1) within thirty days of the filing of the complaint or petition when the administrative
agency is the plaintiff or petitioner; or (2) with the answer or return when the administrative
agency is the defendant or respondent."

If you would like to discuss further, I will be available 10:45am-noon PT.

Sincerely,
Stuart

Stuart Robinson
Trial Attorney
Federal Programs Branch
U.S. Department of Justice, Civil Division
415-436-6635

**From:** Rupert, Jeffrey (ATG) [mailto:JeffreyR2@ATG.WA.GOV]
**Sent:** Monday, August 06, 2018 5:59 PM
**To:** Soskin, Eric (CIV) <ESoskin@civ.usdoj.gov>; Robinson, Stuart J. (CIV) <strobins@CIV.USDOJ.GOV>
**Cc:** Sprung, Jeff (ATG) <JeffS2@ATG.WA.GOV>; Beneski, Kristin (ATG) <KristinB1@ATG.WA.GOV>;
Jones, Zach (ATG) <ZachJ@ATG.WA.GOV>; Williams, Jennah (ATG) <JennahW@ATG.WA.GOV>;
Summers, Grace (ATG) <GraceS1@ATG.WA.GOV>
**Subject:** RE: Washington v. U.S. Department of State -- meet and confer

Eric,

I just left you a voicemail.  The parties appear to be at an impasse as to when the Administrative

Record should be produced in this case, but it is important that we attempt to resolve this dispute before raising this with the Court. Are you or Stuart available later today or tomorrow morning before 1 pm Eastern/10 am Pacific for a telephone call to meet and confer about this dispute? If you call later this afternoon, please call Jeff Sprung (206-326-5492) as I will be unavailable.  The States had demanded that the Record be submitted by August 7, 2018 but are willing to give your client until Monday, August 13, 2018 to submit the record as a compromise. This is 14 days after the filing of the Complaint, and, based on statements from your client, the Record is very small.

Alternatively, would you confirm in writing that the Government's position is that it will not submit the Administrative Record until its responsive pleading is due in November 2018 and that the parties are at an impasse. If the parties are at an impasse, the States intend to file a motion to compel the submission of the Record.

Jeff Rupert
Washington Attorney General's Office
Complex Litigation Division
Division Chief
206-389-2116
JeffreyR2@atg.wa.gov

---

**From:** Soskin, Eric (CIV) <Eric.Soskin@usdoj.gov>
**Sent:** Monday, August 6, 2018 12:25 PM
**To:** Rupert, Jeffrey (ATG) <JeffreyR2@ATG.WA.GOV>; Robinson, Stuart J. (CIV) <Stuart.J.Robinson@usdoj.gov>
**Cc:** Sprung, Jeff (ATG) <JeffS2@ATG.WA.GOV>; Beneski, Kristin (ATG) <KristinB1@ATG.WA.GOV>; Jones, Zach (ATG) <ZachJ@ATG.WA.GOV>; Williams, Jennah (ATG) <JennahW@ATG.WA.GOV>; Summers, Grace (ATG) <GraceS1@ATG.WA.GOV>
**Subject:** Re: Washington v. U.S. Department of State -- meet and confer

Jeff,

Stuart is temporarily unavailable today. He asked that I share this response with you:

---
As I explained in our call with chambers last week, the Government will be submitting an opposition and likely one or more declarations on August 15. Further, the Court's briefing schedule, Dkt. No. 30, does not contemplate an "administrative record" in connection with proceedings on the forthcoming motion. To the extent an "administrative record" is required, it will be provided consistent with Local Civil Rule 79.
Thanks,
Stuart
----

Sent from my Verizon, Samsung Galaxy smartphone

-------- Original message --------
From: "Rupert, Jeffrey (ATG)" <JeffreyR2@ATG.WA.GOV>
Date: 8/6/18 2:00 PM (GMT-05:00)
To: "Robinson, Stuart J. (CIV)" <strobins@CIV.USDOJ.GOV>, "Soskin, Eric (CIV)"
<ESoskin@civ.usdoj.gov>
Cc: "Sprung, Jeff (ATG)" <JeffS2@ATG.WA.GOV>, "Beneski, Kristin (ATG)"
<KristinB1@ATG.WA.GOV>, "Jones, Zach (ATG)" <ZachJ@ATG.WA.GOV>, "Williams,
Jennah (ATG)" <JennahW@ATG.WA.GOV>, "Summers, Grace (ATG)"
<GraceS1@ATG.WA.GOV>
Subject: RE: Washington v. U.S. Department of State -- meet and confer

Stuart and Eric,

I have yet to hear from either of you as to when you are available today to meet and confer.  I would
prefer to informally resolve this issue with you as this appears to be a task that your client can easily
and expeditiously accomplish.  However, if you are unwilling to discuss when the administrative
record will be submitted, I will raise this with Court.  Please advise by today at 5 pm Eastern/2 pm
Pacific whether you will meet and confer today regarding your clients' submission of the
Administrative Record.

Jeff


Jeff Rupert
Washington Attorney General's Office
Complex Litigation Division
Division Chief
206-389-2116
JeffreyR2@atg.wa.gov


---

**From:** Rupert, Jeffrey (ATG)
**Sent:** Sunday, August 5, 2018 11:02 AM
**To:** 'Robinson, Stuart J. (CIV)' <Stuart.J.Robinson@usdoj.gov>; Soskin, Eric (CIV)
<Eric.Soskin@usdoj.gov>
**Cc:** Sprung, Jeff (ATG) <JeffS2@ATG.WA.GOV>; Beneski, Kristin (ATG) <KristinB1@ATG.WA.GOV>;
Jones, Zach (ATG) <ZachJ@ATG.WA.GOV>; Williams, Jennah (ATG) <JennahW@ATG.WA.GOV>;
Summers, Grace (ATG) <GraceS1@ATG.WA.GOV>
**Subject:** Washington v. U.S. Department of State -- meet and confer

Stuart,

The States have repeatedly asked when the Administrative Record will be submitted, but neither you
nor your clients have stated when this will be provided.  Please provide available times for a

telephone call on Monday, August 6, to meet and confer about your clients' submission of the Administrative Record.

This case was filed on July 30th. The States propose that your client submit the Administrative Record by August 7 at 11:59 pm PDT. Based on statements by your clients' press spokesperson, it appears that the Administrative Record is very small and that this time frame would be more than sufficient for the Record to be submitted. Further, the States' motion is due on August 9 and this submission date would allow the States time to incorporate the Record into their filing. We look forward to discussing this with you.

If the parties are unable to resolve this matter, we will raise this with the Court.

Jeff


Jeff Rupert
Washington Attorney General's Office
Complex Litigation Division
Division Chief
206-389-2116
JeffreyR2@atg.wa.gov