The Honorable Robert S. Lasnik

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STATE OF WASHINGTON, et al., | |
| Plaintiffs, | No. 2:18-cv-01115-RSL |
| v. | PUBLIC DEFENDANTS' OPPOSITION TO STATES' MOTION TO COMPEL PRODUCTION OF ADMINISTRATIVE RECORD IN ACCORDANCE WITH 5 U.S.C. § 706 |
| UNITED STATES DEPARTMENT OF STATE, et al., | |
| Defendants. | |

Plaintiffs make a salacious allegation: the Trump Administration "revers[ed]" the State Department's "longstanding position regarding dissemination on the internet of the computer files" for improper reasons. Motion to Compel at 2. They demand the production of the complete administrative record to demonstrate the government's rationales were "arbitrary" and "capricious." Motion to Compel at 1. The truth is far more innocuous, and indeed a bit mundane.

Over the past six years, the Obama and Trump Administrations have engaged in a sophisticated and detailed plan to transfer certain firearms and associated technical data from the export jurisdiction of the State Department to the export jurisdiction of the Commerce Department. And, in May 2018, the State Department announced its plan to amend ITAR to that effect. That shift placed the Department of Justice in an odd position.

PUBLIC DEFENDANTS' OPPOSITION TO
STATES' MOTION TO COMPEL
PRODUCTION OF ADMINISTRATIVE RECORD
2:18-cv-01115-RSL

SNELL & WILMER LLP
One South Church Avenue, Ste 1500
Tucson, AZ 85701

Defense Distributed, the Second Amendment Foundation, and Conn Williamson (the "Public Defendants") had challenged the constitutionality of the State Department's regime. Once the transition was completed, the Public Defendants, and only the Public Defendants, would still be subject to the old regulations. The federal government would have lost that case had it advanced such an irrational argument in court.

Moreover, since 1978, the Justice Department has continuously advised the State Department that applying the International Traffic in Arms Regulations ("ITAR") to public speech violates the First Amendment. Reasonably, the Plaintiffs and Defendants reached a settlement agreement. The reason for the settlement is that simple.

The State Department press briefing on the Settlement Agreement, attached to the Rupert Declaration in States' Motion to Compel as Exhibit A, comports with this simple explanation for the settlement:

> The Department of Justice was advising the State Department on this entire legal matter. The Department of Justice suggested that the State Department and the U.S. Government settle this case, and so that is what was done. We were informed that we would've lost this case in court, or would have likely lost this case in court based on First Amendment grounds. We took the advice of the Department of Justice, and here we are right now.

The Public Defendants oppose the Plaintiffs' Motion to Compel Production of Administrative Record because the entire basis for this suit is frivolous. The case can be entirely resolved based on publicly-available records. However, to the extent this Court is willing to entertain an expansion of the record, this Court should also consider the exhibits attached to this motion. These documents demonstrate how banal this proposed rulemaking is, and rebut the salacious charge that the federal government has acted in an arbitrary and capricious fashion.

PUBLIC DEFENDANTS' OPPOSITION TO
STATES' MOTION TO COMPEL
PRODUCTION OF ADMINISTRATIVE RECORD
2:18-cv-01115-RSL

2

SNELL & WILMER LLP
One South Church Avenue, Ste 1500
Tucson, AZ 85701

## I. Since 1978, the Department of Justice Has Opined That Applying ITAR to Public Speech Would Violate the First Amendment.

Since 1978, the Department of Justice has advised the State Department that imposing a prior restraint on public speech under the ITAR would violate the First Amendment. This Court should consider the following legal opinions:

**A. 1978 Department of Justice letter to the White House.** Exhibit A at note 7.

> "It is by no means clear from the language or legislative history of either statute that Congress intended that the President regulate noncommercial dissemination of information, or considered the problems such regulation would engender."

**B. 1981 Department of Justice letter to the State Department.** Exhibit B at 1.

> "However, insofar as [the ITAR] could be applied to persons who have no connection with any foreign enterprise, who disseminate technical data in circumstances in which there is no more than a belief or a reasonable basis for believing that the data might be taken abroad by foreign nationals and used there in the manufacture of arms, the licensing requirement is presumptively unconstitutional as a prior restraint on speech protected by the First Amendment."

**C. 1984 Department of Justice letter to the State Department.** Exhibit C at 14.

> "We remain of the opinion, however, that on their face, the ITAR still present some areas of potentially unconstitutional application, and, moreover, that we cannot be certain whether existing case law would be sufficient to narrow the range of application to a constitutionally sufficient extent."

**D. 1997 Department of Justice Report to Congress**. Exhibit D at 24.

> "Anyone who teaches or publishes bombmaking information -- including those who do so for wholly legitimate reasons, such as explosives manufacturers, the military, and encyclopedia publishers -- could foresee that some unknown recipient of the teaching or information will use it for unlawful ends; but the First Amendment would not permit culpability on that basis."

These four legal opinions were emailed to certain State Department officials named in the Public Defendants' case against the State Department. *See* Exhibit E. The record in that case, which gave rise to the settlement that is under attack in this Court, also includes these legal opinions. *See Defense Distributed et al. v. U.S. Department of State, et al*, No. 15-cv-372 (W.D. Tex.) (Dkt. #8. App. 99-196).

## II. Notices Published in the Federal Register Provide Ample Support for the State Department's Actions.

The temporary modification under ITAR Section 126.2 allowing public speech on firearms is only valid while the final rule to remove the firearms from the USML is in development. This State Department action, as well as the license to the Public Defendants, is premised on the final rule eventually removing the firearms. As such, the administrative record necessarily includes the following records relating to the proposed removal that were published in the Federal Register:

**A. Drafts, minutes of meetings, and any other records of review and interagency consultations for 83 Fed. Reg. 24,166 (May 24, 2018).**

> "The changes described in this proposed rule and in the State Department's companion proposed rule on Categories I, II, and III of the USML are based on a review of those categories by the Department of Defense, which worked with the Departments of State and Commerce in preparing the amendments."

**B. Drafts, minutes of meetings, and any other records of review and interagency consultations for 83 Fed. Reg. 24,198 (May 24, 2018).**

> "Although the Department is of the opinion that this proposed rule is exempt from the rulemaking provisions of the APA and without prejudice to its determination that controlling the import and export of defense services is a foreign affairs function, the Department is publishing this proposed rule with a 45-day provision for public comment."

**C. Over 3,000 public comments received by the State Department in response to the proposed rule.** See summary at Exhibit F.

## III. Popular Press Stories Illustrate That State Department's Plan Began During the Obama Administration.

The Plaintiffs express shock that the Trump Administration "revers[ed]" the State Department's "longstanding position regarding dissemination on the internet of the computer files." However, a basic Google search would dispel the notion that this rulemaking was sudden. Popular press stories reveal that the proposals for the list-transfer stretch back to the Obama Administration.

**A. 2012 Wall Street Journal, Article, "White House Efforts to Relax Gun Exports Face Resistance."** Exhibit G.[1]

> "An Obama administration official said the rules were a work in progress and concerns raised by government agencies were 'being addressed.'"

> "Under the proposed rules, close-assault weapons, sniper rifles, combat shotguns and ammunition would be moved from the 'strict controls' of the Munitions List to a 'lesser controlled' Commerce list. According to a Homeland Security memo."

**B. 2015 Washington Trade and Tariff Newsletter, "Administration Ready to Move on USML Categories I, II, III."** Exhibit H.

> "After more than a two-year delay, the Obama administration reportedly is ready to try again to propose transfer regulations for U.S. Munitions List (USML) Categories I (firearms), II (guns and armament) and III (ammunition). The decision to go forward with proposals to revamp the three categories and move some products to the Commerce Control List (CCL) was reportedly made at an interagency meeting the week of April 20 [2015]."

The Public Defendants do not expect that the administrative record will include any Congressional notifications for the proposed list transfers because no Congressional notification requirement applies until the time of a final rule.[2]

## IV. Conclusion

The complete record in this case demonstrates that the State Department's actions here are part of a long-term, mundane plan that began during the Obama administration. Moreover, the complete record shows that the Department of Justice has long advised the State Department that its export control regime violates the First Amendment. There is no reason to supplement the record further. Every day this case is prolonged, the Public Defendants—and all Americans—are unable to exercise their constitutional rights. The record provided by publicly-available information is enough to deny the injunctive relief that the Plaintiffs seek.

---

[1] *See* www.wsj.com/articles/SB10001424052702304868004577378421787264242

[2] *See e.g.,* "Federal Court Incorrectly Says DDTC Jumped the Gun on Gun Printing Plans," Clif Burns, Bryan Cave LLP, available at www.exportlawblog.com/archives/9218, Exhibit I.

DATED this 9th day of August, 2018.

SNELL & WILMER LLP


By /s/Matthew Goldstein

Matthew Goldstein
Snell & Wilmer LLP
One South Church Avenue, Suite 1500
Tucson, AZ 85701
Phone: (202) 550-0040
E-Mail: mgoldstein@swlaw.com
*Admitted Pro Hac Vice

Joel B. Ard, WSBA # 40104
Immix Law Group PC
701 5th Ave Suite 4710
Seattle, WA 98104
Phone: (206) 492-7531
Fax: (503) 802-5351
E-Mail: joel.ard@immixlaw.com

Attorneys for defendants Defense Distributed, Second Amendment Foundation, Inc., and Conn Williamson

# CERTIFICATE OF SERVICE

I certify that on August 9, 2018, I served the foregoing by filing it with the Court's CM/ECF system, which automatically notifies all counsel of record.

I CERTIFY UNDER PENALTY OF PERJURY under the laws of the United States of America that the foregoing is true and correct.

DATED this August 9, 2018.

SNELL & WILMER LLP

By /s/Matthew Goldstein

Matthew Goldstein
Snell & Wilmer LLP
One South Church Avenue, Suite 1500
Tucson, AZ 85701
Phone: (202) 550-0040
E-Mail: mgoldstein@swlaw.com

*Admitted Pro Hac Vice

Attorneys for defendants Defense Distributed, Second Amendment Foundation, Inc., and Conn Williamson