The Honorable Robert S. Lasnik

1

2

3

4

5

6    **UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
7    **AT SEATTLE**

8    STATE OF WASHINGTON; STATE OF          NO. 2:18-cv-01115-RSL
CONNECTICUT; STATE OF MARYLAND;
9    STATE OF NEW JERSEY; STATE OF NEW       PLAINTIFF STATES' REPLY IN
YORK; STATE OF OREGON;                   SUPPORT OF THEIR MOTION FOR A
10   COMMONWEALTH OF                         PRELIMINARY INJUNCTION
MASSACHUSETTS; COMMONWEALTH
11   OF PENNSYLVANIA; DISTRICT OF
COLUMBIA; STATE OF CALIFORNIA;           **HEARING DATE: AUGUST 21, 2018**
12   STATE OF COLORADO; STATE OF
DELAWARE; STATE OF HAWAII; STATE
13   OF ILLINOIS; STATE OF IOWA; STATE
OF MINNESOTA; STATE OF NORTH
14   CAROLINA; STATE OF RHODE ISLAND;
STATE OF VERMONT and
15   COMMONWEALTH OF VIRGINIA,

16                    Plaintiffs,
v.
17

18   UNITED STATES DEPARTMENT OF
STATE; MICHAEL R. POMPEO, in his
19   official capacity as Secretary of State;
DIRECTORATE OF DEFENSE TRADE
20   CONTROLS; MIKE MILLER, in his official
capacity as Acting Deputy Assistant Secretary
21   of Defense Trade Controls; SARAH
HEIDEMA, in her official capacity as Director
22   of Policy, Office of Defense Trade Controls
Policy; DEFENSE DISTRIBUTED; SECOND
23   AMENDMENT FOUNDATION, INC.; AND
CONN WILLIAMSON,

24                    Defendants.

# I.   INTRODUCTION

The States have demonstrated that the removal of 3D-printable gun files from the U.S. Munitions List violated multiple statutory requirements and will irreparably harm the States absent preliminary relief. The Government's main response is to claim that irreparable harm will not occur. But the only evidence the Government has ever offered on this subject[1] is consistent with the States' extensive evidence establishing the profound consequences that would result from the global proliferation of undetectable, untraceable, 3D-printable weapons.

Troublingly, nothing in the Government's briefing suggests that the agency even acknowledged the implications of its deregulation, much less considered them, weighed them, and made an informed judgment. Even after President Trump tweeted that deregulating downloadable guns "doesn't seem to make much sense!", the agency has provided no reasoned justification for its actions—presumably because none exists. Rather, the Government evades the question with unsupported promises that existing criminal laws will adequately protect us, semantic gymnastics, and unhelpfully broad statements about a larger regulatory reform effort embodied in various final and proposed rules—none of which is the subject of this challenge.

This lawsuit challenges the State Department's discrete decision to reverse its years-long regulatory policy through a "Temporary Modification" and a Letter authorizing "unlimited distribution" of downloadable guns. Because the Department failed to follow binding procedural requirements, those actions were *ultra vires*. And because the Government has still failed to provide any sort of "reasoned explanation" for taking those actions, they are arbitrary and capricious. A preliminary injunction is needed to prevent drastic, irreparable harm that would otherwise result from the State Department's unconsidered and unlawful actions.

---

[1] *See* Dkt. #29-1, Ex. 4 (Aguirre Decl.).

REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
2:18-cv-01115-RSL

1

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

## II.    ARGUMENT

### A.    Extensive, Unrebutted Evidence Shows the States Will Be Irreparably Harmed Absent a Preliminary Injunction

With no supporting authority, Defendants offer a crabbed reading of the irreparable harm requirement that would discount any injury caused by violations of existing laws—no matter how likely or predictable. No such arbitrary rule limits the availability of equitable relief. *See S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv.*, 804 F. Supp. 2d 1045, 1063 (E.D. Cal. 2011) (enjoining Fisheries Service action due to irreparable harm likely to result from illegal poaching). The Government's self-serving rule fails to account for the real-world consequences of permitting 3D-printable gun files to be posted online. The harm the States will suffer is amply supported by extensive and unrebutted evidence, and while the most serious harm has not yet come to pass, it is far from "speculative" or "conjectural." *See* Dkt. # 43 at 19–24.

The Government also ignores reality when it argues that authorizing the unrestricted dissemination of downloadable guns via the internet "simply cannot" harm the States because AECA and the ITAR apply only to exports. Dkt. # 64 at 9–11, 12–13. As the Government itself recognized just four months ago, "the Internet has no dividing lines"[2]—once the files are released, they are available globally. The Court correctly found in issuing the TRO that a "side effect" of export regulation has been "to make it more difficult to locate and download" 3D-printable guns, and "the proliferation of these firearms will have many of the negative impacts on a state level that the federal government once feared on the international stage"—so much so that the balance of harms tips "sharply" in the States' favor. Dkt. # 23 (Order) at 6–7. This finding is borne out by the extensive, unrebutted evidence now in the record. *See* Dkt. # 43 at 19–24 & accompanying citations. The Government offers no authority for its assertion that

---

[2] Rupert Decl. Ex. 4 (Government's Motion to Dismiss) at 8, 18 (Dkt. # 44-1).

REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
2:18-cv-01115-RSL

2

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1   these practical effects of its deregulation must be ignored.[3] Its argument appears to conflate the

2   irreparable harm analysis with the zone-of-interests standing test, which is easily satisfied.

3   Dkt. # 43 at 9–10.

4        Without evidence, Defendants discount the serious threats the States face from *non-U.S.*

5   *persons* acquiring 3D-printed weapons—persons who are not subject to federal or state criminal

6   laws.[4] Dkt. # 64 at 12, 23; Dkt. # 63 at 21. The States' concerns about undetectability and

7   effective law enforcement apply to guns smuggled in by air, land, or sea, and guns printed by

8   non-U.S. persons within the States' borders. *See* Dkt. # 43 at 20–23. The Government assures us

9   it has "determined" that posting 3D-printable firearms on the internet no longer "injure[s] the

10  national security" (Dkt. # 64 at 12), but does not explain why it abruptly reversed its position

11  that posting the files "would have very serious adverse impacts on the national security"[5] and

12  offers no evidence that posting 3D-printable gun files on the internet somehow furthers the

13  national security. The President himself tweeted that this "doesn't seem to make much sense!"

14       Finally, the Private Defendants argue that no harm can occur because the files are already

15  in the "public domain," and in any event they pose no more danger than written bomb-making

16  instructions.[6] Dkt. # 63 at 21. That ignores the breadth of the Temporary Modification, which

17  removes from the Munitions List not only Defense Distributed's *existing* 3D-printable firearm

18  files, but also "similar 3D printing files related to firearms" that "they or others" have already

19

---

20     [3] The cited portion of *Park Village* (Dkt. # 64 at 12) merely says it is plaintiffs' burden to show irreparable

21  injury, which is undisputed. *Park Vill. Apartment Tenants Ass'n v. Mortimer Howard Tr.*, 636 F.3d 1150, 1160 (9th Cir. 2011) (affirming grant of preliminary injunction in part).

   [4] *See* Dkt. # 43 at 9–10, 23–24 (describing heightened risk of terrorist attacks using undetectable weapons

22  and harm caused by untraceable smuggled guns within States' borders).

   [5] Rupert Decl. Ex. 4 (Government's Motion to Dismiss) at 6 (Dkt. # 44-1); *see also* Dkt. # 29-1, Ex. 4

23  (Aguirre Decl.), ¶ 35(c) (attesting that if the files were posted, "[t]errorist groups and other actors could then potentially manufacture and use such weapons against the United States or its allies").

   [6] Click-and-print computer files are fundamentally different from the written word and merit far less, if

24  any, First Amendment protection. *Infra* at 8–9.

---

REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
2:18-cv-01115-RSL

3

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

created or will "continue to create" *in the future*.[7] The Private Defendants' cat-out-of-the-bag

arguments fail to recognize the sweeping scope of the Temporary Modification and the severe

harm that would result from the open and unlimited distribution online of new or as yet unknown

3D-printed firearm files (whether made by the Private Defendants or anyone else).[8]

**B.      The States Have Demonstrated a Strong Likelihood of Success on the Merits**

      **1.      Motion to Strike**

      As a preliminary matter, pursuant to LCR 7(g), the States move to strike the portions of

the Declaration of Defendant Sarah Heidema (Dkt. # 64-1) that go solely to the merits of whether

the challenged actions were lawful: paragraphs 3–18, 20–24, and 30–32. *See* Dkt. # 52 (Order)

at 2 (stating that the Court will "fashion appropriate relief" if Defendants "rely on the unproduced

record" to oppose the States' motion). These portions of the declaration violate the prohibition

on "litigation affidavits and '*post hoc*' rationalizations for agency action" as a basis for review.

*Presidio Golf Club v. Nat'l Park Serv.*, 155 F.3d 1153, 1164 (9th Cir. 1998).

      **2.      The State Department violated the APA and acted *ultra vires***

      Defendants' efforts to justify their failure to comply with binding procedural

requirements do not save them from the plain facts: they hid their broad deregulation of

3D-printable gun files by "temporarily" (but in effect, permanently) modifying the Munitions

List per a private settlement agreement, rather than acting aboveboard and within their authority.[9]

      The State Department was statutorily required to provide 30 days' notice to Congress

---

[7] Rupert Decl. Ex. 13 (Defense Distributed's Second Amended Complaint), ¶ 44 (Dkt. # 44-1).

[8] Furthermore, files posted on the internet without prior approval are not in the "public domain" for purposes of ITAR. 22 C.F.R. § 120.11(a)(7). The State Department's regulation has kept the files out of the "public domain" since 2013 and, moreover, prevented them from becoming openly and widely accessible since then.

[9] Defendants repeatedly misrepresent the nature of this APA challenge. The States are challenging the Government's Temporary Modification and Letter as *ultra vires* agency actions on their own terms. They are *not* challenging the Settlement Agreement as such, questioning the Government's litigation strategy, or collaterally attacking any decision in the Texas case. *See* Dkt. # 63 at 8–10, 19 & n.9; Dkt. # 64 at 7, 9, 10, 14, 19, 21–22.

REPLY IN SUPPORT OF MOTION FOR      4      ATTORNEY GENERAL OF WASHINGTON
PRELIMINARY INJUNCTION      800 Fifth Avenue. Suite 2000
2:18-cv-01115-RSL      Seattle, WA 98104-3188
(206) 464-7744

1  before removing all "3D printing files related to firearms" from the Munitions List, and it failed

2  to do so. Dkt. # 43 at 11–13. These files are "items" subject to the notice requirement. *Id.* at 12.[10]

3  The Government continues to insist otherwise,[11] but its argument is contradicted by its own cited

4  authority and previous use of the term, and by the State Department's own CJ regulation. *Id.*;

5  *see* Dkt. # 64 at 19, 20. In addition, Executive Order 13637 §1(n), which delegates the

6  President's AECA authority, provides that the Secretary of Defense must concur with changes

7  in designations of "items or categories of items." Under the Government's interpretation, that

8  would be nonsense: "categories or categories of categories." In light of this authority, which the

9  Government fails to address, its idiosyncratic definition of "item" carries little weight.[12]

10       At least the Government doesn't go so far as to adopt the Private Defendants' argument

11  that the notice requirement does not apply because the Temporary Modification's "exclusion"

12  of 3D-printable gun files from the Munitions List is not a "removal" from the Munitions List.

13  Dkt. # 63 at 17–19 (insisting that "the distinction matters" but citing no authority). This semantic

14  argument contradicts Defendants' own acknowledgments that the Temporary Modification and

15  Letter are intended to prematurely implement the non-final NPRM until it becomes final.

16  *See* Dkt. # 63 at 3; Dkt. # 64 at 22. It also disregards the permanence of internet postings, which

17  makes "temporary" deregulation impossible. *See* Dkt. # 43 at 10.

18       For largely the same reasons the notice requirement is triggered, the executive order's

19

20       [10] *See also* Rupert Decl. Ex. 9 (Sen. Menendez letter 8/8/18) (Dkt. # 44-1) (Temporary Modification was "tantamount to a permanent removal of an item from the USML"); Rep. Engel Decl. ¶ 4 & Ex. 1 (Dkt. # 43-2).

21       [11] No deference is owed here. *Skidmore* deference only applies to ambiguous statutory language. *Fox Television Stations, Inc. v. Aereokiller, LLC*, 851 F.3d 1002, 1014 (9th Cir. 2017). And then only if the agency's position is persuasive. *Price v. Stevedoring Servs. of Am., Inc.*, 697 F.3d 820, 832 (9th Cir. 2012).

22       [12] The Government's request that the Court "simply extend the TRO" so that the Government can "consider" whether to provide notice to Congress misapprehends the purpose of a TRO, which is to preserve the status quo for a "sharply limited" period until the Court can hold a hearing. Wright & Miller, 11A *Federal Practice & Procedure* § 2953 (3d ed.). The Federal Rules of Civil Procedure do not contemplate "indefinite, successive extensions of temporary restraining orders." *Pan Am. World Airways, Inc. v. Flight Engineers' Int'l Ass'n, PAA Chapter, AFL-CIO*, 306 F.2d 840, 842 (2d Cir. 1962).

REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
2:18-cv-01115-RSL

5

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    concurrence requirement is also triggered by the Temporary Modification and Letter. Dkt. # 43

2    at 13.[13] Any concurrence with the separate NPRM is irrelevant, and there is no evidence that the

3    Department of Defense specifically concurred with the global release of 3D-printable gun files—

4    an issue that first came to light in July 2018. *See* Dkt. # 43 at 4. Indeed, the Heidema declaration

5    glaringly does not mention any concurrence with the Temporary Modification (which, unlike the

6    NPRM, expressly covers 3D-printable gun files). *See* Dkt. # 64-1, ¶ 31; Dkt. # 29-1, Ex. 7.

7         Further, the State Department had no authority—and thus is entitled to no "deference,"

8    regardless of its rationale, Dkt. # 64 at 20—to use its self-promulgated "temporary modification"

9    regulation to "do what a federal statute prohibits it from doing," i.e., disregard statutory

10   procedures. *Tuan Thai v. Ashcroft*, 366 F.3d 790, 798 (9th Cir. 2004); Dkt. # 43 at 13–14.

11        As for the States' arbitrary and capricious claim, the available evidence strongly suggests

12   that the State Department failed to give due consideration to national security concerns when it

13   abruptly reversed its position with no "reasoned explanation." Dkt. # 43 at 15–17. The

14   Government fails to explain the Department's reversal of its longstanding, national-security-

15   based regulation of 3D-printable gun files. Its *only* answer is that the Temporary Modification

16   and Letter are consistent with the NPRM, which is a non-final rule. The fundamental problem is

17   that enacting these "temporary" measures to prematurely effectuate a non-final rule short-circuits

18   the entire administrative process. That is the epitome of arbitrary and capricious action.

19        The NPRM is now said to be supported by "legitimate industry concerns[.]"

20   Dkt. # 64 at 18. Such concerns do not bear on the national security, which is undoubtedly "an

21   important aspect of the problem" that must be considered, *Motor Vehicle Mfrs. Ass'n of U.S.,*

22

---

23        [13] The Government ignores controlling authority providing that agency actions exceeding authority granted
by an executive order are reviewable, Dkt. #43 at 13 n.51, in favor of an out-of-circuit district court case. Dkt. #64
24   at 20 (citing *Defenders of Wildlife v. Jackson*, 791 F. Supp. 2d 96, 120 (D.D.C. 2011)). *Jackson* involved an
executive order that expressly foreclosed judicial review, which Executive Order 13637 does not.

REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
2:18-cv-01115-RSL

6

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    *Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983). In the absence of any evidence

2    that the State Department grappled with the consequences of deregulating 3D-printable firearm

3    files, it is reasonable to infer the agency has "entirely failed to consider an important aspect of

4    the problem" and therefore acted arbitrarily and capriciously. *Id.* at 43.

**3.    The First Amendment does not excuse the Government's APA violations**

6    According to the Private Defendants, they have a First Amendment right to "freely . . .

7    share" 3D-printed firearm files on the internet.[14] For two reasons, this Court should reject their

8    attempt to literally "weaponiz[e] the First Amendment." *Janus v. Am. Fed'n of State, Cty. &*

9    *Mun. Emps.*, 138 S. Ct. 2448, 2501 (2018) (Kagan, J., dissenting). First, the First Amendment is

10   inapposite to the merits of this APA case because the Government has never asserted it as a basis

11   for its actions. Second, even if First Amendment questions were presented, the Private

12   Defendants' dangerous, expansive theory finds no support in the case law or common sense.

13   (i) <u>*The First Amendment is irrelevant to the merits*</u>. It is a "simple but fundamental" rule

14   of administrative law that the propriety of agency action is judged "solely by the grounds invoked

15   by the agency." *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947). Neither the court nor the other

16   parties may "supply a reasoned basis . . . that the agency itself has not given." *Id*. at 196. However

17   emphatically the Private Defendants invoke the First Amendment, the Government has never

18   asserted it as a basis for the Temporary Modification or the Letter. To the contrary, the

19   Government "continues" to maintain, as it did throughout the Texas proceedings, that its ITAR

20   regulation never violated Defense Distributed's First Amendment rights.[15]

21   The Private Defendants (and other interested non-parties) may wish to inject the First

22   Amendment into these proceedings, but the Government has declined to invoke it as a basis for

---

[14] Dkt. # 63 at 1, 15.
[15] Heidema Decl. (Dkt. # 64-1), ¶ 28.

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

the challenged actions. It therefore does not bear on the legal merits of this APA case.

(ii) *The First Amendment would not support the State Department's actions in any case*. Even if the State Department *had* removed 3D-printable gun files from the Munitions List to avoid infringing a supposed First Amendment right to post such files online, a "decision based upon such misreading of the law," *Sovich v. Esperdy*, 319 F.2d 21, 30 (2d Cir. 1963), would have been arbitrary and capricious—for no such right exists. As explained by *amicus* Everytown for Gun Safety and by the Government's own prior briefing, the Private Defendants' First Amendment theory is riddled with flaws. Three points bear special mention:

*First*, posting 3D-printable gun files online is not an expressive act entitled to First Amendment protection. As the Government explained in the Texas case, "The First Amendment does not apply to the export of CAD files that <u>function to automatically create a firearm or its components</u>."[16] The purpose of posting the files is not to communicate a message to a human but to "induce action" by a computer to process the code and automatically 3D-print the firearm "without the intercession of the mind or the will of the recipient." *CFTC v. Vartuli*, 228 F.3d 94, 111 (2d Cir. 2000). The functional, mechanistic nature of the CAD files make them unlike, say, a book describing *in words* how to create a 3D-printed gun or advocating for their widespread dissemination. *See, e.g.*, Cody Wilson, *Come and Take It: The Gun Printer's Guide to Thinking Free* (2016).[17] Posting 3D-printable code online is more akin to distributing the gun itself.

*Second*, whatever minimal expressive content a 3D-printed firearm file may have, that content falls categorically outside the First Amendment's scope because it is "integral to criminal conduct." *United States v. Alvarez*, 567 U.S. 709, 717 (2012). Posting online a CAD file for

---

[16] Rupert Decl. Ex. 4 at 2 (Dkt. # 44-1) (emphasis in original, capitalizations omitted); *see also* Br. of Amicus Curiae Everytown for Gun Safety at 4-9 (Dkt. # 47-1).

[17] *See also* Dkt. # 29-1, Ex. 4 (Aguirre Decl.), ¶ 30 ("DDTC's determination does not restrict [Defense Distributed] from discussing information and ideas about 3D printing, . . . as long as such discussions do not include the export of technical data").

REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
2:18-cv-01115-RSL

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

printing an undetectable, untraceable firearm has one clear purpose: to facilitate the unfettered, widespread, unregulated manufacture of such firearms, i.e., to aid and abet violations of criminal laws. Again, the files are "functional" in that they "directly facilitate the manufacture" of illegal weapons.[18] Even if they contain some speech elements, then, the files squarely fit the "historic and traditional categor[y]" of "speech integral to criminal conduct" that the First Amendment does not protect. *Alvarez*, 567 U.S. at 717.

*Third*, even if 3D-printable firearm files were sufficiently speech-like to qualify for some protection, their regulation under ITAR is constitutionally sound. The Ninth Circuit has "repeatedly rejected First Amendment challenges to the AECA, its implementing regulations, and its predecessor" statute. *United States v. Chi Mak*, 683, F.3d 1126, 1136 (9th Cir. 2012). Such challenges implicate intermediate scrutiny because ITAR regulates conduct "unrelated to the suppression of expression." *Id.* As the Government previously argued, ITAR "is obviously not the product of government hostility toward the spread of ideas about 3D printing of firearms, but rather against the very *means* to easily do so."[19] Under intermediate scrutiny, restricting the export of 3D-printed firearm files easily passes muster: it "furthers an important or substantial government interest" in regulating the trafficking of undetectable, unprintable firearms; that interest is "unrelated to the suppression of free expression"; and the "incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest."[20]

---

[18] Rupert Decl. Ex. 3 at 10 (Dkt. # 44-1); *see also* Everytown Amicus Br. at 9–12 (Dkt. # 47-1).

[19] Rupert Decl. Ex. 3 at 25 (Dkt. # 44-1).

[20] *Id.* at 32 (quoting *Kleinman v. City of San Marcos*, 597 F.3d 323, 328 (5th Cir. 2010)). The Government later took the position that strict rather than intermediate scrutiny applies, but that reversal was incorrect. Rupert Decl. Ex. 4 at 6 n.7 (Dkt. # 44-1). Strict scrutiny applies only to laws that "target speech based on its communicative content," *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218, 2226 (2015), not laws based on conduct's functional elements. Even if strict scrutiny applied, ITAR's restrictions are "narrowly tailored to achieve the Government's compelling interests" in protecting national security, as the Government argued. Rupert Decl. Ex. 4 at 6 n.7 (Dkt. # 44-1).

REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
2:18-cv-01115-RSL

9

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

Finally, even if the Private Defendants' First Amendment theory were remotely colorable—which it isn't—and even if the Government asserted the First Amendment as a basis for the State Department's actions—which it doesn't—the clear departures from procedural requirements would *still* be unlawful. An administrative agency cannot disregard legally mandated procedures simply because it questions their constitutionality. *See Weinberger v. Salfi*, 422 U.S. 749, 765 (1975); *Johnson v. Robison*, 415 U.S. 361, 368 (1974). The State Department failed to follow its procedural obligations, which no First Amendment rationale could excuse.

In sum, Defense Distributed's supposed First Amendment interests are at best minimal in theory, and are legally irrelevant to the merits here. Even if the issue were properly presented, no court has ever recognized anything resembling a right to unlimited distribution of 3D-printable gun files. This Court should not be the first.[21]

**C.     The Equities Weigh in the States' Favor**

The significant threat of irreparable harm to the States, against the minimal burden of a delay in lifting longstanding regulatory restrictions, tips the balance sharply in the States' favor. Dkt. # 43 at 24. A preliminary injunction is warranted to preserve the status quo *ante litem*.[22]

**D.     All Jurisdictional Requirements Are Satisfied, Including Standing**

**1.     The States easily meet the requirements for standing**

In challenging the States' sovereign, proprietary, and quasi-sovereign standing,

---

[21] Nor should the Court credit the Private Defendants' half-hearted Second Amendment argument, which they bury in a footnote. Dkt. # 63 at 17 n.6. That claim is even further afield because there is "no Second Amendment right to be a [gun] manufacturer or dealer." *Olympic Arms v. Magaw*, 91 F. Supp. 2d 1061, 1071 (E.D. Mich. 2000), *aff'd*, 301 F.3d 384 (6th Cir. 2002); *accord Mont. Shooting Sports Ass'n v. Holder*, No. CV-09-147-DWM-JCL, 2010 WL 3926029, at *21 (D. Mont. Aug. 31, 2010); *see D.C. v. Heller*, 554 U.S. 570, 626–27 (2008).

[22] Defendants assert that the States are seeking a "mandatory injunction" or something more than preservation of the status quo. Dkt. # 64 at 9, 23; Dkt. # 63 at 8. "The status quo is the last uncontested status which preceded the pending controversy." *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 809 (9th Cir. 1963). The last uncontested status—which was in place until July 27, 2018—was that the files at issue were subject to export-control regulation. The States seek a return to that status. *See GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) ("we disregard the contention that this preliminary injunction alters the status quo ante litem").

REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
2:18-cv-01115-RSL

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    Defendants fail to mention the controlling case of *Massachusetts v. EPA*, 549 U.S. 497 (2007),

2    which largely contradicts their arguments. They argue that the State Department's actions are

3    not directed at the States, which remain free to enforce their laws, Dkt. # 64 at 14–15, but this

4    misses the point. The challenged actions permit the dissemination of untraceable, undetectable

5    weapons, which harms the States' sovereign interests by frustrating their ability to enforce gun-

6    possession laws, undermining the security of their borders, and violating their sovereign power

7    and duty to protect public health and safety. Here, as in *Massachusetts*, the States have standing

8    to challenge a federal action that did not expressly target them. 549 U.S. at 506–14.[23]

9        That some of the files at issue have already been disseminated does not render the States'

10   injuries unredressable.[24] Dkt. # 63 at 13, 21; *supra* at 3–4. A preliminary injunction would

11   prevent the spread of existing 3D-printed gun files from the dark corners of the web to

12   mainstream internet sites, and would prevent future—and technologically more advanced—

13   designs from ever entering the public domain. An injunction would redress the near-certain

14   prospect of future harm the States would face without one.

15       The Government claims that the States cannot sue it in their quasi-sovereign capacity,

16   Dkt. # 64 at 16, but this argument was rejected in *Massachusetts*, 549 U.S. at 520 n.17 (states

17   may sue the federal government to protect their quasi-sovereign interests as *parens patriae*).

18       Finally, as to prudential standing, the Government attempts to distinguish the "national

19   security" interests they concede are served by AECA from the "domestic security" threats the

20

21   [23] The Government makes the related argument that other state and federal laws still restrict individuals'
     ability to wield untraceable, undetectable weapons, and therefore its actions do not injure the States. Again,
22   however, the Government's actions make it more difficult to use existing state laws and practices such as screening
     with metal detectors to protect state citizens, state employees, and state facilities. Nor are the States' injuries too
     theoretical. A party "need not sit idly by and wait for . . . harm to befall it." *Pennsylvania v. Trump*, 281 F. Supp.
23   3d 553, 567 (E.D. Pa. 2017). It need only show only that it is "*likely* to suffer future injury," *City of Los Angeles v.
     Lyons*, 461 U.S. 95, 105 (1983) (emphasis added), which the States' evidence amply establishes here.
     [24] The Government also suggests, with no support, that 3D-printable gun files have been circulated within
24   the United States through channels other than the internet. Dkt. # 64 at 14–15. Defense Distributed, at least, does
     not appear to be interested in disseminating the files via a medium other than the internet.

REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
2:18-cv-01115-RSL                                        11                  ATTORNEY GENERAL OF WASHINGTON
                                                                                     800 Fifth Avenue. Suite 2000
                                                                                      Seattle, WA 98104-3188
                                                                                         (206) 464-7744

States face as a result of the Temporary Modification and Letter. Dkt. #64 at 17 n.9. This distinction is illusory. Clearly, terrorists who can evade metal detectors and organized criminals who can escape detection of their crimes pose a threat to the "security" of the nation and, by extension, the States. *See, e.g.*, *United States v. U.S. Dist. Court*, 407 U.S. 297, 321 (1972); *Hodges v. Abraham*, 253 F. Supp. 2d 846, 868 (D.S.C. 2002) (federal government using "national security" and domestic security" interchangeably in litigation).

## 2.    The Private Defendants' jurisdictional arguments are meritless

The Private Defendants argue that the Court "lacks jurisdiction" over this APA case because the States' lawsuit "counts as a collateral attack" on the final disposition of the Texas proceedings. Dkt. # 63 at 8–9. This argument misses the point, as the States are challenging agency action, not "collaterally attacking the judgments of other courts." *Rein v. Providian Fin. Corp.*, 270 F.3d 895, 902 (9th Cir. 2001).[25] The Private Defendants also argue that the Court lacks jurisdiction "because of statutory limitations." Dkt. # 63 at 10–12. Their assertion that Executive actions under AECA are *never* reviewable (*id.* at 10–11) relies on inapposite case law[26] and ignores cases that *have* reviewed agency action under AECA.[27] They also invoke Section 2778(h) of AECA, which plainly does not apply because it only excludes from judicial review the "designation"—not the removal—of Munitions List items. Dkt. # 63 at 10–12.

## III.    CONCLUSION

For the reasons above and in the Plaintiff States' Motion, the Court should convert its temporary restraining order to a preliminary injunction.

---

[25] If the collateral attack doctrine were stretched so far as to apply to agency actions taken pursuant to a settlement agreement, then agencies could shield any unlawful action with a settlement agreement. Unsurprisingly, the Private Defendants cite no authority for this argument.

[26] *Webster v. Doe*, 486 U.S. 592, 600 (1988), considered the reviewability of actions committed to the CIA Director's discretion under the National Security Act.

[27] *See, e.g.*, *B-W. Imports, Inc. v. United States*, 75 F.3d 633 (Fed. Cir. 1996) (considering Customs Service's exercise of delegated import authority under AECA).

REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
2:18-cv-01115-RSL

12

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    DATED this 17th day of August, 2018.

2                                        ROBERT W. FERGUSON
                                         Attorney General
3
                                         _/s/ Jeffrey Rupert_____
4                                        JEFFREY RUPERT, WSBA #45037
                                         Division Chief
5                                        KRISTIN BENESKI, WSBA #45478
                                         Assistant Attorney General
6                                        TODD BOWERS, WSBA #25274
                                         Deputy Attorney General
7                                        JEFF SPRUNG, WSBA #23607
                                         Assistant Attorney General
8                                        ZACHARY P. JONES, WSBA #44557
                                         Assistant Attorney General
9                                        JeffreyR2@atg.wa.gov
                                         KristinB1@atg.wa.gov
10                                       ToddB@atg.wa.gov
                                         JeffS2@atg.wa.gov
11                                       ZachJ@atg.wa.gov
                                         _Attorneys for Plaintiff State of Washington_
12
                                         GEORGE JEPSEN
13                                       Attorney General of Connecticut

14                                       _/s/ Kimberly Massicotte_____
                                         KIMBERLY MASSICOTTE, CT-04111
15                                       Associate Attorney General
                                         JOSEPH RUBIN, CT-00068
16                                       Associate Attorney General
                                         MAURA MURPHY OSBORNE, CT-19987
17                                       Assistant Attorney General
                                         Connecticut Office of Attorney General
18                                       55 Elm St.
                                         P.O. Box 120
19                                       Hartford, CT 06141-0120
                                         _Attorneys for Plaintiff State of Connecticut_
20
                                         BRIAN E. FROSH
21                                       Attorney General of Maryland

22                                       _/s/ Julia Doyle Bernhardt_____
                                         JULIA DOYLE BERNHARDT
23                                       JENNIFER KATZ
                                         Assistant Attorneys General
24                                       Office of the Attorney General

REPLY IN SUPPORT OF MOTION FOR             13          ATTORNEY GENERAL OF WASHINGTON
PRELIMINARY INJUNCTION                                          800 Fifth Avenue. Suite 2000
2:18-cv-01115-RSL                                                 Seattle, WA 98104-3188
                                                                      (206) 464-7744

|   |   |
|---|---|
| 1 | 200 Saint Paul Place, 20th Floor |
|   | Baltimore, MA 21202 |
| 2 | (410) 576-7291 |
|   | jbernhardt@oag.state.md.us |
| 3 | jkatz@oag.state.md.us |
|   | *Attorneys for Plaintiff State of Maryland* |
| 4 |   |
|   | GURBIR GREWAL |
| 5 | Attorney General of New Jersey |
| 6 |   |
|   | */s/ Jeremy M. Feigenbaum* |
| 7 | JEREMY M. FEIGENBAUM |
|   | Assistant Attorney General |
|   | Office of the Attorney General |
| 8 | Richard J. Hughes Justice Complex |
|   | 25 Market Street, 8th Floor, West Wing |
| 9 | Trenton, NJ 08625-0080 |
|   | (609) 376-2690 |
| 10 | Jeremy.Feigenbaum@njoag.gov |
|   | *Attorneys for Plaintiff State of New Jersey* |
| 11 | BARABARA D. UNDERWOOD |
|   | Attorney General of New York |
| 12 |   |
| 13 | */s/ Barbara D. Underwood* |
|   | BARBARA D. UNDERWOOD |
|   | Attorney General of New York |
| 14 | 28 Liberty Street |
|   | New York, NY 10005 |
| 15 |   |
|   | MAURA HEALEY |
| 16 | Attorney General of Commonwealth of |
|   | Massachusetts |
| 17 |   |
|   | */s/ Jonathan B. Miller* |
| 18 | JONATHAN B. MILLER |
|   | Assistant Attorney General |
| 19 | Office of the Massachusetts Attorney General |
|   | One Ashburton Place |
| 20 | Boston, MA 02108 |
|   | 617-963-2073 |
| 21 | Jonathan.Miller@state.ma.us |
|   | *Attorneys for Plaintiff Commonwealth of* |
| 22 | *Massachusetts* |
| 23 |   |
| 24 |   |

REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
2:18-cv-01115-RSL

14

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1

JOSH SHAPIRO
Attorney General of Commonwealth of
Pennsylvania

2

3

/s/ Josh Shapiro

JOSH SHAPIRO

4

Attorney General
Office of the Attorney General

5

Strawberry Square, 16th Floor
Harrisburg, PA 17120
(717) 787-3391

6

Attorneys for Plaintiff Commonwealth of
Pennsylvania

7

8

KARL A. RACINE
Attorney General for the District of Columbia

9

/s/ Robyn Bender

ROBYN BENDER

10

Deputy Attorney General
Public Advocacy Division

11

JIMMY ROCK
Assistant Deputy Attorney General

12

Public Advocacy Division
Attorneys for Plaintiff District of Columbia

13

14

ELLEN F. ROSENBLUM
Attorney General of Oregon

15

/s/ Scott J. Kaplan

SCOTT J. KAPLAN, WSBA #49377

16

Senior Assistant Attorney General
Oregon Department of Justice

17

100 SW Market Street
Portland, OR  97201

18

(971) 673-1880
scott.kaplan@doj.state.or.us

19

Attorneys for Plaintiff State of Oregon

20

XAVIER BECERRA
Attorney General of California

21

/s/ Nelson R. Richards

NELSON R. RICHARDS

22

Deputy Attorney General

/s/ Mark Beckington

23

MARK BECKINGTON
Supervising Deputy Attorney General

24

REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
2:18-cv-01115-RSL

15

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1

*/s/ Thomas Patterson*
THOMAS PATTERSON

2

Senior Assistant Attorney General
*Attorneys for the State of California*

3

CYNTHIA H. COFFMAN

4

Attorney General of Colorado

5

*/s/ Matthew D. Grove*
MATTHEW D. GROVE

6

Assistant Solicitor General
Colorado Department of Law

7

1300 Broadway, 6th Floor
Denver, Colorado  80203

8

Telephone:  (720) 508-6157
FAX:  (720) 508-6041

9

E-Mail: matt.grove@coag.gov
*Attorneys for Plaintiff State of Colorado*

10

MATTHEW P. DENN

11

Attorney General of Delaware

12

*/s/ Ilona M. Kirshon*
ILONA M. KIRSHON (#3705)

13

Deputy State Solicitor
State of Delaware Department of Justice

14

Carvel State Office Building, 6th Floor
Wilmington, DE 19801

15

(302) 577-8400
Ilona.kirshon@state.de.us

16

*/s/ Patricia A. Davis*

17

PATRICIA A. DAVIS (#3857)
Deputy Attorney General

18

State of Delaware Department of Justice
Dover, DE  19904

19

(302) 257-3233
patriciaA.davis@state.de.us

20

*Attorneys for the Plaintiff State of Delaware*

21

RUSSELL A. SUZUKI
Attorney General of Hawaii

22

*/s/ Robert T. Nakatsuji*

23

ROBERT T. NAKATSUJI
Deputy Attorney General

24

Department of the Attorney General

REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
2:18-cv-01115-RSL

16

425 Queen Street
Honolulu, Hawaii  96813
(808) 586-1360
Robert.T.Nakatsuji@hawaii.gov
*Attorneys for Plaintiff State of Hawaii*

LISA MADIGAN
Attorney General of Illinois

*/s/ Brett E. Legner*
BRETT E. LEGNER
Deputy Solicitor General
*/s/ Katelin B. Buell*
KATELIN B. BUELL
*/s/ Sarah A. Hunger*
SARAH A. HUNGER
Assistant Attorneys General
Office of the Attorney General
100 W. Randolph, 12th Floor
Chicago, IL 60601
blegner@atg.state.il.us
*Attorneys for Plaintiff State of Illinois*

THOMAS J. MILLER
Attorney General of Iowa

*/s/ Nathan Blake*
NATHAN BLAKE
Deputy Attorney General
Office of the Attorney General of Iowa
1305 E. Walnut St.
Des Moines, IA  50319
(515) 281-4325
nathan.blake@ag.iowa.gov
*Attorneys for the Plaintiff State of Iowa*

LORI SWANSON
Attorney General of Minnesota

*/s/ Jacob Campion*
JACOB CAMPION, MN Reg. #0391274
Assistant Attorney General
Office of the Minnesota Attorney General
445 Minnesota Street, Suite 1100
St. Paul, Minnesota 55101-2128
(651) 757-1459
jacob.campion@ag.state.mn.us

REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
2:18-cv-01115-RSL

17

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1                  *Attorneys for the Plaintiff State of Minnesota*

2                  JOSHUA H. STEIN
Attorney General of North Carolina

3

*/s/ Sripriya Narasimhan*

4                  SRIPRIYA NARASIMHAN
Deputy General Counsel

5                  North Carolina Department of Justice
114 W. Edenton St.

6                  Raleigh, NC 27603
*Attorneys for Plaintiff State of North Carolina*

7

PETER F. KILMARTIN

8                  Attorney General of Rhode Island

9                  */s/ Michael W. Field*
MICHAEL W. FIELD

10                 */s/ Susan Urso*
SUSAN URSO

11                 Assistant Attorneys General
150 South Main Street

12                 Providence, Rhode Island 02903
(401) 274-4400

13                 mfield@riag.ri.gov
surso@riag.ri.gov

14                 *Attorneys for Plaintiff State of Rhode Island*

15                 THOMAS J. DONOVAN, JR.
Attorney General of Vermont

16

*/s/ Benjamin D. Battles*

17                 BENJAMIN D. BATTLES
Solicitor General

18                 Office of the Attorney General
109 State Street

19                 Montpelier, Vermont 05609-1001
802-828-5500

20                 benjamin.battles@vermont.gov
*Attorneys for Plaintiff State of Vermont*

21

MARK R. HERRING

22                 Attorney General of the
Commonwealth of Virginia

23

*/s/ Samuel T. Towell*

24                 SAMUEL T. TOWELL

REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
2:18-cv-01115-RSL

18

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

Deputy Attorney General, Civil Litigation
Office of the Attorney General of Virginia
Barbara Johns Building
202 N. Ninth Street
Richmond, VA 23219
(804) 786-6731
STowell@oag.state.va.us
*Attorney for Plaintiff Commonwealth of*
*Virginia*

**Pro Hac Vice** **motions forthcoming for all**
**counsel of record not barred in the Western**
**District of Washington**

REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
2:18-cv-01115-RSL

19

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1

## **DECLARATION OF SERVICE**

2       I hereby certify that on August 17, 2018, I electronically filed the foregoing document

3 with the Clerk of the Court using the CM/ECF system, which will serve a copy of this document

4 upon all counsel of record.

5       DATED this 17th day of August, 2018, at Seattle, Washington.

6

                                 */s/ Jeffrey Rupert*

7                                 JEFFREY RUPERT

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744