The Honorable Robert S. Lasnik

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STATE OF WASHINGTON, *et al.*,

    Plaintiffs,

v.

UNITED STATES DEPARTMENT OF STATE, *et al.*,

    Defendants.

No. 2:18-cv-1115-RSL

**Brief of *Amicus Curiae*
Brady Center to Prevent Gun Violence
in Support of Plaintiffs'
Motion for Preliminary Injunction**

Note on Motion Calendar: August 24, 2018

Brief of *Amicus Curiae* Brady Center to Prevent Gun Violence
in Support of Plaintiffs' Motion for Preliminary Injunction
No. 2:18-cv-1115-RSL
Page i

**Garvey Schubert Barer, P.C.**
1191 Second Avenue, 18th Floor
Seattle, Washington 98101
Tel.: (206) 464-3939 x1320

# **TABLE OF CONTENTS**

**Page**

Interest of *Amicus Curiae* ...................................................................................................1

Background ..........................................................................................................................1

Argument .............................................................................................................................2

    I.    The Second Amendment does not provide Defense Distributed with the right to put CAD files for 3D-printed firearms on the internet ................................2

        A.    The Second Amendment's guarantee does not extend beyond the possession of a handgun in the home for self-defense by law-abiding citizens ..................................................................................................2

        B.    Second Amendment analytical framework ...................................................3

        C.    Under *Heller* and *Fyock*, both the manufacture of firearms and the dissemination of technical data about firearms fall outside the scope of the Second Amendment ..............................................................5

    II.    3D-printed firearms are neither in "common use" nor "typically possessed by law-abiding citizens," and thus, are not entitled to Second Amendment protection ...............................................................................................................7

    III.    The Undetectable Firearms Act does not address Plaintiffs' legitimate concerns for public safety and national security ......................................................9

Conclusion .........................................................................................................................11

Brief of *Amicus Curiae* Brady Center to Prevent Gun Violence
in Support of Plaintiffs' Motion for Preliminary Injunction
No. 2:18-cv-1115-RSL
Page ii

**Garvey Schubert Barer, P.C.**
1191 Second Avenue, 18th Floor
Seattle, Washington 98101
Tel.: (206) 464-3939 x1320

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abramski v. United States*,
    134 S. Ct. 2259 (2014).................................................................................................................1

*Defense Distributed v. U.S. Department of State*,
    No. 1-15-cv-372 RP (W.D. Tex.) .................................................................................................4

*Defense Distributed v. United States Dep't of State*,
    838 F.3d 451 (5th Cir. 2016) ........................................................................................................1

*District of Columbia v. Heller*,
    554 U.S. 570 (2008)............................................................................................................. passim

*Friedman v. City of Highland Park, Illinois*,
    784 F.3d 406 (7th Cir. 2015), *cert. denied*, 136 S. Ct. 447 (2015)........................................3, 8

*Fyock v. Sunnyvale*,
    779 F.3d 991 (9th Cir. 2015) ...............................................................................................3, 4, 5

*McDonald v. City of Chicago*,
    561 U.S. 742 (2010).......................................................................................................................1

*Microsoft Corp. v. United States DOJ*,
    No. C16-0538JLR, 2016 WL 4506808, at *9 (W.D. Wash. Aug. 29, 2016).............................1

*N.Y. State Rifle & Pistol Ass'n, Inc. v. Cuomo*,
    804 F.3d 242 (2d Cir. 2015).........................................................................................................7

*National Rifle Association v. Bureau of Alcohol, Tobacco, Firearms, and Explosives*,
    700 F.3d 185 (5th Cir. 2012) ....................................................................................................4, 8

*Pena v. Lindley*,
    15-15449, 2018 WL 3673149 (9th Cir. Aug. 3, 2018) ................................................................7

*Skokomish Indian Tribe v. Goldmark*,
    No. C13-5071JLR, 2013 WL 5720053, at *2 (W.D. Wash. Oct. 21, 2013).............................1

*State v. United States Dep't of State*,
    No. C18-1115RSL, 2018 WL 3629632 (W.D. Wash. July 31, 2018) ....................................11

*United States v. Chovan*,
    735 F.3d 1127, 1136 (9th Cir. 2013) ..........................................................................................3

Brief of *Amicus Curiae* Brady Center to Prevent Gun Violence
in Support of Plaintiffs' Motion for Preliminary Injunction
No. 2:18-cv-1115-RSL
Page iii

**Garvey Schubert Barer, P.C.**
1191 Second Avenue, 18th Floor
Seattle, Washington 98101
Tel.: (206) 464-3939 x1320

*United States v. Fincher*,
  538 F.3d 868 (8th Cir. 2008) ................................................................................................6

*United States v. Hayes*,
  555 U.S. 415 (2009) .............................................................................................................1

*United States v. Henry*,
  688 F.3d 637, 640 (9th Cir. 2012) ........................................................................................7

*United States v. Lopez*,
  2 F.3d 1342 (5th Cir. 1993) (*aff'd on other grounds, United States v. Lopez*,
  514 U.S. 549, 115 S. Ct. 1624 (1995)) .................................................................................9

*United States v. Mazzarella*,
  614 F.3d 85, 94-95, 98-99 (3d Cir. 2010) ............................................................................6

**Statutes**

18 U.S.C.S. § 922(p)(1)-(2)(C)(1) ...............................................................................................9

18 U.S.C. § 922(a)(1)(A) .............................................................................................................6

18 U.S.C. § 922(k) .......................................................................................................................6

18 U.S.C. §922(p) ..................................................................................................................9, 10

26 U.S.C. § 5822 .........................................................................................................................6

26 U.S.C. § 5841(b) ....................................................................................................................6

Federal Rule of Appellate Procedure 29(a)(4)(E), ......................................................................1

Gun Control Act of 1968 ..........................................................................................................6, 7

National Firearms Act of 1934 .................................................................................................6, 7

Omnibus Crime Control and Safe Streets Act of 1968 .......................................................4, 5, 7

*Undetectable Firearms Act Extension*, 108 P.L. 174, 117 Stat. 2481 (2003) ..............................9

**Other Authorities**

Second Amendment .............................................................................................................. *passim*

Andy Greenberg, *Meet The "Liberator": Test-Firing The World's First Fully 3D-Printed Gun*, Forbes, May 5, 2013 ...............................................................................10

Brief of *Amicus Curiae* Brady Center to Prevent Gun Violence
in Support of Plaintiffs' Motion for Preliminary Injunction
No. 2:18-cv-1115-RSL
Page iv

**Garvey Schubert Barer, P.C.**
1191 Second Avenue, 18th Floor
Seattle, Washington 98101
Tel.: (206) 464-3939 x1320

*The Constitution And The 3D Printed Plastic Pistol*, TechCrunch, May 16, 2013, https://techcrunch.com/2013/05/15/the-constitution-and-the-3d-printed-plastic-pistol ..................................................................................................................10

Marrian Zhou, *The 3D-printed gun controversy: Everything you need to know* ...........................10

Brief of *Amicus Curiae* Brady Center to Prevent Gun Violence
in Support of Plaintiffs' Motion for Preliminary Injunction
No. 2:18-cv-1115-RSL
Page v

**Garvey Schubert Barer, P.C.**
1191 Second Avenue, 18th Floor
Seattle, Washington 98101
Tel.: (206) 464-3939 x1320

# Interest of *Amicus Curiae*[1]

The Brady Center to Prevent Gun Violence is a non-profit organization dedicated to reducing gun violence through education, research, and legal advocacy. Its membership includes individuals who are concerned with, and affected by, public health and safety issues stemming from gun violence. The Brady Center has a substantial interest in ensuring that the Second Amendment is not misinterpreted as a barrier to strong and effective government action to prevent gun violence. The Brady Center has filed numerous briefs *amicus curiae* in cases involving the constitutionality and interpretation of gun laws, including *District of Columbia v. Heller*, 554 U.S. 570 (2008), *United States v. Hayes*, 555 U.S. 415, 427 (2009) (citing Brady Center brief), *McDonald v. City of Chicago*, 561 U.S. 742 (2010), *Abramski v. United States*, 134 S. Ct. 2259 (2014), and *Defense Distributed v. United States Dep't of State*, 838 F.3d 451, 461 (5th Cir. 2016). The Brady Center submits this *Amicus Curiae* brief in support of Plaintiffs' position that the relief they seek is fully consistent with the Second Amendment.

## Background

The Brady Center respectfully refers the Court to the detailed factual allegations stated in the First Amended Complaint. (Dkt. No. 29.)

---

[1] "In the absence of local rules governing the role of amicus curiae, the court will adhere to the applicable rules found in the Federal Rules of Appellate Procedure." *Microsoft Corp. v. United States DOJ*, No. C16-0538JLR, 2016 WL 4506808, at *9 (W.D. Wash. Aug. 29, 2016); *see also Skokomish Indian Tribe v. Goldmark*, No. C13-5071JLR, 2013 WL 5720053, at *2 (W.D. Wash. Oct. 21, 2013) ("The court also chooses to adhere to other rules concerning amicus curiae found in the Federal Rules of Appellate Procedure.").

Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), counsel for *Amicus Curiae* The Brady Center to Prevent Gun Violence represents that no counsel for a party authored this brief in whole or in part, and that neither a party, a party's counsel, nor any other person made a monetary contribution to preparing or submitting this brief.

Brief of *Amicus Curiae* Brady Center to Prevent Gun Violence
in Support of Plaintiffs' Motion for Preliminary Injunction
No. 2:18-cv-1115-RSL
Page 1

Garvey Schubert Barer, P.C.
1191 Second Avenue, 18th Floor
Seattle, Washington 98101
Tel.: (206) 464-3939 x1320

# Argument

**I.     The Second Amendment does not provide Defense Distributed with the right to put CAD files for 3D-printed firearms on the internet**

Plaintiffs' request for relief neither implicates nor violates the Second Amendment. (Dkt. No. 29 at ¶ 11.) Defendant Defense Distributed ("DD") contends that the Second Amendment secures the right to produce firearms and exchange technical data concerning firearms. (*See* Dkt. No. 11-5 at ¶¶ 42-46.) But the Government does not regulate these activities through the International Traffic in Arms Regulations (ITAR) or the U.S. Munitions List (USML). Rather, the regulations at issue concern the export of technical data. The Second Amendment plainly does not protect the export of technical data about defense articles, including CAD files that would allow anyone with a 3D printer to create the parts and components of an operational firearm.

But even if the "production" of firearms or the "exchange" of technical data about firearms were somehow affected by the regulations at issue, neither the plain language of the Second Amendment nor U.S. Supreme Court jurisprudence supports DD's contention that those activities are protected by the Second Amendment.

**A.     The Second Amendment's guarantee does not extend beyond the possession of a handgun in the home for self-defense by law-abiding citizens**

In the seminal case of *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Supreme Court considered the constitutionality of the District of Columbia's prohibition on the possession of handguns in the home. Concluding that the core Second Amendment guarantee provided an individual right of "law-abiding, responsible citizens to use arms in defense of hearth and home," the Court struck down the District of Columbia's ban on handgun possession as an impermissible infringement on the core Second Amendment right. *Id.* at 629, 635 ("[f]ew laws in the history of our Nation have come close to the severe restriction of the District's handgun ban.").

Brief of *Amicus Curiae* Brady Center to Prevent Gun Violence
in Support of Plaintiffs' Motion for Preliminary Injunction
No. 2:18-cv-1115-RSL
Page 2

Garvey Schubert Barer, P.C.
1191 Second Avenue, 18th Floor
Seattle, Washington 98101
Tel.: (206) 464-3939 x1320

Justice Scalia's majority opinion went out of its way to explain that a wide array of "longstanding prohibitions" on firearms laws remain lawful. *Id*. at 626-27. A fair reading of the decision is that the Court's holding is limited to possession of a traditional handgun for self-defense purposes in the home. Indeed, the Court denied certiorari in *Friedman v. City of Highland Park, Illinois*, 784 F.3d 406 (7th Cir. 2015), *cert. denied*, 136 S. Ct. 447 (2015), where the Seventh Circuit held that a categorical ban on "assault weapons" and large capacity magazines fell outside the scope of the Second Amendment because the ordinance "leaves residents with many self-defense options," including handguns. *Id.* at 411.

B. **Second Amendment analytical framework**

The Ninth Circuit, in light of *Heller*, has held that "[T]he Second Amendment has 'the core lawful purpose of self-defense' and 'elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home.'" *Fyock v. Sunnyvale*, 779 F.3d 991, 996 (9th Cir. 2015) (quoting *Heller*, 554 U.S. at 630, 635). "To evaluate post-*Heller* Second Amendment claims, the Ninth Circuit, consistent with the majority of our sister circuits, employs a two-prong test: (1) the court 'asks whether the challenged law burdens conduct protected by the Second Amendment'; and (2) if so, what level of scrutiny should be applied." *Id.* (quoting *United States v. Chovan*, 735 F.3d 1127, 1136 (9th Cir. 2013)).

In *Fyock*, the city of Sunnyvale, California outlawed high-capacity magazines. Plaintiffs sued and sought an injunction based on an alleged infringement of Plaintiffs' Second Amendment rights. The district court held that high-capacity magazines "are hardly central to self-defense," and "the right to possess magazines having a capacity to accept more than ten rounds lies on the periphery of the Second Amendment right . . . ." *Id.* The district court nonetheless held that the ban on high-capacity magazines burdened conduct protected by the Second Amendment because "the Sunnyvale ordinance prohibits average, law-abiding citizens

Brief of *Amicus Curiae* Brady Center to Prevent Gun Violence
in Support of Plaintiffs' Motion for Preliminary Injunction
No. 2:18-cv-1115-RSL
Page 3

**Garvey Schubert Barer, P.C.**
1191 Second Avenue, 18th Floor
Seattle, Washington 98101
Tel.: (206) 464-3939 x1320

from possessing protected arms that are not dangerous and unusual." *Id.* at 1277. The court held that intermediate scrutiny was appropriate, and denied Plaintiffs' request for a preliminary injunction, finding that the ordinance "is reasonably tailored to the asserted objective of protecting the public from gun violence." *Id.* at 1279, 1281.

On appeal, the Ninth Circuit affirmed, holding: "The district court correctly recognized that to determine the appropriate level of scrutiny, the court must consider (1) how closely the law comes to the core of the Second Amendment right; and (2) how severely, if at all, the law burdens that right." *Fyock*, 779 F.3d at 998 (citing *Chovan*, 735 F.3d at 1138). The Ninth Circuit also affirmed the district court's application of intermediate scrutiny, because Sunnyvale's stated objective in passing the ordinance was "significant, substantial, or important," and Sunnyvale "demonstrated a reasonable fit between the challenged regulation and the asserted objective." *Id.* at 1000.[2]

---

[2] The Fifth Circuit, which controls in *Defense Distributed v. U.S. Department of State*, No. 1-15-cv-372 RP (W.D. Tex.), applies the same analysis as the Ninth Circuit. In *National Rifle Association v. Bureau of Alcohol, Tobacco, Firearms, and Explosives*, 700 F.3d 185 (5th Cir. 2012) ("*NRA*"), the Fifth Circuit upheld provisions of the Omnibus Crime Control and Safe Streets Act of 1968, which placed restrictions on firearm purchases by 18 to 20 year-olds. In so doing, the Court adopted a two-step framework for analyzing a Second Amendment claim: First, courts must analyze "whether the conduct at issue falls within the scope of the Second Amendment right. . . . To determine whether a law impinges on the Second Amendment right, we look to whether the law harmonizes with the historical traditions associated with the Second Amendment guarantee." The Court held that "a longstanding, presumptively lawful regulatory measure . . . would likely fall outside the ambit of the Second Amendment; that is, such a measure would likely be upheld at step one of our framework." *Id.* at 196.

Second, if the conduct at issue falls within the scope of the Second Amendment, the Court must determine whether to apply strict or intermediate scrutiny. *Id.* at 195. Strict scrutiny is appropriate where the conduct threatens a "core" Second Amendment right—that is, "the right of a law-abiding, responsible adult to possess and use a handgun to defend his or her home and family." *Id.* Conduct that does not affect the core Second Amendment concern of self-defense within the home only warrants intermediate scrutiny. *Id.* Under intermediate scrutiny, the government need only "demonstrate a 'reasonable fit' between the challenged regulation and an 'important' government objective.'" *Id.*

Brief of *Amicus Curiae* Brady Center to Prevent Gun Violence
in Support of Plaintiffs' Motion for Preliminary Injunction
No. 2:18-cv-1115-RSL
Page 4

**Garvey Schubert Barer, P.C.**
1191 Second Avenue, 18th Floor
Seattle, Washington 98101
Tel.: (206) 464-3939 x1320

**C. Under *Heller* and *Fyock*, both the manufacture of firearms and the dissemination of technical data about firearms fall outside the scope of the Second Amendment**

Considering "the normal and ordinary" meaning of the words "keep and bear" in the Second Amendment text, and excluding a "secret or technical meaning" of the text as Justice Scalia instructed in *Heller*, it is apparent that the Second Amendment does not provide a right to "manufacture," "make," or "produce" a firearm, or to "exchange," "transfer," or "disseminate" technical data about firearms—let alone "export" a computer file used to "automatically" manufacture firearms. Thus, the Court need not even reach the second prong of the test applied in *Fyock*, because the conduct challenged by DD falls outside the scope of the Second Amendment under a plain language analysis.

The "right secured by the Second Amendment is not unlimited." *Heller*, 554 U.S. at 626. If anything, a regulation affecting the export of firearms or technical data that could be used to produce firearms (or firearm components) is a "longstanding, presumptively lawful regulatory measure" that easily passes constitutional muster. Indeed, Justice Scalia noted in *Heller* that the Court's opinion should not "be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill*,* or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or **laws imposing conditions and qualifications on the commercial sale of arms**." *Id.* at 626-27 (emphasis added).

Both the commercial sale and the manufacture of firearms have a longstanding history of regulation in the United States. For instance, the Omnibus Crime Control and Safe Streets Act of 1968 prohibits a person from "engag[ing] in the business of importing, manufacturing, or dealing

Brief of *Amicus Curiae* Brady Center to Prevent Gun Violence
in Support of Plaintiffs' Motion for Preliminary Injunction
No. 2:18-cv-1115-RSL
Page 5

**Garvey Schubert Barer, P.C.**
1191 Second Avenue, 18th Floor
Seattle, Washington 98101
Tel.: (206) 464-3939 x1320

in firearms," unless a person is a "licensed importer, licensed manufacturer, or licensed dealer." 18 U.S.C. § 922(a)(1)(A).[3]

The National Firearms Act of 1934, as amended by the Gun Control Act of 1968, requires that "[e]ach manufacturer, importer, and maker [of firearms] shall register each firearm he manufactures, imports, or makes." 26 U.S.C. § 5841(b). The Act also provides:

> No person shall make a firearm unless he has (a) filed with the Secretary a written application, in duplicate, to make and register the firearm on the form prescribed by the Secretary; (b) paid any tax payable on the making and such payment is evidenced by the proper stamp affixed to the original application form; (c) identified the firearm to be made in the application form in such manner as the Secretary may by regulations prescribe; (d) identified himself in the application form in such manner as the Secretary may by regulations prescribe, except that, if such person is an individual, the identification must include his fingerprints and his photograph; and (e) obtained the approval of the Secretary to make and register the firearm and the application form shows such approval. Applications shall be denied if the making or possession of the firearm would place the person making the firearm in violation of law.

26 U.S.C. § 5822.

If accepted, DD's contention that the manufacture of firearms somehow falls within the scope of the Second Amendment would eviscerate the longstanding regulatory scheme requiring the registration of firearms, and for firearms manufacturers to apply for, and receive, a license to

---

[3] *See United States v. Mazzarella*, 614 F.3d 85, 94-95, 98-99 (3d Cir. 2010) (affirming defendant's conviction under 18 U.S.C. § 922(k) for possession of a handgun with an obliterated serial number, and holding that "there is no categorical [Second Amendment] protection for unmarked firearms," that there is "no compelling reason why a law-abiding citizen would prefer an unmarked firearm," and that Section 922(k) passed both intermediate and strict scrutiny, in part because the statute "reaches only conduct creating a substantial risk of rendering a firearm untraceable," and "does not limit the possession of any class of firearms"); *United States v. Fincher*, 538 F.3d 868, 874 (8th Cir. 2008) (holding that defendant's possession of a machine gun and a short-barreled shotgun are not protected by the Second Amendment, and noting that defendant "has not directly attacked the federal registration requirements on firearms, and we doubt that any such attack would succeed in light of *Heller*").

Brief of *Amicus Curiae* Brady Center to Prevent Gun Violence
in Support of Plaintiffs' Motion for Preliminary Injunction
No. 2:18-cv-1115-RSL
Page 6

**Garvey Schubert Barer, P.C.**
1191 Second Avenue, 18th Floor
Seattle, Washington 98101
Tel.: (206) 464-3939 x1320

conduct the business of manufacturing arms. Indeed, DD's goal of spreading the availability of computer files capable of producing 3D-printed firearms would undermine the important objectives of the Omnibus Crime Control and Safe Streets Act, the National Firearms Act, and the Gun Control Act.

**II.     3D-printed firearms are neither in "common use" nor "typically possessed by law-abiding citizens," and thus, are not entitled to Second Amendment protection**

The federal law and regulations at issue do not affect domestic concerns of firearm possession. But even if they did, regulations affecting the 3D-printed firearms that can be manufactured using DD's "technical data" also pass constitutional muster because 3D-printed firearms ***themselves*** are not entitled to Second Amendment protection. In *Heller*, the U.S. Supreme Court held that the Second Amendment only protects "the sorts of weapons" that are "in common use" (*Heller*, 554 U.S. at 627) and weapons that are "typically possessed by law-abiding citizens for lawful purposes" (*id.* at 625). S*ee N.Y. State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242 (2d Cir. 2015). Because 3D-printed firearms are neither in common use nor typically possessed by law-abiding citizens for lawful purposes, 3D-printed firearms are not entitled to Second Amendment protection.

Reinforcing that the Second Amendment does not imbue an individual right to own or possess weapons "not typically possessed by law-abiding citizens for lawful purposes," the Ninth Circuit has stated that "dangerous and unusual weapons" uniformly escape Second Amendment protection of the Second Amendment. *Id.* at 996–97 (citing *United States v. Henry*, 688 F.3d 637, 640 (9th Cir. 2012) ("machine guns are 'dangerous and unusual' weapons")). Further, where the possession, or even ease of purchase, of typical, legally-obtained handguns are not impacted by a government conduct, Ninth Circuit courts will not stand in the way of public safety restrictions on the manufacture or distribution of fire arms. *See Pena v. Lindley*, 15-15449, 2018 WL

Brief of *Amicus Curiae* Brady Center to Prevent Gun Violence
in Support of Plaintiffs' Motion for Preliminary Injunction
No. 2:18-cv-1115-RSL
Page 7

Garvey Schubert Barer, P.C.
1191 Second Avenue, 18th Floor
Seattle, Washington 98101
Tel.: (206) 464-3939 x1320

Case 2:18-cv-01115-RSL   Document 46-1   Filed 08/09/18   Page 13 of 19

3673149, at *6 (9th Cir. Aug. 3, 2018) (holding that no Second Amendment violation occurred where plaintiff was able to "buy an operable handgun suitable for self-defense—just not the exact gun they want").

In *N.Y. State Rifle and Pistol Association*, the Second Circuit considered a challenge to restrictions on the possession of "assault weapons" in Connecticut and New York enacted following the December 14, 2012 mass murder of twenty first-graders and six adults at Sandy Hook Elementary School in Newtown, Connecticut. The Second Circuit adopted virtually the same two-part test that the Fifth Circuit set forth in *NRA*, applied intermediate scrutiny, and upheld nearly all aspects of the laws at issue. *Cf. Friedman*, 784 F.3d 406 (upholding categorical ban on assault weapons).

Unlike the assault weapons addressed in *N.Y. State Rifle and Pistol Association*, of which there are "millions" in the United States, 3D-printed firearms are not commonly used by the American public. And the greatest potential use for 3D-printed firearms—which can be virtually undetectable—is to aid criminal and terrorist activities, not lawful purposes such as self-defense or hunting. Even among law-abiding citizens, 3D-printed firearms are undisputedly "unusual"— and if 3D-printed firearms are made widely available to criminals and terrorists, 3D-printed firearms will also pose a grave danger to the public.

In sum, there is no Second Amendment right either to exchange technical data concerning firearms or to manufacture firearms—and there certainly is no Second Amendment right to export firearms or technical data about firearms. And, 3D-printed firearms are not entitled to any Second Amendment protection because they are neither "in common use" nor "typically possessed by law-abiding citizens." To the extent that the regulations at issue burden DD's

Brief of *Amicus Curiae* Brady Center to Prevent Gun Violence
in Support of Plaintiffs' Motion for Preliminary Injunction
No. 2:18-cv-1115-RSL
Page 8

**Garvey Schubert Barer, P.C.**
1191 Second Avenue, 18th Floor
Seattle, Washington 98101
Tel.: (206) 464-3939 x1320

Second Amendment rights, as the District Court correctly held, only intermediate scrutiny is warranted, and the regulations at issue easily survive intermediate scrutiny.

### III. The Undetectable Firearms Act does not address Plaintiffs' legitimate concerns for public safety and national security

To the extent DD argues that Plaintiffs' public safety concerns about untraceable and undetectable plastic 3D printable weapons are mollified by the Undetectable Firearms Act, 18 U.S.C. §922(p) (the "UFA"), the argument is plainly incorrect.[4] For one, the UFA does nothing to prevent guns from being supplied to felons and other prohibited persons. Further, it is far from clear that the UFA covers 3D printed weapons.[5]

The UFA was enacted on November 10, 1988, "to prohibit certain firearms especially useful to terrorists," in response to growing concerns for "'the threat posed by firearms which could avoid detection at security checkpoints[,]'" including at "'***airports, government buildings, prisons, courthouses, [and] the White House***.'" *See United States v. Lopez*, 2 F.3d 1342, 1357 (5th Cir. 1993) (*aff'd on other grounds, United States v. Lopez*, 514 U.S. 549, 115 S. Ct. 1624 (1995)) (citing H.R. Rep. 100-612, 1988 U.S.C.C.A.N. 5359) (emphasis added). Subject to certain exemptions, the UFA makes it illegal to "manufacture, import, sell, ship, deliver, possess, transfer, or receive any firearm" that "is not detectable" by a metal detector or which would not "depict[]" the shape of a weapon to an X-ray scanner, and requires the equivalent of 3.7 ounces of metal to be installed into all firearms for detection purposes. *See* 18 U.S.C.S. § 922(p)(1)-(2)(C)(1).

---

[4] No court has ever held that the UFA implicates a right guaranteed by the Second Amendment.

[5] The House Judiciary Committee observed that at the time the UFA was enacted, "[n]o firearms currently manufactured in the United States [were] known to be subject to the proposed prohibitions." *See* H.R. Rep. 100-612, 6, 1988 U.S.C.C.A.N. 5359, 5363. The act was last renewed in 2003. *See Undetectable Firearms Act Extension*, 108 P.L. 174, 117 Stat. 2481, (2003).

Brief of *Amicus Curiae* Brady Center to Prevent Gun Violence
in Support of Plaintiffs' Motion for Preliminary Injunction
No. 2:18-cv-1115-RSL
Page 9

Garvey Schubert Barer, P.C.
1191 Second Avenue, 18th Floor
Seattle, Washington 98101
Tel.: (206) 464-3939 x1320

In passing the UFA, The House Judiciary Committee conceded the Act's practical limitations in that it "cannot assure that operators [of x-ray and metal detectors] will detect or identify the firearm." H.R. Rep. 100-612, 5, 1988 U.S.C.C.A.N. 5359, 5362. And more recently, former Congressman Steve Israel, who advocated for a revamp of the UFA to account for 3D-printed plastic weapons, explained the reality that "[s]ecurity checkpoints, background checks, and gun regulations will do little good if criminals can print plastic firearms at home and bring those firearms through metal detectors with no one the wiser." *See* Andy Greenberg, *Meet The "Liberator": Test-Firing The World's First Fully 3D-Printed Gun*, Forbes, May 5, 2013.

DD's CAD files will make it easier than ever for those who wish to do harm to circumvent detection at security checkpoints, and accordingly, wholly undermine the UFA. For instance, the design for the "Liberator," a 3D-printed plastic handgun promoted by DD, uses "a steel nail to serve as the firing pin" and calls for a "six-ounce piece of steel that's included solely to enable metal detectors to spot the guns (which keeps the weapons from running afoul of the [UFA])." *See* Marrian Zhou, *The 3D-printed gun controversy: Everything you need to know*, CNET, Aug. 3, 2018, https://www.cnet.com/news/the-3d-printed-gun-controversy-everything-you-need-to-know. However, these design elements can easily be bypassed, because "it is up to the person doing the printing to comply." Ansel Halliburton, *The Constitution And The 3D Printed Plastic Pistol*, TechCrunch, May 16, 2013, https://techcrunch.com/2013/05/15/the-constitution-and-the-3d-printed-plastic-pistol. "[A]s long as you stash the firing pin and the small piece of steel elsewhere, you can carry the gun and walk right through airport security checkpoints." Zhou, *supra*.

Accordingly, the UFA does nothing to offset Plaintiffs' "clear and reasonable fear," in light of the Settlement Agreement, "that the proliferation of untraceable, undetectable weapons

Brief of *Amicus Curiae* Brady Center to Prevent Gun Violence
in Support of Plaintiffs' Motion for Preliminary Injunction
No. 2:18-cv-1115-RSL
Page 10

Garvey Schubert Barer, P.C.
1191 Second Avenue, 18th Floor
Seattle, Washington 98101
Tel.: (206) 464-3939 x1320

will enable convicted felons, domestic abusers, the mentally ill, and others who should not have access to firearms to acquire and use them." *See State v. United States Dep't of State*, No. C18-1115RSL, 2018 WL 3629632, at *3 (W.D. Wash. July 31, 2018).

**Conclusion**

The relief sought by Plaintiffs should be granted.

Brief of *Amicus Curiae* Brady Center to Prevent Gun Violence
in Support of Plaintiffs' Motion for Preliminary Injunction
No. 2:18-cv-1115-RSL
Page 11

**Garvey Schubert Barer, P.C.**
1191 Second Avenue, 18th Floor
Seattle, Washington 98101
Tel.: (206) 464-3939 x1320

| | | |
|---|---|---|
| 1 | Dated: August 9, 2018 | **GARVEY SCHUBERT BARER, P.C.** |
| 2 | | |
| 3 | | By: /s/ Andrew Richards |
| | | Andrew Richards |
| 4 | | 1191 Second Avenue, 18th Floor |
| | | Seattle, Washington 98101 |
| 5 | | Tel.: (206) 464-3939 x1320 |
| | | Fax: (206) 464-0125 |
| 6 | | ARichards@gsblaw.com |
| 7 | | **BLANK ROME LLP** |
| 8 | | |
| | | John D. Kimball |
| 9 | | The Chrysler Building |
| | | 405 Lexington Avenue |
| 10 | | New York, New York 10174 |
| | | Tel.: (212) 885-5000 |
| 11 | | Fax: (212) 885-5001 |
| | | JKimball@BlankRome.com |
| 12 | | *Admission Pro Hac Vice Pending* |
| 13 | | |
| | | *Attorneys for Amicus Curiae* |
| 14 | | *The Brady Center to Prevent Gun Violence* |

Brief of *Amicus Curiae* Brady Center to Prevent Gun Violence    **Garvey Schubert Barer, P.C.**
in Support of Plaintiffs' Motion for Preliminary Injunction      1191 Second Avenue, 18th Floor
No. 2:18-cv-1115-RSL                                             Seattle, Washington 98101
Page 1                                                           Tel.: (206) 464-3939 x1320

Case 2:18-cv-01115-RSL   Document 46-1   Filed 08/09/18   Page 18 of 19

**CERTIFICATE OF SERVICE**

I hereby certify that on this day I caused to be electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of the filing to the following:

Jeffrey George Rupert
Attorney General's Office (40110-OLY)
PO BOX 40110
Olympia, WA 98504
360-586-0092
JeffreyR2@atg.wa.gov

Jeffrey Todd Sprung
Attorney General's Office (SEA- Fifth Avenue)
800 5th Avenue
Suite 2000
Seattle, WA 98104-3188
206-464-7744
Jeffs2@atg.wa.gov

Kristin Beneski
Attorney General's Office (SEA- Fifth Avenue)
800 5th Avenue
Suite 2000
Seattle, WA 98104-3188
206-464-7744
Kristinb1@atg.wa.gov

Todd Richard Bowers
Attorney General's Office (SEA- Fifth Avenue)
800 5th Avenue
Suite 2000
Seattle, WA 98104-3188
206-464-7744
Toddb@atg.wa.gov

Zachary P. Jones
Attorney General's Office (SEA- Fifth Avenue)
800 5th Avenue
Suite 2000
Seattle, WA 98104-3188
206-464-7744
ZachJ@atg.wa.gov

Brief of *Amicus Curiae* Brady Center to Prevent Gun Violence
in Support of Plaintiffs' Motion for Preliminary Injunction
No. 2:18-cv-1115-RSL
Page 2

**Garvey Schubert Barer, P.C.**
1191 Second Avenue, 18th Floor
Seattle, Washington 98101
Tel.: (206) 464-3939 x1320

Matthew Goldstein
Snell & Willmer LLP
One South Church Avenue
Suite 1500
Tuscon, AZ 85701
202-550-0040
Mgoldstein@swlaw.com

Joel B. Ard
Immix Law Group PC
701 5th Avenue
Suite 4710
Seattle, WA 98104
206-492-7531
Joel.Ard@immixlaw.com

DATED: August 9, 2018

GARVEY SCHUBERT BARER

By: /s/ Andrew Richards

Brief of *Amicus Curiae* Brady Center to Prevent Gun Violence
in Support of Plaintiffs' Motion for Preliminary Injunction
No. 2:18-cv-1115-RSL
Page 3

**Garvey Schubert Barer, P.C.**
1191 Second Avenue, 18th Floor
Seattle, Washington 98101
Tel.: (206) 464-3939 x1320