1

The Honorable Robert S. Lasnik

2

3

4

5

6

7

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

8

9

STATE OF WASHINGTON; STATE OF
CALIFORNIA; STATE OF COLORADO;
STATE OF CONNECTICUT; STATE OF
DELAWARE; DISTRICT OF COLUMBIA;
STATE OF HAWAII; STATE OF ILLINOIS;
STATE OF IOWA; STATE OF
MARYLAND; COMMONWEALTH OF
MASSACHUSETTS; STATE OF
MINNESOTA; STATE OF NEW JERSEY;
STATE OF NEW YORK; STATE OF
NORTH CAROLINA; STATE OF OREGON;
COMMONWEALTH OF PENNSYLVANIA;
STATE OF RHODE ISLAND; STATE OF
VERMONT and COMMONWEALTH OF
VIRGINIA,

10

11

12

13

14

15

16

17

NO. 2:18-cv-01115-RSL

**PLAINTIFF STATES' MOTION FOR
SUMMARY JUDGMENT**

**NOTE ON MOTION CALENDAR:
APRIL 19, 2019**[1]

18

Plaintiffs,

19

v.

20

UNITED STATES DEPARTMENT OF
STATE, et al.,

21

22

Defendants.

23

24

25

26

---

[1] The briefing schedule for this motion is set by the Case Management Order (Dkt. # 115).

PLAINTIFF STATES' MOTION FOR
SUMMARY JUDGMENT
2:18-cv-01115-RSL

i

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Drive SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

1

***TABLE OF CONTENTS***

I.  INTRODUCTION AND RELIEF REQUESTED ............................................................... 1

II.  STATEMENT OF UNDISPUTED FACTS ................................................................. 2

    A.  AECA and ITAR Govern Export Control of Weapons and Related Technical
       Data .............................................................................................................................. 2

    B.  The Subject Files Can Produce Functional Weapons Using a 3D Printer ................ 2

    C.  The State Department Defends Its Regulation of the Subject Files, Defeating
       Defense Distributed at Every Stage of the Litigation ............................................. 3

    D.  Reversing Its Position, the State Department Settles with Defense Distributed
       by Agreeing to Remove the Subject Files from the U.S. Munitions List ................ 5

    E.  This Court Preliminarily Enjoins the Temporary Modification and Letter .............. 7

    F.  The State Department Offers Shifting, Unsupported Rationales for Its Actions ....... 7

    G.  Final Rules Are Forthcoming, According to the Federal Defendants ..................... 8

III.  ARGUMENT ................................................................................................... 9

    A.  Legal Standard ........................................................................................................ 9

    B.  The State Department Failed to Provide the Required 30 Days' Notice to
       Congress and Exceeded Its Regulatory Authority ............................................... 10

    C.  The State Department's Actions Were Arbitrary and Capricious ......................... 12

        1.  The administrative record fails to explain or support the agency's
           asserted rationales for abruptly reversing its position. ................................... 12

        2.  The agency failed to consider the specific properties of 3D-printed guns
           and disregarded the unique threats they pose. ............................................... 15

        3.  The agency's stated rationales are pretextual as applied to 3D-printable
           firearm files. ................................................................................................... 18

    D.  The Court Should Vacate the State Department's Actions and Enjoin It from
       Further Attempts to Unlawfully Deregulate the Files ............................................ 20

IV.  CONCLUSION ................................................................................................ 24

PLAINTIFF STATES' MOTION FOR
SUMMARY JUDGMENT
2:18-cv-01115-RSL

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Drive SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

## I.    INTRODUCTION AND RELIEF REQUESTED

This lawsuit challenges the State Department's "temporary" deregulation of 3D-printable computer files for the automatic production of undetectable, untraceable plastic firearms. The subject files include specific files that Defense Distributed plans to release on the internet if they are exempted from federal export control, as well as files that may be created in the future and other unknown, unreviewed files. If the files are allowed to be published online, they will be permanently available to virtually anyone inside or outside the United States—including terrorists, assassins, violent criminals, mentally ill persons, and unsupervised children.

The State Department, which has regulated the subject files for years by including them on the U.S. Munitions List pursuant to the Arms Export Control Act (AECA), abruptly attempted to deregulate the files via a "Temporary Modification of Category I" of the Munitions List ("Temporary Modification") and a letter to Defense Distributed ("Letter"). It did so pursuant to a private settlement agreement, without following statutorily mandated procedures or providing any public notice, as a *fait accompli* before promulgating any final rule (or even considering public comments on a proposed rule). It also did so without considering the unique properties of 3D-printable firearms or the national and domestic security implications of permitting their "unlimited" release. The State Department's actions were unlawful, *ultra vires*, arbitrary and capricious, and unconstitutional, as established by the administrative record and other undisputed evidence. Its reckless and covert deregulation evaded Congress's "particularly rigorous oversight of the Munitions List" and public scrutiny as to an issue of national significance.

The Plaintiff States ask the Court to enter summary judgment in their favor, vacate the Temporary Modification and Letter, and permanently enjoin the Federal Defendants from removing the subject files from the Munitions List without following AECA's procedural requirements. The only potentially lawful way to remove the files is to comply with all mandatory procedures. In fact, the Federal Defendants say a compliant final rule is forthcoming, implicitly conceding the point even as they continue to defend the indefensible.

PLAINTIFF STATES' MOTION FOR
SUMMARY JUDGMENT
2:18-cv-01115-RSL

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Drive SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

## II.    STATEMENT OF UNDISPUTED FACTS

The filed administrative record is consistent with the undisputed facts alleged and established by the States at earlier stages of this litigation, as set forth below.

### A.    AECA and ITAR Govern Export Control of Weapons and Related Technical Data

The Arms Export Control Act (AECA) authorizes the President of the United States "to control the import and the export of defense articles and defense services" "[i]n furtherance of world peace and the security and foreign policy of the United States." 22 U.S.C. § 2778(a)(1). Items he designates as "defense articles and defense services" constitute the U.S. Munitions List. *Id.* The President delegated his authority to designate Munitions List items to the State Department, *see* Executive Order 13637 § 1(n)(i), and the Department promulgated the International Traffic in Arms Regulations (ITAR), which are administered by its Directorate of Defense Trade Controls.[2] 22 C.F.R. §§ 120–130; *see* Dkt. # 64 (Fed. Defs' Opp. to PI) at 2.

Category I of the Munitions List includes all firearms up to .50 caliber and related "technical data," 22 C.F.R. § 121.1(I)(a), i.e., data "required for the design, development, production, manufacture, assembly, operation, repair, testing, maintenance or modification of" such firearms, *id.* § 120.10(a). In cases where it is unclear whether a particular item is a defense article subject to ITAR, the Department makes an individualized "commodity jurisdiction" (CJ) determination using a procedure set forth in the ITAR. *See id.* § 120.4; Dkt. # 64 at 3.[3]

### B.    The Subject Files Can Produce Functional Weapons Using a 3D Printer

The files at issue in this case are Defense Distributed's 3D-printable Computer Aided Design (CAD) files that can be used to produce the "Liberator" pistol and other defense articles, plus other unidentified files that Defense Distributed "has and will continue to create and

---

[2] The Department, the Directorate, Michael R. Pompeo, Mike Miller, and Sarah Heidema are collectively referred to as the "State Department" or the "Federal Defendants."

[3] *See also* Declaration of Kristin Beneski, Ex. A (Aguirre Declaration), ¶¶ 19–20 (describing the CJ determination procedure).

PLAINTIFF STATES' MOTION FOR
SUMMARY JUDGMENT
2:18-cv-01115-RSL

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Drive SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

possess" in the future and any "similar files generated by its members and others."[4] A functional Liberator pistol can be made almost entirely of plastic using the CAD files and a commonly available 3D printer, with "considerably less know-how" than is needed to manufacture a firearm using "conventional technical data."[5] As then-Director of the Office of Defense Trade Controls Management Lisa V. Aguirre stated in a 2015 declaration, the "'Liberator' firearm included in DD's CAD designs presents a specific and unique risk to the national security and foreign policy interests of the United States" because it "is a plastic firearm which can be produced in a way as to be both fully operable and virtually undetectable by conventional security measures such as metal detectors."[6] In addition to being undetectable, privately manufactured 3D-printed weapons can be untraceable by law enforcement because they lack serial numbers.[7]

From 2013 to April 2018, the Department considered the Liberator files and other 3D-printable firearm files to be "ITAR-controlled technical data" that cannot be exported (including by posting on the borderless internet) without prior authorization.[8] In 2015, the Directorate conducted an individualized CJ review of Defense Distributed's files and confirmed that they are "technical data under Category I(i) of the [Munitions List]" and subject to ITAR regulation.[9]

## C.   The State Department Defends Its Regulation of the Subject Files, Defeating Defense Distributed at Every Stage of the Litigation

In May 2015, Defense Distributed sued the State Department in a Texas federal district court, seeking to enjoin it from regulating the files. *Def. Distributed v. U.S. Dep't of State*, Case

---

[4] Ex. L (*Def. Distributed*: Second Amended Complaint), ¶¶ 25, 36, 40, 44–45 (referenced in Ex. B (Temporary Modification) and Ex. C (Settlement Agreement), ¶ 12).

[5] Ex. A (Aguirre Declaration), ¶ 29(b).

[6] *Id.* ¶ 35; *see also id.* n.9 (the Liberator's detectable metal component "can be removed without rendering it inoperable"); Ex. D (*Def. Distributed*: Opp. to Mot. for PI) at 10 n.6 ("the Liberator remains operable without the inserted metal"); Ex. E (*Def. Distributed*: Mot. to Dismiss) at 1 (Defense Distributed's CAD files "unquestionably direct the functioning of a 3-D printer, cause it to manufacture firearms, or otherwise enable the creation of such firearms . . ."); Dkt. # 112 (Answer), ¶ 39 (admitting that "the Liberator is a plastic firearm" that is undetectable by walk-through metal detectors when it does not contain a removable piece of steel); *infra* at 22–23 & n.57.

[7] *See* Dkt. # 43-2 at 29–39 (McCord Decl.), ¶¶ 29–30, 33; *id.* at 40–44 (Kyes Decl.), ¶ 8; *id.* at 4–18 (Graham Decl.), ¶ 35.

[8] Ex. A, Ex. 2 (CJ letter dated 5/8/13); *see* Ex. E (filed 4/6/18).

[9] Exs. F, G (CJ determinations).

PLAINTIFF STATES' MOTION FOR
SUMMARY JUDGMENT
2:18-cv-01115-RSL

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Drive SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

No. 15-cv-372-RP (W.D. Tex.). In opposing Defense Distributed's motion for a preliminary injunction, the State Department argued that its regulation of the files was proper (and furthermore, vital) because, *inter alia*:

- "export of Defense Distributed's CAD files could cause serious harm to U.S. national security and foreign policy interests" that "warrant subjecting [the files] to ITAR's export licensing of technical data;"

- Defense Distributed's "CAD files constitute the functional equivalent of defense articles: capable, in the hands of anyone who possesses commercially available 3D printing equipment, of 'automatically' generating a lethal firearm that can be easily modified to be virtually undetectable in metal detectors and other security equipment;"

- "The State Department is particularly concerned that [Defense Distributed's] proposed export of undetectable firearms technology could be used in an assassination, for the manufacture of spare parts by embargoed nations, terrorist groups, or guerrilla groups, or to compromise aviation security overseas in a manner specifically directed at U.S. persons;" and

- both the government and the public "have a strong interest in curbing violent regional conflicts elsewhere in the world, especially when such conflict implicates the security of the United States and the world as a whole."[10]

In a supporting declaration, then-Director Aguirre explained that the unrestricted export of Defense Distributed's CAD files would result in the production of fully operable and undetectable plastic firearms, that their use to commit terrorism, piracy, assassinations, or other crimes would cause serious and long-lasting harm to the foreign policy and national security interests of the United States, that efforts to restrict the availability of defense articles to enemies of the United States would fail, that the proliferation of weapons and related technologies would contribute to a more dangerous international environment, and that their export would undercut the domestic laws of nations that have more restrictive firearm controls and the United States' foreign relations with those nations would suffer.[11]

The district court denied Defense Distributed's motion for a preliminary injunction, noting that the company's avowed purpose is to facilitate "*global* access to, and the collaborative

---

[10] Ex. D at 10–11.
[11] Ex. A, ¶ 35.

PLAINTIFF STATES' MOTION FOR
SUMMARY JUDGMENT
2:18-cv-01115-RSL

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Drive SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

production of, information and knowledge related to the three-dimensional ('3D') printing of arms," and that such activities "undoubtedly increase[] the possibility of outbreak or escalation of conflict" and are of the type Congress authorized the President to regulate through AECA.[12] The Fifth Circuit affirmed, citing both the national security implications of the CAD files and the permanent nature of the internet, and found the State Department had "asserted a very strong public interest in national defense and national security."[13]

On April 6, 2018, the State Department moved to dismiss Defense Distributed's lawsuit, reiterating that what was at stake was "the United States' ability to control the export of weapons—a system of laws and regulations that seeks to ensure that articles useful for warfare or terrorism are not shipped from the United States to other countries (or otherwise provided to foreigners) without authorization, where, beyond the reach of U.S. law, they could be used to threaten U.S. national security, U.S. foreign policy interests, or international peace and stability."[14] According to the State Department, the CAD files "unquestionably direct the functioning of a 3-D printer, cause it to manufacture firearms, or otherwise enable the creation of such firearms by those abroad" and the Department "has consistently and reasonably concluded that it is not possible to meaningfully curtail the overseas dissemination of arms if unfettered access to technical data essential to the production of those arms is permitted."[15]

**D.    Reversing Its Position, the State Department Settles with Defense Distributed by Agreeing to Remove the Subject Files from the U.S. Munitions List**

By April 30, 2018, the State Department had "reached a tentative settlement agreement" with Defense Distributed,[16] which was ultimately approved by Department officials.[17] Pursuant to the Settlement Agreement, the State Department changed course, abandoning its prior regulatory and litigation positions and permitting Defense Distributed to post the subject files on

---

[12] Ex. H (*Def. Distributed*: Order denying PI) at 8–9.
[13] Ex. I (*Def. Distributed*: 5th Cir Opinion) at 10, 12–13.
[14] Ex. E at 1.
[15] *Id.* at 1, 3, 7.
[16] Ex. M (*Def. Distributed*: Mot. to Stay) (filed 4/30/18).
[17] Ex. N (*Def. Distributed*: Joint Settlement Status Rpt.) (filed 6/28/18).

PLAINTIFF STATES' MOTION FOR
SUMMARY JUDGMENT
2:18-cv-01115-RSL

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Drive SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

the internet and distribute them to "any United States person." Specifically, the Department agreed to: (a) "draft and . . . fully pursue" a notice of proposed rulemaking (NPRM) and final rule revising Munitions List Category I to exclude the "technical data that is the subject of the Action"; (b) announce a "temporary modification" of Category I to exclude the data while the final rule is "in development"; (c) issue a letter to Defense Distributed advising that its files are "approved for public release (i.e., unlimited distribution)" and exempt from ITAR; and (d) acknowledge and agree that the Temporary Modification "permits any United States person" to "access, discuss, use, reproduce, or otherwise benefit from" the data, and that the Letter "permits any such person to access, discuss, use, reproduce or otherwise benefit from" Defense Distributed's files.[18] The Settlement Agreement contains no findings of fact or other information that could explain the Department's change of position or invalidate its prior analysis as to the security implications of "unlimited distribution" of the files.[19]

The State Department fulfilled each of these terms. On May 24, 2018, it published the promised NPRM in the Federal Register, with a public comment period ending on July 9. 83 Fed. Reg. 24,198. The NPRM does not specifically mention 3D-printed guns. *See id.* The Settlement Agreement was signed on June 29, in the midst of the comment period, but was not made public until July, when the comment period ended.[20] On July 27, the Department issued the Temporary Modification and the Letter. The Temporary Modification states that the Department "has determined that it is in the interest of the security and foreign policy of the United States to temporarily modify United States Munitions List (USML) Category I to exclude" the subject files. The "temporary" removal of these files was to "remain in effect while the final rule referenced in paragraph 1(a) of the Settlement Agreement is in development."[21] The Letter states

---

[18] Ex. C, ¶ 1(a)–(d).

[19] *See generally* Ex. C. The Settlement Agreement expressly states that it does not "reflect any agreed-upon purpose other than the desire of the Parties to reach a full and fair conclusion of the Action, and to resolve the Action without the time and expense of further litigation." *Id.* ¶ 5.

[20] Dkt. # 95 (Preliminary Injunction) at 7; Dkt. # 112 (Answer), ¶ 53 (admitting the Settlement Agreement was "made public in July 2018").

[21] Ex. B.

PLAINTIFF STATES' MOTION FOR
SUMMARY JUDGMENT
2:18-cv-01115-RSL

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Drive SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

1  that the Department "approve[s]" Defense Distributed's files "for public release (i.e., unlimited

2  distribution)," but offers no rationale for this.[22] Those actions prompted this lawsuit.

3  **E.      This Court Preliminarily Enjoins the Temporary Modification and Letter**

4          The Court granted the States' motion for a temporary restraining order, then converted

5  the order to a preliminary injunction.[23] The Court ruled that the States had standing to challenge

6  the Temporary Modification and Letter, were likely to succeed on the merits of their APA claim

7  that the Department removed items from the Munitions List "without the required Congressional

8  notice," "raised serious questions regarding the merits" of their claim that the Department's

9  actions were arbitrary and capricious, and established that the public interest "strongly supports"

10  an injunction to prevent irreparable harm caused by the files' public release on the internet.[24]

11  **F.      The State Department Offers Shifting, Unsupported Rationales for Its Actions**

12          In this litigation, the Federal Defendants offered a new and different reason for the State

13  Department's deregulation of the subject files. Contrary to the Temporary Modification's

14  assertion that the deregulation was "in the interest of the security and foreign policy of the United

15  States,"[25] the Federal Defendants conceded at oral argument that "undetectable plastic firearms

16  are a serious security threat."[26] Their new rationale is that "the Department determined" that non-

17  automatic and semi-automatic firearms under .50 caliber and related technical data "do not

18  provide the United States with a critical military or intelligence advantage" because these items

19  are "already commonly available," as stated in the August 15, 2018 Declaration of Sarah J.

20  Heidema.[27] But at oral argument, the Federal Defendants conceded as follows:

21          THE COURT: Of course you cannot buy a 3D-printed gun in any firearms

22

23  _____

[22] Ex. J (Letter) at 2.
[23] Dkt. # 23 (TRO); Dkt. # 95.
[24] Dkt. # 95 at 9–11, 12–15, 16–18, 20–24, 25.
[25] Ex. B.
[26] Ex. K (Verbatim Report of Proceedings on Aug. 21, 2018) at 35:4–8; *see also id.* at 24:12–14 ("The federal government agrees that undetectable plastic firearms pose a significant risk to domestic public safety.").
[27] Dkt. # 64-1 (Heidema Decl.) ¶¶ 19, 21; Dkt. # 64 (Fed. Defs' Opp. to PI) at 22. The "critical military or intelligence advantage" rationale also appears in the preamble to the 2018 NPRM, which is part of the Supplemental Record, but the NPRM does not specifically mention 3D-printed guns or the subject files.

PLAINTIFF STATES' MOTION FOR
SUMMARY JUDGMENT
2:18-cv-01115-RSL

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Drive SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

store in the United States that's undetectable and untraceable, can you?

MR. MYERS: No, Your Honor, if it were undetectable and untraceable, that would be a violation of the Undetectable Firearms Act.[28]

On October 19, 2018, the Federal Defendants submitted their designated "Administrative Record."[29] The States challenged the sufficiency of that record and moved to supplement it.[30] In response, the Federal Defendants agreed to partially supplement the record as requested,[31] and they filed supplemental materials (the "Supplemental Record") on December 20, 2018.[32]

Neither the Administrative Record nor the Supplemental Record contains any evidence to support either of the State Department's purported "determin[ations]" regarding the subject files.[33] The Supplemental Record contains over 3,000 public comments on the May 24, 2018 NPRM.[34] Although the NPRM does not specifically mention 3D-printed firearms, approximately 386 of the public comments do; of those, all are opposed to the NPRM.[35] The Federal Defendants represented in this litigation that they did not consider the 2018 NPRM comments in enacting the Temporary Modification and Letter.[36]

## G.  Final Rules Are Forthcoming, According to the Federal Defendants

The State Department's May 24, 2018 NPRM proposes to remove all non-automatic and semi-automatic firearms under .50 caliber and related technical data from the Munitions List, which would instead be governed by the Commerce Department's Export Administration Regulations (EAR). 83 Fed. Reg. 24,198. Unlike the ITAR, the EAR do not allow for regulation of items that have been posted on the internet—even for national security reasons. *See* 15 C.F.R. §§ 734.3(b)(3), 734.7(a)(4) (excluding from EAR regulatory jurisdiction any "published"

---

[28] Ex. K at 32:5–21.
[29] Dkt. # 116.
[30] Dkt. # 132. The Motion to Supplement is pending as of the filing of this motion.
[31] *See* Dkt. # 152 at 3.
[32] Dkt. # 158.
[33] *See generally id.*
[34] *See* Declaration of Jennifer D. Williams ¶ 4(25); Dkt. ## 158-5, 158-6, 158-7.
[35] Williams Decl. ¶ 4(25).
[36] *See* Dkt. # 152 at 6–7 (arguing that the original Administrative Record was "complete" and there was "no reason" for the Department to have considered the 2018 NPRM comments).

PLAINTIFF STATES' MOTION FOR
SUMMARY JUDGMENT
2:18-cv-01115-RSL

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Drive SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

information and software, including that made available for "[p]ublic dissemination (i.e., unlimited distribution) in any form . . . including posting on the Internet on sites available to the public . . . ."). The Commerce Department's May 24, 2018 companion NPRM explains that, for example, "if a gun manufacturer posts a firearm's operation and maintenance manual on the internet," the "manual would no longer be 'subject to the EAR.'" 83 Fed. Reg. 24,166, 24,167 (May 24, 2018) (citing 15 C.F.R. §§ 734.3(b), 734.7(a)).

As of the filing of this brief, neither State nor Commerce has issued a final rule. The Federal Defendants have represented in this litigation that final rules are forthcoming, Dkt. # 131, but offered "no details regarding the substance" of these rules, Dkt. # 169 (Order) at 2, including whether they will be consistent with the NPRMs as applied to the subject files.

## III.   ARGUMENT

### A.   Legal Standard

Under the APA, courts "shall . . . hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706. Where the material facts are not genuinely disputed and the questions before the Court are purely legal, the Court can resolve an APA challenge on a motion for summary judgment. Fed. R. Civ. P. 56; *King County v. Azar*, 320 F. Supp. 3d 1167, 1171 (W.D. Wash. 2018), *appeal dismissed*, 2018 WL 5310765 (9th Cir. Sept. 20, 2018) (citing *Fence Creek Cattle Co. v. U.S. Forest Serv.*, 602 F.3d 1125, 1131 (9th Cir. 2010)).

"[I]n APA cases, the Court's role is to determine whether, as a matter of law, evidence in the administrative record supports the agency's decision." *King County*, 320 F. Supp. 3d at 1171 (citing *Occidental Engineering Co. v. I.N.S.*, 753 F.2d 766, 769 (9th Cir. 1985)). Review is based on "the whole record," 5 U.S.C. § 706, which "consists of all documents and material directly or *indirectly* considered by the agency decision-makers and includes evidence contrary to the agency's position." *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989). Courts may also consider extra-record evidence when necessary to determine whether the agency

PLAINTIFF STATES' MOTION FOR
SUMMARY JUDGMENT
2:18-cv-01115-RSL

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Drive SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

has considered all relevant factors and explained its decision, has relied on documents not in the filed record, or has acted in bad faith. *San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 992 (9th Cir. 2014); *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005).

## B.   The State Department Failed to Provide the Required 30 Days' Notice to Congress and Exceeded Its Regulatory Authority

AECA prohibits the State Department from removing any item from the Munitions List "until 30 days after the date on which [it] has provided notice of the proposed removal to the Committee on International Relations of the House of Representatives and the Committee on Foreign Relations of the Senate" in accordance with established notification procedures. 22 U.S.C. § 2778(f)(1). The notice requirement furthers Congress's "particularly rigorous oversight of the Munitions List," *United States v. Zheng*, 590 F. Supp. 274, 278–79 (D.N.J. 1984), *vacated on other grounds*, 768 F.2d 518 (3d Cir. 1985), and was strengthened in 2002 in response to perceived attempts to evade that oversight, *see* H.R. Rep. No. 107-57, at 86–87 (2001).

The Federal Defendants concededly failed to provide this 30-day notice before issuing the Temporary Modification and Letter.[37] This failure is confirmed by the Administrative Record and the Supplemental Record, which contain no evidence that such notice was given.[38] Based on this statutory violation alone, the Court should invalidate the Temporary Modification and Letter. *See* 5 U.S.C. § 706(2)(A), (C), (D) (a reviewing court "shall . . . hold unlawful and set aside" agency action that is "not in accordance with law," "in excess of statutory jurisdiction, authority, or limitations," or "without observance of procedure required by law").

The Federal Defendants previously sought to justify their failure to provide notice by claiming that the Temporary Modification did not remove an "item" from the Munitions List, but the Court has already correctly ruled as a matter of law that the subject files at issue here are

---

[37] *See* Dkt. # 95 (Preliminary Injunction) at 12–13 & n.7 (noting that Federal Defendants "acknowledge" the notice requirement and that the Heidema Declaration "confirms" the notice was not given); Dkt. # 64-1 ¶ 30 (stating that "Congress will receive the necessary notifications" only in connection with a final rule).

[38] *See generally* Dkt. # 116 (Admin. Record); Dkt. # 133 (Williams Decl.) ¶ 4 (summarizing contents of Administrative Record); Dkt. # 158 (Supp. Record; Second Williams Decl.) ¶ 4 (summarizing contents of Supplemental Record).

PLAINTIFF STATES' MOTION FOR
SUMMARY JUDGMENT
2:18-cv-01115-RSL

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Drive SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

"items" or "articles" to which the notice requirement applies. Dkt. # 95 at 14–15; *see* 22 U.S.C. § 2778(a)(1) (designated "defense articles" are "items" that "constitute the United States Munitions List"); 22 C.F.R. § 121.1 (Munitions List does not enumerate every controlled "article" or "item," but describes "categories" of items); *United States v. Zhen Zhou Wu*, 711 F.3d 1, 12 (1st Cir. 2013) (the Munitions List is "a series of categories describing the kinds of items that qualify as 'defense articles'"). AECA's 30-day notice requirement therefore applies, and was not followed in this case. The Temporary Modification and Letter are procedurally defective and must be set aside for this reason alone.

In addition to violating AECA's procedural requirements, the Temporary Modification and Letter exceeded the State Department's delegated authority under AECA and violated the limits on federal power established by the Tenth Amendment by purporting to authorize "*any* United States person" to "use" the files to print their own undetectable and untraceable weapons, and to permit "unlimited distribution" of the files.[39] The States have numerous laws restricting the possession and use of firearms by "United States persons" and others, including laws prohibiting ineligible persons from possessing firearms, requiring background checks as a condition of acquiring firearms, and regulating the manufacture of firearms. *See* Dkt. # 29 (FAC), ¶¶ 68–217 (citing state gun-safety laws). Several of the Plaintiff States have also enacted or proposed laws that specifically regulate 3D-printed guns. *See* N.J. SB 2465; Wash. SB 5061; D.C. B23-0018; R.I. S0084; Md. SB 8. The Department's overly broad authorization well exceeds the scope of its authority under AECA to regulate exports, and on its face purports to abrogate the states' police powers to enforce their gun-safety laws in violation of the Tenth Amendment. *See* U.S. Const. amend. X ("The powers not delegated to the United States by the Constitution . . . are reserved to the States respectively, or the people."); *Bond v. United States*, 572 U.S. 844, 854 (2014) ("The States have broad authority to enact legislation for the public good—what we have often called a 'police power.'"); *cf. District of Columbia v. Heller*, 554

---

[39] Ex. C, ¶ 1(d) (emphasis added); Ex. J at 2.

PLAINTIFF STATES' MOTION FOR
SUMMARY JUDGMENT
2:18-cv-01115-RSL

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Drive SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

1    U.S. 570, 626–27 (2008) (acknowledging validity of "longstanding prohibitions on the

2    possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms

3    in sensitive places such as schools and government buildings, or laws imposing conditions and

4    qualifications on the commercial sale of arms"). The States' ability and authority to enforce their

5    gun-safety laws is undermined by the State Department's purported authorization of "any United

6    States person" to "use" the files to print their own undetectable and untraceable weapons.

7    **C.    The State Department's Actions Were Arbitrary and Capricious**

8            In addition to violating both AECA and the U.S. Constitution, the Temporary

9    Modification and Letter are arbitrary and capricious, and should be invalidated for that

10   independent reason. Agency action is "arbitrary and capricious," and must be set aside, if the

11   agency "entirely failed to consider an important aspect of the problem, offered an explanation

12   for its decision that runs counter to the evidence before the agency, or is so implausible that it

13   could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle*

14   *Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Agency

15   action is also arbitrary and capricious if it is not based on a "reasoned analysis" that indicates

16   the agency "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action

17   including a rational connection between the facts found and the choice made." *Id.* at 42–43

18   (citation and internal quotation marks omitted). When an agency reverses position, it must

19   provide a "reasoned explanation" for "disregarding facts and circumstances that underlay or

20   were engendered by the prior policy," *F.C.C. v. Fox Television Studios, Inc.*, 556 U.S. 502, 516

21   (2009), and "must show that there are good reasons for the new policy," *id.* at 515. In short, to

22   survive arbitrary-and-capricious review, agency action must be demonstrably "logical and

23   rational." *Allentown Mack Sales & Service, Inc. v. N.L.R.B.*, 522 U.S. 359, 374 (1998).

24           **1.    The administrative record fails to explain or support the agency's asserted
                      rationales for abruptly reversing its position.**
25
26   Judicial review of agency action "is based on the administrative record and the basis for

PLAINTIFF STATES' MOTION FOR
SUMMARY JUDGMENT
2:18-cv-01115-RSL

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Drive SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

the agency's decision must come from the record." *Ass'n of Irritated Residents v. E.P.A.*, 790 F.3d 934, 942 (9th Cir. 2015); *see also, e.g.*, *Choice Care Health Plan, Inc. v. Azar*, 315 F. Supp. 3d 440, 443 (D.D.C. 2018) (to survive APA review, "the facts on which the agency purports to have relied" must "have some basis in the record") (internal quotation marks omitted). Absent compliance with this basic requirement, a reviewing court would be unable to measure agency action against the relevant governing standard. *See, e.g.*, *U.S. Lines, Inc. v. Fed. Mar. Comm'n*, 584 F.2d 519, 533 (D.C. Cir. 1978) (observing that the court could not "determine whether the final agency decision reflect[ed] the rational outcome of the agency's consideration of all relevant factors," as required by the APA, because it "ha[d] no idea what factors . . . were in fact considered by the agency").

Here, the Temporary Modification itself is the *only* document in the filed administrative record that reflects any reason for the State Department's reversal of its position on 3D-printable firearm files.[40] Neither the Letter nor the Settlement Agreement, nor any other part of the filed record, memorializes the Department's "determin[ation]" or offers any reasoning to support it.[41] The Temporary Modification asserts, with no explanation or elaboration, that the State Department "has determined that it is in the interest of the security and foreign policy of the United States to temporarily modify the United States Munitions List to exclude" the subject files. Simply stating that the Department "has determined" that permitting dissemination via the internet is somehow "in the interest" of U.S. national security and foreign policy is insufficient to survive judicial review. The Department must explain *why* it made this determination, demonstrating a "rational connection between the facts found and the choice made." *State Farm*, 463 U.S. at 43. But the filed record is completely devoid of any relevant "facts found," much less a "rational connection" to the decision to deregulate the subject files.

---

[40] *See* Ex. B; *see generally* Dkt. ## 116 (Admin. Record), 158 (Supp. Record).

[41] *See* Ex. J; Ex. C; Dkt. # 95 at 6 ("No findings of fact or other statements are provided in the agreement that could explain the federal government's dramatic change of position or that address, much less invalidate, its prior analysis regarding the likely impacts of publication on the United States' national security interests."); *see generally* Dkt. ## 116, 158.

PLAINTIFF STATES' MOTION FOR
SUMMARY JUDGMENT
2:18-cv-01115-RSL

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Drive SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

The absence of evidence or explanation is unsurprising, since the Federal Defendants conceded in this litigation that 3D-printable firearms *do* pose a "serious security threat," and offered a *different* explanation for the deregulation: that the subject files do not provide a "critical military or intelligence advantage" because they are "already commonly available[.]"[42] This new explanation, which is supported only by the *post hoc* Heidema Declaration, merits no consideration because "[t]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743 (1985); *San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 602 (9th Cir. 2014) (same). In any case, neither the Heidema Declaration itself nor any part of the administrative record provides a reasoned explanation for the new rationale as applied to the subject files. In fact, the Federal Defendants conceded in these proceedings that undetectable and untraceable 3D-printable firearms are *not* commonly available.[43]

Furthermore, far from acknowledging that the Temporary Modification and Letter represent a reversal of its regulatory position or offering a rational explanation for this (as is required), the State Department concealed the reversal until it was a *fait accompli*. *See Fox Television Stations*, 556 U.S. at 515 ("the requirement that an agency provide reasoned explanation for its action would ordinarily demand that it display awareness that it *is* changing position"); *SNR Wireless LicenseCo, LLC v. FCC*, 868 F.3d 1021, 1029 (D.C. Cir. 2017) ("To provide a satisfactory explanation, an agency must acknowledge and explain any departure from its precedents."). The State Department privately reached the tentative settlement in the *Defense Distributed* case in April 2018, which became final on June 29. Meanwhile, the comment period for the NPRM (which does not even mention 3D-printed firearms) was still open through July 9. The Settlement Agreement was not publicly disclosed until July. The Department issued the Temporary Modification and Letter on July 27 without the required notice to Congress or any

---

[42] Dkt. # 64 at 22; Dkt. # 64-1 ¶¶ 19, 21.
[43] *See* Ex. K at 32:5–21.

PLAINTIFF STATES' MOTION FOR
SUMMARY JUDGMENT
2:18-cv-01115-RSL

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Drive SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

other advance warning or opportunity for public input on the reversal.

In sum, neither the original rationale asserted in the Temporary Modification, nor the new rationale asserted in this case, finds any factual support or rational explanation in the record. Instead of acknowledging or explaining its reversal, the Department concealed it, and would have entirely evaded oversight and review if not for this lawsuit. These basic failures render the Temporary Modification and Letter arbitrary and capricious.

### 2. The agency failed to consider the specific properties of 3D-printed guns and disregarded the unique threats they pose.

Not only are the State Department's shifting rationales entirely unsupported, but the administrative record also demonstrates that the Department failed to consider the specific properties of 3D-printed guns and their unique threats to world peace, national security, and foreign policy. In ignoring these issues, the Department disregarded the factors Congress deemed relevant to export control, as well as the evidence supporting the Department's previous regulation of the subject files to further AECA's stated purposes.

An agency's action is arbitrary and capricious where it "entirely failed to consider an important aspect of the problem" or "offered an explanation for its decision that runs counter to the evidence before the agency[.]" *State Farm*, 463 U.S. at 43. The agency must consider all "relevant factors," *id.* at 42—in particular, the factors "Congress intended" the agency to consider, *id.* at 55. And the agency cannot pick and choose what evidence to rely on and disregard the rest; judicial review is based on the "whole" record, i.e., "all documents and material directly or *indirectly* considered by the agency decision-makers," including "evidence contrary to the agency's position." *Thompson*, 885 F.2d at 555.

Congress directed that export regulation under AECA must be "[i]n furtherance of world peace and the security and foreign policy of the United States." 22 U.S.C. § 2778(a)(1). The State Department based its previous regulation of the subject files squarely on fulfilling these purposes, invoking threats to "U.S. national security, U.S. foreign policy interests, or

PLAINTIFF STATES' MOTION FOR
SUMMARY JUDGMENT
2:18-cv-01115-RSL

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Drive SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

international peace and stability" in its April 6, 2018 motion to dismiss in the *Defense Distributed* case.[44] Elsewhere in its briefing, the Department emphasized the unique dangers posed by the subject files, which "constitute the functional equivalent of defense articles" and can be used to "automatically" generate a "lethal firearm" that is "virtually undetectable in metal detectors and other security equipment."[45] The Department expressed its particular concern that such "undetectable firearms technology could be used in an assassination, for the manufacture of spare parts by embargoed nations, terrorist groups, or guerilla groups, or to compromise aviation security overseas in a manner specifically directed at U.S. persons."[46] The Supplemental Record amply supports the conclusion that the subject files pose unique threats to U.S. national security and foreign policy, as reflected in the Department's own CJ determinations, the Aguirre Declaration, and the Department's briefing in the *Defense Distributed* case.[47] Moreover, hundreds of the public comments on the 2018 NPRM, which the Department received before issuing the Temporary Modification and letter on July 27, 2018 (but admittedly did not consider), oppose the rule on the grounds that it would deregulate 3D-printable firearms.[48]

Despite this evidence, the Department decided to deregulate the subject files sometime during a three-week period in April 2018, providing no "reasoned explanation" for disregarding the facts and circumstances supporting its previous position. *Fox Television Studios*, 556 U.S. at 516; *see also SNR Wireless*, 868 F.3d at 1029 (D.C. Cir. 2017); *City of Kansas City, Mo. v. Dep't of Hous. & Urban Dev.*, 923 F.2d 188, 194 (D.C. Cir. 1991) ("Agency action based on a factual premise that is flatly contradicted by the agency's own record does not constitute reasoned administrative decisionmaking, and cannot survive review under the arbitrary and capricious standard."). As of April 6, 2018, the Department's position was that distributing the subject files on the internet would "threaten U.S. national security, U.S. foreign policy interests, or

---

[44] Ex. E at 1.
[45] Ex. D at 10.
[46] *Id.*
[47] *See* Exs. A, D, E, F, G.
[48] *See* Williams Decl., ¶ 4(25).

16

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Drive SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

international peace and stability." By April 30, 2018, the Department had reached the settlement agreement that resulted in the Temporary Modification and Letter, which deregulated the subject files and approved them for "unlimited distribution."

Even though the Department was well aware of the characteristics and qualities of undetectable firearms that render them uniquely dangerous, as reflected in its own CJ determinations and its position in the *Defense Distributed* proceedings, there is no indication in the record that it considered them in connection with the deregulation. This is consistent with the Federal Defendants' statements at oral argument indicating that they did not consider these unique factors until they took a "further look" at the issue in light of this Court's TRO:

> MR. MYERS: Your Honor, since Your Honor entered the TRO, the government has been further studying and further looking into this issue, as the press secretary I think indicated she was -- or the President was welcoming that opportunity. That further look has concluded. And the government's position on this issue has not changed.[49]

Further, the Department admitted it did not consider the public comments on the 2018 NPRM— even the hundreds of comments that oppose the rule due to its implications for 3D-printed guns, which merit a meaningful response. *See Home Box Office, Inc. v. F.C.C.*, 567 F.2d 9, 35–36 (D.C. Cir. 1977) ("[T]he opportunity to comment is meaningless unless the agency responds to significant points raised by the public.").

As noted above, the Federal Defendants' *post hoc* rationale for deregulating the subject files—that they do not provide a "critical military or intelligence advantage"—need not be considered because it is not reflected or supported anywhere in the filed record. But even taking it at face value, this explanation fails to account for all of the factors Congress directed the Department to consider. A defense article can threaten "world peace and the security and foreign policy of the United States"—as the subject files do—regardless of whether it provides a "critical military or intelligence advantage." Yet as the Court previously noted, the Department "appears to have evaluated the export controls on small caliber firearms only through the prism of whether

---

[49] Ex. K at 34:3–8.

PLAINTIFF STATES' MOTION FOR
SUMMARY JUDGMENT
2:18-cv-01115-RSL

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Drive SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

1    restricting foreign access would provide the United States with a military or intelligence

2    advantage." Dkt. # 95 at 18. This is borne out by the filed record, which contains no evidence

3    whatsoever that any other factors were considered. The Department's asserted rationale fails to

4    account for the national security and foreign policy factors Congress directed it to consider.

5    "Such a failure to address 'an important aspect of the problem' that is factually substantiated in

6    the record is unreasoned, arbitrary, and capricious decisionmaking." *Humane Soc'y of U.S. v.*

7    *Zinke*, 865 F.3d 585, 606 (D.C. Cir. 2017) (quoting *State Farm*, 463 U.S. at 43)).

8            **3.      The agency's stated rationales are pretextual as applied to 3D-printable
9                      firearm files.**

10           The available evidence strongly suggests that the State Department's asserted rationales

11   for deregulating the subject files are pretextual. "[C]ourts have not hesitated to find that reliance

12   on a pretextual justification violates the APA." *New York v. U.S. Dep't of Commerce*, --- F. Supp.

13   3d ----, 2019 WL 190285, at *112 (S.D.N.Y. Jan. 15, 2019) (citing, *inter alia*, *Woods Petroleum*

14   *Corp. v. U.S. Dep't of Interior*, 18 F.3d 854, 859 (10th Cir. 1994) (setting aside agency action

15   because the "sole reason" for the action was "to provide a pretext" for the agency's "ulterior

16   motive")). Because the basis for the agency's action must be disclosed in the record, "[i]t follows

17   that a court cannot sustain agency action founded on a pretextual or sham justification that

18   conceals the true 'basis' for the decision." *Id.* The *New York* court concluded, based on a number

19   of factors, that the Commerce Department's rationale for adding a citizenship question to the

20   U.S. Census was pretextual. *See id.* at *112–115. Many similar factors are also present here.

21           First, the Temporary Modification and Letter were highly procedurally irregular. As

22   discussed above, they were issued without the required notice to Congress, or any other advance

23   notice that would have afforded an opportunity for public scrutiny, and they partially effectuated

24   a non-final proposed rulemaking. This concealed the deregulation from public view until it was

25   complete, and deprived Congress of its right to exercise its "particularly rigorous oversight" of

26   the Munitions List. *See New York*, 2019 WL 190285, at *112 ("conspicuous procedural

PLAINTIFF STATES' MOTION FOR
SUMMARY JUDGMENT
2:18-cv-01115-RSL

18

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Drive SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

1    irregularities" supported finding of pretext, as did a "failure to disclose" that prevented subject

2    matter experts from "conducting rigorous testing").

3        Second, the evidence shows that the State Department decided to deregulate the subject

4    files abruptly, sometime during the three-week period from April 6 to April 30, 2018, in

5    connection with the *Defense Distributed* settlement. Even if the global state of affairs had

6    somehow changed drastically during the three-week period in which the reversal occurred—an

7    improbable scenario for which there is no evidence—this short period would not have afforded

8    enough time to reach a reasoned "determin[ation]" that permanent deregulation no longer

9    presented a national security or foreign policy threat. The Federal Defendants have sought to

10   justify the Temporary Modification and Letter by asserting they are of a piece with the May 24,

11   2018 NPRM, but this only underscores their irregularity, since the NPRM was not (and as of this

12   filing, still is not) final, and the deregulation decision was made months before the NPRM

13   comment period closed. *See New York*, 2019 WL 190285, at *112 (finding pretext where

14   decision was made before the alleged basis for the decision occurred).

15       Third, evidence outside the filed record indicates that the Department's decision was

16   based on a reason not disclosed in the record. Heather Nauert, then the State Department

17   spokesperson, stated at a July 31, 2018 press briefing that the "Department of Justice suggested

18   that the State Department and the U.S. Government settle this [*Defense Distributed*] case, and

19   so that is what was done. . . . We took the advice of the Department of Justice, and here we are

20   right now."[50] This "following DOJ's advice" rationale does not appear anywhere in the filed

21   record. At the same time, Ms. Nauert acknowledged that the State Department still had "equity"

22   in the matter of 3D-printed guns because it "wants to prevent the wrong people from acquiring

23   weapons overseas."[51] This is inconsistent with deregulation being "in the interest of" U.S.

24   national security and foreign policy and is further evidence of pretext. *See New York*, 2019 WL

25

26   [50] Dkt. # 35-1 at 5 of 46.
     [51] *Id.*

19

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Drive SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

190285, at *112 (extra-record statements by Commerce Department official contradicted agency's stated rationale for its decision, supporting finding that this rationale was pretextual); *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402 (1971) (consideration of extra-record evidence is appropriate where the record "does not disclose the factors that were considered" or the agency's "construction of the evidence").

Fourth, the original Administrative Record filed by the State Department failed to include evidence that was before it when it made its decision, including the Department's own CJ determinations related to the subject files, the Aguirre Declaration, and complete records from the *Defense Distributed* litigation in which the Department's regulation of the files was directly at issue. *See New York*, 2019 WL 190285, at *113, *48 ("curated and highly sanitized nature" of initial administrative record suggested intent to conceal true basis for decision).

In sum, the stated bases for the State Department's deregulation of the subject files—that deregulation is "in the interest of" U.S. national security and foreign policy, or that the subject files "do not provide a critical military or intelligence advantage"—are pretextual. "Because [the State Department's] stated rationale was not [its] actual rationale, [it] did not comply with the APA's requirement that [it] 'disclose the basis of [its] decision.'" *New York*, 2019 WL 190285, at *115 (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 167–168 (1962)).

**D.    The Court Should Vacate the State Department's Actions and Enjoin It from Further Attempts to Unlawfully Deregulate the Files**

The Temporary Modification and Letter should be vacated. When agency action is found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," the APA provides that the reviewing court "shall . . . hold unlawful and set aside" the agency action. 5 U.S.C. § 706(2). Vacatur is the "normal remedy" for unlawful agency action. *Allina Health Servs. v. Sebelius*, 746 F.3d 1102, 1110 (D.C. Cir. 2014). Failure to provide required notice of the agency action is a "fundamental flaw," *id.*, and failure to address important aspects of the problem and ignoring relevant evidence are "major shortcomings," *Humane Soc'y*, 865 F.3d at

PLAINTIFF STATES' MOTION FOR
SUMMARY JUDGMENT
2:18-cv-01115-RSL

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Drive SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

614, that make vacatur the appropriate remedy. Here, the Temporary Modification and Letter suffer from all of these fatal deficiencies and more. Further, this is not a case in which "the egg has been scrambled," *Allina*, 746 F.3d at 1110–1111; vacatur would simply restore the status quo and "allow the [pending final rule] to take effect," *Nat'l Venture Capital Ass'n v. Duke*, 291 F. Supp. 3d 5, 21 (D.D.C. 2017)—assuming a final rule is lawfully promulgated.[52]

The States additionally ask the Court to enjoin the Federal Defendants from issuing any subsequent "temporary modification" or otherwise removing the subject files from the Munitions List or permitting their export without providing congressional notice as required by AECA.[53] Where vacatur of a deregulation decision is not "sufficient to redress [plaintiffs'] injury," a court may issue an injunction that has a "meaningful practical effect independent of its vacatur." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165–66 (2010). Here, absent a permanent injunction prohibiting further procedurally defective agency actions, the State Department may attempt another end-run around AECA's requirements before any final rule goes into effect. *See New York*, 2019 WL 190285, at *122 (permanent injunction was "necessary to make . . . vacatur effective, as it prevents [the agency] from arriving at the same decision *without* curing the problems" with its initial action). The States could once again face an abrupt final deregulation that threatens immediate, serious, and irreparable harm, and leaves them with no remedy aside from seeking another emergency TRO. Notably, the Department's position is that congressional notice was not required, *see* Dkt. # 64 at 18–20, and it has continued to defend this lawsuit without ever acknowledging the impropriety of its use of ITAR's "temporary modification"

---

[52] The States anticipate that any final rule that removes the subject files from the Munitions List would be arbitrary and capricious for many of the same reasons discussed herein. Of course, the issue is not ripe at this time, since no final rule has been published.

[53] The Private Defendants have previously opposed the entry of injunctive relief. *See* Dkt. ## 8, 11, 63. Their theories regarding the constitutionality of regulating the subject files are at best tangential to this case, in which the States merely ask the Court to invalidate procedurally defective and unlawful agency actions and require the State Department to follow the law in making regulatory changes that affect the subject files. Federal regulation of Munitions List items has repeatedly survived constitutional challenge, *see United States v. Chi Mak*, 683 F.3d 1126, 1136 (9th Cir. 2012), but to the extent there are any constitutional implications with respect to the subject files, they are not squarely presented here and the Court need not consider them.

PLAINTIFF STATES' MOTION FOR
SUMMARY JUDGMENT
2:18-cv-01115-RSL

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Drive SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

procedure to bypass the notice requirement and prematurely effectuate a non-final rule. *See United States v. Laerdal Mfg. Corp.*, 73 F.3d 852 (9th Cir. 1995) ("defendant's recognition of the wrongful nature of its conduct" is a factor in whether a permanent injunction should issue). Even if a final rule that complies with the notice requirement is published in the near future, it may not go into effect until six months later. *See* 83 Fed. Reg. 24,200 (May 24, 2018) (rules revising Munitions List categories typically have a "delayed effective date of 180 days"). Another procedurally improper deregulation in the meantime would again leave the states with no option other than filing yet another complaint and seeking yet another TRO.

The standards for permanent and preliminary injunctions are "essentially the same," except that to obtain permanent relief, the plaintiff must show "actual success" on the merits rather than a likelihood of success. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 32 (2008). Success on the merits, including as to procedural defectiveness, is established above. The irreparable harm the States will suffer if the files are permitted to be published online, and the strong public interest in preventing this, is also well established in the record of these proceedings. *See* Dkt. # 95 at 20–25; Dkt. # 43 at 19–24 & accompanying citations. Anyone with access to a public or commercially available, relatively inexpensive 3D printer[54]—regardless of their age, mental health status, or criminal history—would be able to download and instantly use the files to make functional weapons, fulfilling Defense Distributed co-founder Cody Wilson's "crypto-anarchist" vision of "evading and disintermediating" gun-safety regulations.[55] 3D-printed weapons will only become deadlier as the technology continues to evolve.[56]

3D-printable firearms pose substantial threats to public health and safety. The Liberator and other weapons made of plastic can evade metal detectors,[57] which are one of the most

---

[54] Patel Decl., ¶¶ 9, 17–18, 26; Scott Decl., ¶¶ 4–5; Racine Decl., ¶¶ 3–6. Unless otherwise indicated, all declarations cited in this section are filed at Dkt. # 43-2. An index of these declarations is filed at Dkt. # 43-1.

[55] *See* Dkt. # 44 (Rupert Decl.), Ex. 16.

[56] *See* Patel Decl., ¶¶ 21–26 (discussing emerging materials and technology that could be used to make deadlier weapons).

[57] McCord Decl., ¶¶ 11–13; Hosko Decl., ¶ 14; Bisbee Decl., ¶ 18; Dkt. # 29-1, Ex. 2 (Johanknecht Decl.), ¶ 7; Dkt. # 29-1, Ex. 3 (Best Decl.), ¶ 7; Coyne Decl., ¶ 4; Camper Decl., ¶ 7; Kyes Decl., ¶ 17.

PLAINTIFF STATES' MOTION FOR
SUMMARY JUDGMENT
2:18-cv-01115-RSL

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Drive SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

significant forms of protection for public facilities such as airports, stadiums, courthouses and other government buildings, schools,[58] and prisons.[59] For example, 3D-printable weapons will make it possible for students to manufacture their own weapons that could be used in a school shooting (and could evade metal detectors that some schools are installing to prevent such shootings).[60] 3D-printed weapons such as the Liberator do not always look like conventional firearms, and children may mistake them for toys and play with them—a common reason for accidental gun deaths among children.[61]

3D-printable firearms would compromise law-enforcement efforts. They can be privately manufactured with no serial numbers,[62] hampering law enforcement's ability to "trace" a firearm to its original seller and subsequent purchasers, which can be used to solve crimes and combat gun trafficking.[63] Untraceable "ghost guns" of the non-3D-printed variety are already increasingly popular[64]—and increasingly being used to commit horrific crimes, including multiple mass shootings in California.[65] 3D-printed weapons would also undermine law enforcement efforts to forensically match bullets used to commit crimes with the gun from which they are shot, both because plastic weapons do not leave "ballistic fingerprints" on a bullet or casing,[66] and because the firing conditions cannot be reliably or safely replicated since the gun is unstable and dangerous even to the shooter.[67] For many of these reasons, 3D-printed weapons may be particularly attractive to criminal enterprises, which would likely embrace the technology

---

[58] McCord Decl., ¶¶ 7–8, 13, 18–21; Camper Decl., ¶ 7; Rivara Decl., ¶ 7; Hemenway Decl., ¶ 21; Wintemute Decl., ¶ 14.

[59] See generally Herzog Decl.

[60] Rivara Decl., ¶ 7; see also Hemenway Decl., ¶ 21; Wintemute Decl., ¶ 14.

[61] Rivara Decl., ¶ 6; Hemenway Decl., ¶ 20; Wintemute Decl., ¶ 13.

[62] McCord Decl., ¶¶ 29–30, 33; Kyes Decl., ¶ 8; Graham Decl., ¶ 35.

[63] Hosko Decl., ¶¶ 11, 11; McCord Decl., ¶¶ 30–32, 34, 40; Bisbee Decl., ¶¶ 17–18; Camper Decl., ¶¶ 6, 8; Kyes Decl., ¶¶ 8, 11, 13, 15–16; Graham Decl., ¶¶ 16, 32; Dkt. # 29-1, Ex. 2 (Johanknecht Decl.), ¶ 8.

[64] Graham Decl., ¶¶ 17–18; id. ¶ 30 (noting increase in prohibited persons who possess ghost guns).

[65] Id., ¶ 25(a)–(t), 33.

[66] Camper Decl., ¶ 12; see also McCord Decl., ¶ 35 ("law enforcement agencies and prosecutors will not be able to rely on forensic experts to match bullets used to commit crimes with [3D-printed] firearms").

[67] Camper Decl., ¶¶ 12–13; see Dkt. # 29, ¶¶ 74, 95, 109–10, 126, 131, 142, 150, 154, 157–58, 165, 170–71, 180–82, 207 (citing States' laws establishing background-check requirements).

PLAINTIFF STATES' MOTION FOR
SUMMARY JUDGMENT
2:18-cv-01115-RSL

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Drive SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

for use in engaging in the violence, proceeds-collection, and retaliation that commonly attends the work of those organizations.[68]

3D-printable firearms also create a heightened risk of terrorist attacks, as the State Department has acknowledged.[69] Undetectable and untraceable firearms could be used by foreign terrorist organizations for attacks within the United States, including against persons residing in or visiting the Plaintiff States.[70] The apparent effectiveness of metal detectors in hindering such attacks would become meaningless if undetectable weapons became widely available; for example, "the 72,000 fans who pack CenturyLink for a Seahawks game suddenly become much more vulnerable to terrorists who seek to cause as much bloodshed as possible."[71]

Such "ongoing and concrete harm to [the States'] law enforcement and public safety interests . . . constitutes irreparable harm." *Maryland v. King*, 567 U.S. 1301 (2012) (Roberts, C.J., as Circuit Justice). In opposing entry of a preliminary injunction, the Federal Defendants "d[id] not argue that any of these injuries are reparable." Dkt. # 95 at 22. The Federal Defendants would be unharmed by entry of a permanent injunction, which will merely prevent them from circumventing AECA's procedural requirements and ensure that any future agency action affecting export control of the subject files is AECA-compliant.

## IV.   CONCLUSION

For the reasons above, the Plaintiff States respectfully request that the Court enter summary judgment in their favor, vacate and set aside the Temporary Modification and Letter, and permanently enjoin the State Department from taking any other action to permit export of the subject files absent compliance with AECA.

---

[68] Hosko Decl., ¶¶ 15–16; McCord Decl., ¶¶ 39–41; Graham Decl., ¶ 37.
[69] Ex. D at 10–11.
[70] McCord Decl., ¶¶ 14–22; *see also* Dkt. # 44-1, Ex. 9 (Sen. Menendez letter 8/8/2018). These concerns are perhaps particularly salient for the District of Columbia, which is entirely urban, densely populated, hosts hundreds of heavily attended events each year, including numerous political marches and protests, and is filled with thousands of high-ranking federal officials and diplomats from around the world. *Id.*, Ex. 20 (Lanier Decl.), ¶¶ 13–15; *see also id.*, Ex. 21 (Op-ed by former Chief of U.S. Capitol Police and Senate Sergeant at Arms).
[71] McCord Decl., ¶¶ 17–18, 22.

PLAINTIFF STATES' MOTION FOR
SUMMARY JUDGMENT
2:18-cv-01115-RSL

24

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Drive SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

1    DATED this 15th day of February, 2019.

2

3                                      ROBERT W. FERGUSON
                                       Attorney General of Washington

4
                                       */s/ Jeffrey Rupert*
5                                      JEFFREY RUPERT, WSBA #45037
                                       Division Chief
6                                      TODD BOWERS, WSBA #25274
                                       Deputy Attorney General
7                                      KRISTIN BENESKI, WSBA #45478
                                       JEFFREY T. SPRUNG, WSBA #23607
8                                      ZACHARY P. JONES, WSBA #44557
9                                      Assistant Attorneys General
                                       JeffreyR2@atg.wa.gov
10                                     ToddB@atg.wa.gov
                                       JeffS2@atg.wa.gov
11                                     KristinB1@atg.wa.gov
                                       ZachJ@atg.wa.gov
12
                                       *Attorneys for Plaintiff State of Washington*
13
                                       XAVIER BECERRA
14                                     Attorney General of California

15                                     */s/ Nelson R. Richards*
                                       NELSON R. RICHARDS, *admitted pro hac vice*
16                                     Deputy Attorney General
                                       Nelson.Richards@doj.ca.gov
17                                     *Attorneys for Plaintiff State of California*

18
                                       PHIL WEISER
19                                     Attorney General of Colorado

20                                     */s/ Matthew D. Grove*
                                       MATTHEW D. GROVE, *admitted pro hac vice*
21                                     Assistant Solicitor General
22                                     Matt.Grove@coag.gov
                                       *Attorneys for Plaintiff State of Colorado*
23
                                       WILLIAM TONG
24                                     Attorney General of Connecticut

25                                     */s/ Maura Murphy Osborne*
26                                     MAURA MURPHY OSBORNE, *admitted pro hac vice*

PLAINTIFF STATES' MOTION FOR
SUMMARY JUDGMENT
2:18-cv-01115-RSL

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Drive SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

Assistant Attorney General
Maura.MurphyOsborne@ct.gov
*Attorneys for Plaintiff State of Connecticut*

KATHLEEN JENNINGS
Attorney General of Delaware

/s/ Ilona M. Kirshon
ILONA M. KIRSHON, *admitted pro hac vice*
Deputy State Solicitor
PATRICIA A. DAVIS, *admitted pro hac vice*
Deputy Attorney General
Ilona.Kirshon@state.de.us
PatriciaA.Davis@state.de.us
*Attorneys for Plaintiff State of Delaware*

KARL A. RACINE
Attorney General for the District of Columbia

/s/ Robyn Bender
ROBYN BENDER, *admitted pro hac vice*
Deputy Attorney General
JIMMY ROCK, *admitted pro hac vice*
Assistant Deputy Attorney General
ANDREW J. SAINDON, *admitted pro hac vice*
Senior Assistant Attorney General
Robyn.Bender@dc.gov
Jimmy.Rock@dc.gov
Andy.Saindon@dc.gov
*Attorneys for Plaintiff District of Columbia*

CLARE E. CONNORS
Attorney General of Hawaii

/s/ Robert T. Nakatsuji
ROBERT T. NAKATSUJI, *admitted pro hac vice*
Deputy Attorney General
Robert.T.Nakatsuji@hawaii.gov
*Attorneys for Plaintiff State of Hawaii*

KWAME RAOUL
Attorney General of Illinois

/s/ Brett E. Legner

PLAINTIFF STATES' MOTION FOR
SUMMARY JUDGMENT
2:18-cv-01115-RSL

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Drive SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

BRETT E. LEGNER, *admitted pro hac vice*
Deputy Solicitor General
ELIZABETH ROBERSON-YOUNG, *admitted pro hac vice*
Deputy Solicitor General
BLegner@atg.state.il.us
ERobersonYoung@atg.state.il.us
*Attorneys for Plaintiff State of Illinois*

THOMAS J. MILLER
Attorney General of Iowa

*/s/ Nathanael Blake*
NATHANAEL BLAKE, *admitted pro hac vice*
Deputy Attorney General
Nathan.Blake@ag.iowa.gov
*Attorneys for Plaintiff State of Iowa*

BRIAN E. FROSH
Attorney General of Maryland

*/s/ Julia Doyle Bernhardt*
JULIA DOYLE BERNHARDT, *admitted pro hac vice*
JEFFREY PAUL DUNLAP, *admitted pro hac vice*
Assistant Attorneys General
JBernhardt@oag.state.md.us
jdunlap@oag.state.md.us
*Attorneys for Plaintiff State of Maryland*

MAURA HEALEY
Attorney General of Commonwealth of Massachusetts

*/s/ Jonathan B. Miller*
JONATHAN B. MILLER, *admitted pro hac vice*
Assistant Attorney General
Jonathan.Miller@state.ma.us
*Attorneys for Plaintiff Commonwealth of Massachusetts*

PLAINTIFF STATES' MOTION FOR
SUMMARY JUDGMENT
2:18-cv-01115-RSL

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Drive SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

1

2    KEITH ELLISON
     Attorney General of Minnesota

3
     */s/ Jacob Campion*

4    JACOB CAMPION, *admitted pro hac vice*
     Jacob.Campion@ag.state.mn.us

5    *Attorneys for Plaintiff State of Minnesota*

6
     GURBIR GREWAL

7    Attorney General of New Jersey

8    */s/ Jeremy M. Feigenbaum*
     JEREMY M. FEIGENBAUM, *admitted pro hac vice*

9    Assistant Attorney General

10   Jeremy.Feigenbaum@njoag.gov
     *Attorneys for Plaintiff State of New Jersey*

11
     LETITIA JAMES

12   Attorney General of New York

13   */s/ Steven Wu*

14   STEVEN WU, *admitted pro hac vice*
     Deputy Solicitor General

15   Steven.Wu@ag.ny.gov
     *Attorneys for Plaintiff State of New York*

16
     JOSH SHAPIRO

17   Attorney General of Commonwealth of Pennsylvania

18   */s/ Jonathan Scott Goldman*

19   JONATHAN SCOTT GOLDMAN, *admitted pro hac
     vice*

20   Executive Deputy Attorney General
     MICHAEL J. FISCHER, *admitted pro hac vice*

21   Chief Deputy Attorney General

22   JGoldman@attorneygeneral.gov
     MFischer@attorneygeneral.gov

23   *Attorneys for Plaintiff Commonwealth of Pennsylvania*

24
     JOSHUA H. STEIN

25   Attorney General of North Carolina

26   */s/ Sripriya Narasimhan*

PLAINTIFF STATES' MOTION FOR
SUMMARY JUDGMENT
2:18-cv-01115-RSL

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Drive SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

1

SRIPRIYA NARASIMHAN, *admitted pro hac vice*
Deputy General Counsel

2

SNarasimhan@ncdoj.gov

3

*Attorneys for Plaintiff State of North Carolina*

4

ELLEN F. ROSENBLUM
Attorney General of Oregon

5

*/s/ Scott J. Kaplan*

6

SCOTT J. KAPLAN, WSBA #49377

7

Scott.Kaplan@doj.state.or.us
*Attorneys for Plaintiff State of Oregon*

8

PETER F. NERONHA

9

Attorney General of Rhode Island

10

*/s/ Justin Sullivan*

11

JUSTIN SULLIVAN, *admitted pro hac vice*
Assistant Attorney General

12

JJSullivan@riag.ri.gov
*Attorneys for Plaintiff State of Rhode Island*

13

14

THOMAS J. DONOVAN, JR.
Attorney General of Vermont

15

*/s/ Benjamin D. Battles*

16

BENJAMIN D. BATTLES, *admitted pro hac vice*
Solicitor General

17

Benjamin.Battles@vermont.gov

18

*Attorneys for Plaintiff State of Vermont*

19

MARK R. HERRING
Attorney General of the Commonwealth of Virginia

20

*/s/ Samuel T. Towell*

21

SAMUEL T. TOWELL, *admitted pro hac vice*
Deputy Attorney General

22

STowell@oag.state.va.us

23

*Attorney for Plaintiff Commonwealth of Virginia*

24

25

26

PLAINTIFF STATES' MOTION FOR
SUMMARY JUDGMENT
2:18-cv-01115-RSL

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Drive SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

1

The Honorable Robert S. Lasnik

2

3

4

5

6

7 **UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
8 **AT SEATTLE**

9 STATE OF WASHINGTON; STATE OF      NO. 2:18-cv-01115-RSL
CALIFORNIA; STATE OF COLORADO;
10 STATE OF CONNECTICUT; STATE OF
DELAWARE; DISTRICT OF COLUMBIA;
11 STATE OF HAWAII; STATE OF ILLINOIS;      ORDER GRANTING PLAINTIFF
STATE OF IOWA; STATE OF      STATES' MOTION FOR SUMMARY
12 MARYLAND; COMMONWEALTH OF      JUDGMENT
MASSACHUSETTS; STATE OF
13 MINNESOTA; STATE OF NEW JERSEY;      [PROPOSED]
STATE OF NEW YORK; STATE OF
14 NORTH CAROLINA; STATE OF OREGON;
COMMONWEALTH OF PENNSYLVANIA;      NOTED ON MOTION CALENDAR:
15 STATE OF RHODE ISLAND; STATE OF      APRIL 19, 2019
VERMONT and COMMONWEALTH OF
16 VIRGINIA,

17

18                 Plaintiffs,

19       v.

20 UNITED STATES DEPARTMENT OF
STATE, et al.,
21

22                 Defendants.

23

24

25

26

i

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Drive SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

1       This matter came before the Court on the Plaintiff States' Motion for Summary

2  Judgment, which seeks to vacate and set aside the Federal Defendants' Temporary

3  Modification of the United States Munitions List (Temporary Modification) and letter to

4  Defense Distributed (Letter), which removed the 3D-printable gun files at issue in this case

5  from the U.S. Munitions List and authorized their "unlimited distribution." The Court has

6  considered the motion and documents filed therewith, including declarations and the exhibits

7  attached thereto, the pleadings and entire record in this case, and the arguments of counsel.

8  Having considered the foregoing, the Court finds that the requested relief is warranted for the

9  reasons below.

10     1.    When agency action is "arbitrary, capricious, an abuse of discretion, or

11  otherwise not in accordance with law," the APA provides that the reviewing court "shall . . .

12  hold unlawful and set aside" the agency action. 5 U.S.C. § 706(2). Vacatur is the "normal

13  remedy" for unlawful agency action. *Allina Health Servs. v. Sebelius*, 746 F.3d 1102, 1110

14  (D.C. Cir. 2014). Failure to provide required notice of the agency action is a "fundamental

15  flaw," *id.*, and failure to address important aspects of the problem and ignoring relevant

16  evidence are "major shortcomings," *Humane Soc'y*, 865 F.3d at 614, that make vacatur the

17  appropriate remedy. The Temporary Modification and Letter are vacated because they are

18  procedurally flawed, *ultra vires*, unconstitutional, and arbitrary and capricious.

19     2.    The Federal Defendants failed to provide 30 days' notice of their removal of

20  items from the U.S. Munitions List to the Committee on International Relations of the House

21  of Representatives and the Committee on Foreign Relations of the Senate in accordance with

22  established notification procedures, as required by the Arms Export Control Act (AECA). 22

23  U.S.C. § 2778(f)(1). The Federal Defendants have acknowledged that this notice was not

24  provided. The Federal Defendants also exceeded their delegated authority under AECA and

25  violated the Tenth Amendment of the U.S. Constitution by purporting to authorize "any United

26  States person" to "access, discuss, use, reproduce, or otherwise benefit from" the files, and to

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Drive SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

1    authorize their "unlimited distribution," undermining the Plaintiff States' ability to enforce

2    their respective laws restricting the possession and use of firearms.

3            3.       The Temporary Modification and Letter are also arbitrary and capricious

4    because the administrative record shows that the Federal Defendants failed to explain or

5    support their shifting rationales for reversing their regulatory position on the subject files, and

6    failed to consider evidence of the specific properties of 3D-printed guns in light of the

7    important factors Congress identified, including the unique threats they pose to world peace,

8    national security, and foreign policy.

9            4.       In addition to vacating the Temporary Modification and Letter, the Court

10   permanently enjoins the Federal Defendants from issuing any subsequent "temporary

11   modification" or otherwise removing the subject files from the Munitions List or permitting

12   their export without providing congressional notice as required by AECA. Where vacatur of a

13   deregulation decision is not "sufficient to redress [plaintiffs'] injury," a court may issue an

14   injunction that has a "meaningful practical effect independent of its vacatur." *Monsanto Co. v.*

15   *Geertson Seed Farms*, 561 U.S. 139, 165–66 (2010). The standards for permanent and

16   preliminary injunctions are "essentially the same," except that to obtain permanent relief, the

17   plaintiff must show "actual success" on the merits rather than a likelihood of success. *Winter*

18   *v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 32 (2008). The other three factors are that plaintiffs

19   are likely to suffer irreparable harm in the absence of relief; the balance of equities tips in their

20   favor; and an injunction is in the public interest. *Id.* at 20.

21           5.       Permanent injunctive relief is necessary to provide complete relief to the Plaintiff

22   States because it will ensure that the Federal Defendants adhere to AECA's procedural

23   requirements with respect to any future efforts to remove the subject files from the U.S.

24   Munitions List or permit their export. The Plaintiff States have shown a likelihood of irreparable

25   injury if such unlawful deregulation of 3D-printable gun files is not permanently enjoined. The

26   States will suffer irreparable harm to their ability to enforce their laws and protect the safety and

2

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Drive SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

2:18-cv-01115-RSL

1    health of their residents and visitors due to the proliferation via the internet of undetectable,

2    untraceable, 3D-printable firearms. The Federal Defendants would be unharmed by entry of a

3    permanent injunction, which will merely prevent them from circumventing AECA's

4    procedural requirements and ensure that any future agency action affecting export control of

5    the subject files is AECA-compliant.

6          For the foregoing reasons, the Plaintiff States' Motion for Summary Judgment is

7    GRANTED. The Court vacates the Temporary Modification and Letter and permanently

8    enjoins the Federal Defendants as follows:

9          The federal government defendants and all of their respective officers, agents, servants,

10   employees, and attorneys, and any other persons who are in active concert or participation with

11   any of the foregoing persons or entities, are hereby permanently enjoined from issuing any

12   subsequent "temporary modification" or otherwise removing the subject files from the

13   Munitions List or permitting their export without providing congressional notice as required

14   by the Arms Export Control Act.

15         It is SO ORDERED.

16         ISSUED this _____ day of _____, 2019.

17

18                                                    _____
                                                      UNITED STATES DISTRICT JUDGE

19

20   ROBERT W. FERGUSON
     Attorney General

21

22   /s/ Jeffrey Rupert
     JEFFREY RUPERT, WSBA #45037
     Division Chief

23   TODD BOWERS, WSBA #25274
     Deputy Attorney General

24   KRISTIN BENESKI, WSBA # 45478
     JEFFREY T. SPRUNG, WSBA #23607

25   ZACHARY P. JONES, WSBA # 44557
     Assistant Attorneys General

26   Attorneys for Plaintiff State of Washington

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Drive SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

2:18-cv-01115-RSL