The Honorable Robert S. Lasnik

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STATE OF WASHINGTON, et al., | No. 2:18-cv-1115-RSL |
| Plaintiffs, | |
| v. | **FEDERAL DEFENDANTS' CONSOLIDATED OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT** |
| UNITED STATES DEPARTMENT OF STATE, et al., | |
| Defendants. | **NOTED FOR: April 19, 2019** |

FEDERAL DEFENDANTS' CONSOLIDATED OPPOSITION TO PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT
*State of Washington, et al. v. Dep't of State, et al.*, 2:18-cv-1115-RSL

**U.S. DEPARTMENT OF JUSTICE**
Civil Division, Federal Programs Branch
450 Golden Gate Ave.
San Francisco, CA 94102
Tel: (415) 436-6635

# INTRODUCTION

Manufacture or possession of plastic guns that are undetectable is a serious federal crime, punishable by up to five years in prison. Among other statutes, the Undetectable Firearms Act prohibits the manufacture, possession, sale, import, or transfer of undetectable firearms. *See* 18 U.S.C. § 922(p). The Department of Justice, among other agencies, enforces that prohibition, and will continue to do so vigorously. Neither those enforcement efforts nor the prohibition itself is affected in any way by the actions challenged in this case.

Indeed, this case is not about the regulation of U.S. persons who wish to utilize a 3D printer to produce their own small-caliber firearms. Rather, this case concerns the Department of State's delegated authority to control the export of defense articles and services, or technical data related thereto, that raise military or intelligence concerns. The Department is tasked with determining what technology and weaponry provide a critical military or intelligence advantage such that it should not be shipped without restriction from the United States to other countries (or otherwise provided to foreigners), where it could be used to threaten U.S. national security, foreign policy, or international peace and stability. Domestic activities that do not involve providing access to foreign persons, by contrast, are left to other federal agencies—and the states—to regulate.

Plaintiffs' Amended Complaint, as well as their motion for summary judgment, misunderstands the nature of the Department of State's authority. But the Court need not reach Plaintiffs' claims under the Administrative Procedure Act ("APA") or the Tenth Amendment because Plaintiffs lack standing to assert their claims and fall outside the relevant statute's zone of interests. And in any event, Plaintiffs' claims fail on the merits. Accordingly, and for the reasons set forth below, the Court should deny Plaintiffs' motion for summary judgment and grant Defendants' cross-motion for summary judgment.

# BACKGROUND

## I. Statutory And Regulatory Background

The Arms Export Control Act ("AECA"), 22 U.S.C. § 2751 *et seq*., authorizes the President, "[i]n furtherance of world peace and the security and foreign policy of the United

FEDERAL DEFENDANTS' CONSOLIDATED OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT - 1
*State of Washington, et al. v. Dep't of State, et al.*, 2:18-cv-1115-RSL

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**450 Golden Gate Ave.**
**San Francisco, CA 94102**
**Tel: (415) 436-6635**

States" to "control the *import* and the *export* of defense articles and defense services" and to promulgate regulations accordingly. 22 U.S.C. § 2778(a)(1) (emphasis added). The President has delegated this authority to the Department of State ("Department") in relevant part, and the Department has accordingly promulgated the International Traffic in Arms Regulations ("ITAR"), which are administered by the Department's Directorate of Defense Trade Controls ("DDTC"). *See* Exec. Order No. 13637(n)(i), 78 Fed. Reg. 16,129 (Mar. 8, 2013); 22 C.F.R. §§ 120-130. At the heart of the AECA is the United States Munitions List ("USML"), an extensive listing of materials that constitute "defense articles and defense services" under the ITAR. *See* 22 C.F.R. Part 121. As relevant here, Category I of the USML includes all firearms up to .50 caliber, and all technical data directly related to such firearms. *Id.* § 121.1(I)(a), (i). Technical data is information that "is required for the design, development, production, manufacture, assembly, operation, repair, testing, maintenance or modification of defense articles." *Id.* § 120.10(a)(1). Section 2778 of the AECA authorizes the President to (1) designate those defense articles and services to be included on the USML; (2) require licenses for the export of items on the USML; and (3) promulgate regulations for the import and export of such items on the USML. 22 U.S.C. § 2778.

The ITAR does not regulate any transfers of defense articles except those that constitute "exports," *i.e.*, the transfer of defense articles abroad or to foreign persons, and "temporary imports." The ITAR's definition of exports includes, in part (1) "[s]ending or taking of a defense article out of the United States in any manner," 22 C.F.R. § 120.17(a)(1); (2) "[r]eleasing or otherwise transferring a defense article to an embassy or to any of its agencies or subdivisions, such as a diplomatic mission or consulate, in the United States," *id.* § 120.17(a)(4); and (3) "[r]eleasing or otherwise transferring technical data to a foreign person in the United States (a 'deemed export')," *id.* § 120.17(a)(2).

In certain cases where it is unclear whether a particular item is a defense article or defense service, the Department makes a "commodity jurisdiction" ("CJ") determination using a procedure set forth in the ITAR. *See id.* § 120.4. Upon written request, DDTC will provide applicants with a determination as to whether the article, service, or data is within the scope of

FEDERAL DEFENDANTS' CONSOLIDATED OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT - 2
*State of Washington, et al. v. Dep't of State, et al.*, 2:18-cv-1115-RSL

U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
450 Golden Gate Ave.
San Francisco, CA 94102
Tel: (415) 436-6635

the ITAR. These assessments are made on a case-by-case basis through an inter-agency process, evaluating whether the article, service, or data is covered by the USML, provides the equivalent performance capabilities of a defense article on the USML, or has a critical military or intelligence advantage. *See id*. § 120.4(d).

While the AECA and ITAR do not provide the Department with authority to prohibit the domestic manufacture or possession of 3D-printed guns, another federal statute deals with this topic. The Undetectable Firearms Act bars the manufacture, possession, sale, import, or transfer of undetectable firearms. *See* 18 U.S.C. § 922(p); An Act to Extend the Undetectable Firearms Act of 1988 for 10 Years, Pub. L. No. 113-57, 127 Stat. 656 (2013). Under that statute, firearms manufactured or sold in the United States must generally be capable of being detected by metal detectors and by x-ray machines. *See* 18 U.S.C. § 922(p)(1). Those requirements are not in any way affected by the actions challenged in this case, nor are the separate federal prohibitions on the possession of firearms by felons, persons subject to restraining orders, or the mentally ill. *See id.* § 922(g)(1) (felons and certain state-law misdemeanants); *id.* § 922(g)(8) (court-issued restraining orders); *id.* § 922(g)(4) (persons adjudicated as mentally ill). The Government continues to enforce these laws in order to address domestic safety issues related to undetectable firearms. The Department's determination under the ITAR at issue here will not affect those enforcement efforts.

## II. The Government's Settlement With Defense Distributed

In 2012, Defense Distributed published on the Internet "privately generated technical information regarding a number of gun-related items." *Def. Distributed v. U.S. Dep't of State*, 121 F. Supp. 3d 680, 687 (W.D. Tex. 2015). In May 2013, DDTC sent Defense Distributed a letter stating that Defense Distributed may have released ITAR-controlled technical data without the required authorization. *See id.* Defense Distributed removed the technical data and submitted a CJ request. *Id.* The company, however, and in conjunction with another non-profit, the Second Amendment Foundation, ultimately brought a lawsuit against, *inter alia*, the Department and DDTC, claiming that the requirement to obtain authorization prior to

FEDERAL DEFENDANTS' CONSOLIDATED OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT - 3
*State of Washington, et al. v. Dep't of State, et al.*, 2:18-cv-1115-RSL

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**450 Golden Gate Ave.**
**San Francisco, CA 94102**
**Tel: (415) 436-6635**

publishing the subject files on its website violated plaintiffs' rights under the First, Second, and Fifth Amendments and exceeded the Department's statutory authority. *Id.* at 688.

In August 2015, the U.S. District Court for the Western District of Texas denied Defense Distributed's motion for a preliminary injunction. *Id.* at 701. For purposes of the preliminary injunction analysis, the district court considered the files to be subject to the protection of the First Amendment. *Id.* at 691-92. Applying intermediate scrutiny, the court concluded that "because the AECA and ITAR do not prohibit domestic communications" and plaintiffs remained "free to disseminate the computer files at issue domestically," they had not shown a substantial likelihood of success on the merits. *Id.* at 695.

The Fifth Circuit affirmed in a split decision. *See* 838 F.3d 451 (5th Cir. 2016). Focusing narrowly on the question of the non-merits requirements for preliminary relief, the panel majority concluded that the "Department's stated interest in preventing foreign nationals . . . from obtaining technical data on how to produce weapons and weapon parts" outweighed plaintiffs' interest in their constitutional rights. *Id.* at 458-59. The panel majority "decline[d] to address the merits" because the failure by plaintiffs to meet any single requirement for a preliminary injunction would require affirmance of the district court. *See id.* at 456-58. A dissent from the panel opinion did address the merits. *See id.* at 461 (Jones, J. dissenting). "[F]or the benefit of the district court on remand," the dissent set forth an analysis concluding that "the State Department's application of its 'export' control regulations to this domestic Internet posting appears to violate the governing statute, represents an irrational interpretation of the regulations, and violates the First Amendment as a content-based regulation and a prior restraint." *Id.* at 463-64.

After plaintiffs' petitions for rehearing *en banc* and for certiorari were denied, *see* 138 S. Ct. 638 (2018); 865 F.3d 211 (5th Cir. 2017) (5 dissenting judges), proceedings resumed in district court. In April 2018, the Government moved to dismiss plaintiffs' second amended complaint. *See Def. Distributed*, No. 1:15-cv-372-RP, Dkt. No. 92. Meanwhile, the district court ordered the parties to exchange written settlement demands, *see id.,* Dkt. No. 88, thereby

FEDERAL DEFENDANTS' CONSOLIDATED OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT - 4
*State of Washington, et al. v. Dep't of State, et al.*, 2:18-cv-1115-RSL

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**450 Golden Gate Ave.**
**San Francisco, CA 94102**
**Tel: (415) 436-6635**

initiating a process under which the parties were able to reach a settlement before briefing on the motion to dismiss was complete, *see id.*, Dkt. Nos. 93, 95.

Pursuant to the settlement and as relevant here, the Government agreed to the following:

(a) Defendants' commitment to draft and to fully pursue, to the extent authorized by law (including the Administrative Procedure Act), the publication in the Federal Register of a notice of proposed rulemaking and final rule, revising USML Category I to exclude the technical data that is the subject of the Action.[1]

(b) Defendants' announcement, while the above-referenced final rule is in development, of a temporary modification, consistent with the . . . [ITAR], 22 C.F.R. § 126.2, of USML Category I to exclude the technical data that is the subject of the Action. The announcement will appear on the DDTC website, www.pmddtc.state.gov, on or before July 27, 2018.[2]

(c) Defendants' issuance of a letter to Plaintiffs on or before July 27, 2018, signed by the Deputy Assistant Secretary for Defense Trade Controls, advising that the Published Files, Ghost Gunner Files, and CAD Files are approved for public release (i.e., unlimited distribution) in any form and are exempt from the export licensing requirements of the ITAR because they satisfy the criteria of 22 C.F.R. § 125.4(b)(13). . . .

(d) Defendants' acknowledgment and agreement that the temporary modification . . . permits any United States person, to include DD's customers and SAF's members, to access, discuss, use, reproduce, or otherwise benefit from the technical data that is the subject of the Action, and that the letter to Plaintiffs permits any such person to access, discuss, use, reproduce or otherwise benefit from the Published Files, Ghost Gunner Files, and CAD Files.

The parties executed the agreement on June 29, 2018, and the Government complied with (b) and (c) on July 27, 2018. *See* Declaration of Sarah Heidema ("Heidema Decl."), Dkt.

---

[1] *See* Section III, *infra.* At the time settlement negotiations began, the parties had long expected such a Notice of Proposed Rulemaking ("NPRM") to be issued. *See* 78 Fed. Reg. 22,740, 22,741 (April 16, 2013) (announcing that "[t]he Department intends to publish final rules implementing the revised USML categories and related ITAR amendments periodically"). Reflecting nearly a decade of efforts to carry out a reform of export regulations and pursuant to a "comprehensive review" of the U.S. export control system, the Government has undertaken an Export Control Reform Initiative ("ECRI") that was proposed in April 2010, *see* Fact Sheet on the President's Export Control Reform Initiative (Apr. 20, 2010), https://obamawhitehouse.archives.gov/the-press-office/fact-sheet-presidents-export-control-reform-initiative, and facilitated by Executive Order No. 13637, 78 Fed. Reg. 16,129 (Mar. 8, 2013). By January 20, 2017, this export reform process had been completed for USML categories IV through XX.

[2] Pursuant to 22 C.F.R. § 126.2, "[t]he Deputy Assistant Secretary for Defense Trade Controls may order the temporary suspension or modification of any or all of the regulations of this subchapter in the interest of the security and foreign policy of the United States."

FEDERAL DEFENDANTS' CONSOLIDATED OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT - 5
*State of Washington, et al. v. Dep't of State, et al.*, 2:18-cv-1115-RSL

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**450 Golden Gate Ave.**
**San Francisco, CA 94102**
**Tel: (415) 436-6635**

No. 64-1, ¶¶ 27, 29.  The Settlement Agreement states that Defendants deny that they violated plaintiffs' constitutional rights.  *See id.* ¶ 28.

### III.     The Government's Rulemaking

On May 24, 2018—after the initial exchange of settlement offers but more than one month prior to the settlement with Defense Distributed—the Departments of State and Commerce each issued a notice of proposed rulemaking ("NPRM") that implicated the technical data at issue in *Defense Distributed*.  *See* 83 Fed. Reg. 24,198 (May 24, 2018); 83 Fed. Reg. 24,166 (May 24, 2018).  In those NPRMs, the Government proposed amending the ITAR "to revise Categories I (firearms, close assault weapons and combat shotguns), II (guns and armament) and III (ammunition and ordnance) of the [USML] to describe more precisely the articles warranting export and temporary import control on the USML."  83 Fed. Reg. at 24,198.  As proposed, the items removed from the USML—which encompass the technical data at issue in *Defense Distributed* and this litigation—would no longer be subject to the ITAR's authorization requirements, i.e., no license from the Department of State would be required for their export.  *See* Heidema Decl. ¶ 21; *see generally* 83 Fed. Reg. at 24,198.  The Department of State "received more than 3,500 comments in response to the NPRM, including comments related to 3D-printed firearms."  Heidema Decl. ¶ 23.

### IV.     Procedural History

On July 30, 2018, Plaintiffs filed the instant action against, *inter alia*, the Department, the Secretary of State, DDTC, and Defense Distributed.  Compl., Dkt. No. 1.  Plaintiffs alleged that the Government's settlement with Defense Distributed adversely affected their public safety laws, in violation of the APA and the Tenth Amendment.  *Id.* at 21-41.  Also on July 30, 2018, Plaintiffs moved for a temporary restraining order against Defendants, Mot. for TRO, Dkt. No. 2, which the Court granted on July 31, 2018, Dkt. No. 23 ("Order").  Plaintiffs amended their complaint on August 2, 2018, Am. Compl., Dkt. No. 29, and moved for a preliminary injunction on August 9, 2018, Dkt. No. 43.  The Court granted Plaintiffs' motion on August 27, 2018.  Dkt. No. 95 ("Prelim. Inj.").  Pursuant to the preliminary injunction issued by the Court, the Government is enjoined from "implementing or enforcing the

FEDERAL DEFENDANTS' CONSOLIDATED OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT - 6
*State of Washington, et al. v. Dep't of State, et al.*, 2:18-cv-1115-RSL

**U.S. DEPARTMENT OF JUSTICE**
Civil Division, Federal Programs Branch
450 Golden Gate Ave.
San Francisco, CA 94102
Tel: (415) 436-6635

'Temporary Modification of Category I of the United States Munitions List' and the letter to Cody R. Wilson, Defense Distributed, and the Second Amendment Foundation issued by the U.S. Department of State on July 27, 2018," and the Federal Defendants must "preserve the status quo *ex ante* as if the modification had not occurred and the letter had not been issued until further order of the Court." *Id.* at 25.

The Federal Defendants produced the administrative record on October 19, 2018, Dkt. No. 116, and filed supplementary materials on December 20, 2018, Dkt. No. 158. Plaintiffs moved for summary judgment on February 15, 2019. Dkt. No. 170 ("Pls.' MSJ").

## ARGUMENT

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Generally, judicial review of agency action is limited to review of the record on which the administrative decision was based." *Partridge v. Reich*, 141 F.3d 920, 926 n.4 (9th Cir. 1998). "[T]he function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769 (9th Cir. 1985). "[I]n a case involving review of a final agency action under the [APA] . . . summary judgment becomes the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *San Joaquin River Grp. Auth. v. Nat'l Marine Fisheries Serv.*, 819 F. Supp. 2d 1077, 1084 (E.D. Cal. 2011) (citation omitted).

### A. Plaintiffs Are Not Within The AECA's Zone Of Interests.[3]

"[A] person suing under the APA must satisfy not only Article III's standing requirements, but an additional test: The interest he asserts must be arguably within the zone of interests to be protected or regulated by the statute that he says was violated." *Havasupai Tribe*

---

[3] The Court did not previously address the Federal Defendants' zone-of-interests argument. *See* Prelim. Inj. at 8-12. Moreover, for the reasons provided in the Federal Defendants' opposition to Plaintiffs' motion for a preliminary injunction, the Federal Defendants maintain that Plaintiffs lack Article III standing to assert their claims. *See* Dkt. No. 64 ("Defs.' PI Opp.") at 13-16.

FEDERAL DEFENDANTS' CONSOLIDATED OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT - 7
*State of Washington, et al. v. Dep't of State, et al.*, 2:18-cv-1115-RSL

**U.S. DEPARTMENT OF JUSTICE**
Civil Division, Federal Programs Branch
450 Golden Gate Ave.
San Francisco, CA 94102
Tel: (415) 436-6635

*v. Provencio*, 906 F.3d 1155, 1166 (9th Cir. 2018) (citation omitted). While the zone of interests test is not "demanding," it nevertheless forecloses suit "when a plaintiff's 'interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit.'" *Match–E–Be–Nash–She–Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 225 (2012).

Here, Plaintiffs—whose Amended Complaint focuses on the Federal Defendants' compliance with the AECA's congressional notification provision, 22 U.S.C. §2778(f)(1)—do not fall within the zone of interests protected by the statute. *See Bennett v. Spear*, 520 U.S. 154, 175-76 (1997) (emphasizing that zone of interests test is applied in the context of "the particular provision of law upon which the plaintiff relies"). The AECA "is designed to protect against the national security threat created by the unrestricted flow of military information abroad." *United States v. Posey*, 864 F.2d 1487, 1495 (9th Cir. 1989); *accord United States v. Chi Mak*, 683 F.3d 1126, 1134 (9th Cir. 2012) (AECA "was intended to authorize the President to control the import and export of defense articles and defense services in 'furtherance of world peace and the security and foreign policy of the United States.'" (quoting 22 U.S.C. § 2778(a)(1))); *see also* Am. Compl. ¶ 27 (acknowledging that "[t]he purpose of the AECA is to reduce the international trade in arms and avoid destabilizing effects abroad through arms exports"). The primary concerns of the statute are thus national security and foreign relations. In this context Congress enacted 22 U.S.C. § 2778(f)(1), which provides that "[t]he President may not remove any item from the Munitions List until 30 days after the date on which the President has provided notice of the proposed removal to" certain congressional committees. As the legislative history makes clear, Congress enacted this provision in response to "legitimate industry concerns" by exporters, and cautioned the Executive Branch to "avoid unnecessary export regulation." H.R. Rep. No. 97-58, at 21-22 (1981). Thus Plaintiffs—states who neither exercise congressional oversight of the Department nor function as would-be exporters, and whose alleged harms concern purely domestic, non-military matters unrelated to foreign relations, fail to meet the zone of interests test. *Cf. People ex rel. Hartigan v. Cheney*, 726 F. Supp. 219, 227 (C.D. Ill. 1989) (Illinois not within zone of interest of the Base Closure

FEDERAL DEFENDANTS' CONSOLIDATED OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT - 8
*State of Washington, et al. v. Dep't of State, et al.*, 2:18-cv-1115-RSL

**U.S. DEPARTMENT OF JUSTICE**
Civil Division, Federal Programs Branch
450 Golden Gate Ave.
San Francisco, CA 94102
Tel: (415) 436-6635

and Realignment Act, because, as here, the state "is not the subject of the Secretary's action" and "states have no constitutional or statutory role in federal military policy").

### B. Plaintiffs' APA Claims Fail.

According to Plaintiffs, the Department exceeded its statutory authority in not providing advance notice to Congress about the actions undertaken in connection with the settlement agreement. Pls.' MSJ at 10-11. But as the Federal Defendants have previously explained, Defs.' PI Opp. at 18-19, the statutory provision on which Plaintiffs rely requires such notice only with respect to the *removal* of *items* from the USML. *See* 22 U.S.C. § 2778(f)(1) (providing that "the President may not remove any item from the Munitions List until 30 days after the date on which the President has provided notice of the proposed removal" to the appropriate congressional committees). Because the subject files are not specifically enumerated on the USML and therefore are not items, and because the Department effectuated only a temporary modification, not a removal, the Department's actions were in accord with its delegated authority. *But see* Prelim. Inj. at 12-15.

The Court should also reject Plaintiffs' claim that the Temporary Modification and Letter were arbitrary and capricious. As the Federal Defendants explained in their opposition to Plaintiffs' preliminary injunction motion, items belong on the United States Munitions List if they "provide[] a critical military or intelligence advantage." 22 C.F.R. § 120.3(b). Here, the administrative record reveals that the government had determined that small-caliber firearms do not satisfy that standard. *See generally* Defs.' PI Opp. at 22 (citing State and Commerce NPRMs).[4]

Defendants acknowledge that the Court previously suggested that Defendants failed to sufficiently "consider[] the unique properties of 3D plastic guns," Prelim. Inj. at 17, or to provide a "reasoned explanation for its change in position," *id.* at 18. Defendants nonetheless respectfully maintain that they satisfied their obligations. *See generally* Defs.' PI Op. at 21-22.

---

[4] Plaintiffs' suggestion that "the Temporary Modification is the *only* document in the filed administrative record that reflects any reason for the State Department's reversal of its position on 3D-printable firearms files," Pls.' MSJ at 13, is therefore not correct. When an agency's decision is properly before the Court, it "review[s] the entire administrative record." *Epsilon Elec., Inc. v. U.S. Dep't of Treas., Office of Foreign Assets Control*, 857 F.3d 913, 924 (D.C. Cir. 2017).

FEDERAL DEFENDANTS' CONSOLIDATED OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT - 9
*State of Washington, et al. v. Dep't of State, et al.*, 2:18-cv-1115-RSL

**U.S. DEPARTMENT OF JUSTICE**
Civil Division, Federal Programs Branch
450 Golden Gate Ave.
San Francisco, CA 94102
Tel: (415) 436-6635

Specifically, Defendants maintain that it sufficed to consider the need to regulate small-caliber firearms generally, as undetectable firearms are separately regulated by other agencies under the Undetectable Firearms Act. *See id*. at 10.

In any case, even if the Court were to find the Federal Defendants' rationale inadequate, it should reject Plaintiffs' contention that the Federal Defendants' rationale was pretextual. Plaintiffs suggest that the Temporary Modification and Letter were procedurally irregular because they were issued without notice to Congress, but Defendants respectfully maintain that no such notice was required. *See id.* at 18-19; *but see* Prelim. Inj. at 12-15. While Plaintiffs further suggest that the Department's decision was made "abruptly, sometime during the three-week period from April 6 to April 30, 2018," Pls.' MSJ at 19, the Federal Defendants have explained that the decision was made following the District Court of the Western District of Texas's instruction to the parties to exchange written settlement demands, *see* Defs.' PI Opp. at 5; it is no secret that the Temporary Modification and Letter arose from a settlement of the *Defense Distributed* litigation. *Cf.* Pls.' MSJ at 19. Last, Plaintiffs complain that certain documents were initially omitted from the administrative record, *see* Pls.' MSJ at 20, but those documents were omitted from the record because they were not among the documents considered by the agency decision-maker. *See* generally Defs.' Opp. at Pls.' Mot. to Compel, Dkt. No. 152. In any case, Defendants agreed to supplement the record with these documents for the Court's convenience in determining whether to rely on the materials as extra-record evidence and the convenience of the parties. *See* Dkt. No. 158.

### C. Plaintiffs' Tenth Amendment Claim Fails.

Plaintiffs fare no better in arguing that the Department's actions constitute a violation of the Tenth Amendment to the Constitution. *See* Pls.' MSJ at 11-12. The Tenth Amendment provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend. X. "Under the Tenth Amendment, 'the Federal Government may not compel States to implement, by legislation or executive action, federal regulatory programs.'" *Envtl. Def. Ctr., Inc. v. U.S. EPA*, 344 F.3d 832, 847 (9th Cir. 2003) (quoting *Printz v. United States*,

FEDERAL DEFENDANTS' CONSOLIDATED OPPOSITION TO PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT - 10
*State of Washington, et al. v. Dep't of State, et al.*, 2:18-cv-1115-RSL

U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
450 Golden Gate Ave.
San Francisco, CA 94102
Tel: (415) 436-6635

521 U.S. 898, 925 (1997)). "The crucial proscribed element is coercion; the residents of the State or municipality must retain 'the ultimate decision' as to whether or not the State or municipality will comply with the federal regulatory program." *Id.* (quoting *New York v. United States*, 505 U.S. 144, 168 (1992)).

Here, Plaintiffs claim that "[t]he Department's overly broad authorization well exceeds the scope of its authority under AECA to regulate exports, and on its face purports to abrogate the states' police powers to enforce their gun-safety laws in violation of the Tenth Amendment." Pls.' MSJ at 11; *see also id.* at 12 (arguing that "[t]he States' ability and authority to enforce their gun-safety laws is undermined by the State Department's purported authorization of 'any United States person' to 'use' the files to print their own undetectable and untraceable weapons"). To be abundantly clear, however, the Government does not suggest, and has never suggested, that the settlement agreement conflicts with or otherwise preempts such state laws. To the contrary, the Department has consistently emphasized that its actions are taken only pursuant to its authority to regulate the United States' system of export controls, not domestic activity. *See Def. Distributed*, 121 F. Supp. 3d at 695. The protections for state law legislated by Congress in the Gun Control Act remain in force, *see* 18 U.S.C. § 927, as well as the laws invoked by Plaintiffs, remain unaffected by the settlement agreement. Nor is there any basis to substitute Plaintiffs' understanding of the agreement for the far more reasonable interpretation of the Government.

Moreover, Plaintiffs fall well short of establishing any element of a violation of the Tenth Amendment. "[T]here is simply no evidence that [Plaintiffs were] compelled to enact or enforce any federal regulatory program. Nor is there any evidence that [Plaintiffs were] compelled to assist in the enforcement of federal statutes regulating private individuals." *See City of Tombstone v. United States*, No. 11-cv-00845, 2015 WL 11120851, at *19 (D. Ariz. Mar. 12, 2015). Absent such a program or compulsion, the Court should reject Plaintiffs' Tenth Amendment claim. *See id.*; *see also, e.g.*, *Envtl. Def. Ctr.*, 344 F.3d at 845 (holding agency action "does not violate the Tenth Amendment, because it directs no unconstitutional coercion").

FEDERAL DEFENDANTS' CONSOLIDATED OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT - 11
*State of Washington, et al. v. Dep't of State, et al.*, 2:18-cv-1115-RSL

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**450 Golden Gate Ave.**
**San Francisco, CA 94102**
**Tel: (415) 436-6635**

The two cases cited by Plaintiffs are not to the contrary. *See* Pls.' MSJ at 11-12. First, Plaintiffs point to the Supreme Court's general statement in *Bond v. United States* that "[t]he States have broad authority to enact legislation for the public good—what we have often called a 'police power.'" 572 U.S. 844, 854 (2014). But the Federal Defendants do not even purport to infringe upon that power, let alone coerce Plaintiffs into complying with a federal program. Likewise, in *District of Columbia v. Heller*, the Supreme Court noted that "longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms" are "presumptively lawful[.]" 554 U.S. 570, 626-27 & n.26 (2008). Yet *Heller* concerned the Second Amendment, not the Tenth, and nothing in *Heller* indicates that the Department's exercise of its export authority, which does not involve commandeering State funds or entities, can give rise to a Tenth Amendment violation.

### D.  An Injunction Is Unwarranted.

As Plaintiffs correctly note, Pls.' MSJ at 20, in the APA context, "[v]acatur is the standard remedy for unlawful agency decisions," *Klamath-Siskiyou Wildlands Ctr. v. Nat'l Oceanic & Atmospheric Admin. Nat'l Marine Fisheries Serv.*, 109 F. Supp. 3d 1238, 1239 (N.D. Cal. 2015); *see* 5 U.S.C. § 706(2)(A) (requiring court to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"). Nevertheless, in the event the Court finds that the challenged agency actions were inconsistent with the APA, Plaintiffs "additionally ask the Court to enjoin the Federal Defendants from issuing any subsequent 'temporary modification' or otherwise removing the subject files from the Munitions List or permitting their export without providing congressional notice as required by AECA." Pls.' MSJ at 21. Plaintiffs' request is unfounded and should be denied.

"A court's decision to issue an injunction constitutes an unwarranted 'extraordinary remedy' if a less drastic remedy, such as vacatur, could sufficiently redress plaintiff's injury. *Klamath-Siskiyou Wildlands Ctr.*, 109 F. Supp. 3d at 1247 (quoting *Monsanto Co. v. Geertson*

FEDERAL DEFENDANTS' CONSOLIDATED OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT - 12
*State of Washington, et al. v. Dep't of State, et al.*, 2:18-cv-1115-RSL

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**450 Golden Gate Ave.**
**San Francisco, CA 94102**
**Tel: (415) 436-6635**

*Seed Farms*, 561 U.S. 139, 165-66 (2010)). Here, there is no basis to conclude that vacatur would be insufficient to redress Plaintiffs' alleged injuries. Plaintiffs' Amended Complaint and motion for summary judgment make clear that at issue are not the substantive policies underlying the challenged actions, but rather the procedures used by the agency in taking those actions. *See* Am. Compl. ¶¶ 230-40 (alleging failure to provide congressional notification and failure to adequately explain basis for actions); Pls.' MSJ at 10-18 (same). Vacatur and remand would appropriately allow the Federal Defendants to cure any deficiencies with respect to those procedures. *See Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 657 (2007) ("[I]f the EPA's action was arbitrary and capricious, . . . the proper course would have been to remand to the Agency for clarification of its reasons."); *Se. Ak. Conservation Council v. U.S. Army Corps of Engineers*, 486 F.3d 638, 654-55 (9th Cir. 2007), *rev'd and remanded on other grounds sub nom. Coeur Ak., Inc. v. Se. Ak. Conservation Council*, 557 U.S. 261 (2009) ("Under the APA . . . a court should 'vacate the agency's action and remand to the agency to act in compliance with its statutory obligations.'" (citation omitted)).

The rationale underlying Plaintiffs' request confirms that an injunction is not appropriate. According to Plaintiffs, such relief is warranted to "prohibit[] further procedurally defective agency actions." Pls.' MSJ at 21; *see also id.* at 21 n.53 ("[T]he States merely ask the Court to invalidate procedurally defective and unlawful agency actions and require the State Department to follow the law in making regulatory changes that affect the subject files."). Yet "[t]he Supreme Court has warned against 'sweeping injunctions to obey the law' and has cautioned courts about their 'duty to avoid' such orders." *InfoSpan, Inc. v. Emirates NBD Bank PJSC*, No. 11-cv-1062, 2016 WL 8861712, at *7 (C.D. Cal. Nov. 22, 2016), *aff'd*, 745 F. App'x 1 (9th Cir. 2018) (quoting *Swift & Co. v. United States*, 196 U.S. 375, 401 (1905)); *accord Cuviello v. City of Oakland*, No. 06-cv-5517, 2009 WL 734676, at *3 (N.D. Cal. Mar. 19, 2009) (explaining that "courts have held that not only vague injunctions but also injunctions that simply require a defendant to 'obey the law' fail to comply with Rule 65(d)").[5]

---

[5] Indeed, based on Plaintiffs' request, it is difficult to discern the marginal relief provided by an injunction, as vacatur itself would involve setting aside the challenged actions, and any future challenges would be considered in light of a new administrative record.

FEDERAL DEFENDANTS' CONSOLIDATED OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT - 13
*State of Washington, et al. v. Dep't of State, et al.*, 2:18-cv-1115-RSL

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**450 Golden Gate Ave.**
**San Francisco, CA 94102**
**Tel: (415) 436-6635**

The cases relied on by Plaintiffs do not compel a different result. For instance, in *New York v. U.S. Department of Commerce*, 351 F. Supp. 3d 502 (S.D.N.Y. 2019), cited in Pls.' MSJ at 21, the district court "enjoin[ed] Defendants from adding a citizenship question to the 2020 census questionnaire based on Secretary Ross's March 26, 2018 memorandum or based on any reasoning that is substantially similar to the reasoning contained in that memorandum." *Id.* at 676-77. The court entered this injunction in part because "an injunction will make it easier for Plaintiffs to seek immediate recourse from this Court in the event that Defendants seek to do anything inconsistent with this Opinion," which the court found necessary "given the looming [census] printing deadline." *Id.* at 676. Here, however, no similar temporal constraints exist to justify injunctive relief, and in any event the Department should be permitted to address any concerns the Court might have without the need for an injunction. *Cf. Heartland Reg'l Med. Ctr. v. Leavitt*, 415 F.3d 24, 29-30 (D.C. Cir. 2005) ("[T]he usual rule is that, with or without vacatur, an agency that cures a problem identified by a court is free to reinstate the original result on remand."). Plaintiffs likewise cannot persuasively rely on *United States v. Laerdal Manufacturing Corp.*, 73 F.3d 852 (9th Cir. 1995), cited in Pls.' MSJ at 22, as that case did not involve a challenge to government action under the APA, and therefore did not discuss whether vacatur would be an adequate remedy.

Nor have Plaintiffs demonstrated that the injunction factors weigh in their favor. "The equitable remedy of an injunction—whether preliminary or permanent−is 'unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again.'" *JPMorgan Chase Bank, N.A. v. Yamassee Tribal Nation*, No. 1:17-cv-00759, 2018 WL 3629940, at *6 (E.D. Cal. July 30, 2018) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)). Plaintiffs fall short of meeting this standard. All of the concerns identified are harms that might result from the domestic availability of 3D-printed guns in the United States, but such concerns have little to do with whether particular files should be regulated for foreign export on national security grounds. Further, their relation to the Department's exercise of authority and the settlement agreement is speculative. At best, Plaintiffs have only identified harms that may result from

FEDERAL DEFENDANTS' CONSOLIDATED OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT - 14
*State of Washington, et al. v. Dep't of State, et al.*, 2:18-cv-1115-RSL

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**450 Golden Gate Ave.**
**San Francisco, CA 94102**
**Tel: (415) 436-6635**

3D-printed guns *generally*, not from the challenged actions regulating foreign exports. But there are already laws aimed at domestic conduct that seek to prevent such harms. And as the Ninth Circuit has made clear, it is the likelihood of harm from the actions that are sought to be enjoined that is relevant for the injunction analysis. *See Park Vill. Apartment Tenants Ass'n v. Mortimer Howard Tr.*, 636 F.3d 1150, 1160 (9th Cir. 2011). Plaintiffs simply cannot tie their fear of *domestic* irreparable injury to a statutory regime dealing with *foreign* export, especially when there are separate statutes governing domestic manufacture, possession, and sale that remain unaffected by the challenged actions. *See also* Defs.' PI Opp. at 9-13.

The single case Plaintiffs cite—*Maryland v. King*, 567 U.S. 1301 (2012), cited in Pls.' MSJ at 24—is inapposite. In *Maryland*, Chief Justice Roberts, sitting as Circuit Justice, granted a stay of judgment overturning a criminal conviction pending disposition of the State's petition for a writ of certiorari. 567 U.S. at 1301. Chief Justice Roberts wrote that a stay was appropriate because "there is . . . an ongoing and concrete harm to Maryland's law enforcement and public safety interests." *Id.* As is made clear in the subsequent sentences omitted by Plaintiffs, however, such irreparable harm arose from the fact that, as a result of the judgment, "Maryland may not employ a duly enacted statute [its DNA Collection Act] to help prevent [serious] injuries[.]" *Id.* Here, by contrast, the Department's settlement has not prevented any of Plaintiffs from employing their public safety statutes.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion for summary judgment, grant the Federal Defendants' motion for summary judgment, and enter judgment in favor of the Federal Defendants.

FEDERAL DEFENDANTS' CONSOLIDATED OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT - 15
*State of Washington, et al. v. Dep't of State, et al.*, 2:18-cv-1115-RSL

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**450 Golden Gate Ave.**
**San Francisco, CA 94102**
**Tel: (415) 436-6635**

Dated: March 15, 2019    Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

BRETT A. SHUMATE
Deputy Assistant Attorney General

JOHN R. GRIFFITHS
Director, Federal Programs Branch

ANTHONY J. COPPOLINO
Deputy Director, Federal Programs Branch

*/s/ Stuart J. Robinson*
STUART J. ROBINSON
STEVEN A. MYERS
ERIC J. SOSKIN
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
450 Golden Gate Ave.
San Francisco, CA 94102
(415) 436-6635 (telephone)
(415) 436-6632 (facsimile)
stuart.j.robinson@usdoj.gov

*Attorneys for the Federal Defendants*

FEDERAL DEFENDANTS' CONSOLIDATED OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT - 16
*State of Washington, et al. v. Dep't of State, et al.*, 2:18-cv-1115-RSL

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**450 Golden Gate Ave.**
**San Francisco, CA 94102**
**Tel: (415) 436-6635**

**CERTIFICATE OF SERVICE**

I hereby certify that on March 15, 2019, I electronically filed the foregoing brief using the Court's CM/ECF system, causing a notice of filing to be served upon all counsel of record.

Dated: March 15, 2019                    */s/ Stuart J. Robinson*
                                         Stuart J. Robinson

FEDERAL DEFENDANTS' CONSOLIDATED OPPOSITION TO PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT - 17
*State of Washington, et al. v. Dep't of State, et al.*, 2:18-cv-1115-RSL

**U.S. DEPARTMENT OF JUSTICE**
Civil Division, Federal Programs Branch
450 Golden Gate Ave.
San Francisco, CA 94102
Tel: (415) 436-6635

| | |
|---|---|
| 1 | The Honorable Robert S. Lasnik |

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STATE OF WASHINGTON, et al., | No. 2:18-cv-1115-RSL |
| Plaintiffs, | **FEDERAL DEFENDANTS' CONSOLIDATED OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| UNITED STATES DEPARTMENT OF STATE, et al., | |
| Defendants. | **NOTED FOR: April 19, 2019** |

### [PROPOSED] ORDER

This matter comes before the Court on the Federal Defendants' Consolidated Opposition to Plaintiffs' Motion for Summary Judgment and Cross-Motion for Summary Judgement. Upon consideration of the Federal Defendants' motion and of all materials submitted in relation thereto, it is hereby

ORDERED that Plaintiffs' motion is DENIED; it is further

ORDERED that the Federal Defendants' motion is GRANTED. It is further

ORDERED that this action is hereby DISMISSED.

IT IS SO ORDERED.

Date:_____        _____
ROBERT S. LASNIK
United States District Judge