The Honorable Robert S. Lasnik

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

| | |
|---|---|
| STATE OF WASHINGTON, et al. | No. 2:18-cv-01115-RSL |
| Plaintiffs, | |
| v. | **PRIVATE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO PLAINTIFF STATES' MOTION FOR SUMMARY JUDGMENT** |
| UNITED STATES DEPARTMENT OF STATE, et al., | |
| Defendants. | |

# Table of Contents

Statement of the Case ........................................................................................................ 1

    I.      Defense Distributed's computer files are First Amendment speech ........................ 1

    II.    Online publication will continue no matter what .................................................... 2

Argument ......................................................................................................................... 4

    I.      The Court lacks subject matter jurisdiction. ......................................................... 4

    II.    The Private Defendants should be dismissed ........................................................ 8

        A.    All of the Private Defendants should be dismissed. ..................................... 8

        B.    Defense Distributed should be dismissed. .................................................... 8

    III.   The Plaintiff States' APA claims against the Federal Defendants fail. ................ 12

        A.    The APA does not apply to discretionary agency decisions ....................... 12

        B.    Section 2278(f)(1)'s notification requirements do not apply ..................... 13

        C.    The Tenth Amendment does not let states govern foreign policy. ............ 13

        D.    No arbitrary or capricious action occurred. ............................................... 14

        E.    The request to "permanently enjoin the Federal Defendants from removing the subject files from the Munitions List without following AECA's procedural requirements" is unpleaded and meritless ............... 18

    IV.   The APA cannot require abridgement of First Amendment freedoms. ................ 19

    V.    A nationwide injunction is inappropriate ............................................................ 23

Conclusion ...................................................................................................................... 24

Private Defendants' MSJ and
Response to Plaintiff States' MSJ
No 2:18-cv-01115-RSL

Beck Redden LLP
1221 McKinney Street, Suite 4500
Houston, Texas 77010
(713) 951-3700

1

**Statement of the Case**

2    The Court's preliminary injunction decision sets forth this case's basic background

3   correctly.  Dkt. 95.  But as the Court rightly recognized, the decision it made at that time suffered

4   from a "limited record" regarding critical issues.  Dkt. 95.  The record is now improved,

5   particularly with respect to two key factual components of the case.

6   **I.     Defense Distributed's computer files are First Amendment speech.**

7    This case concerns speech in the form of digital firearms information—*i.e.*, information

8   about firearms and firearm components stored in computer files.  Such files exist in various

9   computer file formats, and are sometimes referred to as computer aided design ("CAD") files.  *See*

10  Ex. D (Declaration of John Walker, original developer of the AutoCAD® design software).

11   CAD files are used to create digital two- and three dimensional models of physical objects

12  that describe their geometry.  *See generally id.*; Ex. E (technical guide to 3D design processes);

13  Ex. F (same); Ex. N-1 – N-64 (same).  These digital models serve many purposes other than

14  fabrication.  *See id.*  They can be used to study an object's properties (such as structural strength

15  and heat flow), to render realistic object images for product visualization, and to conduct

16  parametric modeling of a family of objects, and so forth.  *See id.*  They can also be used as part of

17  an object's fabrication process.  Critically, though, CAD files do not operate themselves.

18   Digital models of objects do not fabricate objects.  People do.  *See* Exs. D-F; Ex. N.  Just

19  as a .PDF file cannot print itself, edit itself, or display itself on screen, digital information about a

20  firearm does not turn itself into a firearm.  *Id.*  For any given digital object design—including a

21  firearm component—object fabrication does not occur until a person chooses to perform a litany

22  of prerequisites, such as interpreting the design, choosing suitable component materials, selecting

23  an effective manufacturing process, and executing the fabrication.  *Id.*  Thus, the computer files at

Private Defendants' MSJ and
Response to Plaintiff States' MSJ
No 2:18-cv-01115-RSL

- 1 -

Beck Redden LLP
1221 McKinney Street, Suite 4500
Houston, Texas 77010
(713) 951-3700

1  issue here qualify as First Amendment speech under any possible conception.[1]

2  **II.     Online publication will continue no matter what.**

3         The exact nature of the digital firearms information that Defense Distributed deals with is

4  well documented.  *See* generally Exs. A-C, P.  With respect to a given item, the information

5  Defense Distributed distributes typically takes the form of stereolithography files about the item,

6  Initial Graphics Exchange Specification files about the item, SoLiDworks PaRT files about the

7  item, SketchUp files about the item, Standard for the Exchange of Product Data files about the

8  item, diagrams of the item, renderings of the item, "read me" plain text files about assembly

9  methods, "read me" plain text files about the National Firearms Act and the Undetectable Firearms

10 Act, and software licenses.  *See, e.g.*, Ex. A ¶¶ 4-11, 19-20, 26-27; Ex. C ¶¶ 3, 8.

11        Defense Distributed has published this kind of digital firearms information at issue to the

12 internet's public domain for lengthy periods of time on multiple occasions.  First, Defense

13 Distributed published digital firearms information to the internet's public domain via its websites

14 (known as "DEFCAD") in 2012, before *Defense Distributed I* began.[2]  Second, Defense

15 Distributed published digital firearms information to the internet via DEFCAD in 2018, after

---

[1] *See Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011) ("[T]he creation and dissemination of information are speech within the meaning of the First Amendment."); *Bartnicki v. Vopper*, 532 U.S. 514, 526-27 (2001) (similar); *Junger v. Daley*, 209 F.3d 481, 482 (6th Cir. 2000) ("Because computer source code is an expressive means for the exchange of information and ideas about computer programming, we hold that it is protected by the First Amendment."); *Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 449 (2d Cir. 2001) ("[C]omputer code, and computer programs constructed from code can merit First Amendment protection."); *Bernstein v. U.S. Dep't of State*, 922 F. Supp. 1426, 1436 (N.D. Cal. 1996) ("For the purposes of First Amendment analysis, this court finds that source code is speech."); Brief of Amicus Curiae Electronic Frontier Foundation in Support of Plaintiffs-Appellants, *Def. Distributed v. U.S. Dep't of State*, 2015 WL 9267338, at * 11, 838 F.3d 451 (5th Cir. 2016) ("The functional consequences of speech are considered not as a bar to protection, but to whether a regulation burdening the speech is appropriately tailored."); *Def. Distributed v. U.S. Dep't of State*, 121 F. Supp. 3d 680, 692 (W.D. Tex. 2015).
[2] From approximately December 2012 to May 2013, Defense Distributed published the following digital firearms information on DEFCAD for free download: files concerning a single-shot firearm known as the "Liberator," files concerning a firearm receiver for AR-15 rifles, and files concerning a magazine for AR-15 rifles.  During this publication period, millions of downloads of Defense Distributed's digital firearms information occurred. *See* Ex. A ¶¶ 8-15; Ex. C ¶ 3.

Private Defendants' MSJ and
Response to Plaintiff States' MSJ
No 2:18-cv-01115-RSL
- 2 -
Beck Redden LLP
1221 McKinney Street, Suite 4500
Houston, Texas 77010
(713) 951-3700

settling *Defense Distributed I*.[3]  Third, after every party to this case conceded that it would be legal to do so at the preliminary injunction hearing, Defense Distributed began published the digital firearms information files at issue by mailing them via the U.S. Postal Service.[4]

Overwhelming evidence shows the resulting state of affairs: The computer files that the Plaintiff States have made this litigation about already belong to the public domain.  Although Defense Distributed ceased making them available to download from DEFCAD on July 31, 2018, others did not.  During and after the Defense Distributed publication period of July 27, 2018 to July 31, 2018, independent publishers unaffiliated with Defense Distributed republished what Defense Distributed had been supplying for download on DEFCAD, including the *Defense Distributed I* Shared Files and files like them.[5]  Far from any "dark or remote recesses of the internet," Dkt. 95 at 23, many republication sites are easily located by a simple Google search.[6]

This reality—the persistent republication of digital firearms information in the public domain—is not disputable.  It is conclusively established.  So is the consequence that the motion mentions as a hypothetical: "If the files are allowed to be published online, they will be permanently available to virtually anyone inside or outside the United States . . . ."  Dkt. 170 at 1. Defense Distributed's files being "permanently available" is not a hypothetical.  It is the case *now*.

Even if the Court issues all of the requested relief, the public domain will nonetheless *always* possess the files at issue and republication will *always* be occurring.  The bridge cannot be uncrossed.  The bell cannot be unrung.  The signal cannot be stopped.  Actually changing the online availability of Defense Distributed's most prolific files is *not* the Plaintiff States' goal because doing that is *impossible*.  Partisan revenge is their only goal, and their method entails a blatant abridgement of First Amendment rights.  The freedom of speech should, and will, prevail.

---

[3] *See* Ex. A ¶¶ 16-25.
[4] *See* Ex. A ¶¶ 26-27.
[5] *See* Ex. A ¶¶ 10, 19; Ex. C ¶ 12; Exs G-L; Ex. P at 1-2; Ex. Q at 1; Ex. R at 1.
[6] *Compare* Ex. S *with* Exs G-L, Ex. P, and Ex. R.

Private Defendants' MSJ and
Response to Plaintiff States' MSJ
No 2:18-cv-01115-RSL

- 3 -

Beck Redden LLP
1221 McKinney Street, Suite 4500
Houston, Texas 77010
(713) 951-3700

1

**Argument**

2      The Plaintiff States are not entitled to summary judgment; the Private Defendants are.  *See*

3  Fed. R. Civ. P. 56.  The Court should issue a summary judgment dismissing this action for lack of

4  subject matter jurisdiction.  Alternatively, the Court should issue a summary judgment dismissing

5  the Private Defendants from the action.  In the further alternative, the Court should issue a

6  summary judgment that the Plaintiff States take nothing.

7  **I.      The Court lacks subject matter jurisdiction.**

8      This action should be dismissed for lack of subject matter jurisdiction .  The Court should

9  do so for the reasons stated in the Private Defendants' opposition to the motion for a preliminary

10  injunction, *see* Dkt. 63, which the Private Defendants respectfully incorporate by reference here.

11      First, this action should be dismissed for lack of subject matter jurisdiction because the

12  challenged conduct "is committed to agency discretion by law."  5 U.S.C. § 701(a)(2); *see*

13  *generally Dist. No. 1, Pac. Coast Dist., Marine Engineers' Beneficial Ass'n v. Mar. Admin.*, 215

14  F.3d 37, 41-42 (D.C. Cir. 2000).  The Legislative authority under 22 U.S.C. § 2751 directs the

15  Executive Branch to take action "consistent with the foreign policy interests of the United States";

16  and 22 U.S.C. § 2778(a)(1) directs the government to take action "In furtherance of world peace

17  and the security and foreign policy of the United States." These standards "exude[] deference to

18  the [Executive Branch], and appear[] to . . . foreclose the application of any meaningful judicial

19  standard of review." *Webster*, 486 U.S. at 600.  Furthermore, 22 U.S.C. § 2278 commits the

20  decisions at issue to agency discretion and expressly bars "judicial review":

21      (h) Judicial review of designation of items as defense articles or services
22
23      The designation by the President (or by an official to whom the President's functions under
24      subsection (a) have been duly delegated), in regulations issued under this section, of items
25      as defense articles or defense services for purposes of this section ***shall not be subject to***
26      ***judicial review***.
27
28  22 U.S.C. § 2778(h) (emphasis added).

Private Defendants' MSJ and
Response to Plaintiff States' MSJ
No 2:18-cv-01115-RSL                          - 4 -                     Beck Redden LLP
1221 McKinney Street, Suite 4500
Houston, Texas 77010
(713) 951-3700

Second, this action should be dismissed for lack of subject matter jurisdiction because the governing statutes provide no justiciable standard by which a court can review the agency's exercise of its delegated authority.  *See Webster v. Doe*, 486 U.S. 592, 599-600 (1988); *Zhu v. Gonzales*, 411 F.3d 292, 295 (D.C. Cir. 2005).  The Arms Export Control Act triggers this rule by giving license-issuance authority to the President, or his delegate, when he determines that such action is "consistent with the foreign policy interests of the United States," 22 U.S.C. § 2751, and "in furtherance of world peace and the security and foreign policy of the United States." *Id.* § 2778(a)(1)*; see U.S. Ordnance, Inc. v. Dep't of State*, 432 F. Supp. 2d 94, 97-99 (D.D.C. 2006), ("[G]iven the clear statutory language and the absence of judicially manageable standards to guide the Court's review, it must reject plaintiffs invocation of the APA and decline to review the agency's denial of plaintiff's applications for licenses to export M16 machine guns."), *vacated on other grounds*, 231 F. App'x 2 (D.C. Cir. 2007).

Third, the presence of a political question deprives this court of subject matter jurisdiction over Department of State decisions under the AECA. *See Corrie v. Caterpillar, Inc.*, 503 F.3d 974 (9th Cir., 2007).  "The nonjusticiability of a political question is primarily a function of the separation of powers." *Baker v. Carr*, 369 U.S. 186, 211 (1962).  For this reason, the Supreme Court has long held that disputes involving political questions lie outside of the Article III jurisdiction of federal courts. *See Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 215 (1974) ("[T]he concept of justiciability, which expresses the jurisdictional limitations imposed upon federal courts by the `case or controversy' requirement of Art. III, embodies . . . the political question doctrine [ ].") (*citing Flast v. Cohen*, 392 U.S. 83, 95 (1968)); *see also No GWEN Alliance of Lane County, Inc. v. Aldridge*, 855 F.2d 1380, 1382 (9th Cir.1988) ("[T]he presence of a political question precludes a federal court, under [A]rticle III of the Constitution, from hearing or deciding the case presented.").

Private Defendants' MSJ and
Response to Plaintiff States' MSJ
No 2:18-cv-01115-RSL

- 5 -

Beck Redden LLP
1221 McKinney Street, Suite 4500
Houston, Texas 77010
(713) 951-3700

1   In addressing a challenge to Executive Branch financing and approval of arms export sales

2   by Caterpillar to Israel, the Ninth Circuit held that such decisions under the AECA constitute

3   political questions that are not subject to judicial review:

4      Plaintiffs' claims can succeed only if a court ultimately decides that Caterpillar
5      should not have sold its bulldozers to the IDF. Because that foreign policy decision
6      is committed under the Constitution to the legislative and executive branches, we
7      hold that plaintiffs' claims are nonjusticiable under the first Baker test.

8   *Corrie*, 503 F.3d at 983; *see also Mingtai Fire & Marine Ins. Co. v. UPS*, 177 F.3d 1142, 1144

9   (9th Cir.1999) (*quoting United States v. Pink*, 315 U.S. 203, 222-23 (1942)) ("'the conduct of

10  foreign relations is committed by the Constitution to the political departments of the Federal

11  Government; [and] that the propriety of the exercise of that power is not open to judicial review.'").

12      Fourth, this action should be dismissed for lack of subject matter jurisdiction because of

13  how the Tucker Act interacts with the APA.  *See Tucson Airport Auth. v. Gen. Dynamics Corp.*,

14  136 F.3d 641, 646-48 (9th Cir. 1998).  Except for "contract claims against the United States for

15  less than $10,000," the Tucker Act "gives the Court of Federal Claims *exclusive jurisdiction* to

16  award money damages, and "'*impliedly forbids' declaratory and injunctive relief* and precludes a

17  § 702 waiver of sovereign immunity.'"  *Id.* (emphasis added) (quoting N*orth Side Lumber Co. v.

18  Block*, 753 F.2d 1482, 1485 (9th Cir.1985)).   To the extent that this action adjudicates the

19  Settlement Agreement's meaning or continuing legal effect, the Court lacks jurisdiction because

20  the action is subject to the Tucker Act's bar on declaratory and injunctive relief and is not part of

21  APA Section 702's waiver of sovereign immunity.  *See id.*

22      The November 13, 2018 order denying the Private Defendants' motion to dismiss

23  implicates this rule by concluding that "*the Court's findings will* bind all of the interested parties

24  and *preclude* collateral challenges to the APA determination (such as *an action for specific

25  performance of the settlement agreement*)."  Doc. 130 (emphasis added).  Under *Tucson Airport*

Private Defendants' MSJ and
Response to Plaintiff States' MSJ
No 2:18-cv-01115-RSL                    - 6 -

Beck Redden LLP
1221 McKinney Street, Suite 4500
Houston, Texas 77010
(713) 951-3700

1  *Authority*, the Tucker Act's interaction with the APA deprives the Court of jurisdiction to render

2  a judgment with any preclusive effect on "specific performance of the settlement agreement."

3      Fifth, this action should be dismissed for lack of subject matter jurisdiction because the

4  Plaintiff States lack standing.  A "generalized grievance is not a particularized injury" that will

5  confer standing, *Novak v. United States*, 795 F.3d 1012, 1018 (9th Cir. 2015), but a generalized

6  grievance is all that the Plaintiffs assert.

7      *Parens patrei* standing is what the Plaintiff States truly want to assert.  But they cannot

8  come out and say so because of the rule barring its invocation here: States have no right to assert

9  *parens patrei* standing in an action against the federal government. *See Sierra Forest Legacy v.*

10  *Sherman*, 646 F.3d 1161, 1178 (9th Cir. 2011) ("California, like all states, 'does not have standing

11  as *parens patriae* to bring an action against the Federal Government.'" (quoting *Alfred L. Snapp*

12  *& Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 607 (1982)).

13      Plaintiffs have also failed to establish standing's requisite "causal connection between the

14  injury and the conduct complained of." *Novak*, 795 F.3d at 1018. This showing "cannot be too

15  speculative, or rely on conjecture about the behavior of other parties." *Ecological Rights Found.*

16  *v. Pac. Lumber Co.*, 230 F.3d 1141, 1152 (9th Cir. 2000). Yet all the injuries Plaintiffs identify

17  stem from this type of conjecture.

18      Another standing failure is the inability to establish redressability. A claim "lacks

19  redressability if the plaintiff will nonetheless suffer the claimed injury if a court rules in its favor."

20  *Ctr. for Biological Diversity v. Exp.-Imp. Bank of the United States*, 894 F.3d 1005, 1013 (9th Cir.

21  2018). This is precisely the case here. Even if the Court orders the State Department to issue the

22  requested notifications, even if the Department revokes the settlement, and even if Defense

23  Distributed never publishes the files again, there is no unringing the bell.

24

Private Defendants' MSJ and
Response to Plaintiff States' MSJ
No 2:18-cv-01115-RSL

- 7 -

Beck Redden LLP
1221 McKinney Street, Suite 4500
Houston, Texas 77010
(713) 951-3700

The computer files at issue in this litigation have already been posted and reposted online by countless persons with no connection to the instant action, and thousands of Internet users have already downloaded them.  *See supra* at 2-3.  Now the files are freely available for anyone to download from a variety of sources other than Defense Distributed, to say nothing of the many alternative designs that are also readily available. *See id.*  Even if the Court grants the Plaintiff States all the relief they seek, they will continue to suffer the very same injuries they cite as the basis for standing.  Their claims are not redressable.

## II.     The Private Defendants should be dismissed.

### A.      All of the Private Defendants should be dismissed

If the Court does not dismiss this action for lack of subject matter jurisdiction, then in the alternative, the Private Defendants submit that they should all be dismissed from this action.  The Court should do so for the reasons stated in the Private Defendants' motion for judgment on the pleadings, Dkt. 114, and the reply in support thereof, Dkt. 125, which the Private Defendants respectfully incorporate by reference here.

### B.      Defense Distributed should be dismissed.

Additionally, if the Court does not dismiss this action for lack of subject matter jurisdiction, and if the Court does not dismiss all of the Private Defendants for the reasons set forth above, then Defense Distributed submits that it should be dismissed from this action for lack of personal jurisdiction.  The answer puts this defense at issue, *see* Dkt. 81 at 42 ("The Court lacks personal jurisdiction over Defense Distributed."),[7] and the undisputed facts show that the defense is valid.

---

[7] None of Rule 12's waiver provisions apply here.  In contrast to the mandatory *pleading* requirement (that was met), *see* Fed. R. Civ. P. 12(b) ("Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required."), Rule 12's motion procedure for the defense of lack of personal jurisdiction is *optional*.  The text says so plainly by providing that "a party *may* assert the following defenses by motion."  Fed. R. Civ. P. 12(b) (emphasis added).  Rule 12(h)(1)(A)'s waiver provision does not apply to this defense because Defense Distributed never filed "another" Rule 12 motion; and Rule 12(h)(1)(B)'s waiver provision does not apply to this defense because Defense Distributed "include[d] it in a responsive pleading."  Fed. R. Civ. P. 12(h)(1)(B)(ii).

Private Defendants' MSJ and
Response to Plaintiff States' MSJ
No 2:18-cv-01115-RSL                                          - 8 -

Beck Redden LLP
1221 McKinney Street, Suite 4500
Houston, Texas 77010
(713) 951-3700

1   General personal jurisdiction exists only if a defendant's forum contacts are so "continuous

2   and systematic" that it can said to be "at home" there. *Daimler AG v. Bauman*, 571 U.S. 117, 122

3   (2014).  No serious case for general jurisdiction can be made here.  The complaint acknowledges

4   that the Defense Distributed's "headquarters and principal place of business are located in Austin,

5   Texas," Dkt. 29 at 10-11, and does not allege anything to the contrary vis-à-vis Washington. To

6   remove any doubt, proof shows that Texas is where Defense Distributed has conducted all of its

7   relevant day-to-day activities for years.  *See* Ex. A at 1; Ex. B at 1; Ex. C at 1.

8   Specific personal jurisdiction exists only if the action arises out of conduct that constitutes

9   a defendant's purposeful availment of the forum itself. *E.g.*, *Walden v. Fiore*, 571 U.S. 277, 284

10   (2014).  But in light of this action's very limited operative facts, specific jurisdiction does not exist.

11   Here, the complaint's only operative jurisdictional fact about Defense Distributed is the

12   prediction that, in the future, Defense Distributed will publish a passive website providing

13   generalized computer files to anyone in the world that wishes to visit.  The sole operative allegation

14   is about what Defense Distributed "intends to make available for download from the internet."

15   Dkt. 29 at 10.[8]  Even if that future conduct had occurred already (it has not, which is a jurisdictional

16   problem of its own), it would not meet the test for specific jurisdiction.

17   Under the leading precedent about websites, *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952

18   F. Supp. 1119 (W.D. Pa. 1997), jurisdiction does not exist where, as here, a website does "little

19   more than make information available to those who are interested in it." *Id.* at 1124.  Defense

20   Distributed's website does no more than "make information available to those who are interested

21   in it," which is the very definition of a "passive" site that does not trigger jurisdiction. *Id.*; *see also*

22   *Ackourey v. Sonellas Custom Tailors*, 573 F. App'x 208 (3d Cir. 2014).

---

[8] The complaint also alleges that Defense Distributed "advertises and sells items over the internet throughout the nation, including in Washington."  Dkt. 29 at 10.  But even if those contacts were proven (they are not), they fail support specific jurisdiction because the Plaintiff States' action does not arise from or relate to those contacts.

Private Defendants' MSJ and
Response to Plaintiff States' MSJ
No 2:18-cv-01115-RSL                          - 9 -                Beck Redden LLP
1221 McKinney Street, Suite 4500
Houston, Texas 77010
(713) 951-3700

1      Furthermore, even if the Plaintiff States' assertion of specific jurisdiction could survive

2    *Zippo*, the same could not be said of *Walden v. Fiore*, 571 U.S. 277 (2014).  Two of the rules that

3    *Walden* employed make it impossible for specific jurisdiction to be upheld in this case.

4      First, *Walden* makes specific jurisdiction impossible to sustain here by reaffirming the rule

5    that contacts count towards purposeful availment only if they are created by the "defendant

6    himself"—not if they are created by "plaintiffs or third parties." *Walden*, 571 U.S. at 284.  The

7    Plaintiff States' case violates this rule because the only Washington relationship at issue

8    attributable to the third parties who choose to access the website on their accord.

9      Second, *Walden* makes specific jurisdiction impossible to sustain here by holding that

10    "'minimum contacts' analysis looks to the defendant's contacts with *the forum State itself*, not the

11    defendant's contacts with *persons who reside there*." *Walden*, 571 U.S. at 285.  Defense

12    Distributed's website exemplifies this distinction by facilitating the delivery of the files at issue to

13    interested persons regardless of whether or not they reside in Washington.  As to the state *itself*,

14    Defense Distributed wants nothing to do with Washington.

15      There is also an additional, independent reason to reject specific jurisdiction here: The

16    contacts that supposedly constitute purposeful availment have not occurred.  The suit is not about

17    a website that Defense Distributed maintains currently.  Nor does it seek any relief about website

18    publications that occurred in the past.  The suit's sole concern is the website that the Plaintiff States

19    predict Defense Distributed will maintain in the future.  But because Defense Distributed has not

20    engaged in that activity, specific jurisdiction does not arise from it.[9]

21

---

[9] Once personal jurisdiction attaches, the use of flexible procedural devices like prospective injunctions about predicted future conduct can be sometimes proper.  But at inception—when courts are determining whether jurisdiction exists in the first place—the Due Process Clause's stricter demands limit the inquiry to an examination of conduct that has actually occurred in fact. *See World-Wide Volkswagen Corp.*, 444 U.S. at 291–92 ("The concept of minimum contacts . . . acts to ensure that the States through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system.").

Private Defendants' MSJ and
Response to Plaintiff States' MSJ
No 2:18-cv-01115-RSL

- 10 -

Beck Redden LLP
1221 McKinney Street, Suite 4500
Houston, Texas 77010
(713) 951-3700

1    When precedent speaks of what constitutes true purposeful availment, it always does so in

2    either the present or past tense. Never does is speak of future, hypothetical conduct as sufficing.[10]

3    Hence, unless and until a person actually engages in conduct that constitutes "purposeful

4    availment" of the forum, their liberty interest in being free from unwarranted adjudication remains.

5    For non-residents that have not in fact availed themselves of a forum, plaintiffs cannot be allowed

6    to feign their way into an exercise of jurisdiction by alleging that the non-resident is sure to do

7    what suffices in the future.   This principle both defeats jurisdiction as a matter of "minimum

8    contacts" and shows that the suit offends "traditional notions of fair play and substantial justice."

9    *Int'l Shoe*, 326 U.S. at 319 (1945) ("[The Due Process Clause] does not contemplate that a state

10   may make binding a judgment in personam against an individual or corporate defendant with

11   which the state has no contacts, ties, or relations.").

---

[10] This was true in *International Shoe itself, Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) ("due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he *have* certain minimum contacts . . ." (emphasis added)), and has remained true ever since, *see, e.g.*, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) ("the Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily *assumed*" (emphasis added)); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) ("due process is not offended by a State's subjecting the corporation to its in personam jurisdiction when there *are* sufficient contacts between the State and the foreign corporation" (emphasis added)); *World-Wide Volkswagen Corp.*, 444 U.S. at 295 ("we find in the record before us a total absence of those affiliating *circumstances that are a necessary predicate* to any exercise of state-court jurisdiction" (emphasis added)); *Hanson v. Denckla*, 357 U.S. 235, 251 (1958) ("a defendant may not be called upon to do so unless he *has had* the 'minimal contacts' with that State that are a prerequisite to its exercise of power over him" (emphasis added)).

Precedent from other courts consistently supports this rule.  *See Estate of Martinez v. Yavorcik*, 455 F. Supp. 2d 115, 121 n.3 (D. Conn. 2006) ("[P]romises as to future conduct cannot establish personal jurisdiction."); *Home Gambling Network, Inc. v. Betinternet.com*, PLC, 2:05CV 00610 KJD LRL, 2006 WL 1795554, at *5 (D. Nev. June 26, 2006) ("Jurisdiction is not based on the likelihood of some future contact with the forum, but 'the defendant's conduct and connection with the forum state . . . such that he should reasonably anticipate being haled into court there.'" (omission in original) (quoting *World-Wide Volkswagen Corp.*, 444 U.S. 286)); *Eli Lilly & Co. v. Nang Kuang Pharm. Co., Ltd.*, No. 1:14-CV-01647-TWP, 2015 WL 3744557, at *1 (S.D. Ind. June 15, 2015) ("[P]ersonal jurisdiction cannot be based on future contacts, even if such contacts are allegedly 'inevitable.'" (quoting *Sys. Software Assocs., Inc. v. Trapp*, No. 95 C 3874, 1995 WL 506058, at *6 (N.D. Ill. Aug.18, 1995)); *Koninklijke Philips N.V. v. Digital Works, Inc.*, 2:13-CV-01341-JAD, 2014 WL 3816395, at *3 (D. Nev. Aug. 4, 2014) (no personal jurisdiction where plaintiffs did "not demonstrate[] that Diaz has had any contacts with Nevada; their jurisdictional basis is one of potential future contacts only").

---

Private Defendants' MSJ and
Response to Plaintiff States' MSJ
No 2:18-cv-01115-RSL                           - 11 -                    Beck Redden LLP
1221 McKinney Street, Suite 4500
Houston, Texas 77010
(713) 951-3700

For these reasons, the record conclusively establishes that Defense Distributed's relationship with the State of Washington fails to warrant an exercise of specific jurisdiction. Dismissal for lack of personal jurisdiction is required.

**III.    The Plaintiff States' APA claims against the Federal Defendants fail.**

If the Court does not dismiss this action for lack of subject matter jurisdiction, and if the Court also does not dismiss the Private Defendants from the action, then in the further alternative, the Court should issue a summary judgment that the Plaintiff States take nothing because the only claim presented in the Plaintiff States' motion—the APA claim[11]—is meritless.

**A.    The APA does not apply to discretionary agency decisions.**

The State Department's decisions to issue the temporary modification and license the private defendant's speech were within State Department's discretionary authority and are therefore not subject to judicial review under the APA. *See* 5 U.S.C. § 701(a)(2). Although this is a "narrow exception" to judicial reviewability, it is "especially prevalent in cases involving agency decisions relating to foreign affairs and national security, for these cases involve 'judgments on questions of foreign policy and the national interest' that are not 'fit for judicial involvement.'" *U.S. Ordnance*, 432 F. Supp. 2d at 98.

Here, the AECA has granted the President extensive discretion over the authority to issue temporary modifications and licenses to export defense articles and defense services, a core foreign affairs function. *See* 22 U.S.C. §§ 2751 and 2778(a)(1).  In light of the discretionary language of the AECA, State Department decisions to grant a temporary modification or license under the authority of the AECA are not subject to judicial review under the APA. *See U.S. Ordnance*, 432 F. Supp. 2d at 97-99.

---

[11] The Plaintiff States' motion does not seek judgment on an independent Tenth Amendment cause of action.  The Tenth Amendment is invoked only as a measure of what constitutes action "not in accordance with law."  *See* Dkt. 170 at 11-12

Private Defendants' MSJ and
Response to Plaintiff States' MSJ
No 2:18-cv-01115-RSL

- 12 -

Beck Redden LLP
1221 McKinney Street, Suite 4500
Houston, Texas 77010
(713) 951-3700

**B.      Section 2278(f)(1)'s notification requirements do not apply.**

First, the Plaintiff States argue that an APA violation occurred because the State Department removing an item from the USML without supplying the requisite Congressional notice. Dkt. 170 at 10. The Private Defendants submit that Court should reject this argument for the reasons stated in the Private Defendants' response to the motion for a preliminary injunction, Dkt. 114, which the Private Defendants respectfully incorporate by reference here.

**C.      The Tenth Amendment does not let states govern foreign policy.**

As an ingredient of the APA claim, the Plaintiff States' motion argues that "the Temporary Modification and Letter exceeded the State Department's delegated authority under AECA and violated the limits on federal power established by the Tenth Amendment by purporting to authorize 'any United States person' to 'use' the files to print their own undetectable and untraceable weapons, and to permit 'unlimited distribution' of the files." Dkt. 170 at 11-12. In other words, the argument is that an APA violation occurred because the "States' ability and authority to enforce their gun-safety laws is undermined by the State Department's purported authorization of 'any United States person' to 'use' the files to print their own undetectable and untraceable weapons." *Id.* The Court should reject this argument for several reasons.

First, the Tenth Amendment argument should be rejected because it flatly misreads the texts at issue. The supposedly-excessive authorization is of *conduct*—namely, firearm production. But neither the Temporary Modification nor the License purport to authorize any such conduct. All that the Temporary Modification does is "temporarily modify United States Munitions List (USML) Category I to exclude the . . . technical data identified in the Settlement Agreement"; and all that the License does is "approve the [files at issue] for public release (i.e., unlimited distribution)." Neither agency action says anything about who can or cannot ''use' the files to print their own undetectable and untraceable weapons."

Private Defendants' MSJ and
Response to Plaintiff States' MSJ
No 2:18-cv-01115-RSL

- 13 -

Beck Redden LLP
1221 McKinney Street, Suite 4500
Houston, Texas 77010
(713) 951-3700

Second, the Plaintiff States' Tenth Amendment argument should be rejected because it ignores the Constitution's delegation of power to the United States.  By its terms, the Plaintiff States' argument applies only to "powers not delegated to the United States by the Constitution."  U.S. Const. amend. X.  But the powers at issue here—Congress's power to enact the Arms Export Control Act and the President's authority to execute it—*are* delegated to the United States by the Constitution.  *See* U.S. Const. Art. I, Sec. 8, Cl. 3; U.S. Const. Art. II, Sec. 2, Cl. 2; *see also* 22 U.S.C. § 2778(a)(1).  Nothing more is needed to put an end to the Plaintiff States' Tenth Amendment argument.

**D.     No arbitrary or capricious action occurred.**

Next, the motion argues that "the Temporary Modification and Letter are arbitrary and capricious."  Dkt. 170 at 14-18.  But the record is replete with evidence of compelling considerations that encompassed all important aspects of the matter at hand and justified both the Temporary Modification and License.

The Plaintiff States claim that the State Department has regulated the subject files for years.  Dkt. 170 at 1.  But the Administrative Record shows that the State Department had long ago advised the public and federal courts that the ITAR Regulations do not control public speech and removed any ITAR restrictions on public speech in a 1984 final rule.

It was only in 2013, after political concerns over gun violence following the Sandy Hook shooting, that State Department officials took a position that was starkly inconsistent with earlier pronouncements, and sent Defense Distributed a letter advising the company that public speech concerning the subject files may be subject to the ITAR.[12]  More specifically, the Administrative Record includes the following:

- In 1980, the Department of State Office of Munitions Control issued an official newsletter announcing that "[a]pproval is not required for publication of data within

---

[12] *See* Administrative Record [Dkt. 158-3] at DOSWASHINGTONSUP00468-470.

Private Defendants' MSJ and
Response to Plaintiff States' MSJ
No 2:18-cv-01115-RSL                              - 14 -                    Beck Redden LLP
1221 McKinney Street, Suite 4500
Houston, Texas 77010
(713) 951-3700

1          the United States..." [13]

2    • In 1984, the State Department issued a **Final Rule** removing a former footnote from
3      the ITAR thought to impose a prior restraint.[14]   In doing so, the State Department stated:
4      "Concerns were expressed, for example, on licensing requirements as they relate to the
5      First Amendment to the Constitution. The revision seeks to reflect these concerns..."[15]

6    • As further shown in documents comprising the Administrative Record, in 1996 the
7      State Department advised a California federal court that the ITAR "does not seek to
8      control the various means by which information is placed in the public domain."[16]

9          Undeterred, the Plaintiff States repeatedly claim that the Administrative Record does not

10   support the State Department's release of controls on public speech concerning the subject files.

11   They even go so far to claim that no Department of Justice advisements are in the Administrative

12   Record. *Id.* at 19.  Yet the Administrative Record clearly shows that the State Department acted

13   on decades of repeated and well-reasoned Department of Justice legal advice warning against

14   imposing the ITAR as a prior restraint on public speech.  This was explained by the Department

15   of State press briefing, Dkt. 35-1 at 5, regarding the Settlement Agreement:

16          The Department of Justice was advising the State Department on this entire legal
17          matter. The Department of Justice suggested that the State Department and the U.S.
18          Government settle this case, and so that is what was done. We were informed that
19          we would've lost this case in court, or would have likely lost this case in court based
20          on First Amendment grounds. We took the advice of the Department of Justice, and
21          here we are right now.
22
23          The Department of Justice advice to the State Department that it would lose on First

24   Amendment Grounds was part of a long series of legal opinions, dating back to 1978, that

25   consistently warned against imposing a prior restraint on public speech under the ITAR and other

26   export control regulations.  More specifically, the Administrative Record includes the following:

27   • In 1978, the Department of Justice sent a letter to the White House that warned: "It is
28     by no means clear from the language or legislative history of either statute that
29     Congress intended that the President regulate noncommercial dissemination of

---

[13] *Id.* at DOSWASHINGTONSUP00342-43, DOSWASHINGTONSUP00342.
[14] *Id.* at DOSWASHINGTONSUP00038.
[15] *Id.* (*citing* 49 Fed. Reg. 47,682, 47,683 (December 6, 1984)).
[16] *See* Dkt. 116-1 at DOSWASHINGTON000256 and DOSWASHINGTON000345.

Private Defendants' MSJ and
Response to Plaintiff States' MSJ
No 2:18-cv-01115-RSL                              - 15 -

Beck Redden LLP
1221 McKinney Street, Suite 4500
Houston, Texas 77010
(713) 951-3700

information, or considered the problems such regulation would engender." [17]

- In 1981, the Department of Justice issued a memorandum to the State Department that warned: "insofar as [the ITAR] could be applied to persons who have no connection with any foreign enterprise, who disseminate technical data in circumstances in which there is no more than a belief or a reasonable basis for believing that the data might be taken abroad by foreign nationals and used there in the manufacture of arms, the licensing requirement is presumptively unconstitutional as a prior restraint on speech protected by the First Amendment." [18]

- In 1981, the Department of Justice issued a memorandum to the Department of Commerce that warned: "it may be permissible to require a license before a person may disclose (with the requisite *scienter)* technical data having direct military applications to an adversary of the United States. Apart from this limited category, we believe that the prior restraint doctrine bars a licensing requirement." [19]

- In 1984, the Department of Justice issued a memorandum to the State Department that warned: "We remain of the opinion, however, that on their face, the ITAR still present some areas of potentially unconstitutional application, and, moreover, that we cannot be certain whether existing case law would be sufficient to narrow the range of application to a constitutionally sufficient extent." [20]

- In 1997, the Department of Justice Report issued a report to Congress on bombmaking information (controlled by the ITAR) posted on the internet that explained: "Anyone who teaches or publishes bombmaking information -- including those who do so for wholly legitimate reasons, such as explosives manufacturers, the military, and encyclopedia publishers -- could foresee that some unknown recipient of the teaching or information will use it for unlawful ends; but the First Amendment would not permit culpability on that basis."[21]

Despite the Plaintiff States' claims that the State Department with not consider the unique properties of 3D-printable firearms, Dkt. 170 at 1, 15, the Administrative Record includes documentation that shows how, following the 2013 letter to Defense Distributed, the State Department held an Additive Manufacturing ("AM") Symposium[22] attended by various AM industry experts.[23]  That symposium specifically addressed 3D printed guns and, notwithstanding

---

[17] Dkt. 158-3 at DOSWASHINGTONSUP00236-252, DOSWASHINGTONSUP00239 at n. 7.
[18] *Id.* at DOSWASHINGTONSUP00254-266, DOSWASHINGTONSUP00254.
[19] *Id.* at DOSWASHINGTONSUP00268-272, DOSWASHINGTONSUP00272.
[20] *Id.* at DOSWASHINGTONSUP00274-288, DOSWASHINGTONSUP00287.
[21] *Id.* at DOSWASHINGTONSUP00290-333, DOSWASHINGTONSUP00313.
[22] Dkt. 116-1 at DOSWASHINGTON000025-33.
[23] *Id.* at DOSWASHINGTON000025-27.

Private Defendants' MSJ and
Response to Plaintiff States' MSJ
No 2:18-cv-01115-RSL                                          - 16 -

Beck Redden LLP
1221 McKinney Street, Suite 4500
Houston, Texas 77010
(713) 951-3700

1   the files, found that export controls on 3D printing would not benefit U.S. manufacturing or

2   national security and would likely hurt domestic AM system manufacturers.[24]

3          Further specific to 3D-printed guns, the Administrative Record includes a 2014 legal

4   analysis specific to government control of 3D-printed gun files performed by Defense

5   Distributed's legal counsel.[25]  Among other things, and consistent with the repeated Department

6   of Justice advice provided since 1978, the assessment found that "[i]nstituting a flat ban on 3D

7   gun blueprints constitutes a prior restraint, and is a content-based restriction on speech" and that,

8   "[t]hough the government has countervailing interests in promoting security, an overbroad ban on

9   all firearm blueprints cannot withstand constitutional scrutiny." [26]

10          Hence, on May 24, 2018, the Department of State published a proposed rule in the Federal

11  Register seeking to transfer responsibility for the licensing of firearms exports from the ITAR U.S.

12  Munitions List ("USML") to the Department of Commerce Export Administration Regulations

13  ("EAR") Commerce Control List. 83 Fed. Reg. 24,198 (May 24, 2018).  The proposed rule offers

14  several additional findings and studies to justify transferring the responsibility from the State

15  Department to the Commerce Department. For example:

16          1. Reduce burden hours: "The Department believes the effect of this proposed rule
17          would decrease the number of license applications submitted to the Department under
18          OMB Control No. 1405–0003 by approximately 10,000 annually, for which the
19          average burden estimates are one hour per form, which results in a burden reduction
20          of 10,000 hours per year." *Id.* at 24200.

21          2. Reduced costs: "In addition to the reduction in burden hours, there will be direct cost
22          savings to the State Department that would result from the 10,000 license applications
23          no longer being under the ITAR once these items are moved to the EAR." *Id.*

24          3. Save taxpayers $2.5 million annually: "It is the case, however, that the movement
25          of these items from the ITAR would result in a direct transfer of $2,500,000 per year
26          from the government to the exporting public, less the increased cost to taxpayers,
27          because they would no longer pay fees to the State Department and there is no fee
28          charged by the Department of Commerce to apply for a license.." *Id.* at 24201.

---

[24] *Id.* at DOSWASHINGTON000032.
[25] *Id.* at DOSWASHINGTON000051-110.
[26] *Id.* at DOSWASHINGTON000109.

Private Defendants' MSJ and
Response to Plaintiff States' MSJ
No 2:18-cv-01115-RSL                                          - 17 -

Beck Redden LLP
1221 McKinney Street, Suite 4500
Houston, Texas 77010
(713) 951-3700

Further evidence disproving the suggestion of arbitrary and capricious action is found in the government's compliance with APA requirements for removal of the items.  Here, it is undisputed that the Departments of State and Commerce published the proposed rules for removal of the items in the Federal Register on May 24, 2018, opening a 45-day public comment period that ended on July 9, 2018. *See* 83 Fed. Reg. 24,298 (May 24, 2018); 83 Fed. Reg. 24,166 (May 24, 2018).  The State Department "received more than 3,500 comments in response to the NPRM, including comments related to 3D-printed firearms." *See* Declaration of Sarah Heidema ("Heidema Decl."). Dkt. 64-1, ¶ 23.

After reviewing public comments, the Departments of State and Commerce submitted final rules for the list transfers to the Office of Management and Budget for regulatory review on November 7, 2018. *See* Government Accountability Office Report No. GAO-19-307 (March 2019) at p. 7, available at   https://www.gao.gov/products/GAO-19-307.   Since that time, the State Department provided Congressional Notification of the items proposed for removal from USML Category I on February 4, 2019. *Id.*   The State Department has further issued a Notice of Information Collection related to the list transfers. *See* 84 Fed. Reg. 3,528 (February 12, 2019). All of these agency actions comply with the APA rulemaking process.

**E.**      **The request to "permanently enjoin the Federal Defendants from removing the subject files from the Munitions List without following AECA's procedural requirements" is unpleaded and meritless.**

The Plaintiff States' motion requests three distinct forms of relief.  First and second, it asks the Court to "vacate the Temporary Modification"  and "vacate the . . . Letter." Dkt. 170 at 1, 24. Third, it asks the Court to "permanently enjoin the Federal Defendants from removing the subject files from the Munitions List without following AECA's procedural requirements."  *Id.*; *see id.* at 21 ("The States additionally ask the Court to enjoin the Federal Defendants from issuing any subsequent 'temporary modification' or otherwise removing the subject files from the Munitions

Private Defendants' MSJ and
Response to Plaintiff States' MSJ
No 2:18-cv-01115-RSL                                    - 18 -

Beck Redden LLP
1221 McKinney Street, Suite 4500
Houston, Texas 77010
(713) 951-3700

List or permitting their export without providing congressional notice as required by AECA.").

The third request for relief should be rejected because the complaint does not seek it.  *See* Dkt. 29.  The complaint's requests for declaratory and injunctive relief pertain only to the first two forms of relief.  *Id.* at 73-74.  The complaint says nothing about the third request for relief, rendering it ineligible for any adjudication whatsoever.  *See* Fed. R. Civ. P. 8(a)(3).

Additionally, even if the third request for relief had been pleaded, it cannot be granted because the Administrative Procedure Act supplies no cause of action against *future* agency action.  The APA's right of judicial review extends only to past agency action.  The statute makes this clear by giving the right of judicial review only to those "suffering legal wrong because of agency action" or "adversely affected or aggrieved by agency action," 5 U.S.C. § 702, and even then only in cases of "final agency action," 5 U.S.C. § 704.[27]  The third request for relief therefore lacks any supporting cause of action.

## IV.     The APA cannot require abridgement of First Amendment freedoms.[28]

The Administrative Procedure Act could not possibly authorize an injunction that requires a violation of the First Amendment.  Nor does it.  Rather, the statute acknowledges constitutional limitations on the relief it can supply by providing that "[n]othing herein . . . affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground."   5 U.S.C. § 702; *see Saavedra Bruno v. Albright*, 197 F.3d 1153, 1158 (D.C. Cir. 1999); *see also Trump v. Hawaii*, 138 S. Ct. 2392, 2424-29 (2018) (Thomas, J. concurring).

---

[27] Indeed, the statutorily-required "review of the whole record," 5 U.S.C. § 706, is impossible to conduct as to hypothesized future actions, confirming that no such cause of action exists.  *See* Dkt. 170 at 21 n.52 ("The States anticipate that any final rule that removes the subject files from the Munitions List would be arbitrary and capricious for many of the same reasons discussed herein. Of course, the issue is not ripe at this time, since no final rule has been published.").

[28] The Private Defendants continue to submit that the First Amendment protects their right to engage in this speech for the reasons stated in the opposition to the motion for a preliminary injunction, *see* Dkt. 63, which the Private Defendants  respectfully incorporate by reference here.  *See also* Dkt. 11 at 2-3 ("These acts are expressly protected by the First Amendment.").

Private Defendants' MSJ and
Response to Plaintiff States' MSJ
No 2:18-cv-01115-RSL                              - 19 -                              Beck Redden LLP
1221 McKinney Street, Suite 4500
Houston, Texas 77010
(713) 951-3700

1    Applicable guidance comes from *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449

2    (1958), the case establishing that courts cannot issue discovery orders that have the "practical

3    effect 'of discouraging' the exercise of constitutionally protected political rights." *Id.* at 461.  For

4    decades, courts have understood this line of precedent to mean that First Amendment freedoms

5    "are protected not only against heavy-handed frontal attack, but also from being stifled by more

6    subtle governmental interference."  *Bates v. City of Little Rock*, 361 U.S. 516, 523 (1960); *see*

7    *Perry v. Schwarzenegger, 591 F.3d* 1147, 1160-61 (9th Cir. 2010).  Given that a mere discovery

8    order cannot be issued if its "practical effect" is to deny First Amendment rights, the same is true

9    of a final judgment's issuance of declaratory or injunctive relief.  Regardless of whether or not the

10   APA would otherwise authorize it, courts cannot issue declaratory or injunctive relief if doing so

11   would have the "practical effect" of abridging First Amendment rights.

12       The Plaintiffs States' motion refuses to confront the First Amendment at all.  It takes the

13   position that, "to the extent there are any constitutional implications with respect to the subject

14   files, they are not squarely presented here and the Court need not consider them."  Dkt. 170 at 21

15   n.53.  But even if First Amendment rights and are not technically "presented" for adjudication,[29]

16   the Plaintiff States' requested remedy would still have the "practical effect" of discouraging

17   (chilling) conduct protected by the First Amendment.[30]  Free speech rights are thereby implicated.

18       And yet the motion makes not a single argument about the First Amendment interests at

19   stake.  The Plaintiff States do not even attempt to confront the many "challenging issues" that

20   the Court has already deemed fit to assume are implicated.  Dkt. 95 at 24-25.  When it issued the

21   preliminary injunction, the "Court decline[d] to wade through these issues based on the limited

---

[29] To be clear, since none of the action's claims pertain to the Private Defendants, the Private
Defendants maintain both that that they should be dismissed from the action and that its judgment
will have no preclusive effect upon them.  *See* Dkt. 114; Dkt. 125.

[30] This cannot be denied because it is the standing theory's lynchpin.  If vacating the Temporary
Modification and License would not have at least some "practical effect" on the speech at issue,
standing's redressability element would not exist. And yet the motion makes not a single argument
about the First Amendment interests at stake.

Private Defendants' MSJ and
Response to Plaintiff States' MSJ
No 2:18-cv-01115-RSL                                   - 20 -                    Beck Redden LLP
                                                                        1221 McKinney Street, Suite 4500
                                                                              Houston, Texas 77010
                                                                               (713) 951-3700

record before it." Dkt. 95 at 25. But now they are unavoidable.

The Plaintiffs States have failed to show how the relief they request constitutes anything less than a direct abrogation *and* abridgement of the First Amendment. *See* Dkt. 95 ("That right is currently abridged, but it has not been abrogated."). *Cf.* U.S. Const. Am 1 ("Congress shall make no law . . . *abridging* the freedom of speech." (emphasis added)). Three key failures stand out.

First, the Plaintiffs States fail to show how their requested remedy satisfies the First Amendment doctrine regarding prior restraints. *See, e.g.*, *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963). "Prior restraints face a well-established presumption against their constitutionality," *Marceaux v. Lafayette City-Parish Consol. Gov't*, 731 F.3d 488, 493 (5th Cir. 2013), and the Plaintiff States have done no analysis whatsoever of critical issues like "(1) the risk of censorship associated with the vesting of unbridled discretion in government officials; and (2) 'the risk of indefinitely suppressing permissible speech' when a licensing law fails to provide for the prompt issuance of a license." *East Brooks Books, Inc. v. Shelby County*, 588 F.3d 360, 369 (6th Cir. 2009). *See* Dkt. 11 at 1-3; Dkt. 63 at 1.

Second, the Plaintiff states fail to show how their requested remedy complies with the First Amendment doctrine regarding content-based speech restrictions. *See, e.g.*, *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218 (2015). The relief they seek imposes content-based speech restrictions; as such, it would be an unconstitutional abridgement of First Amendment's freedoms because it does not serve a compelling governmental interest and is not narrowly drawn to serve any such interest. *See id.* The resulting strict scrutiny cannot be met for several reasons. [31]

Most obviously, the Plaintiff States' remedy does not survive strict scrutiny because it does not advance a compelling state interest. The holding of *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002), applies directly to this case: "The mere tendency of speech to encourage unlawful

---

[31] Even under a test of intermediate scrutiny, the Plaintiff States' requested relief would fail to survive because of its dramatically overbroad and untailored nature.

Private Defendants' MSJ and
Response to Plaintiff States' MSJ
No 2:18-cv-01115-RSL                                   - 21 -

Beck Redden LLP
1221 McKinney Street, Suite 4500
Houston, Texas 77010
(713) 951-3700

acts is not a sufficient reason for banning it." *Id.* at 253.  The government lacks a compelling state interest and "may not prohibit speech" if the speech merely "increases the chance an unlawful act will be committed 'at some indefinite future time.'" *Id.*  A mere "remote connection" between speech and a third party's criminal conduct is not enough.  *Id.*  "Without a significantly stronger, more direct connection, the Government may not prohibit speech on the ground that it may encourage [third-parties] to engage in illegal conduct." *Id.*

In this context, the government can only prohibit speech to prevent illegal conduct when the speech is "*integral* to criminal conduct," *United States v. Stevens*, 559 U.S. 460, 468 (2010) (emphasis added).  But speech cannot be "integral to criminal conduct" if it has only a "contingent and indirect" relationship to that conduct. *Ashcroft*, 535 U.S. at 250.  It is not enough to contend, as Plaintiff States do here, that there is "some unquantified potential for subsequent criminal acts." *Id.*  Indeed, the Supreme Court has recognized that "it would be quite remarkable to hold that speech by a law-abiding possessor of information can be suppressed in order to deter conduct by a non-law abiding third party." *Bartnicki*, 532 U.S. at 529-30.

Additionally, the Plaintiff States' requested relief does not meet the narrow tailing requirement because of less restrictive alternatives.  Namely, each of the Plaintiff States could achieve its ends by banning only the harmful *conduct* at issue—not speech that is merely and only sometimes remotely associated with that conduct.  *See Bartnicki*, 532 U.S. at 529 ("The normal method of deterring unlawful conduct is to impose an appropriate punishment on the person who engages in it.").

Another reason that the Plaintiff States' requested relief does not survive strict scrutiny is because they have failed to prove that their requested relief will actually advance their aims.  In the First Amendment context, justifications backed by mere "anecdote and supposition" do not suffice, *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 822 (2000), and neither does

Private Defendants' MSJ and
Response to Plaintiff States' MSJ
No 2:18-cv-01115-RSL

- 22 -

Beck Redden LLP
1221 McKinney Street, Suite 4500
Houston, Texas 77010
(713) 951-3700

"ambiguous proof," *Brown v. Entm't Merchs. Ass'n.*, 564 U.S. 786, 800 (2011).   Compelling "empirical support" of efficacy must be given. *Globe Newspaper Co. v. Sup. Ct. for Norfolk Cty.*, 457 U.S. 596, 609 (1982).   None exists here. *Cf. Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2313-14 (2016) ("Determined wrongdoers, already ignoring existing statutes and safety measures, are unlikely to be convinced to adopt safe practices by a new overlay of regulations.").

In particular, the Plaintiff States' effort to prove efficacy is bound to fail because the information they seek to censor is already available across the internet. *See supra* at 2-3.   The digital firearms information that Defense Distributed already published online under the State Department license before the Plaintiff States' filed this action was thereby committed to the internet's public domain, where independent republishers beyond anyone's control have made and will continue to make those files readily accessible on one website or another forever—regardless of whether or not the Plaintiff States succeed in obtaining this action's declaratory and injunctive relief. *Id.*   Since publication has already been completed, the "efficacy of equitable relief . . . to avert anticipated damages is doubtful at best." *New York Times Co. v. United States*, 403 U.S. 713, 732 (1971) (White, J., concurring).

The Court's preliminary injunction decision acknowledged that, as a result of the relief this APA action seeks, a First Amendment right to disseminate the files at issue "is currently abridged." Dkt. 95 at 25.   That does not require more balancing.   That is the end of the matter.   *See* U.S. Const. amend. I ("Congress shall make no law. . . abridging the freedom of speech, or of the press. . . .").

## V.   A nationwide injunction is inappropriate.

At bottom, the Plaintiff States request what amounts to a nationwide declaration and injunction.   The Court should deny this aspect of the request and limit the scope of any relief to conduct taking place in the Plaintiff States' jurisdictions—not conduct taking place in other states that are not party to this action. *See generally Trump v. Hawaii*, 138 S. Ct. 2392, 2424-29 (2018)

Private Defendants' MSJ and
Response to Plaintiff States' MSJ
No 2:18-cv-01115-RSL

- 23 -

Beck Redden LLP
1221 McKinney Street, Suite 4500
Houston, Texas 77010
(713) 951-3700

(Thomas, J. concurring). Several independent arguments require this limitation.

First, the Plaintiff States are not entitled to nationwide relief because their motion offers no analysis to justify one. Since nationwide injunctions (and declarations) are the exception, not the rule, *id.*, a plaintiff that does not ask for a nationwide injunction is not entitled to one.

Second, the Plaintiff States are not entitled to nationwide relief because, as a pure matter of law, nationwide relief in these circumstances would fail to "comply with longstanding principles of equity that predate this country's founding." *Id.* at 2426-2427.

Third, the Plaintiff States are not entitled to a nationwide injunction or declaration because they have not supplied sufficient proof to justify it. Standing, irreparable harm, and a careful balancing of equities are indispensable elements of this action. But since the evidence of those elements pertains only to the named plaintiff states—and even as to those, the proof is inconsistent—the remedy they seek must be similarly limited. *See id.*

The overbroad injunction sought by the Plaintiff States will chill the exercise of First Amendment rights by Americans who are not parties to the case, wherever they may be found, in the United States, and around the globe. If any relief is to result from this dispute, it should be limited to the parties actually asserting and defending the claims—the Plaintiff States and Federal Defendants alone—and not extended to millions of Americans with no stake in the game.

### Conclusion

The Plaintiff States are not entitled to summary judgment; the Private Defendants are. The Court should issue a summary judgment dismissing this action for lack of subject matter jurisdiction. Alternatively, the Court should issue a summary judgment dismissing the Private Defendants from the action. In the further alternative, the Court should issue a summary judgment that the Plaintiff States take nothing. Any relief that is awarded to the Plaintiff States should be restricted to conduct taking place in the Plaintiff States' jurisdictions.

Private Defendants' MSJ and
Response to Plaintiff States' MSJ
No 2:18-cv-01115-RSL

- 24 -

Beck Redden LLP
1221 McKinney Street, Suite 4500
Houston, Texas 77010
(713) 951-3700

Date: March 15, 2019.

BECK REDDEN LLP


/s/Charles Flores
Charles Flores
cflores@beckredden.com
Beck Redden LLP
1221 McKinney, Suite 4500
Houston, TX 77010
Phone: (713) 951-3700
*Admitted Pro Hac Vice

Attorneys for Defendants
Defense Distributed

Respectfully submitted,

FARHANG & MEDCOFF


/s/Matthew Goldstein
Matthew Goldstein
Farhang & Medcoff
4801 E. Broadway Blvd., Suite 311
Tucson, AZ 85711
Phone: (202) 550-0040
mgoldstein@farhangmedcoff.com
*Admitted Pro Hac Vice

ARD LAW GROUP PLLC
/s/Joel B. Ard
Joel B. Ard, WSBA # 40104
joel@ard.law
Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243


Attorneys for Defendants
Defense Distributed, Second Amendment
Foundation, Inc., and Conn Williamson


## CERTIFICATE OF SERVICE

I certify that on March 15, 2019, I used the CM/ECF system to file this document with the Clerk of the Court and serve it upon all counsel of record.

/s/Charles Flores
Charles Flores
cflores@beckredden.com
Beck Redden LLP
1221 McKinney, Suite 4500
Houston, TX 77010
Phone: (713) 951-3700
*Admitted Pro Hac Vice

Attorney for Defendants
Defense Distributed

Private Defendants' MSJ and
Response to Plaintiff States' MSJ
No 2:18-cv-01115-RSL

- 25 -

Beck Redden LLP
1221 McKinney Street, Suite 4500
Houston, Texas 77010
(713) 951-3700