1

The Honorable Robert S. Lasnik

2

3

4

5

6

7      **UNITED STATES DISTRICT COURT**
       **WESTERN DISTRICT OF WASHINGTON**
8      **AT SEATTLE**

9    STATE OF WASHINGTON; STATE OF                NO. 2:18-cv-01115-RSL
     CONNECTICUT; STATE OF MARYLAND;
10   STATE OF NEW JERSEY; STATE OF NEW            **PLAINTIFF STATES' COMBINED**
     YORK; STATE OF OREGON;                       **REPLY IN SUPPORT OF MOTION**
11   COMMONWEALTH OF                              **FOR SUMMARY JUDGMENT AND**
     MASSACHUSETTS; COMMONWEALTH                  **OPPOSITION TO DEFENDANTS'**
12   OF PENNSYLVANIA; DISTRICT OF                 **CROSS-MOTIONS FOR SUMMARY**
     COLUMBIA; STATE OF CALIFORNIA;               **JUDGMENT**
13   STATE OF COLORADO; STATE OF
     DELAWARE; STATE OF HAWAII; STATE             NOTED FOR CONSIDERATION:
14   OF ILLINOIS; STATE OF IOWA; STATE            JUNE 7, 2019[1]
     OF MINNESOTA; STATE OF NORTH
15   CAROLINA; STATE OF RHODE ISLAND;
     STATE OF VERMONT; and
16   COMMONWEALTH OF VIRGINIA.
17
                    Plaintiffs,
18
19           v.

20   UNITED STATES DEPARTMENT OF
     STATE, et al.,
21
                    Defendants.
22

23

24

25

26   _____
         [1] *See* Dkt. # 183.

     PLAINTIFF STATES' COMBINED              i
     REPLY ISO MOTION FOR SUMMARY                       Complex Litigation Division
     JUDGMENT AND OPP TO                                800 5th Avenue, Suite 2000
     DEFENDANTS' CROSS-MOTIONS                          Seattle, WA 98104-3188
     2:18-cv-01115-RSL                                  (206) 474-7744

1

***TABLE OF CONTENTS***

2

I.      INTRODUCTION ....................................................................................... 1

3

II.     SUPPLEMENTAL STATEMENT OF UNDISPUTED FACTS ..................................... 1

4

      A.    The Federal Defendants Supplement the Record in Response to the Court's
5

             Order .............................................................................................. 1

6

      B.    The Revised Second Supplement Reveals That "Nothing Changed" from the
             State Department's Perspective Regarding 3D-Printable Guns ............................... 3

7

      C.    The State Department Admittedly Failed to Consider Public Comments on the
8

             NPRMs *and* the Challenged Actions Themselves ........................................... 5

9

      D.    No Final Rules Have Been Published ......................................................... 8

10

III.    ARGUMENT ............................................................................................ 8

11

      A.    The Plaintiff States Have Standing, as the Court Already Ruled ............................ 9

12

      B.    The Temporary Modification and Letter Are Contrary to Law ............................. 10

13

            1.    The Temporary Modification and Letter violate AECA. ................................ 10

14

            2.    The Temporary Modification and Letter violate the Tenth Amendment. ......... 11

15

      C.    The Temporary Modification and Letter Are Arbitrary and Capricious ................. 12

16

      D.    Vacatur and a Permanent Injunction Are Needed to Provide Complete Relief ....... 17

17

      E.    The Private Defendants' Arguments Do Not Require a Different Result .............. 18

18

            1.    The Private Defendants' jurisdictional arguments lack merit. ........................ 19

19

            2.    The Private Defendants' constitutional theories do not preclude the Court
               from setting aside unlawful agency actions. .................................................... 20

20

             3.    The Private Defendants' APA arguments do not explain, let alone justify,
21

               the Federal Defendants' abrupt regulatory about-face. ................................... 23

22

IV.    CONCLUSION ....................................................................................... 24

23

24

25

26

PLAINTIFF STATES' COMBINED
REPLY ISO MOTION FOR SUMMARY
JUDGMENT AND OPP TO
DEFENDANTS' CROSS-MOTIONS
2:18-cv-01115-RSL

ii

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

1    This brief is a combined reply in support of the States' Motion for Summary Judgment

2    (Dkt. # 170) ("SMSJ") and opposition to the Federal Defendants' Cross-Motion for Summary

3    Judgment (Dkt. # 173) ("FDMSJ") and the Private Defendants' Motion for Summary Judgment

4    (Dkt. # 174) ("PDMSJ").

5                               **I.      INTRODUCTION**

6        The Temporary Modification and Letter deregulating 3D-printed firearm files violate

7    AECA's congressional notice provisions and must be vacated as contrary to law. In addition,

8    these actions are arbitrary and capricious and were pretextually rationalized after the fact in

9    violation of the APA. After multiple supplementations of the administrative record in this case,

10   including the most recent Revised Second Supplementation on May 6, 2019, the evidence shows

11   that the State Department failed to consider the national security implications of deregulation in

12   light of the unique properties of untraceable, undetectable, 3D-printable plastic firearms, and did

13   not independently "determine" that deregulation was "in the interest of the security and foreign

14   policy of the United States," as asserted. It is now more clear than ever that the State

15   Department's abrupt reversal of its longstanding regulation of the subject files—as President

16   Trump tweeted on July 31, 2018—"doesn't seem to make much sense!" Dkt. # 15-2.

17       The Court should grant summary judgment in the States' favor, vacate and set aside the

18   unlawful Temporary Modification and Letter, and enjoin the Federal Defendants from

19   attempting any further "temporary" deregulation of 3D-printable firearms that illegally evades

20   Congress's oversight.

21            **II.     SUPPLEMENTAL STATEMENT OF UNDISPUTED FACTS**

22       Much of the relevant background is set forth in the States' Motion for Summary

23   Judgment (Dkt. # 170, Part II). This section covers factual developments since February 2019.

24   **A.    The Federal Defendants Supplement the Record in Response to the Court's Order**

25       On March 19, 2019, the Court granted the States' Motion to Supplement the

26   Administrative Record; incorporated Dkt. # 158 (First Supplement) into the administrative

PLAINTIFF STATES' COMBINED
REPLY ISO MOTION FOR SUMMARY
JUDGMENT AND OPP TO
DEFENDANTS' CROSS-MOTIONS
2:18-cv-01115-RSL

1

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

1    record; and ordered the Federal Defendants to (1) certify the production of a *complete*

2    administrative record that includes "all materials [the State Department] considered, directly or

3    indirectly" in taking the challenged actions and (2) supplement the administrative record with a

4    privilege log and with settlement-related communications and materials generated in *Defense*

5    *Distributed v. U.S. Dep't of State*, Case No. 15-cv-372-RP (W.D. Tex.).[2] The Court also granted

6    the States "leave to take discovery aimed at establishing whether the pre-July 27, 2018,

7    comments to the NPRMs were directly or indirectly considered when issuing the temporary

8    modification and letter."[3] As discussed below (Part II.C), this discovery revealed that the State

9    Department did *not* consider the comments.

10           On April 16, 2019, the Federal Defendants filed a Second Supplement (Dkt. # 179),[4] and

11   on May 6, 2019, they filed a Revised Second Supplement (Dkt. # 184) of the administrative

12   record. According to the Certifications, these supplemental materials consist of 4,150 previously

13   unfiled documents, of which 904 are filed publicly and 3,246 are logged as privileged and

14   withheld in full.[5] The revised privilege log (Dkt. ## 184-13 & 184-14) reflects documents with

15   a number of questionable redactions. For example, an email from New Hampshire Governor

16   Chris Sununu to State Department officials lobbying on behalf of a New Hampshire-based

17   multinational firearms manufacturer was redacted, purportedly under the deliberative process

18   privilege,[6] as were numerous post-decisional communications and communications with internal

19   public relations staff. Because of these and other irregularities and omissions, the States do not

20   concede that the record is complete or that the privilege claims are proper. Nevertheless, because

21   the record in its current form amply demonstrates that the Federal Defendants' covert

22

23      [2] Dkt. # 175 at 8.
      [3] *Id.* at 7. By way of response to the States' discovery request pursuant to the Order, the Federal Defendants
      submitted the Declaration of Michael F. Miller and the Declaration of Robert Monjay. *See* Dkt. # 179 at 2.

24      [4] The original privilege log filed on April 16, 2019 was deficient, as hundreds of pages' worth of entries
      did not indicate any basis for withholding whatsoever. Second Declaration of Kristin Beneski, Ex. O (Ltr. dated

25   April 25, 2019); Dkt. # 184-1, ¶ 11.
      [5] Dkt. # 179-1 (Certification of Second Supplement), ¶ 21 (3,240 documents withheld; 910 produced); Dkt.

26   # 184-1 (Certification of Revised Second Supplement), ¶¶ 5–10 (30 additional privilege claims, 6 withheld in full).
      [6] Ex. P (WASHAR0035756); Dkt. No. 184-14 at 606.

PLAINTIFF STATES' COMBINED                                 2                    ATTORNEY GENERAL OF WASHINGTON
REPLY ISO MOTION FOR SUMMARY                                                          Complex Litigation Division
                                                                                        800 5th Avenue, Suite 2000
JUDGMENT AND OPP TO                                                                      Seattle, WA 98104-3188
DEFENDANTS' CROSS-MOTIONS                                                                   (206) 474-7744
2:18-cv-01115-RSL

deregulation of 3D-printable guns was unlawful for multiple reasons, this case is ripe for determination by summary judgment.

**B.     The Revised Second Supplement Reveals That "Nothing Changed" from the State Department's Perspective Regarding 3D-Printable Guns**

Despite the questionable validity of the withholding and redactions, the Revised Second Supplement is far more complete than the cherry-picked record the Federal Defendants initially filed in October 2018. Among other documents, it includes samples of the *more than 106,000 emails* from members of the public between July 23 and July 27, 2018, urging the Department not to exempt 3D-printable guns from regulation via the "temporary" modification; multiple letters from Congressional leaders urging reconsideration of the deregulation of 3D-printable gun files; detailed comment letters from U.S. Senators and public policy organizations; and approximately 155 documents and communications related to the settlement of the *Defense Distributed* litigation.[7]

One document in the Revised Second Supplement in particular sheds new light on the decision to deregulate 3D-printable firearms: on July 26, 2018—the day before the State Department issued the Temporary Modification and Letter—a Senate Foreign Relations staffer emailed State Department personnel to request an analysis as to why the Department had changed the position it took in its April 4, 2018 motion to dismiss in the *Defense Distributed* case.[8] Joshua M. Paul of the State Department replied that this was a "technical legal question" that should be directed to the Department of Justice.[9] In a following internal email exchange, Defendant Sarah Heidema—the Director within DDTC who in this case certified that the original, cherry-picked administrative record filed was "complete" and asserted, absent any record evidence, that the State Department "determined" that 3D-printable firearms "pose little national security concern"[10]—argued that it was actually "a question for us [the State

---

[7] *See* Second Declaration of Jennifer D. Williams, ¶ 4.
[8] Ex. Q (WASHAR0000212).
[9] *Id.*
[10] Dkt. # 64-1 (Heidema Decl.), ¶ 19; Dkt. # 116 (Certification), ¶ 4; *see also* Dkt. # 175 (Order) at 3–6.

PLAINTIFF STATES' COMBINED
REPLY ISO MOTION FOR SUMMARY
JUDGMENT AND OPP TO
DEFENDANTS' CROSS-MOTIONS
2:18-cv-01115-RSL

3

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

Department]" about "why we stopped arguing that the technology subject to the case, if released, would harm national security or foreign policy[.]"[11] But Paul stated that the reason for the planned deregulation was "fundamentally a DOJ question" because "nothing changed on our side" as to those issues.[12] Paul's statements are consistent with contemporaneous remarks by Heather Nauert, who told the press that the State Department still had "equity" in the matter of 3D-printable guns, but that it "took the advice of the Department of Justice" to settle the case by agreeing to deregulate them.[13] Paul's and Nauert's statements are *inconsistent* with the Federal Defendants' assertion in this case that the Department "determined" that deregulating 3D-printable firearms was "in the interest of" U.S. national security and foreign policy. *See* SMSJ at 19.

Another email exchange between Paul and a Senate Foreign Relations staffer starkly reveals the Federal Defendants' failure to consider the particular problems posed by 3D-printed guns before issuing the Temporary Modification and Letter. On July 20, 2018, the staffer wrote to Paul to ask about "the law enforcement and counter-terrorism implications of" the deregulation, noting that "[e]nabling the widespread acquisition of undetectable or largely-undetectable firearms" would potentially undermine "protection of domestic and international airline flights from terrorist hijacking/attacks."[14] The staffer further asked: "What changes will be required by TSA here and abroad to deal with this?"[15] Paul was unable to answer these basic questions. Instead, he admitted that the State Department "would need to refer you to TSA or other law enforcement organizations on this question."[16] Paul suggested that the State Department could not answer these key national security questions because its "nexus on this issue was/is limited to [its] role in controlling exports of tech data[.]"[17] Paul's statements, made

---

[11] Ex. Q (WASHAR0000211).
[12] *Id.*
[13] SMSJ at 19 (citing Dkt. # 35-1 at 5 of 46).
[14] Ex. R (WASHAR0000221).
[15] *Id.*
[16] *Id.* (WASHAR0000220).
[17] *Id.*

PLAINTIFF STATES' COMBINED
REPLY ISO MOTION FOR SUMMARY
JUDGMENT AND OPP TO
DEFENDANTS' CROSS-MOTIONS
2:18-cv-01115-RSL

4

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

1  just a week before the Federal Defendants issued their Temporary Modification, highlight the

2  extent to which they utterly failed to consider the national security implications of their plan to

3  deregulate 3D-printable guns.

4      Yet another email from Paul undermines one of the Federal Defendants' *post hoc*

5  arguments concerning the deregulation of 3D-printable guns. In a July 25, 2018, email thread

6  discussing public talking points on the Defense Distributed settlement, a staffer notes that the

7  Department of Justice has requested language indicating that the "3-D files at issue" do not

8  violate the Undetectable Firearms Act because Defense Distributed's "design . . . requires adding

9  metal after printing."[18] In response, Paul states: "I think that's legally valid but not particularly

10  useful in a public/Congressional context, as the pin can be removed and put in your other

11  pocket."[19] Paul's response confirms the obvious: the State Department is well aware that

12  allowing the unlimited distribution of 3D-printable gun files will make it much easier for anyone

13  who wants to evade the Undetectable Firearms Act to do so.

14 **C.   The State Department Admittedly Failed to Consider Public Comments on the
       NPRMs *and* the Challenged Actions Themselves**

15      In addition to the revelations discussed above, the Miller Declaration (Dkt. # 179-2)

16  shows that the decision to enact the Temporary Modification and Letter was taken *solely*

17  "pursuant to an action memorandum recommending to the Under Secretary of State for Arms

18  Control and International Security that she approve the temporary modification to the ITAR."[20]

19  The redacted "action memo" states that approval of the Temporary Modification and Letter is

20  "required to comply with the Defense Distributed settlement agreement."[21] No other rationale is

21  provided. *See also* SMSJ at 5–6, 16–17, 19; FDMSJ at 10 ("[I]t is no secret that the Temporary

22  Modification and Letter arose from a settlement of the *Defense Distributed* litigation."). Despite

23

24  _____
       [18] Ex. S (WASHAR0035889–90).
25       [19] *Id.*
       [20] Dkt. # 179-2 (Miller Decl.) ¶ 7.
26       [21] *Id.*, Ex. 1. The action memo's redactions are for "Deliberative - Predecisional Intra-agency Discussion"
   and "Attorney-Client Privilege." Dkt. # 184-13 at 1 of 47 (Privilege Log).

PLAINTIFF STATES' COMBINED
REPLY ISO MOTION FOR SUMMARY
JUDGMENT AND OPP TO
DEFENDANTS' CROSS-MOTIONS
2:18-cv-01115-RSL

5

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

1   the Court's statement that it "seems likely that a reasonable decisionmaker would be interested

2   in reviewing comments regarding a related rule change proposal before announcing a temporary

3   modification of the same rule,"[22] the Miller Declaration confirms that State Department staff

4   **"did not rely on the comments to the NPRM in preparing the memorandum."**[23] This means

5   that the Department failed to consider or account for over 3,600 public comments, including the

6   nearly 400 that specifically opposed the new rule on the ground that it would deregulate 3D-

7   printable gun files. Dkt. # 170 at 8.

8         Some of the comments the State Department ignored came from key experts—including

9   several that were significant enough to merit special mention by the State Department staffer in

10  charge of comment review[24]—warning of the dangerous sweep of the Federal Defendants' covert

11  deregulation of 3D-printable guns. For example, Professor Susan Waltz of the University of

12  Michigan's Gerald R. Ford School of Public Policy pointed out that the State Department's

13  proposed rule "would appear to give rise to the possibility of widespread and openly sanctioned

14  circulation of open source, non-proprietary instructions for using computer-aided design (CAD)

15  files to produce via 3D-printing technology . . . the firearms removed from USML."[25] Professor

16  Waltz suggested a few simple ways the State Department could address this glaring problem—

17  none of which the Department adopted.[26] Another comment, from the Brady Campaign to

18  Prevent Gun Violence, warned that, "under the proposed rules," companies like Defense

19  Distributed "would be able to freely release 3-D printing instructions and code into the public

20  domain (and thereby enable the private production of firearms overseas and in the United

21  States)."[27] The State Department also disregarded comments from hundreds of individuals

22  warning that "[t]he rule change would make the world a far more dangerous place" by

23

24       [22] Dkt. # 175 at 7.
         [23] Dkt. # 179-2 (Miller Decl.) ¶ 7 (emphasis added).
         [24] Dkt. # 179-3 (Monjay Decl.) ¶ 4.
25       [25] Dkt. # 179-3 at 14 of 44 (Monjay Decl. Ex. B at 5).
         [26] *Id.*
26       [27] Dkt. # 179-3 at 39 of 44 (Monjay Decl. Ex. D (part 2) at 8).

PLAINTIFF STATES' COMBINED
REPLY ISO MOTION FOR SUMMARY
JUDGMENT AND OPP TO
DEFENDANTS' CROSS-MOTIONS
2:18-cv-01115-RSL

6

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

"effectively enabling 3D printing of firearms in the U.S. and around the globe."[28] The Federal Defendants concede that all of these comments and more were ignored entirely.

Not only did the State Department ignore comments received during the formal rulemaking comment period, but it also admittedly failed to consider public input *specifically opposing the challenged actions themselves* during the week prior to July 27, 2018, once word of their impending issuance had gotten out.[29] These additional materials included letters from members of Congress and over 106,000 emails from individuals. For example:

- A July 20, 2018, letter from then-Ranking Member (now Chairman) of the House Foreign Affairs Committee, Rep. Eliot Engel,[30] urging Secretary Pompeo not to deregulate 3D-printable gun files. As Rep. Engel warned, deregulation was "exceptionally dangerous," as it would make "undetectable" weapons "available to anyone with a laptop and a 3-D printer," and "defeat[] US laws which require background checks on the sale of weaponry." Rep. Engel further noted that the State Department was "mis-using authority under Section 126.2 of the [ITAR] to 'temporarily' remove this technical information from the [USML]" when, "as anyone who has ever posted something on the internet knows, once posted, the item is instantly and permanently available to all who seek it." This misuse of Section 126.2 "suggests the Department officials sought a way to avoid complying with Section 38(f) of the [AECA], which requires advance notification to Congress for any removal from the USML."

- A July 25, 2018, letter from Ranking Member of the Senate Foreign relations Committee, Sen. Robert Menendez,[31] urging Secretary Pompeo to halt the "worldwide release" of 3D-printable gun files, which "would allow any foreign or domestic persons, including arms traffickers, terrorists, transnational criminals, and domestic abusers to effectively 'download' a gun." As Senator Menendez noted, the State Department's "temporary" deregulation "appears to evade statutory requirements and skirts an ongoing regulatory review process." Moreover, echoing AECA's statutory standards, Senator Menendez's letter pointed out that it was "hard to see how making it easier for criminal and terrorist organizations to obtain untraceable weapons is in the foreign policy and national security interests of the United States."

---

[28] *See, e.g.*, Ex. T; *see generally* Second Williams Decl. ¶ 4(1) & n.1.

[29] FDMSJ at 10 ("[D]ocuments . . . initially omitted from the administrative record . . . were not among the documents considered by the agency decision-maker.").

[30] Ex. U (CWASHAR0000413–14).

[31] Ex. V (WASHAR0003424-25). On July 23, 2018, five Senators sent a similar letter to then-Attorney General Jeff Sessions, urging dismay with the Department's settlement of the *Defense Distributed* suit. Ex. W.

PLAINTIFF STATES' COMBINED
REPLY ISO MOTION FOR SUMMARY
JUDGMENT AND OPP TO
DEFENDANTS' CROSS-MOTIONS
2:18-cv-01115-RSL

7

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

"This action by the State Department makes the work of U.S. and international law enforcement and counter-terrorism agencies—and the U.S. Transportation Security Agency—all the more difficult and heightens the risk to innocent Americans and others from terrorist and extremist attacks."

- Hundreds of individual emails[32] from Americans who were "deeply disturbed" by the State Department's decision to allow "blueprints . . . online [that] will be used by criminals and terrorists to easily and cheaply mass-manufacture all-plastic weapons that can defeat security checkpoints" and "are difficult if not impossible to trace";[33] who urged the Department to "[s]top the special exemption for downloading printable 3D guns" which "will, without a doubt, be used in illegal, violent activity";[34] and who were "begging [the Department] to use common sense" and prevent "individuals who can't pass background checks —terrorists, felons, and domestic abusers" from obtaining "functioning guns . . . on demand."[35]

- 105,555 emails received from visitors to Everytown.org in a single five-day period,[36] urging the Department to "stop the release of downloadable files that will allow people, including convicted felons and terrorists, to make untraceable guns on their 3D printers."

The Revised Second Supplementation also includes a breakdown of comments on the Commerce Department's companion NPRM. Of the roughly 3,000 comments received by the Department, 2,945—98%—opposed the rule.[37] It appears the State Department did not consider these comments, either.

**D.    No Final Rules Have Been Published**

As a further factual update, as of this filing, neither the State Department nor the Commerce Department has issued the final rules that they indicated would be forthcoming.[38]

## III.    ARGUMENT

The Federal Defendants mostly repeat arguments that the Court has already correctly rejected, pointing to nothing in the several-times-supplemented administrative record to support

---

[32] Dkt. # 184-12 at WASHAR0036607–37068.
[33] *Id.* at WASHAR0036611.
[34] *Id.* at WASHAR0036612.
[35] *Id.* at WASHAR0036621.
[36] *Id.* at WASHAR0037069–74. The States agreed that the 105,555 emails referenced in this "Summary of Duplicative Materials" could be incorporated into the administrative record by reference.
[37] Ex. X (WASHAR0000903–04).
[38] *See* SMSJ at 9; Dkt. # 131 (Fed. Defs' Mot. to Stay).

PLAINTIFF STATES' COMBINED
REPLY ISO MOTION FOR SUMMARY
JUDGMENT AND OPP TO
DEFENDANTS' CROSS-MOTIONS
2:18-cv-01115-RSL

8

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

their position, and otherwise offering no valid reason why they should prevail. The Court should vacate the Temporary Modification and Letter and permanently enjoin any future attempt to "temporarily" deregulate 3D-printable guns that bypasses congressional review and oversight.

## A.    The Plaintiff States Have Standing, as the Court Already Ruled

The Court has already correctly ruled that the States have standing. The Federal Defendants ask the Court to revisit that conclusion, but offer no new reason to do so: instead, they rehash and incorporate meritless arguments made in opposing preliminary injunctive relief. FDMSJ at 7–9 & n.3.[39] The Court should reject these recycled arguments and find that the States have standing for the same reasons it did so previously. *See* Dkt. # 95 (Preliminary Injunction) at 9–11.

The Federal Defendants argue that the States are not within the "zone of interests" protected by AECA. FDMSJ at 7–9. This test, which "is not meant to be especially demanding," asks whether the plaintiff is "arguably within the zone of interests to be protected or regulated by the statute" at issue. *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 224–25 (2012) (citations and quotations omitted). Its purpose is to "exclude those plaintiffs whose suits are more likely to frustrate rather than to further statutory objectives." *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 397 (1987). Thus, "[t]he test forecloses suit only when a plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit." *Match-E-Be-Nash-She-Wish*, 567 U.S. at 225; *see also Havasupai Tribe v. Provencio*, 906 F.3d 1155, 1166 n.5 (9th Cir. 2018) (same). The test is applied "in keeping with Congress's evident intent when enacting the APA to make agency action presumptively reviewable," and requires no "indication of congressional purpose to benefit" the plaintiff. *Match-E-Be-Nash-She-Wish*, 567

---

[39] *Compare* Dkt. # 64 (Fed. Defs' Opp. to Mot. for PI) at 16–18. To the extent the Federal Defendants incorporate their prior briefing on the motion for preliminary injunction by reference, the States likewise incorporate their own prior briefing. *See* Dkt. # 43 (Mot. for PI) at 9–10; Dkt. # 68 (Reply ISO Mot. for PI) at 11–12. The States' previous briefing also addresses the Private Defendants' already-rejected challenges to standing. *Compare* PDMSJ at 7–8 *with* Dkt. # 63 (Pvt. Defs' Opp. to Mot. for PI) at 12–13.

PLAINTIFF STATES' COMBINED
REPLY ISO MOTION FOR SUMMARY
JUDGMENT AND OPP TO
DEFENDANTS' CROSS-MOTIONS
2:18-cv-01115-RSL

9

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

1   U.S. at 225. Any doubts about zone-of-interests standing must be resolved in the plaintiff's favor.

2   *Id.* ("[W]e have always conspicuously included the word 'arguably' in the test to indicate that

3   the benefit of any doubt goes to the plaintiff.").

4   The States easily satisfy this test: their significant safety and security interests are not

5   only consistent with, but fall *squarely within*, AECA's purpose of protecting "the security . . . of

6   the United States." 22 U.S.C. § 2778(a)(1); *see* FDMSJ at 8 (acknowledging that "national

7   security" is a "primary concern" of AECA). The States' domestic security concerns are part and

8   parcel of "national security." *See, e.g.*, *United States v. U.S. Dist. Court*, 407 U.S. 297, 321

9   (1972) (recognizing the "domestic aspects of national security"); *Hodges v. Abraham*, 253 F.

10  Supp. 2d 846, 868 (D.S.C. 2002) (federal government using "national" and "domestic" security

11  interchangeably). Because the States seek to "vindicate some of the same concerns that underlie"

12  AECA—namely, concerns about security and safety—their claims fall squarely "within the

13  statute's zone of interests." *Havasupai Tribe*, 906 F.3d at 1167.

14  Not only are the States' interests fully consistent with AECA's purpose, but this lawsuit

15  expressly seeks to enforce the statute's terms. In contrast to *Cheney* (FDMSJ at 8–9), in which

16  the State of Illinois challenged the validity of a statute governing the closure of military

17  installations in furtherance of interests "completely inconsistent" with that statute, the States here

18  do not seek to usurp any authority that properly "rests with Congress." *People ex rel. Hartigan*

19  *v. Cheney*, 726 F. Supp. 219, 227 (C.D. Ill. 1989). Rather, the States seek to *vindicate* the statute

20  and Congress's intent by challenging *ultra vires* executive actions that unlawfully bypassed the

21  statute's congressional notice requirement. This lawsuit furthers AECA's purposes in every

22  sense; it is the Federal Defendants, not the States, who sought to "frustrate" AECA by evading

23  congressional review and oversight of their deregulatory effort.

24  **B.    The Temporary Modification and Letter Are Contrary to Law**

25  **1.    The Temporary Modification and Letter violate AECA.**

26  As with standing, the Federal Defendants recycle their meritless argument that the State

PLAINTIFF STATES' COMBINED
REPLY ISO MOTION FOR SUMMARY
JUDGMENT AND OPP TO
DEFENDANTS' CROSS-MOTIONS
2:18-cv-01115-RSL

10

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

Department did not violate AECA's congressional notice requirement because the subject files are not "items," and can therefore be removed from the Munitions List without notice. FDMSJ at 9. But as the Court has already correctly ruled, this argument conflates "category" with "item," contrary to the "language, structure, and purpose of the statute and implementing regulations[.]" Dkt. # 95 at 14; *see also* Dkt. # 43 at 11–13; Dkt. # 68 at 4–5. Furthermore, the challenged actions were not "only" a "temporary" modification, as asserted (FDMSJ at 9); rather, the Temporary Modification was to "remain in effect while the final rule . . . is in development"—leapfrogging the entire notice-and-comment rulemaking process. *See* Dkt. # 95 at 15 ("The temporary modification was an effort to implement the removal immediately, without waiting for the rule to become final and without giving Congress notice and an opportunity to exercise its oversight role."). Moreover, as the Court has already found, even a "temporary" deregulation would allow "immediate" distribution of the subject files and cause "irreparable" harms to the States. *Id.* at 13, 20–25. Public commenters (whom the State Department ignored) pointed this out as well.[40] As for the Letter, it was not "temporary" even by its own terms, as it purported to approve the subject files for "public release (i.e., unlimited distribution)" immediately and with no time limitation.[41] The State Department's failure to comply with AECA's 30-day congressional notice requirement before issuing the Temporary Modification and Letter, on its own, renders these actions unlawful and requires that they be set aside. *See* SMSJ at 10–11.[42]

## 2.    The Temporary Modification and Letter violate the Tenth Amendment.

The Federal Defendants' litigation position that the Temporary Modification and Letter do not "conflict[] with or otherwise preempt[]" state laws is belied by the text of those documents, which on their face expressly authorize "any United States person" to "use" the

---

[40] *See, e.g.*, Ex. U (Rep. Eliot Ltr.) (modification of the Munitions List was not "temporary" because "as anyone who has ever posted something on the internet knows, once posted, the item is instantly and permanently available to all who seek it").

[41] Ex. J.

[42] The Private Defendants argue that Congress received notice after the fact. PDMSJ at 18. The Court has already correctly rejected this argument, ruling that *post hoc* notice does not satisfy AECA. Dkt. # 95 at 15.

PLAINTIFF STATES' COMBINED
REPLY ISO MOTION FOR SUMMARY
JUDGMENT AND OPP TO
DEFENDANTS' CROSS-MOTIONS
2:18-cv-01115-RSL

11

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

1   subject files to 3D-print untraceable and undetectable weapons, and expressly authorize the

2   "unlimited distribution" of such files. SMSJ at 11–12; *cf. Price v. Stevedoring Serv. of Am., Inc.*,

3   697 F.3d 820, 830 (9th Cir. 2012) (no deference owed to agency's *post hoc* litigation position;

4   agency actions must be adjudged on the record). These federal authorizations are inconsistent

5   with, and on their face purport to preempt and undermine, state gun-safety laws that *restrict*

6   certain persons from possessing and manufacturing firearms and/or that regulate the distribution

7   of CAD files for 3D-printed firearms. SMSJ at 11–12. Such laws are concededly within the

8   police powers reserved to the States and protected by the Tenth Amendment. *Id.*; FDMSJ at 12.

9   That the Federal Defendants disavow any preemptive intent for litigation purposes is small

10   comfort given the plain language of the operative Temporary Modification and Letter.

11       The anti-commandeering cases on which the Federal Defendants rely (FDMSJ at 10–11)

12   confirm that the Tenth Amendment has the force of law and meaningfully protects states from

13   interference that exceeds the limits of the federal government's powers. Commandeering state

14   officials to enforce federal laws is by no means the only way in which the federal government

15   can violate the Tenth Amendment, and the Federal Defendants cite no support for that view.

16   Their authority is distinguishable, as this is not a case in which the federal government is merely

17   encouraging (but not coercing) states to implement federal programs, as in *Environmental*

18   *Defense Center, Inc. v. U.S. E.P.A.*, 344 F.3d 832 (9th Cir. 2003), *Printz v. United States*, 521

19   U.S. 898 (1997), and *New York v. United States*, 505 U.S. 144 (1992). Here, the State Department

20   is intruding into the States' sphere of authority by exercising a power it does not have—the

21   power to authorize any adult or child in the United States to access and "use" 3D-printable files

22   to produce illegal and dangerous weapons—in a way that deprives the States of their ability to

23   exercise their sovereign police powers and enforce their gun-safety laws. This federal usurpation

24   of state authority is unconstitutional.

25   **C.    The Temporary Modification and Letter Are Arbitrary and Capricious**

26       The States' Motion details *numerous* ways in which the Temporary Modification and

PLAINTIFF STATES' COMBINED
REPLY ISO MOTION FOR SUMMARY
JUDGMENT AND OPP TO
DEFENDANTS' CROSS-MOTIONS
2:18-cv-01115-RSL

12

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

1   Letter are arbitrary and capricious as a matter of law. SMSJ at 12–20. This is substantiated by

2   the Revised Second Supplement, which reveals that the State Department's decision to

3   deregulate 3D-printable guns was made *solely* to settle a lawsuit, without any apparent

4   consideration for how the proliferation of undetectable, untraceable guns would affect "world

5   peace and the security and foreign policy of the United States." 22 U.S.C. § 2278(a)(1).

6        The Federal Defendants have little to say in response: they argue that the challenged

7   actions are lawful because (1) "the government had determined that small-caliber firearms" do

8   not provide a "critical military or intelligence advantage"; and (2) untraceable, undetectable, 3D-

9   printable firearms are no different than "small-caliber firearms generally" for purposes of export

10  regulation. FDMSJ at 9–10. These conclusory arguments are fatally flawed for several reasons.

11       First of all, the exclusive focus on "critical military or intelligence advantage" ignores

12  the "important aspect[s] of the problem" that the State Department "entirely failed to consider":

13  namely, the specific properties of 3D-printed guns and the unique threats they pose to world

14  peace, national security, and foreign policy. SMSJ at 15–18. The Federal Defendants do not

15  address these issues at all; this tacitly conceded failure to consider them alone renders the

16  Department's actions arbitrary and capricious. *See id*; *Motor Vehicle Mfrs. Ass'n of U.S. v. State*

17  *Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 1983) (agency must consider all "relevant factors,"

18  particularly those "Congress intended" the agency to consider); *Humane Soc'y of U.S. v. Zinke*,

19  865 F.3d 585, 606 (D.C. Cir. 2017) (failure to address record evidence on an "important aspect

20  of the problem" renders agency action arbitrary and capricious); *see also Jenkins v. Cty. of*

21  *Riverside*, 398 F.3d 1093, 1095 (9th Cir. 2005) (noting that a party "abandoned . . . claims by

22  not raising them in opposition to [a] . . . motion for summary judgment"). Furthermore, the Miller

23  Declaration confirms that the Department failed to consider or account for hundreds of public

24  comments that opposed the 2018 NPRMs *precisely* because they would deregulate 3D-printed

25  guns, and therefore threaten safety and security in the United States. The Department concededly

26  failed to consider these or the remainder of the 3,600 comments opposing the NPRMs, or the

PLAINTIFF STATES' COMBINED
REPLY ISO MOTION FOR SUMMARY
JUDGMENT AND OPP TO
DEFENDANTS' CROSS-MOTIONS
2:18-cv-01115-RSL

13

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

desperate pleas of over 106,000 members of the public and Congress seeking to stop the "temporary" deregulation in the final days before it was effectuated. The Department completely failed to fulfill its obligation to "'consider and respond to significant comments received during the period for public comment.'" *E. Bay Sanctuary Covenant v. Trump*, 909 F.3d 1219, 1251 (9th Cir. 2018) (quoting *Perez v. Mortg. Bankers Ass'n*, 135 S. Ct. 1199, 1203 (2015)); *see also Tesoro Alaska Petrol. Co. v. F.E.R.C.*, 234 F.3d 1286, 1294 (D.C. Cir. 2000) ("Unless an agency answers objections that on their face appear legitimate, its decision can hardly be said to be reasoned.").

Second, merely reiterating the Department's conclusory "determin[ation]" (FDMSJ at 9) is far from adequate: to survive judicial review, the Federal Defendants must show that the determination was a *reasoned* one that is "logical and rational" and supported by the administrative record. SMSJ at 12–15. Otherwise, judicial review would be meaningless, for an agency would always be able to defend an irrational decision by stating the tautology that it "determined" the decision was justified. *See id.* This is not what the APA prescribes. A reviewing court's "'inquiry into the facts is to be searching and careful,'" *ASSE Int'l, Inc. v. Kerry*, 803 F.3d 1059, 1072 (9th Cir. 2015) (quoting *Overton Park v. Volpe,* 401 U.S. 402 at 416), and courts "shall" invalidate arbitrary and capricious agency actions. 5 U.S.C. § 706. Here, the only asserted basis for the State Department's "determination" is the 2018 NPRMs. FDMSJ at 9. That rationale is circular: the NPRMs are *proposed* rules published at the beginning of the rulemaking process, before the agencies received any public comments, and they do not even mention 3D-printed guns. Yet the "temporary" modification purported to implement the NPRMs before the rulemaking process was complete, and the State Department admittedly did not consider *any* of the public comments. Remarkably, even as they ignore a mountain of comments and evidence that contradict their position, the Federal Defendants point to *nothing* in the filed administrative record that would support a determination that 3D-printable firearms somehow no longer pose unique risks or that authorizing their publication on the internet poses no problems. Even after

1    multiple supplementations, the record contains no such support.

2         Third, the notion that 3D-printable guns are no different than "small-caliber firearms

3    generally" (FDMSJ at 10) cannot be credited because it lacks any support in the record. *See*

4    SMSJ at 12–13 (citing case law explaining that "the basis for the agency's decision must come

5    from the record"). In fact, although the Federal Defendants have repeatedly characterized the

6    Temporary Modification and Letter as an outgrowth of a decade-long export reform effort,[43] the

7    Revised Second Supplement confirms that the federal government did not consider 3D-printable

8    firearms or the export of CAD files via the domestic/international internet *at all* when it

9    developed the proposed rules. Specifically, in a news article circulated within the State

10   Department on May 24, 2018, the Commerce Department official who was leading the

11   development of those regulations as of 2012 stated that the NPRMs **"have literally absolutely**

12   **nothing to do with domestic gun control . . ."**[44] The Federal Defendants' *post hoc* litigation

13   position also contradicts thousands of public comments opposing the rules on the grounds that

14   they would deregulate 3D-printable firearms—comments that the Department admittedly did not

15   consider and failed to address.[45] Likewise, Department official Joshua M. Paul admitted that he

16   could not answer basic questions regarding how TSA or other law enforcement agencies would

17   deal with a proliferation of 3D-printed firearms because the State Department's consideration

18   "was/is limited to [its] role in controlling exports of tech data[.]"[46] Moreover, the Federal

19   Defendants' *post hoc* litigation position contradicts the Department's *own admissions*—both

20   before and after the *Defense Distributed* settlement, and in this litigation—that 3D-printable

21   firearms *do* pose unique security threats. *See* SMSJ at 14, 15–16, 17, 19–20. State Department

22   communications recently filed as part of the Revised Second Supplement make this strikingly

23   clear: on July 27, 2018, Paul stated that **"nothing changed on our side"** regarding the national

24   _____

         [43] FDMSJ at 5 n.1; Dkt. # 64 at 5 n.1; Dkt. # 131 at 1.
25       [44] Ex. Y (WASHAR0035627) (emphasis added).
         [45] Dkt. # 179-2 (Miller Decl.) ¶ 7; *see also* FDMSJ at 10 ("[D]ocuments . . . initially omitted from the
26   administrative record . . . were not among the documents considered by the agency decision-maker.").
         [46] Ex. R (WASHAR0000220).

PLAINTIFF STATES' COMBINED                                15          ATTORNEY GENERAL OF WASHINGTON
REPLY ISO MOTION FOR SUMMARY                                              Complex Litigation Division
JUDGMENT AND OPP TO                                                          800 5th Avenue, Suite 2000
DEFENDANTS' CROSS-MOTIONS                                                     Seattle, WA 98104-3188
2:18-cv-01115-RSL                                                               (206) 474-7744

1   security and foreign policy threats posed by 3D-printable firearms.[47]

2   Further, the idea that 3D-printed firearms may be regulated by "other agencies" (FDMSJ

3   at 10) does not make it rational for the State Department to unilaterally authorize functional CAD

4   files to be exported and published on the internet, allowing anyone in the world to download and

5   use them to create untraceable and undetectable weapons that could drastically threaten safety

6   and security. *See* Dkt. # 95 at 23 ("Promising to detect the undetectable while at the same time

7   removing a significant regulatory hurdle to the proliferation of these weapons—both

8   domestically and internationally—rings hollow and in no way ameliorates, much less avoids, the

9   harms that are likely to befall the States . . ."). Indeed, the State Department has privately

10  conceded that allowing for the distribution of 3D-printable guns will make it easy to evade the

11  Undetectable Firearms Act.[48]

12  A finding of pretext or bad faith is not necessary for the States to prevail on their claim

13  that the challenged actions are arbitrary and capricious. But the evidence that the Department's

14  stated rationale was pretextual is overwhelming; its shifting and inconsistent explanations are

15  well documented in the record. SMSJ at 7–8, 13–14, 18–20. The Revised Second Supplement—

16  which contains documents that were improperly withheld for over six months after the Federal

17  Defendants certified an incomplete administrative record—provides further evidence that the

18  real reason for the deregulation of 3D-printable firearms was a directive from the Department of

19  Justice, not a rational and evidence-based determination by the State Department. The Revised

20  Second Supplement reveals the State Department's understanding that **"nothing changed on

21  our side"** with respect to the national security implications of 3D-printable guns, and that the

22  reason for the *Defense Distributed* settlement was "fundamentally a DOJ question[.]"[49]

23  In sum, the Temporary Modification and Letter are both contrary to law and arbitrary

24  and capricious, and should be set aside. 5 U.S.C. § 706.

---

[47] Ex. Q.
[48] Ex. S (WASHAR0035889–90) (discussed *supra*, Part II.B).
[49] Ex. Q.

PLAINTIFF STATES' COMBINED
REPLY ISO MOTION FOR SUMMARY
JUDGMENT AND OPP TO
DEFENDANTS' CROSS-MOTIONS
2:18-cv-01115-RSL

16

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

**D.      Vacatur and a Permanent Injunction Are Needed to Provide Complete Relief**

The Federal Defendants agree that vacatur is the appropriate remedy in the event the Court finds the Temporary Modification and Letter to be contrary to law and/or arbitrary and capricious. FDMSJ at 12. Remand *without* vacatur, as discussed in *National Association of Home Builders* (FDMSJ at 13), is inappropriate because this is not a case in which "clarification" would resolve the issues with the State Department's actions; rather, the Temporary Modification and Letter are fundamentally deficient because they are contrary to law and arbitrary and capricious, as discussed above. *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 657–58 (2007) (courts may "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned," but must vacate agency actions that violate the APA).

The Federal Defendants disagree that injunctive relief is warranted. FDMSJ at 12–15. But the States are not improperly seeking a "vague" or "sweeping injunction[] to obey the law," as the Federal Defendants suggest. *Id.* at 13. The States are seeking to prevent the same type of "temporary" deregulation with no warning as occurred in July 2018, which required the States to act swiftly to file this lawsuit and obtain emergency relief to prevent irreparable harm. Thus, this case in fact presents "temporal constraints" similar to those supporting the injunction in *New York v. U.S. Department of Commerce*, 351 F. Supp. 3d 502 (S.D.N.Y. 2019). FDMSJ at 14. The Federal Defendants appear to raise the possibility of addressing the States' concern by some means other than a permanent injunction, but have not proposed any such solution to the States or the Court. *See id.* (suggesting that "the Department should be permitted to address any concerns the Court might have without the need for an injunction," but making no proposal).

The Federal Defendants also argue that the *Winter* factors are not met. FDMSJ at 14–15. But their contention that the States' evidence of irreparable harm caused by the international and domestic availability of 3D-printed guns is somehow unrelated to the State Department's deregulation of 3D-printable gun files fails for the same reasons the Court has already articulated. The Court found that "Defendants' argument is so myopic and restrictive as to be unreasonable.

PLAINTIFF STATES' COMBINED REPLY ISO MOTION FOR SUMMARY JUDGMENT AND OPP TO DEFENDANTS' CROSS-MOTIONS 2:18-cv-01115-RSL

17

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

1  Whatever defendants' statutory authority, the fact is that the internet is both domestic and

2  international. . . . Thus, the alleged failures to provide notice and to make a reasonable evaluation

3  of the risks and benefits of the proposed action not only impact national security but have

4  domestic repercussions as well." Dkt. # 95 at 10; *see also id.* at 20–24 (discussing likelihood of

5  irreparable harm and balance of hardships weighing in favor of the States and the public).

6      The Private Defendants, for their part, rely on Justice Thomas' concurring opinion in

7  *Trump v. Hawaii*, which every other justice declined to join, to argue against the concept of

8  nationwide injunctions generally. PDMSJ at 23–24 (citing *Trump v. Hawaii*, 138 S. Ct. 2392,

9  2424–29 (2018) (Thomas, J., concurring)). But injunctions against unlawful federal agency

10  actions are "commonplace in APA cases" and supported by an "uncontroverted line of

11  precedent." *E. Bay Sanctuary Covenant*, 909 F.3d at 1256; *see also New York*, 351 F. Supp. 3d

12  at 677 ("Because the Secretary's *decision* was universal, APA relief directed at that decision

13  may—indeed, arguably must—be too.") (citing 5 U.S.C. § 706(2) and *Califano v. Yamasaki*, 442

14  U.S. 682, 702 (1979)). The Private Defendants fail to explain how a less-than-nationwide

15  injunction—one that somehow prohibits the Federal Defendants from attempting another

16  unconstrained "temporary" deregulation of export-controlled items as to some areas of the

17  United States but not others—would even function. Practically speaking, such an injunction

18  would quickly become obsolete, because once files are posted on the internet from *any* location,

19  they can be accessed virtually anywhere. Moreover, an injunction without regard to location is

20  appropriate because *any* "temporary" modification of the Munitions List "would almost certainly

21  run afoul" of AECA. *New York*, 351 F. Supp. 3d at 678.

22  **E.    The Private Defendants' Arguments Do Not Require a Different Result**

23      The Private Defendants oppose summary judgment in the States' favor for a host of

24  meritless reasons: from an asserted lack of personal jurisdiction (which was waived long ago) to

25  novel constitutional theories that have little relevance to this case and have never been accepted

26  by any court. This Court has already rejected many of these theories, and should do so again.

PLAINTIFF STATES' COMBINED
REPLY ISO MOTION FOR SUMMARY
JUDGMENT AND OPP TO
DEFENDANTS' CROSS-MOTIONS
2:18-cv-01115-RSL

18

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

1    **1.    The Private Defendants' jurisdictional arguments lack merit.**

2    The Private Defendants challenge both the Court's personal jurisdiction over them and

3    its subject matter jurisdiction over this case. PDMSJ at 4–12. Their challenge to personal

4    jurisdiction is waived because they failed to preserve it when they filed a motion under Rule 12.

5    *See* Fed. R. Civ. P. 12(h)(1)(A) (a party waives the defense of lack of personal jurisdiction by

6    "omitting it from a motion" under Rule 12). Plaintiffs' Rule 12(c) motion (Dkt. # 114) did not

7    assert any lack of personal jurisdiction, and their convoluted non-waiver theory misreads Rule

8    12(h)(1)(A) by conflating it with Rule 12(g)(2). *See* PDMSJ at 8 n.7. The Court may disregard

9    the Private Defendants' lengthy argument against personal jurisdiction (*id.* at 8–12), since they

10   have waived that defense. *See Schnabel v. Lui*, 302 F.3d 1023, 1034 (9th Cir. 2002) (declining

11   to examine personal jurisdiction over defendant that "waived any defense of lack of personal

12   jurisdiction . . . by failing to raise the defense in its first motion" under Rule 12). The Private

13   Defendants' objections to personal jurisdiction lack merit in any event. Defense Distributed's

14   website is not "passive" (PDMSJ at 9), but instead actively invites visitors to download CAD

15   files. *See Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997) ("If

16   the defendant enters into contracts with residents of a foreign jurisdiction that involve the

17   knowing and repeated transmission of computer files over the Internet, personal jurisdiction is

18   proper."). And the Private Defendants' contention that any downloads of Defense Distributed's

19   files are purely conjectural is patently inconsistent with their claims that the files have been

20   downloaded "millions" of times. *Compare* PDMSJ at 10–11 *with* PDMSJ at 2 n.2.

21   The Private Defendants' multi-pronged challenge to subject matter jurisdiction—which

22   the Federal Defendants notably have never joined—fails for the same reasons it failed

23   previously. *Compare* PDMSJ at 4–7 *with* Dkt. # 63 at 10–12 *and* Dkt. # 69 (Pvt. Defs' Notice of

24   Supp. Auth. re Tucker Act). Their assertion that executive actions under AECA are *never*

25

26

PLAINTIFF STATES' COMBINED
REPLY ISO MOTION FOR SUMMARY
JUDGMENT AND OPP TO
DEFENDANTS' CROSS-MOTIONS
2:18-cv-01115-RSL

19

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

reviewable (PDMSJ at 4, 5–6) relies on the same inapposite case law they cited previously[50] and ignores cases that *have* reviewed agency action under AECA. Dkt. # 68 at 12 & nn. 26–27. Their observation that the *designation* of Munitions List items is not subject to judicial review under 22 U.S.C. § 2778(h) (PDMSJ at 4) has no applicability to the *removal* of items from the Munitions List at issue here. *See* Dkt. # 68 at 12; Dkt. # 95 at 13 ("the temporary modification . . . constitutes the *removal* of one or more items from the USML . . .") (emphasis added).[51] And the Tucker Act (PDMSJ at 6–7) plainly doesn't apply to the *statutory* (not contractual) challenges to agency action in this case. *N. Side Lumber Co. v. Block*, 753 F.2d 1482, 1486 (9th Cir. 1985); *contra Tucson Airport Auth. v. Gen. Dynamics Corp.*, 136 F.3d 641, 646 (9th Cir. 1998) (Tucker Act bars claims that are "contractually-based, not statutorily-based"). As the Private Defendants have already acknowledged, this is not a contract case: "the [*Defense Distributed*] settlement agreement is not this action's true subject and this action will neither assail nor protect the Private Defendants' interest therein." Dkt. # 114 at 5; *see* Dkt. # 95 at 11–12 (this lawsuit is not a "collateral attack" on the dismissal of the *Defense Distributed* lawsuit pursuant to the settlement agreement).

### 2.    The Private Defendants' constitutional theories do not preclude the Court from setting aside unlawful agency actions.

The Private Defendants argue that setting aside the unlawful agency actions at issue would offend the First Amendment. PDMSJ at 19–23. This argument is doubly flawed because (i) the First Amendment is inapposite to the merits of this APA case and (ii) the Private Defendants' novel and expansive First Amendment theory fails on its merits.

(i)     *The First Amendment is irrelevant*.

It is a "simple but fundamental" rule of administrative law that the propriety of agency

---

[50] *Corrie v. Caterpillar, Inc.* (PDMSJ at 6) is likewise inapposite, as it did not involve a challenge to agency action, but was a private lawsuit against a supplier of equipment to the Israeli Defense Forces. 503 F.3d 974 (9th Cir. 2007. As *Corrie* itself cautions, "it is 'error to suppose that every case or controversy which touches foreign relations lies beyond judicial cognizance.'" *Id.* at 982 (quoting *Baker v. Carr*, 369 U.S. 186, 211 (1962)).

[51] For the same reasons, their argument that the State Department's actions here are unreviewable under the APA (PDMSJ at 12) lack merit.

PLAINTIFF STATES' COMBINED
REPLY ISO MOTION FOR SUMMARY
JUDGMENT AND OPP TO
DEFENDANTS' CROSS-MOTIONS
2:18-cv-01115-RSL

20

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

action is judged "solely by the grounds invoked by the agency." *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947). Neither the court nor the other parties may "supply a reasoned basis . . . that the agency itself has not given." *Id*. at 196. However emphatically the Private Defendants invoke the First Amendment, the Federal Defendants have never asserted it as a basis for the Temporary Modification or the Letter. To the contrary, they have consistently maintained—both in this case and throughout the *Defense Distributed* proceedings in Texas—that the Department's regulation of the subject files under ITAR never violated Defense Distributed's First Amendment rights.[52] The Private Defendants may wish to inject the First Amendment into these proceedings, but the Federal Defendants have never invoked it as a basis for the challenged actions. It therefore does not bear on the legal merits of this APA case.

The Private Defendants' dogged efforts to be dismissed from this case at multiple stages further undercuts any notion that their purported First Amendment rights are directly implicated.[53] *See* PDMSJ at 4–12 (seeking dismissal on jurisdictional grounds); Dkt. # 114 at 4–7 (seeking dismissal on the grounds that "The Private Defendants Have No Interest Protected By this Action").[54] While the Private Defendants are wrong on the merits for the many reasons discussed herein, they are right about one thing: they have "no interest" directly at issue in this APA case. The Private Defendants' issue, at bottom, is not with the States' challenge to unlawful agency action, but with federal export regulation of the subject files. They challenged such regulation by suing the regulator in the *Defense Distributed* case. The State Department prevailed at every stage. Then, the Private Defendants chose to settle in exchange for the State

---

[52] *See, e.g.*, Heidema Decl. (Dkt. # 64-1), ¶ 28.

[53] If, on the other hand, the Private Defendants are making constitutional arguments in the abstract, they lack standing to effectively seek to block judicial enforcement of AECA on such grounds. *See Hein v. Freedom From Religion Foundation, Inc.*, 551 U.S. 587, 598 (2007) ("The federal courts are not empowered to seek out and strike down any governmental act that they deem to be repugnant to the Constitution. Rather, federal courts sit solely, to decide on the rights of individuals, and must refrain from passing upon the constitutionality of an act unless obliged to do so . . . when the question is raised by a party whose interests entitle him to raise it." (internal citations and markings omitted)).

[54] The Court ruled that, contrary to the Private Defendants' disclaimer of interest, "their actions show otherwise." Dkt. # 130 (Order Denying 12(c) MTD) at 3.

PLAINTIFF STATES' COMBINED
REPLY ISO MOTION FOR SUMMARY
JUDGMENT AND OPP TO
DEFENDANTS' CROSS-MOTIONS
2:18-cv-01115-RSL

21

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

1    Department's agreement to deregulate 3D-printable firearm files—subject to the express caveat

2    that such deregulation would proceed only "to the extent authorized by law (including the

3    Administrative Procedure Act) . . ."[55] Now that the caveat is in play, the Private Defendants

4    renew their dubious constitutional arguments in this Court—curiously, even as they seek to

5    escape its jurisdiction. As the Private Defendants' own actions underscore, this lawsuit, with the

6    parties positioned as they are, is an improper place for a constitutional challenge.

7            (ii) *The First Amendment does not require the Court to uphold the unlawful deregulation*.

8            The Private Defendants' constitutional arguments are meritless in any event. First,

9    although the First Amendment's inapplicability to the subject files was briefed previously (*see*

10   Dkt. # 43 at 17–18; Dkt. # 47-1), the Private Defendants fail to point to *any* case in *any*

11   jurisdiction in which a court has *ever* held that click-and-print firearm files are "speech" entitled

12   to any level of constitutional protection. On the other hand, courts have held that computer files

13   that "induce action without the intercession of the mind or the will of the recipient"—as the

14   subject files do[56]—are not entitled to any level of constitutional protection. *CFTC v. Vartuli*, 228

15   F.3d 94, 111 (2d Cir. 2000) (no First Amendment protection for automatic stock trading system

16   that used language to operate "in an entirely mechanical way"; "The point was not to convey

17   information or to assert values," so "[n]one of the reasons for which speech is thought to require

18   protection above and beyond that accorded to non-speech behavior" were implicated) (brackets

19   and ellipses removed); *see generally* Dkt. # 47-1 (*Amicus* Br. of Everytown for Gun Safety) at

20   4–9 (extensively analyzing why the subject files "lack any expressive value for the First

21   Amendment to protect"). Notably, although the subject files themselves are not protectable

22   speech, the Private Defendants are not and have never been restricted in any way from speaking

23   *about* 3D-printed guns, including advocating for policy changes related to 3D-printed guns or

24   criticizing gun-safety laws that apply to the subject files.

25   _____

[55] Ex. C, ¶ 1(a).
[56] *See* SMSJ at 22 & nn. 54–56.

26

1    Even if the Court were to find some merit in the Private Defendants' novel constitutional

2    theories, the Private Defendants fail to show that the Constitution precludes the relief requested

3    here. Again, the States merely ask the Court to set aside unlawful agency action, as required by

4    the APA. The Temporary Modification and Letter are procedurally defective in violation of

5    AECA's plain language, among other flaws. Preventing these unlawful agency actions from

6    taking effect does not permanently deprive the Private Defendants of any purported rights: it

7    simply requires the State Department to follow AECA's mandatory procedures and comply with

8    the APA if it wishes to remove 3D-printable firearm files from the Munitions List. Moreover,

9    federal law does not prohibit the Private Defendants from distributing the subject files in a

10   manner that does not involve export. Now as before, correcting the State Department's unlawful

11   power grab does not abrogate any rights of the Private Defendants. *See* Dkt. # 95 at 25.

12   The Private Defendants try to spin a constitutional argument from the alleged fact that

13   others are (illegally) distributing 3D-printable gun files via the internet. PDMSJ at 2–3, 23. But

14   even if others are violating federal law at their peril, that does not somehow create a violation of

15   the Private Defendants' First Amendment rights. *Cf. Wayte v. United States*, 470 U.S. 598 (1985)

16   (upholding conviction for failure to register for selective service against First Amendment and

17   Equal Protection challenges to government's "passive enforcement policy," under which it

18   prosecuted only those reported as having violated the law, generally the draft's most vocal

19   opponents). Nor does the widespread violation of federal law alleged—but not proven—by the

20   Private Defendants somehow justify the Federal Defendants' broad, unlawful deregulation (and

21   certainly the Federal Defendants do not make this argument). In short, the Private Defendants'

22   novel constitutional arguments do not provide a reasoned basis for the unlawful deregulation of

23   3D-printable guns via the Temporary Modification and Letter.

**3.     The Private Defendants' APA arguments do not explain, let alone justify, the Federal Defendants' abrupt regulatory about-face.**

24

25   Since 2013 (when the Federal Defendants apparently became aware of Defense

26

PLAINTIFF STATES' COMBINED
REPLY ISO MOTION FOR SUMMARY
JUDGMENT AND OPP TO
DEFENDANTS' CROSS-MOTIONS
2:18-cv-01115-RSL

23

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

1   Distributed's 3D-printable gun files) until April 2018 (when the *Defense Distributed* case was

2   abruptly settled), the Federal Defendants consistently maintained their position that 3D-printable

3   gun files were and ought to be subject to regulation under AECA and ITAR. Dkt # 95 at 3–4;

4   *see also* Dkt. # 29 (FAC) ¶¶ 39–41 & Dkt. # 112 (Fed Defs' Answer) ¶¶ 39–41. As explained

5   above and in the States' Motion for Summary Judgment, the Federal Defendants have failed

6   adequately to explain their total regulatory about-face, failed to consider the specific dangers of

7   3D-printable gun files, and offered only pretextual rationales for their sudden reversal. *See S*MSJ

8   at 12–20. The Private Defendants fare no better in trying to defend the indefensible.

9        The Private Defendants' argument relies primarily on memoranda from the Department

10   of Justice discussing various potential limits of ITAR. PDMSJ at 14–16. As an initial matter, the

11   Federal Defendants have not purported to rely on any of these statements, so they cannot possibly

12   "supply a reasoned basis" for the Federal Defendants' decision. *Chenery Corp.*, 332 U.S. at 196.

13   Moreover, these general statements about the limits of ITAR do not contemplate the subject files,

14   which were not made public until late 2012,[57] and which are not protected speech, as discussed

15   above. The Private Defendants also try to rely on a "legal analysis . . . performed by Defense

16   Distributed's legal counsel" as evidence of the Federal Defendants' supposed basis for its

17   regulatory about-face. PDMSJ at 17. But obviously, the mere fact that the government's files

18   contained Defense Distributed's self-serving analysis does not prove the government based its

19   decision on that analysis, particularly where the government has never claimed to do so.

20              **IV.   CONCLUSION**

21        For the reasons above and in their Motion for Summary Judgment, the States respectfully

22   request that the Court grant summary judgment in their favor, deny Defendants' motions for

23   summary judgment, and grant the States' requests for vacatur and a permanent injunction.

24 ───────────

[57] The Private Defendants assert the Federal Defendants' initial action to regulate the files came in response
25   to the devastating December 2012 murder of 26 people, mostly children, at Sandy Hook Elementary School. PDMSJ
at 14. In fact, the timing was driven by when Defense Distributed posted its files online—December 2012, the same
26   month as the Sandy Hook massacre. PDMSJ at 2 n.2; *see* Ex. A (Aguirre Decl.) ¶¶ 24–25 (DDTC initiated regulatory
action "[a]s a result" of media reports that Defense Distributed had posted executable CAD files online).

PLAINTIFF STATES' COMBINED           24        ATTORNEY GENERAL OF WASHINGTON
REPLY ISO MOTION FOR SUMMARY                        Complex Litigation Division
JUDGMENT AND OPP TO                                   800 5th Avenue, Suite 2000
DEFENDANTS' CROSS-MOTIONS                              Seattle, WA 98104-3188
2:18-cv-01115-RSL                                        (206) 474-7744

1    DATED this 24th day of May, 2019.

2

3                                          ROBERT W. FERGUSON
                                           Attorney General of Washington

4
                                           /s/ Jeffrey Rupert
5                                          JEFFREY RUPERT, WSBA #45037
                                           Division Chief
6                                          TODD BOWERS, WSBA #25274
                                           Deputy Attorney General
7                                          JEFFREY T. SPRUNG, WSBA #23607
                                           KRISTIN BENESKI, WSBA #45478
8                                          ZACHARY P. JONES, WSBA #44557
9                                          Assistant Attorneys General
                                           JeffreyR2@atg.wa.gov
10                                         ToddB@atg.wa.gov
                                           JeffS2@atg.wa.gov
11                                         KristinB1@atg.wa.gov
                                           ZachJ@atg.wa.gov
12                                         Attorneys for Plaintiff State of Washington

13

14                                         WILLIAM TONG
                                           Attorney General of Connecticut
15
                                           /s/ Maura Murphy Osborne
16                                         MAURA MURPHY OSBORNE, admitted pro
                                           hac vice
17                                         Assistant Attorney General
                                           Maura.MurphyOsborne@ct.gov
18
                                           Attorneys for Plaintiff State of Connecticut
19

20                                         BRIAN E. FROSH
                                           Attorney General of Maryland
21
                                           /s/ Julia Doyle Bernhardt
22                                         JULIA DOYLE BERNHARDT, admitted pro
                                           hac vice
23                                         JEFFREY PAUL DUNLAP, admitted pro hac
                                           vice
24                                         Assistant Attorneys General
                                           JBernhardt@oag.state.md.us
25

26

jdunlap@oag.state.md.us
*Attorneys for Plaintiff State of Maryland*


GURBIR GREWAL
Attorney General of New Jersey

/s/ Jeremy M. Feigenbaum
JEREMY M. FEIGENBAUM, *admitted pro hac
vice*
Assistant Attorney General
Jeremy.Feigenbaum@njoag.gov
*Attorneys for Plaintiff State of New Jersey*


LETITIA JAMES
Attorney General of New York

/s/ Steven Wu
STEVEN WU, *admitted pro hac vice*
Deputy Solicitor General
Steven.Wu@ag.ny.gov
*Attorneys for Plaintiff State of New York*


MAURA HEALEY
Attorney General of Commonwealth of
Massachusetts

/s/ Jonathan B. Miller
JONATHAN B. MILLER, *admitted pro hac
vice*
Assistant Attorney General
Jonathan.Miller@state.ma.us
*Attorneys for Plaintiff Commonwealth of
Massachusetts*


JOSH SHAPIRO
Attorney General of Commonwealth of
Pennsylvania

/s/ Jonathan Scott Goldman
JONATHAN SCOTT GOLDMAN, *admitted
pro hac vice*

PLAINTIFF STATES' COMBINED
REPLY ISO MOTION FOR SUMMARY
JUDGMENT AND OPP TO
DEFENDANTS' CROSS-MOTIONS
2:18-cv-01115-RSL

26

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

Executive Deputy Attorney General
MICHAEL J. FISCHER, *admitted pro hac vice*
Chief Deputy Attorney General
JGoldman@attorneygeneral.gov
MFischer@attorneygeneral.gov
*Attorneys for Plaintiff Commonwealth of*
*Pennsylvania*


KARL A. RACINE
Attorney General for the District of Columbia

*/s/ Robyn Bender*
ROBYN BENDER, *admitted pro hac vice*
Deputy Attorney General
JIMMY ROCK, *admitted pro hac vice*
Assistant Deputy Attorney General
ANDREW J. SAINDON, *admitted pro hac vice*
Senior Assistant Attorney General
Robyn.Bender@dc.gov
Jimmy.Rock@dc.gov
Andy.Saindon@dc.gov
*Attorneys for Plaintiff District of Columbia*


ELLEN F. ROSENBLUM
Attorney General of Oregon

*/s/ Scott J. Kaplan*
SCOTT J. KAPLAN, WSBA #49377
Senior Assistant Attorney General
scott.kaplan@doj.state.or.us
*Attorneys for Plaintiff State of Oregon*


XAVIER BECERRA
Attorney General of California

*/s/ Nelson R. Richards*
NELSON R. RICHARDS, *admitted pro hac*
*vice*
Deputy Attorney General
Nelson.Richards@doj.ca.gov
*Attorneys for Plaintiff State of California*

PLAINTIFF STATES' COMBINED
REPLY ISO MOTION FOR SUMMARY
JUDGMENT AND OPP TO
DEFENDANTS' CROSS-MOTIONS
2:18-cv-01115-RSL

27

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PHIL J. WEISER
Attorney General of Colorado

/s/ Matthew D. Grove
MATTHEW D. GROVE, *admitted pro hac vice*
Assistant Solicitor General
matt.grove@coag.gov
*Attorneys for Plaintiff State of Colorado*


KATHLEEN JENNINGS
Attorney General of Delaware

/s/ Ilona M. Kirshon
ILONA M. KIRSHON, *admitted pro hac vice*
Deputy State Solicitor
PATRICIA A. DAVIS, *admitted pro hac vice*
Deputy Attorney General
Ilona.kirshon@state.de.us
PatriciaA.Davis@state.de.us
*Attorneys for Plaintiff State of Delaware*


CLARE E. CONNORS
Attorney General of Hawaii

/s/ Robert T. Nakatsuji
ROBERT T. NAKATSUJI, *admitted pro hac
vice*
Deputy Attorney General
Robert.T.Nakatsuji@hawaii.gov
*Attorneys for Plaintiff State of Hawaii*


KWAME RAOUL
Attorney General of Illinois

/s/ Elizabeth Roberson-Young
ELIZABETH ROBERSON-YOUNG, *admitted
pro hac vice*
Deputy Solicitor General
erobersonyoung@atg.state.il.us
*Attorneys for Plaintiff State of Illinois*

PLAINTIFF STATES' COMBINED
REPLY ISO MOTION FOR SUMMARY
JUDGMENT AND OPP TO
DEFENDANTS' CROSS-MOTIONS
2:18-cv-01115-RSL

28

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

THOMAS J. MILLER
Attorney General of Iowa

/s/ Nathan Blake
NATHAN BLAKE, *admitted pro hac vice*
Deputy Attorney General
Nathan.Blake@ag.iowa.gov
*Attorneys for Plaintiff State of Iowa*


KEITH ELLISON
Attorney General of Minnesota

/s/ Jacob Campion
JACOB CAMPION, *admitted pro hac vice*
Minnesota Attorney General's Office
Solicitor General's Division
jacob.campion@ag.state.mn.us
*Attorneys for Plaintiff State of Minnesota*


JOSHUA H. STEIN
Attorney General of North Carolina

/s/ Sripriya Narasimhan
SRIPRIYA NARASIMHAN, *admitted pro hac vice*
Deputy General Counsel
SNarasimhan@ncdoj.gov
*Attorneys for Plaintiff State of North Carolina*


PETER F. NERONHA
Attorney General of Rhode Island

/s/ Justin Sullivan
JUSTIN SULLIVAN, *admitted pro hac vice*
Special Assistant Attorney General
JJSullivan@riag.ri.gov
*Attorneys for Plaintiff State of Rhode Island*


THOMAS J. DONOVAN, JR.

PLAINTIFF STATES' COMBINED
REPLY ISO MOTION FOR SUMMARY
JUDGMENT AND OPP TO
DEFENDANTS' CROSS-MOTIONS
2:18-cv-01115-RSL

29

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

1    Attorney General of Vermont

2    */s/ Benjamin D. Battles*

3    BENJAMIN D. BATTLES, *admitted pro hac
     vice*

4    Solicitor General
     benjamin.battles@vermont.gov

5    *Attorneys for Plaintiff State of Vermont*

6

7    MARK R. HERRING
     Attorney General of the Commonwealth of

8    Virginia

9    */s/ Samuel T. Towell*

10   SAMUEL T. TOWELL, *admitted pro hac vice*
     Deputy Attorney General, Civil Litigation

11   STowell@oag.state.va.us

12   *Attorney for Plaintiff Commonwealth of
     Virginia*

13

14

15

16

17

18

19

20

21

22

23

24

25

26