# Exhibit O



**Bob Ferguson**
# ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue # 2000 ● Seattle WA  98104-3188

April 25, 2019

*Via electronic mail*

Stuart J. Robinson
U.S. Department of Justice
Civil Division | Federal Programs Branch
450 Golden Gate Ave., Suite 7-5395
San Francisco, CA  94102

Dear Stuart,

We write in response to your letter dated April 24, 2019. We will destroy all copies of the Bates ranges you identified in your letter over which you claim attorney–client privilege and/or work product protection. We do not have any notes regarding those Bates ranges.

We will not oppose your motion to temporarily seal the documents you filed at Dkt. # 179 until your further review is complete on or before April 29, 2019. However, we are unable to stipulate that these documents are privileged or potentially privileged (and we reserve the right to challenge any claims of privilege or protection).

On the subject of privilege, it has come to our attention that the privilege log you produced at Dkt. # 179-23 omits a great deal of critical, required information. The privilege log is over 800 pages long, with most pages containing multiple entries. Hundreds of pages in the middle of the log—each of which contains up to ten individual entries—are deficient. They reflect documents that were "Withh[e]ld in Full" or redacted, and yet the log provides no "Basis for Withholding" whatsoever. *See* Privilege Log (Dkt. # 179-23) at 154–631 of 812; *see also, e.g., id.* at 29, 76, 83, 97, 111, 113 of 812.

Obviously, a "Basis for Withholding" is required for each and every document you have withheld or redacted. As the Court stated in its March 19, 2019 Order Granting Motion to Supplement the Administrative Record, an adequate privilege log must "*identif[y] the privilege asserted*" and "provid[e] plaintiffs and the Court with enough information to *test the assertion*." Dkt. # 175 at 5 (emphasis added); *see also id.* at 6 n.3 (asserted privilege must be "properly claimed"); Fed. R. Civ. P. 26(b)(5)(A) (party claiming privilege or protection must "expressly make the claim" and provide information to "enable other parties to assess the claim"). Your failure to indicate a basis for the redaction or withholding of numerous documents prevents the

ATTORNEY GENERAL OF WASHINGTON

Stuart J. Robinson
April 25, 2019
Page 2

Plaintiff States from testing your apparent assertions of privilege or protection and deviates from Rule 26(b) and the Court's Order.

We trust that you will promptly correct this problem, since our agreed extension of the summary judgment briefing schedule (with our reply due on May 10) was premised on your provision of a complete supplementation of the record, including a complete privilege log, by April 16. By no later than 5:00 pm PDT on Friday, April 26, please respond with a date certain by which you will provide a complete and compliant privilege log so that we may assess what steps, if any, to take prior to the summary judgment reply deadline.

Finally, the documents produced in the range of CWASHAR0000001-2409 (contained within Dkts. 179-4 to 179-13) were produced out of order. If you refile the supplemental record to correct the other issues previously identified, please refile the CWASHAR portion of the supplemental record so that they are in numbered order.

Sincerely,

KRISTIN BENESKI
Assistant Attorney General
206.464.7459
kristin.beneski@atg.wa.gov

KB:gs

Exhibit P

**From:** Jost, Aaron W <JostAW@state.gov>
**Sent:** Friday, March 30, 2018 4:22 PM
**To:** Mowers, Matthew D; Kaidanow, Tina S
**Cc:** Miller, Michael F; Steffens, Jessica L; Litzenberger, Earle D (Lee)
**Subject:** RE: Sig Sauer Trade Issue



Regards,
Aaron

-----Original Message-----
From: Mowers, Matthew D
Sent: Thursday, March 29, 2018 9:45 AM
To: Jost, Aaron W <JostAW@state.gov>; Kaidanow, Tina S <KaidanowTS@state.gov>; Mowers, Matthew D <MowersMD@state.gov>
Cc: Miller, Michael F <Millermf@state.gov>; Steffens, Jessica L <SteffensJL@state.gov>; Litzenberger, Earle D (Lee) <LitzenbergerED@state.gov>
Subject: Re: Sig Sauer Trade Issue

Sent from my BlackBerry 10 smartphone.
  Original Message
From: Jost, Aaron W
Sent: Wednesday, March 28, 2018 7:34 PM
To: Kaidanow, Tina S; Mowers, Matthew D
Cc: Miller, Michael F; Steffens, Jessica L; Litzenberger, Earle D (Lee)
Subject: Re: Sig Sauer Trade Issue

Matt,

Thanks,
Aaron

1

WASHAR0035756

Acting Director
PM/RSAT

 Original Message
From: Kaidanow, Tina S
Sent: Thursday, March 22, 2018 3:43 PM
To: Mowers, Matthew D
Cc: Miller, Michael F; Steffens, Jessica L; Litzenberger, Earle D (Lee)
Subject: RE: Sig Sauer Trade Issue



Official
UNCLASSIFIED

From: Mowers, Matthew D
Sent: Thursday, March 22, 2018 2:00 PM
To: Kaidanow, Tina S <KaidanowTS@state.gov>
Subject: FW: Sig Sauer Trade Issue

Matt

-----Original Message-----
From: Sununu, Christopher [mailto:Christopher.Sununu@nh.gov]
Sent: Thursday, March 22, 2018 11:55 AM
To: Mowers, Matthew D
Subject: Sig Sauer Trade Issue

Matt,

-Chris Sununu

Simply put, Sig needs the US Government to request to the German government that the Germans drop their "ITAR-free" requirement on their Bundeswehr pistol procurement, given it unfairly treats American offerings, when no similar barriers exist for German companies looking to do business with our armed forces. Given the nature of such a request, Sig has asked Governor Sununu to raise this to the highest levels of the White House, similar/equal to his efforts on Sig's Thailand issue a year ago. We do not see any practical way forward other than Government to Goverment action to get Germany to drop the unfair ITAR-free restriction. Note that the President did visit Sig Sauer very very early in the campaign (sometime earlier in 2015, I believe) with one or both of his sons. So there is a modest history there. Of course, we're pleased with any other senior folks with whom you think the Governor should engage on this as well.

WASHAR0035757

The company's Washington lobbyists are engaging with the Administration at various levels. But we feel that personal involvement by the Governor is necessary to ensure this is appropriately and quickly elevated. The company is also looking to engage Sen. Shaheen's Office, given her position on the Foreign Relations Committee. But it's unclear how responsive the administration will be to any intervention by her office (through no fault of the Senator or her staff).

To be clear, this isn't about Sig trying to unseat H&K for the US Marine procurement, as that would only tick off the Marines and may not change the outcome. It's about the much more sizable Bundeswehr procurement and contrasting that with the Marine procurement to demonstrate the unbalanced situation faced by a NH company - despite Sig having sister operations in Germany. As an aside, there have been news reports in Germany regarding Russian influence/funding in/of H&K (I can get you an article of two if you'd like).

Thanks again for the willingness to engage. Please let me know what other info I can provide to you to help us.


David Cuzzi, President
Prospect Hill Strategies
████████████
www.prospecthillstrategies.com<http://www.prospecthillstrategies.com>

>

This email is UNCLASSIFIED.

Official - SBU
UNCLASSIFIED

WASHAR0035758

Exhibit Q

| From: | Heidema, Sarah J <HeidemaSJ@state.gov> |
|---|---|
| Sent: | Friday, July 27, 2018 9:07 AM |
| To: | Paul, Joshua M <PaulJM@state.gov>; Miller, Michael F <Millermf@state.gov>; Hart, Robert L <HartRL@state.gov>; Rogers, Shana A <RogersSA2@state.gov>; Freeman, Jeremy B <FreemanJB@state.gov>; Fabry, Steven F <FabrySF@state.gov> |
| Subject: | RE: 18.04.06 DOJ MTD.pdf |

---

As I read this, he wants to know why we stopped arguing that the technology subject to the case, if released, would harm national security or foreign policy

Official - SBU
UNCLASSIFIED

**From:** Paul, Joshua M
**Sent:** Friday, July 27, 2018 9:01 AM
**To:** Heidema, Sarah J <HeidemaSJ@state.gov>; Miller, Michael F <Millermf@state.gov>; Hart, Robert L <HartRL@state.gov>; Rogers, Shana A <RogersSA2@state.gov>; Freeman, Jeremy B <FreemanJB@state.gov>; Fabry, Steven F <FabrySF@state.gov>
**Subject:** RE: 18.04.06 DOJ MTD.pdf

He wants to know what changed in DOJ's opinion between the point where it was arguing vociferously against DD to make the USG pursue a settlement. That's fundamentally a DOJ question – nothing changed on our side, to my knowledge?

Official - SBU
UNCLASSIFIED

**From:** Heidema, Sarah J
**Sent:** Friday, July 27, 2018 9:00 AM
**To:** Paul, Joshua M <PaulJM@state.gov>; Miller, Michael F <Millermf@state.gov>; Hart, Robert L <HartRL@state.gov>; Rogers, Shana A <RogersSA2@state.gov>; Freeman, Jeremy B <FreemanJB@state.gov>; Fabry, Steven F <FabrySF@state.gov>
**Subject:** RE: 18.04.06 DOJ MTD.pdf

This is actually a question for us...

Official - SBU
UNCLASSIFIED

**From:** Paul, Joshua M
**Sent:** Friday, July 27, 2018 8:55 AM
**To:** Miller, Michael F <Millermf@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Hart, Robert L <HartRL@state.gov>; Rogers, Shana A <RogersSA2@state.gov>; Freeman, Jeremy B <FreemanJB@state.gov>; Fabry, Steven F <FabrySF@state.gov>
**Subject:** FW: 18.04.06 DOJ MTD.pdf

FYI-

Official - SBU
UNCLASSIFIED

**From:** Paul, Joshua M
**Sent:** Friday, July 27, 2018 8:47 AM
**To:** 'Fite, David (Foreign Relations)' <David_Fite@foreign.senate.gov>; Faulkner, Charles S <FaulknerCS@state.gov>; Darrach, Tamara A <DarrachTA@state.gov>
**Subject:** RE: 18.04.06 DOJ MTD.pdf

Dear David,

On a technical legal question such as this, we would have to refer you in the first instance to the Department of Justice. Would you like to reach out to them directly, or shall I pass along your inquiry?

Josh

**Official**
**UNCLASSIFIED**

**From:** Fite, David (Foreign Relations) <David_Fite@foreign.senate.gov>
**Sent:** Thursday, July 26, 2018 7:22 PM
**To:** Paul, Joshua M <PaulJM@state.gov>; Faulkner, Charles S <FaulknerCS@state.gov>; Darrach, Tamara A <DarrachTA@state.gov>
**Subject:** FW: 18.04.06 DOJ MTD.pdf

May I please get an analysis as to why this April 4th submission by the Department of Justice was so much in error by the end of April?

Exhibit R

| **From:** | Paul, Joshua M </O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=FE0AF1773ED642DF9120291EA0A8C588-PAUL, JOSHU> |
|---|---|
| **Sent:** | Friday, July 20, 2018 2:24 PM |
| **To:** | Fite, David (Foreign Relations) <David_Fite@foreign.senate.gov>; Rice, Edmund <Edmund.Rice@mail.house.gov>; Miller, Michael F <Millermf@state.gov>; Darrach, Tamara A <DarrachTA@state.gov> |
| **Cc:** | McCormick, Jamie <Jamie.McCormick@mail.house.gov>; Oliver, Stacie (Foreign Relations) <Stacie_Oliver@foreign.senate.gov> |
| **Subject:** | RE: Request briefing on proposed ITAR change on 3-D printing software for plastic firearms |

I will pass back these questions to our team, and we look forward to discussing them with you in person to the extent that they fall within the context of our responsibilities under the AECA.

**Official**
**UNCLASSIFIED**

**From:** Fite, David (Foreign Relations) <David_Fite@foreign.senate.gov>
**Sent:** Friday, July 20, 2018 2:10 PM
**To:** Paul, Joshua M <PaulJM@state.gov>; Rice, Edmund <Edmund.Rice@mail.house.gov>; Miller, Michael F <Millermf@state.gov>; Darrach, Tamara A <DarrachTA@state.gov>
**Cc:** McCormick, Jamie <Jamie.McCormick@mail.house.gov>; Oliver, Stacie (Foreign Relations) <Stacie_Oliver@foreign.senate.gov>
**Subject:** RE: Request briefing on proposed ITAR change on 3-D printing software for plastic firearms

But it's State's changes that are allowing this to be implemented right? And it's these changes that State will take, especially pursuant to the authority in 126.2, that will allow this information to be disseminated worldwide without a license, without penalty, right?

Do you mean to tell us this question did not arise or was not fully considered during the (presumably) interagency deliberation on the settlement agreement? Or do you have answers to these questions, but State isn't willing to tell us?

Additionally, State is about take an action to suspend the application of ITAR restrictions on the publication of controlled information/technology on the Internet for a temporary period of time, BEFORE the reg change transferring the defense items that the information/tech pertains to becomes final. And what if that reg change does not become final, or is different from the draft rule? In that instance, State will have allowed the worldwide transfer of export-controlled information "in the interest of the security and foreign policy of the United States"?

**From:** Paul, Joshua M <PaulJM@state.gov>
**Sent:** Friday, July 20, 2018 2:01 PM
**To:** Fite, David (Foreign Relations) <David_Fite@foreign.senate.gov>; Rice, Edmund <Edmund.Rice@mail.house.gov>; Miller, Michael F <Millermf@state.gov>; Darrach, Tamara A <DarrachTA@state.gov>
**Cc:** McCormick, Jamie <Jamie.McCormick@mail.house.gov>; Oliver, Stacie (Foreign Relations) <Stacie_Oliver@foreign.senate.gov>
**Subject:** RE: Request briefing on proposed ITAR change on 3-D printing software for plastic firearms

Hi David,

We would need to refer you to TSA or other law enforcement organizations on this question. The DDTC nexus on this issue was/is limited to our role in controlling exports of tech data, which is the only reason we got involved in the first place.

Josh

Official - SBU
UNCLASSIFIED

**From:** Fite, David (Foreign Relations) <David_Fite@foreign.senate.gov>
**Sent:** Friday, July 20, 2018 1:38 PM
**To:** Paul, Joshua M <PaulJM@state.gov>; Rice, Edmund <Edmund.Rice@mail.house.gov>; Miller, Michael F <Millermf@state.gov>; Darrach, Tamara A <DarrachTA@state.gov>
**Cc:** McCormick, Jamie <Jamie.McCormick@mail.house.gov>; Oliver, Stacie (Foreign Relations) <Stacie_Oliver@foreign.senate.gov>
**Subject:** RE: Request briefing on proposed ITAR change on 3-D printing software for plastic firearms

Also, what are the law enforcement and counter-terrorism implications of this change?  Enabling the widespread acquisition of undetectable or largely-undetectable firearms would seem to be a bad idea, especially in protection of domestic and international airline flights from terrorist hijacking/attacks.  What changes will be required by TSA here and abroad to deal with this?

**From:** Paul, Joshua M <PaulJM@state.gov>
**Sent:** Friday, July 20, 2018 11:42 AM
**To:** Rice, Edmund <Edmund.Rice@mail.house.gov>; Fite, David (Foreign Relations) <David_Fite@foreign.senate.gov>; Miller, Michael F <Millermf@state.gov>; Darrach, Tamara A <DarrachTA@state.gov>
**Cc:** McCormick, Jamie <Jamie.McCormick@mail.house.gov>; Oliver, Stacie (Foreign Relations) <Stacie_Oliver@foreign.senate.gov>
**Subject:** RE: Request briefing on proposed ITAR change on 3-D printing software for plastic firearms

Understood, and that's helpful information.  We'll round back and be in touch.

Official
UNCLASSIFIED

**From:** Rice, Edmund <Edmund.Rice@mail.house.gov>
**Sent:** Friday, July 20, 2018 11:32 AM
**To:** Paul, Joshua M <PaulJM@state.gov>; Fite, David (Foreign Relations) <David_Fite@foreign.senate.gov>; Miller, Michael F <Millermf@state.gov>; Darrach, Tamara A <DarrachTA@state.gov>
**Cc:** McCormick, Jamie <Jamie.McCormick@mail.house.gov>; Oliver, Stacie (Foreign Relations) <Stacie_Oliver@foreign.senate.gov>
**Subject:** RE: Request briefing on proposed ITAR change on 3-D printing software for plastic firearms

A phone call would be only a first step for we four.  I expect that as news of this settlement spreads, there will be a requirement to brief a number of Congressional staff and then Members.

**From:** Paul, Joshua M <PaulJM@state.gov>
**Sent:** Friday, July 20, 2018 11:21 AM
**To:** Fite, David (Foreign Relations) <David_Fite@foreign.senate.gov>; Rice, Edmund <Edmund.Rice@mail.house.gov>; Miller, Michael F <Millermf@state.gov>; Darrach, Tamara A <DarrachTA@state.gov>
**Cc:** McCormick, Jamie <Jamie.McCormick@mail.house.gov>; Oliver, Stacie (Foreign Relations) <Stacie_Oliver@foreign.senate.gov>
**Subject:** RE: Request briefing on proposed ITAR change on 3-D printing software for plastic firearms

Hello,

We've actually been in the process of putting together a briefing for you on this – with the intent being to provide a phone call early next week. Would that work?

Josh

**Official**
**UNCLASSIFIED**

**From:** Fite, David (Foreign Relations) <David_Fite@foreign.senate.gov>
**Sent:** Friday, July 20, 2018 11:10 AM
**To:** 'Rice, Edmund' <Edmund.Rice@mail.house.gov>; Miller, Michael F <Millermf@state.gov>; Paul, Joshua M <PaulJM@state.gov>; Darrach, Tamara A <DarrachTA@state.gov>
**Cc:** McCormick, Jamie <Jamie.McCormick@mail.house.gov>; Oliver, Stacie (Foreign Relations) <Stacie_Oliver@foreign.senate.gov>
**Subject:** RE: Request briefing on proposed ITAR change on 3-D printing software for plastic firearms

As well as State's view of State's legal liability to this suit in the first place.

**From:** Rice, Edmund <Edmund.Rice@mail.house.gov>
**Sent:** Friday, July 20, 2018 11:03 AM
**To:** Miller, Michael F <Millermf@state.gov>; Paul, Joshua <pauljm@state.gov>; Darrach, Tamara <darrachta@state.gov>
**Cc:** McCormick, Jamie <Jamie.McCormick@mail.house.gov>; Fite, David (Foreign Relations) <David_Fite@foreign.senate.gov>; Oliver, Stacie (Foreign Relations) <Stacie_Oliver@foreign.senate.gov>
**Subject:** Request briefing on proposed ITAR change on 3-D printing software for plastic firearms
**Importance:** High

Mike, et.al.:

This is to request a briefing on the terms of the settlement (attached) that the State Department entered into June 29th regarding Defense Distributed et al v. United States Department of State et al, Western District of Texas, Civil Docket # 1:15-cv-00372-RP. This is the suit brought by several persons who want to make available online software for manufacture via 3-D printing of firearms, including plastic firearms.

In particular, item 1(b) indicates that State will amend the ITAR to remove the subject software from the USML by July 27th. Several House Members have brought this matter to Rep. Engel's attention and I have been asked to look into this ASAP. I expect that Jamie, David and Stacie also would need to know about this.

Perhaps this could be covered at our July 25th arms transfer meeting. One way or another, I need a briefing on this prior to July 27th.

Ed


Edmund B. Rice
Senior Professional Staff Member
Democratic Staff
House Foreign Affairs Committee
B-360 Rayburn House Office Bldg.
202-226-8467

WASHAR0000222

# Exhibit S

| | |
|---|---|
| **From:** | Heidema, Sarah J <HeidemaSJ@state.gov> |
| **Sent:** | Wednesday, July 25, 2018 1:26 PM |
| **To:** | Paul, Joshua M; Rogers, Shana A; Fabry, Steven F; Darrach, Tamara A; Miller, Michael F; Hart, Robert L |
| **Cc:** | Freeman, Jeremy B; PM-CPA |
| **Subject:** | RE: S Contingency Lines |
| **Attachments:** | Defense Distributed - S contingency QA (5).docx |

Sorry, use this version

Official - SBU
UNCLASSIFIED

From: Heidema, Sarah J
Sent: Wednesday, July 25, 2018 1:25 PM
To: Paul, Joshua M <PaulJM@state.gov>; Rogers, Shana A <RogersSA2@state.gov>; Fabry, Steven F
<FabrySF@state.gov>; Darrach, Tamara A <DarrachTA@state.gov>; Miller, Michael F <Millermf@state.gov>; Hart,
Robert L <HartRL@state.gov>
Cc: Freeman, Jeremy B <FreemanJB@state.gov>; PM-CPA <PM-CPA@state.gov>
Subject: RE: S Contingency Lines

My tweaks and added in the below from DOJ in

Official - SBU
UNCLASSIFIED

From: Paul, Joshua M
Sent: Wednesday, July 25, 2018 1:17 PM
To: Rogers, Shana A <RogersSA2@state.gov<mailto:RogersSA2@state.gov>>; Fabry, Steven F
<FabrySF@state.gov<mailto:FabrySF@state.gov>>; Darrach, Tamara A
<DarrachTA@state.gov<mailto:DarrachTA@state.gov>>; Miller, Michael F
<Millermf@state.gov<mailto:Millermf@state.gov>>; Hart, Robert L <HartRL@state.gov<mailto:HartRL@state.gov>>
Cc: Heidema, Sarah J <HeidemaSJ@state.gov<mailto:HeidemaSJ@state.gov>>; Freeman, Jeremy B
<FreemanJB@state.gov<mailto:FreemanJB@state.gov>>; PM-CPA <PM-CPA@state.gov<mailto:PM-CPA@state.gov>>
Subject: RE: S Contingency Lines

I think that's legally valid but not particularly useful in a public/Congressional context, as the pin can be removed and put
in your other pocket.  Fine for background, so long as S doesn't say it.

Official - SBU
UNCLASSIFIED

From: Rogers, Shana A
Sent: Wednesday, July 25, 2018 1:15 PM
To: Paul, Joshua M <PaulJM@state.gov<mailto:PaulJM@state.gov>>; Fabry, Steven F
<FabrySF@state.gov<mailto:FabrySF@state.gov>>; Darrach, Tamara A
<DarrachTA@state.gov<mailto:DarrachTA@state.gov>>; Miller, Michael F
<Millermf@state.gov<mailto:Millermf@state.gov>>; Hart, Robert L <HartRL@state.gov<mailto:HartRL@state.gov>>

WASHAR0035889

Cc: Heidema, Sarah J <HeidemaSJ@state.gov<mailto:HeidemaSJ@state.gov>>; Freeman, Jeremy B <FreemanJB@state.gov<mailto:FreemanJB@state.gov>>; PM-CPA <PM-CPA@state.gov<mailto:PM-CPA@state.gov>>
Subject: RE: S Contingency Lines

==DOJ has suggested the following addition in the background section:==

==The 3-D files at issue are for a firearms design that requires adding metal after printing and thus does not violate the Undetectable Firearms Act of 1988 (UFA).==

Official - SBU
UNCLASSIFIED

From: Paul, Joshua M
Sent: Wednesday, July 25, 2018 1:12 PM
To: Fabry, Steven F; Rogers, Shana A; Darrach, Tamara A; Miller, Michael F; Hart, Robert L
Cc: Heidema, Sarah J; Freeman, Jeremy B; PM-CPA
Subject: RE: S Contingency Lines

Ok - fair enough.  Though presumably by the time he got back to them it would be post-settlement.  But alright, ok here, pending DDTC final approval.

Official - SBU
UNCLASSIFIED

From: Fabry, Steven F
Sent: Wednesday, July 25, 2018 1:11 PM
To: Paul, Joshua M <PaulJM@state.gov<mailto:PaulJM@state.gov>>; Rogers, Shana A <RogersSA2@state.gov<mailto:RogersSA2@state.gov>>; Darrach, Tamara A <DarrachTA@state.gov<mailto:DarrachTA@state.gov>>; Miller, Michael F <Millermf@state.gov<mailto:Millermf@state.gov>>; Hart, Robert L <HartRL@state.gov<mailto:HartRL@state.gov>>
Cc: Heidema, Sarah J <HeidemaSJ@state.gov<mailto:HeidemaSJ@state.gov>>; Freeman, Jeremy B <FreemanJB@state.gov<mailto:FreemanJB@state.gov>>; PM-CPA <PM-CPA@state.gov<mailto:PM-CPA@state.gov>>
Subject: RE: S Contingency Lines

Taking it back is effectively committing to answer, but DOJ hasn't cleared us to answer the question, which is why we changed it.  We can't advise the Secretary to make a commitment that DOJ is, for now at least, not ok with.

Official - SBU
UNCLASSIFIED

From: Paul, Joshua M
Sent: Wednesday, July 25, 2018 1:08 PM
To: Rogers, Shana A; Darrach, Tamara A; Miller, Michael F; Hart, Robert L
Cc: Heidema, Sarah J; Freeman, Jeremy B; PM-CPA; Fabry, Steven F
Subject: RE: S Contingency Lines

Thanks -

WASHAR0035890

1.   Can DDTC confirm that you're still good with this?

2.   The original if pressed response was to take it back.  This is the same, in effect, as declining to comment, but without saying as much - my concern is by saying he won't comment on pending litigation that is literally all over the press, S will open himself up to further attacks from the questioner.  What's wrong with him saying "I'll take it back?"

Official - SBU
UNCLASSIFIED

From: Rogers, Shana A
Sent: Wednesday, July 25, 2018 1:05 PM
To: Darrach, Tamara A <DarrachTA@state.gov<mailto:DarrachTA@state.gov>>; Paul, Joshua M
<PaulJM@state.gov<mailto:PaulJM@state.gov>>; Miller, Michael F <Millermf@state.gov<mailto:Millermf@state.gov>>;
Hart, Robert L <HartRL@state.gov<mailto:HartRL@state.gov>>
Cc: Heidema, Sarah J <HeidemaSJ@state.gov<mailto:HeidemaSJ@state.gov>>; Freeman, Jeremy B
<FreemanJB@state.gov<mailto:FreemanJB@state.gov>>; PM-CPA <PM-CPA@state.gov<mailto:PM-CPA@state.gov>>;
Fabry, Steven F <FabrySF@state.gov<mailto:FabrySF@state.gov>>
Subject: RE: S Contingency Lines

Thanks for your patience.  The attached includes edits from DOJ and has been cleared by the L/FO.  I'm working on a final sentence with DOJ re the undetectable firearms act, but may not have it in the next 5 minutes.

Thanks,
Shana

Official - SBU
UNCLASSIFIED

From: Darrach, Tamara A
Sent: Wednesday, July 25, 2018 12:42 PM
To: Rogers, Shana A; Paul, Joshua M; Miller, Michael F; Hart, Robert L
Cc: Heidema, Sarah J; Freeman, Jeremy B; PM-CPA; Fabry, Steven F
Subject: RE: S Contingency Lines

Hi Shana,

Sorry to put the pressure on, but my FO is asking that we have this by NLT 1:10 pm.  Really appreciate your efforts.

Thanks!
Tamara


Tamara Darrach | Congressional Advisor | Bureau of Legislative Affairs |  U.S. Department of State
2201 C St NW, Rm 7418 | (202) 647-8763 | DarrachTA@state.gov<mailto:DarrachTA@state.gov>


From: Rogers, Shana A
Sent: Wednesday, July 25, 2018 11:50 AM
To: Darrach, Tamara A <DarrachTA@state.gov<mailto:DarrachTA@state.gov>>; Paul, Joshua M
<PaulJM@state.gov<mailto:PaulJM@state.gov>>; Miller, Michael F <Millermf@state.gov<mailto:Millermf@state.gov>>;
Hart, Robert L <HartRL@state.gov<mailto:HartRL@state.gov>>

WASHAR0035891

Cc: Heidema, Sarah J <HeidemaSJ@state.gov<mailto:HeidemaSJ@state.gov>>; Freeman, Jeremy B <FreemanJB@state.gov<mailto:FreemanJB@state.gov>>; PM-CPA <PM-CPA@state.gov<mailto:PM-CPA@state.gov>>; Fabry, Steven F <FabrySF@state.gov<mailto:FabrySF@state.gov>>
Subject: RE: S Contingency Lines

Josh-because the intended recipient is S, Jeremy and I need to consult with our leadership before clearing. We'll get back to you ASAP.

Official - SBU
UNCLASSIFIED

From: Darrach, Tamara A
Sent: Wednesday, July 25, 2018 11:48 AM
To: Paul, Joshua M; Miller, Michael F; Hart, Robert L
Cc: Heidema, Sarah J; Freeman, Jeremy B; Rogers, Shana A; PM-CPA
Subject: RE: S Contingency Lines

Thanks, Josh! I told my FO this is coming and they are ready to flag the finalized version for S.

From: Paul, Joshua M
Sent: Wednesday, July 25, 2018 11:47 AM
To: Miller, Michael F <Millermf@state.gov<mailto:Millermf@state.gov>>; Hart, Robert L <HartRL@state.gov<mailto:HartRL@state.gov>>
Cc: Heidema, Sarah J <HeidemaSJ@state.gov<mailto:HeidemaSJ@state.gov>>; Freeman, Jeremy B <FreemanJB@state.gov<mailto:FreemanJB@state.gov>>; Rogers, Shana A <RogersSA2@state.gov<mailto:RogersSA2@state.gov>>; PM-CPA <PM-CPA@state.gov<mailto:PM-CPA@state.gov>>; Darrach, Tamara A <DarrachTA@state.gov<mailto:DarrachTA@state.gov>>
Subject: RE: S Contingency Lines

L/PM, please clear on the attached.

Tamara, flagging the bootleg.

Josh

Official - SBU
UNCLASSIFIED

From: Paul, Joshua M
Sent: Wednesday, July 25, 2018 11:44 AM
To: Miller, Michael F <Millermf@state.gov<mailto:Millermf@state.gov>>; Hart, Robert L <HartRL@state.gov<mailto:HartRL@state.gov>>
Cc: Heidema, Sarah J <HeidemaSJ@state.gov<mailto:HeidemaSJ@state.gov>>; Freeman, Jeremy B <FreemanJB@state.gov<mailto:FreemanJB@state.gov>>; Rogers, Shana A <RogersSA2@state.gov<mailto:RogersSA2@state.gov>>; PM-CPA <PM-CPA@state.gov<mailto:PM-CPA@state.gov>>; Darrach, Tamara A <DarrachTA@state.gov<mailto:DarrachTA@state.gov>>
Subject: RE: S Contingency Lines

Ok - done.

That said, based on whether this story continues to expand in the coming days, it may be necessary to circle back together and revisit the L and DOJ recommendation; from a CPA perspective it might be helpful to put all cards on the

4

WASHAR0035892

table and let Congress figure out a solution: public commentators have already raised the underlying issue (see today's NPR On Point), and trying to avoid drawing attention to it may ultimately just postpone the inevitable debate.

J

Official - SBU
UNCLASSIFIED

From: Miller, Michael F
Sent: Wednesday, July 25, 2018 11:22 AM
To: Paul, Joshua M <PaulJM@state.gov<mailto:PaulJM@state.gov>>; Hart, Robert L
<HartRL@state.gov<mailto:HartRL@state.gov>>
Cc: Heidema, Sarah J <HeidemaSJ@state.gov<mailto:HeidemaSJ@state.gov>>; Freeman, Jeremy B
<FreemanJB@state.gov<mailto:FreemanJB@state.gov>>; Rogers, Shana A
<RogersSA2@state.gov<mailto:RogersSA2@state.gov>>; PM-CPA <PM-CPA@state.gov<mailto:PM-CPA@state.gov>>;
Darrach, Tamara A <DarrachTA@state.gov<mailto:DarrachTA@state.gov>>
Subject: RE: S Contingency Lines

Right, I think that would be a good idea, being mindful of Steve and L colleagues' comments yesterday...

Official - SBU
UNCLASSIFIED

From: Paul, Joshua M
Sent: Wednesday, July 25, 2018 11:21 AM
To: Miller, Michael F <Millermf@state.gov<mailto:Millermf@state.gov>>; Hart, Robert L
<HartRL@state.gov<mailto:HartRL@state.gov>>
Cc: Heidema, Sarah J <HeidemaSJ@state.gov<mailto:HeidemaSJ@state.gov>>; Freeman, Jeremy B
<FreemanJB@state.gov<mailto:FreemanJB@state.gov>>; Rogers, Shana A
<RogersSA2@state.gov<mailto:RogersSA2@state.gov>>; PM-CPA <PM-CPA@state.gov<mailto:PM-CPA@state.gov>>;
Darrach, Tamara A <DarrachTA@state.gov<mailto:DarrachTA@state.gov>>
Subject: RE: S Contingency Lines

No - the background is provided for background; this is understood in the context of a standard format, but I can add:

Background (not for public use):


Official - SBU
UNCLASSIFIED

From: Miller, Michael F
Sent: Wednesday, July 25, 2018 11:18 AM
To: Paul, Joshua M <PaulJM@state.gov<mailto:PaulJM@state.gov>>; Hart, Robert L
<HartRL@state.gov<mailto:HartRL@state.gov>>
Cc: Heidema, Sarah J <HeidemaSJ@state.gov<mailto:HeidemaSJ@state.gov>>; Freeman, Jeremy B
<FreemanJB@state.gov<mailto:FreemanJB@state.gov>>; Rogers, Shana A
<RogersSA2@state.gov<mailto:RogersSA2@state.gov>>; PM-CPA <PM-CPA@state.gov<mailto:PM-CPA@state.gov>>;
Darrach, Tamara A <DarrachTA@state.gov<mailto:DarrachTA@state.gov>>
Subject: RE: S Contingency Lines

Looks good...are we comfortable with S saying aloud what's in the background?

WASHAR0035893

Official - SBU
UNCLASSIFIED

From: Paul, Joshua M
Sent: Wednesday, July 25, 2018 11:14 AM
To: Hart, Robert L <HartRL@state.gov<mailto:HartRL@state.gov>>
Cc: Heidema, Sarah J <HeidemaSJ@state.gov<mailto:HeidemaSJ@state.gov>>; Freeman, Jeremy B
<FreemanJB@state.gov<mailto:FreemanJB@state.gov>>; Rogers, Shana A
<RogersSA2@state.gov<mailto:RogersSA2@state.gov>>; Miller, Michael F
<Millermf@state.gov<mailto:Millermf@state.gov>>; PM-CPA <PM-CPA@state.gov<mailto:PM-CPA@state.gov>>;
Darrach, Tamara A <DarrachTA@state.gov<mailto:DarrachTA@state.gov>>
Subject: RE: S Contingency Lines

Thanks.  L/PM, are you provisionally ok with the below?

Q&A on 3D Printing of Firearms Settlement

IF ASKED: Will you postpone implementation of the settlement on 3D-printed firearms


*       I am aware of Congress' concerns on this matter, though I would observe that the Department's role in this relates
only to our control of exports.

IF PRESSED: Will you postpone implementation of the settlement?


*       I will be happy to take that back and consult with our Legal Advisor.

Background:

In 2013 the Department became aware of the presence of CAD files for the 3-D printing on firearms on the webpage of
Defense Distributed, and directed that they be taken down pending a commodity jurisdiction review.  DD ultimately
sued the Department, alleging violations of the 1st, 2nd, and 5th Amendments.  In close consultation with the
Department of Justice, the Department settled the case in 2018 and agreed to authorize for public release the CAD files
that were the subject of the litigation.

An adverse ruling on the merits of this case could have called into question the Department's authority to control the
export and posting on the internet of more sensitive technical data.  If we pursued this DD case to its judicial conclusion
and lost, it is possible that the ruling could have undermined the technical data controls that regulate information
required to, e.g., develop or modify sensitive munitions items, and which might be utilized by adversaries to advance
their own technology or develop countermeasures to U.S. platforms.


Official - SBU
UNCLASSIFIED

From: Hart, Robert L
Sent: Wednesday, July 25, 2018 11:12 AM
To: Paul, Joshua M <PaulJM@state.gov<mailto:PaulJM@state.gov>>
Cc: Heidema, Sarah J <HeidemaSJ@state.gov<mailto:HeidemaSJ@state.gov>>; Freeman, Jeremy B
<FreemanJB@state.gov<mailto:FreemanJB@state.gov>>; Rogers, Shana A

WASHAR0035894

&lt;RogersSA2@state.gov&lt;mailto:RogersSA2@state.gov&gt;&gt;; Miller, Michael F
&lt;Millermf@state.gov&lt;mailto:Millermf@state.gov&gt;&gt;; PM-CPA &lt;PM-CPA@state.gov&lt;mailto:PM-CPA@state.gov&gt;&gt;;
Darrach, Tamara A &lt;DarrachTA@state.gov&lt;mailto:DarrachTA@state.gov&gt;&gt;
Subject: RE: S Contingency Lines

Sarah is reviewing but this is what I had in the draft I sent over -

In 2013 the Department became aware of the presence of CAD files for the 3-D printing on firearms on the webpage of Defense Distributed, and directed that they be taken down pending a commodity jurisdiction review. DD ultimately sued the Department, alleging violations of the 1st, 2nd, and 5th Amendments. In close consultation with the Department of Justice, the Department settled the case in 2018 and agreed to authorize for public release the CAD files that were the subject of the litigation.

An adverse ruling on the merits of this case could have called into question the Department's authority to control the export and posting on the internet of more sensitive technical data. If we pursued this DD case to its judicial conclusion and lost, it is possible that the ruling could have undermined the technical data controls that regulate information required to, e.g., develop or modify sensitive munitions items, and which might be utilized by adversaries to advance their own technology or develop countermeasures to U.S. platforms.


Rob Hart
202.736.9221 | hartrl@state.gov&lt;mailto:hartrl@state.gov&gt;


Official - SBU
UNCLASSIFIED


From: Paul, Joshua M
Sent: Wednesday, July 25, 2018 11:09 AM
To: Hart, Robert L &lt;HartRL@state.gov&lt;mailto:HartRL@state.gov&gt;&gt;
Cc: Heidema, Sarah J &lt;HeidemaSJ@state.gov&lt;mailto:HeidemaSJ@state.gov&gt;&gt;; Freeman, Jeremy B
&lt;FreemanJB@state.gov&lt;mailto:FreemanJB@state.gov&gt;&gt;; Rogers, Shana A
&lt;RogersSA2@state.gov&lt;mailto:RogersSA2@state.gov&gt;&gt;; Miller, Michael F
&lt;Millermf@state.gov&lt;mailto:Millermf@state.gov&gt;&gt;; PM-CPA &lt;PM-CPA@state.gov&lt;mailto:PM-CPA@state.gov&gt;&gt;;
Darrach, Tamara A &lt;DarrachTA@state.gov&lt;mailto:DarrachTA@state.gov&gt;&gt;
Subject: S Contingency Lines
Importance: High

Hi Rob,

Not sure how far along you are on the PM Q&A, but can you send me ASAP a paragraph of background to accompany the following basic bullets so we can provide this in draft to H in case S gets asked about this today in his public Hearing with SFRC, as seems increasingly possible?

IF ASKED: Will you postpone implementation of the settlement on 3D-printed firearms

*       I am aware of Congress' concerns on this matter, though I would observe that the Department's role in this relates only to our control of exports.

IF PRESSED: Will you postpone implementation of the settlement?

*       I will be happy to take that back and consult with our Legal Advisor.

WASHAR0035895

Background: XXX
Official - SBU
UNCLASSIFIED

WASHAR0035896

# Exhibit T

# PUBLIC SUBMISSION

**As of:** November 29, 2018
**Tracking No.** 1k2-942p-nbzi
**Comments Due:** July 09, 2018

**Docket:** DOS-2017-0046
Amendment to the International Traffic in Arms Regulations: Revision of U.S. Munitions List Categories I, II, and III

**Comment On:** DOS-2017-0046-0001
International Traffic in Arms Regulations: U.S. Munitions List Categories I, II, and III

**Document:** DOS-2017-0046-0556
Comment on DOS-2017-0046-0001

---

## Submitter Information

**Name:** Barbara Patchen

---

## General Comment

Right now, firearms exports are classified as military. This is why they are under the regulation of the State Department, and why Congress can block sales of large batches of firearms to foreign countries.[2] With the rule change, Congress would no longer be automatically informed about sizable weapons sales that it could stop in the name of national security, even to countries where there are serious human rights concerns, such as the Philippines and Turkey.[3]

Meanwhile, the Commerce Department just does not have the resources to adequately enforce export controls. Its Bureau of Industry and Security does not have staff everywhere. This means that firearms traffickers, organized crime, terrorist organizations, and other violent and dangerous agents would face far fewer hurdles to obtaining large caches of American guns.

Switching the regulation of firearms exports from the State Department to the Commerce Department would facilitate firearms exports to oppressive regimes, remove safeguards that help keep extra-legal agents like organized crime and terrorist organizations from obtaining weapons, and further fuel violence that destabilizes countries and causes mass migration.[4]

Here are more details on how the rule change would make the world a far more dangerous place:

It would eliminate the State Departments Blue Lantern program, in place since 1940, which carries out hundreds of pre-license and post-shipment inspections and publicly reports on them.[5]
It would remove licensing requirements for brokers, increasing the risk of trafficking.[6]
It would remove the State Departments block on the 3D printing of firearms. When Defense Distributed founder Cody Wilson posted online instructions for how to 3D print weapons, the State Department successfully charged him with violating arms export laws, since his open-source posting made it possible for anyone with access to a 3D printer, anywhere, to produce a lethal weapon. The rule switch would remove this block, effectively enabling 3D printing of firearms in the U.S. and around the globe.

Firearms are dangerous. They are used to kill people every day around the world in acts of organized crime, political violence, terrorism, and human rights violations. They should be subject to more controls, not less.

# Exhibit U

| | |
|---|---|
| **From:** | Heidema, Sarah J <HeidemaSJ@state.gov> |
| **Sent:** | Tuesday, July 24, 2018 8:27 AM |
| **To:** | Tucker, Maureen E <TuckerME@state.gov> |
| **Subject:** | FW: Rep. Engel Letter to Sec. Pompeo on 3D Printed guns |
| **Attach:** | 07-20-18 Letter to Secretary Pompeo Regarding 3-D Printed Arms.pdf |

Per our conversation

**Official**
**UNCLASSIFIED**

**From:** Rice, Edmund <Edmund.Rice@mail.house.gov>
**Date:** July 20, 2018 at 4:37:58 PM EDT
**To:** Miller, Michael F <Millermf@state.gov>, Paul, Joshua M <PaulJM@state.gov>, Darrach, Tamara A <DarrachTA@state.gov>
**Cc:** McCormick, Jamie <Jamie.McCormick@mail.house.gov>, Fite, David <david_fite@foreign.senate.gov>, Oliver, Stacie <stacie_oliver@foreign.senate.gov>
**Subject:** Rep. Engel Letter to Sec. Pompeo on 3D Printed guns
Mike, et.al.:
I wanted you to be aware of the attached letter from Rep. Engel to Secretary Pompeo urging a delay of the implementation of the settlement in Defense Distributed v. U.S. State Department, given the significant security threat that would occur immediately upon release of the software. The letter also is being sent to H. Rep. Engel has directed that the letter be released to the public. As you are no doubt aware, the terms of the settlement are already being widely reported in the media this afternoon.
Ed
Edmund B. Rice
Senior Professional Staff Member
Democratic Staff
House Foreign Affairs Committee
B-360 Rayburn House Office Bldg.
202-226-8467

EDWARD R. ROYCE, CALIFORNIA
CHAIRMAN

ELIOT L. ENGEL, NEW YORK
RANKING DEMOCRATIC MEMBER

AMY PORTER        THOMAS SHEEHY
CHIEF OF STAFF    STAFF DIRECTOR

JASON STEINBAUM
DEMOCRATIC STAFF DIRECTOR



One Hundred Fifteenth Congress
U.S. House of Representatives
Committee on Foreign Affairs
2170 Rayburn House Office Building
Washington, DC 20515
www.foreignaffairs.house.gov

July 20, 2018

The Honorable Mike Pompeo
Department of State
2201 C Street, NW
Washington, DC 20520

Dear Mr. Secretary:

I write to register my profound concern about an action by Department of State officials to remove from export controls certain software for 3-D printing of firearms. This is exceptionally dangerous because it will promote global availability of such technical information and consequent unrestricted manufacture of firearms. This action was taken in settling a lawsuit: Defense Distributed v. United States.

There are several disturbing aspects of the Department's action. Foremost is the likelihood that weapons will become available to anyone with a laptop and a 3-D printer. This defeats US laws which require background checks on the sale of weaponry. The danger is magnified because 3-D printed firearms would be made of plastic and, therefore, undetectable by most security systems. With these stealthy weapons in the hands of terrorists, lone wolf killers, or mentally unstable individuals, it will become virtually impossible to protect anyone from gun violence.

Moreover, the text of the settlement, attached, suggests that the Department's officials are mis-using authority under Section 126.2 of the International Traffic in Arms Regulations to "temporarily" remove this technical information from the United States Munitions List (USML). However, as anyone who has ever posted something on the internet knows, once posted, the item is instantly and permanently available to all who seek it. Therefore, it is impossible to temporarily publish 3-D gun printing software on the internet. Inasmuch as Sec. 126.2 authority is reserved for use only in the interests of U.S. security and foreign policy, it stretches credulity to believe that release of this information is in the U.S. interest.

The Honorable Mike Pompeo
Department of State
2201 C Street, NW
Washington, DC 20520

Use of this temporary ITAR authority also suggests that Department officials sought a way to avoid complying with Section 38(f) of the Arms Export Control Act, which requires advance notification to Congress for any removal from the USML.

The settlement of this lawsuit is slated to go into effect by July 27th. I urge you to suspend the Department's implementation of the settlement immediately and prevent the inappropriate and dangerous release of this technical information.

Sincerely,

*Eliot L. Engel*

ELIOT L. ENGEL
Ranking Member

# Exhibit V

BOB CORKER, TENNESSEE, CHAIRMAN

JAMES E. RISCH, IDAHO
MARCO RUBIO, FLORIDA
RON JOHNSON, WISCONSIN
JEFF FLAKE, ARIZONA
CORY GARDNER, COLORADO
TODD YOUNG, INDIANA
JOHN BARRASSO, WYOMING
JOHNNY ISAKSON, GEORGIA
ROB PORTMAN, OHIO
RAND PAUL, KENTUCKY

ROBERT MENENDEZ, NEW JERSEY
BENJAMIN L. CARDIN, MARYLAND
JEANNE SHAHEEN, NEW HAMPSHIRE
CHRISTOPHER A. COONS, DELAWARE
TOM UDALL, NEW MEXICO
CHRISTOPHER MURPHY, CONNECTICUT
TIM KAINE, VIRGINIA
EDWARD J. MARKEY, MASSACHUSETTS
JEFF MERKLEY, OREGON
CORY A. BOOKER, NEW JERSEY

**United States Senate**

COMMITTEE ON FOREIGN RELATIONS

WASHINGTON, DC 20510-6225

July 25, 2018

The Honorable Michael Pompeo
Secretary of State
U.S. Department of State
2201 C Street NW
Washington, DC 20520

Dear Secretary Pompeo:

The Department of State is about to permit the public, worldwide release of dangerous information on the 3D printing of functional firearms that are undetectable by standard security measures. Such a release would allow any foreign or domestic person, including arms traffickers, terrorists, transnational criminals, and domestic abusers to effectively "download" a gun, making it much easier to evade security measures and obtain a weapon. This decision is not only alarming and irresponsible, but one that appears to evade statutory requirements and skirts an ongoing regulatory review process.

Recently, the Department settled a lawsuit by a U.S. firm seeking to post blueprints and other information on the Internet that would allow anyone with a 3D printer to create plastic firearms. Based on reports of the terms of the settlement, the Department has now agreed that the information can be exempt from the export licensing requirements of the International Trafficking in Arms Regulations (ITAR). Even more troubling, the Department also agreed to temporarily suspend the relevant ITAR restrictions to allow this otherwise prohibited dissemination.

Yet this "temporary" suspension will effectively allow a permanent and continuing export. Once posted on the Internet, these files will be shared, downloaded, and used to create firearms. As such, this action is tantamount to a permanent removal of an item from the United States Munitions List, but without the 30-day notice to the Senate Foreign Relations Committee and House Foreign Affairs Committee as required by the Arms Export Control Act.

It is hard to see how making it easier for criminal and terrorist organizations to obtain untraceable weapons is in the foreign policy and national security interests of the United States. This action by the State Department makes the work of U.S. and international law enforcement and counter-terrorism agencies—and the U.S. Transportation Security Agency—all the more difficult and heightens the risk to innocent Americans and others from terrorist and extremist attacks. Moreover, the domestic risk cannot be understated, especially with the high rates of gun violence in our schools, churches, clubs and public gathering places. The release of these blueprints permits anyone, even those banned from gun ownership due to a criminal

LMO/TD

WASHAR0003424

conviction, to build their own gun. These "ghost guns" also pose a problem for law enforcement as such firearms lack a serial number and are thus untraceable.

Given the far-reaching and dangerous consequences of this decision, I urge you to immediately review and reconsider the Department's position, and to ensure that this and any other decision regarding arms export control complies fully with the letter and spirit of the Arms Export Control Act. Further, any release should not occur until the Department, Congress, and the public have ample time to review the consequences of this action.

Sincerely,

Robert Menendez
Ranking Member

# Exhibit W

# United States Senate

WASHINGTON, DC 20510

July 23, 2018

The Honorable Jeff Sessions
Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, DC 20530

Dear Attorney General Sessions:

We write with great alarm over the decision last month by the Department of Justice (DOJ) to settle the lawsuit brought against the State Department by the gun rights advocacy groups Defense Distributed and the Second Amendment Foundation.

In 2015, Defense Distributed and the Second Amendment Foundation sued the State Department, challenging the State Department's decision that Defense Distributed violated federal export controls and its demand that Defense Distributed remove from the internet its blueprints for three-dimensional ("3-D") printable firearms. Throughout the course of the lawsuit, the government maintained that its position was well-supported under the Arms Export Control Act and the International Traffic in Arms Regulations. Indeed, as recently as April 2018, the government filed a motion to dismiss in which it argued that "[w]hatever informational value there may be in the process by which 3-D printing occurs," Defense Distributed's Computer Aided Design files "are indispensable to a [3-D] printing process used to create firearms and their components," and "are also functional, directly facilitate the manufacture of weapons, and may properly be regulated for export."[1]

In a stunning reversal of course last month, DOJ settled the suit and agreed to allow for the public release of Defense Distributed's 3-D firearm printing tutorials in any form. The government also made the puzzling decision to pay nearly $40,000 in legal fees to the plaintiffs using taxpayer dollars.

This settlement is inconsistent with DOJ's previous position and is as dangerous as it is confounding. The settlement will allow these tutorials to be posted online for unlimited distribution to anyone — including felons and terrorists — both here in the United States and abroad. It also sets a dangerous precedent in defending against other legally sound determinations made by the State Department under the Arms Export Control Act and the International Traffic in Arms Regulations.

We are alarmed by this settlement and request an immediate explanation for DOJ's and the State Department's abrupt and dangerous reversal of course. We ask that, prior to August 1, 2018,

---

[1] *Defense Distributed v. U.S. Dep't of State*, Case 1:15-cv-00372-RP, Defs.' Mot. Dismiss Second Am. Compl., at 1 (W.D. Tex. Apr. 6, 2018).

1

WASHAR0003426

DOJ provide us with a copy of the fully executed settlement agreement, and a written explanation and briefing on the reasoning behind the decision to settle this litigation in the manner it did. The American people have a right to know why their government agreed to such a dangerous outcome.

Thank you for your prompt attention to this matter. Should you have any questions about this request, please contact Callan Bruzzone of Senator Markey's staff at 202-224-2742.

Sincerely,

_____
Edward J. Markey
United States Senator

_____
Bill Nelson
United States Senator

_____
Richard Blumenthal
United States Senator

_____
Christopher S. Murphy
United States Senator

_____
Dianne Feinstein
United States Senator

WASHAR0003427

# Exhibit X

| From: | Timothy Mooney <Timothy.Mooney@bis.doc.gov> |
|---|---|
| Sent: | Monday, July 30, 2018 9:42 AM |
| To: | Monjay, Robert <MonjayR@state.gov> |
| Cc: | Heidema, Sarah J <HeidemaSJ@state.gov>; Hart, Robert L <HartRL@state.gov> |
| Subject: | Comments on Cat I-III rule. How are you guys coming on your comments? |

Hi Rob,

The comments on the Commerce rule are posted in regulations.gov and on the BIS website.

The comments received on the Commerce Cat I-III firearms proposed rule have been categorized and divided into tabs to ease the review process.

How are you coming on getting thee State comments posted? Do you have the total number of comments received?

The Tab folders use the same naming convention as referenced below:

Identification of tabs

**SUPPORTIVE**
Tab 1_Detailed supportive_Commerce firearms comments
Tab 2_Bulk_or bulk like or less detailed supportive_Commerce firearms comments

**NOT SUPPORTIVE**
Tab 3_Detailed NOT supportive_Commerce firearms comments
Tab 4A_Bulk NOT supportive_Commerce firearms rule
- Tab 4B_Bulk like_NOT supportive_1 of 8_Commerce firearms rule 1 to 200
- Tab 4C_Bulk like_NOT supportive_2 of 8_Commerce firearms rule 201 to 400
- Tab 4D_Bulk like_NOT supportive_3 of 8_Commerce firearms rule 401 to 600
- Tab 4E_Bulk like_NOT supportive_4 of 8_Commerce firearms rule 601 to 800
- Tab 4F_Bulk like_NOT supportive_5 of 8_Commerce firearms rule 801 to 1000
- Tab 4G_Bulk like_NOT supportive_6 of 8_Commerce firearms rule 1001 to 1200
- Tab 4H_Bulk like_NOT supportive_7 of 8_Commerce firearms rule 1201 to 1400
- Tab 4I_Bulk like_NOT supportive_8 of 8_Commerce firearms rule 1401 to 1540

We posted the comments in sequential order on the BIS website. If you guys think it would be helpful for you, I can send you the PDFs, but email. Ity would need to be in several emails though. Glad to do it if you want those.

**High Level Summary of Comments on Commerce Categories I-III (Firearms) Rule**
On May 24, 2018, Commerce published the proposed rule, *Control of Firearms, Guns, Ammunition and Related Articles the President Determines No Longer Warrant Control Under the United States Munitions List (USML)* (83 FR 24166). State published their proposed rule on the same day. The comment period on the Commerce and State proposed rules closed on July 9, 2018. On July 18, Commerce completed posting the 1,745 public comments (a total of 1,965 pages) received. Comments may be viewed on the BIS website by selecting the "Regulations" tab and then the "Proposed Rule Public Comments" tab. Comments are also posted on regulations.gov under docket number BIS-2017-0004. Commerce received 2,956 public submissions on the rule. Posted comments consist of 1,540 unique comments and 135 bulk comments representing the additional 1,256 comments. 30 comments were not appropriate to post. Almost all of the bulk comment activity was generated by people that opposed the rule. One bulk comment was received from someone supportive of the rule.

**Types of comments received**

WASHAR0000903

| Type of comments | Number of comments | % of total posted |
|---|---|---|
| *Supportive, detailed | 15 | 0.8% |
| Supportive, bulk/bulk like, or less detailed | 41 | 2.3% |
| *Opposed, detailed | 27 | 1.5% |
| Opposed, bulk | 127 (another 1256 received, but not posted because duplicates) | 7.2% |
| Opposed, bulk like, or less detailed | 1535 | 87.9% |

Thanks,
Tim

WASHAR0000904

# Exhibit Y

| | |
|---|---|
| **From:** | Marquis, Matthew R <MarquisMR@state.gov> |
| **Sent:** | Thursday, May 24, 2018 9:56 AM |
| **To:** | PM-DTCP-RMA |
| **Cc:** | PM-CPA; PM-DDTC-Directors-DL; Miller, Michael F |
| **Subject:** | CPA Media Monitoring: New York Times: A Bid to Increase Gun Exports, Stalled After Sandy Hook, Moves Ahead |

[cid:image001.png@01D29279.128F6050]
A Bid to Increase Gun Exports, Stalled After Sandy Hook, Moves Ahead By Tiffany Hsu and John Ismay
23 May 2018

The Trump administration wants to streamline the process for exporting American firearms, a change sought for years by domestic gun companies as a way to increase sales.

A proposed rule expected to be published in the Federal Register on Thursday would transfer jurisdiction of consumer gun exports from the State Department, where the licensing process is expensive and extensive, to the Commerce Department, which has a simpler application process.

Publication of the rule kicks off a 45-day comment period, after which departments including State and Commerce will review corrections and suggestions and then send a revised draft to Congress before final publication.

Gun industry groups said that the shift, which was first conceived during the Obama administration but halted after the Sandy Hook school shooting in 2012, would pare down a bureaucratic process that currently discourages American firearms companies from sending their products abroad.

Lawrence Keane of the National Shooting Sports Foundation called the proposal "a significant positive development for the industry that will allow members to reduce costs and compete in the global marketplace more effectively, all while not in any way hindering national security."

But critics of the proposal worry that American guns, including AR-15s and similar semiautomatic rifles frequently used in mass shootings, could more easily find their way into the hands of foreign criminals. Among the reasons: a change in the disclosure rules for certain sales. The State Department is required by the Arms Export Control Act to submit any commercial arms sale worth $1 million or more to congressional review. The Commerce Department has no equivalent mandate.

Representative Norma J. Torres, Democrat of California, has introduced legislation to keep oversight with the State Department, calling the proposed shift "dangerous."

"It is very likely that the administration's plan could be a boon for illegal weapons traffickers and their unsavory customers - from ISIS to Mexico's Sinaloa Cartel," she wrote in a description of her bill.

The proposed changes are meant to keep only items that are "inherently for military end use" under State Department control, and move those that are "widely available in retail outlets" to the Commerce Department.

Export sales represent a small share of the domestic gun industry. Sturm Ruger and American Outdoor Brands, which owns the Smith & Wesson label, both generate less than 5 percent of their sales outside the United States.

WASHAR0035626

Guns imports far surpass exports in the United States. In 2015, the most recent year available from the Justice Department, 5.1 million firearms were imported into the United States, and 343,456 firearms were exported.

The shooting sports foundation predicts that revising the process would increase firearms exports by as much as 20 percent, Mr. Keane said.

But other experts pointed out that demand in some countries is constrained by strict gun-control regulations. And competition from brands like Italy's Beretta, Austria's Glock and Germany's Heckler & Koch could dampen enthusiasm for American entrants.

Jurgen Brauer, the chief economist of the Small Arms Analytics research group, said he predicted loosened export rules would result in perhaps a 2 percent increase in sales for American gunmakers.

"I don't see a competitive advantage for U.S. manufactured arms abroad," he said. "Looking purely at quality, reliability, reputation and price point, what is it that these manufacturers see to make them believe a U.S. weapon would stand out in the foreign market?"

Firearm sales in the United States have struggled since President Trump, a vocal supporter of the gun industry, was elected. Fears of gun control, which helped propel demand to record highs during the Obama administration, have waned during Mr. Trump's tenure.

It was under Mr. Obama's watch that the effort to turn the administration of commercial firearms export licenses to the Commerce Department began. The proposed rule concerning guns was nearly complete when 26 people, most of them children, were shot and killed in Newtown, Conn., in late 2012.

Kevin Wolf, an assistant secretary of Commerce who was leading the development of the new export rules at the time, said he had decided to hold off on publication because of the tragedy.

"Even though these rules have literally absolutely nothing to do with domestic gun control, I didn't think it was optically the right time to start discussing guns," he said. "I knew it was going to be a very emotional topic."

The firearms rule currently being proposed "looks 95 percent identical" to the 2012 version, Mr. Wolf said.

"This is an intensely bureaucratic exercise," he said. "It's not a major change in gun policy."

The Commerce Department already oversees exports of certain shotguns, and the proposed rule adds "guns you can buy at a commercial gun distributor," Mr. Wolf said.

However, not all the items that would be covered by the looser Commerce Department rules are available everywhere in the United States. California - one of the country's largest states for firearms sales - heavily regulates two items in particular: .50-caliber rifles and detachable magazines of the kind typically used by the military and police departments.

The proposed changes would establish the benchmark for so-called high-capacity magazines as those capable of holding more than 50 rounds. California restricts most civilian residents to owning magazines that hold just 10 rounds; 30-round magazines, which are frequently used by the military, could be sold abroad.

Similarly, California places tight restrictions on owning powerful .50-caliber rifles, which are capable of hitting human-size targets at a range of 2,000 yards. The state Legislature called them a "clear and present terrorist threat" to not only human life, but also vehicles and infrastructure.

Representative Elizabeth Esty, whose Connecticut district includes Newtown, said on Wednesday that she would try to "stop this if I can."

WASHAR0035627

"This is a national security and diplomacy question, but moving it to Commerce makes it an economic promotion of an industry," she said. "It's putting profits ahead of people."

Link: https://www.nytimes.com/2018/05/23/business/gun-exports-trump.html

Matthew Marquis
Office of Congressional & Public Affairs Bureau of Political-Military Affairs (PM/CPA) U.S. Department of State

Phone:        202.647.6968
e-mail:        MarquisMR@state.gov<mailto:MarquisMR@state.gov> |  Web:  www.state.gov/t/pm
/<http://www.state.gov/t/pm%20/> |Twitter: @StateDeptPM

Stay connected with State.gov:

[cid:image001.png@01CF5314.69A33A30]<http://twitter.com/StateDept>[cid:image002.png@01CF5314.69A33A30]<http://statedept.tumblr.com/>[cid:image003.png@01CF5314.69A33A30]<http://www.state.gov/misc/echannels/66791.htm>[cid:image004.png@01CF5314.69A33A30]<http://www.facebook.com/usdos>[cid:image005.png@01CF5314.69A33A30]<http://www.flickr.com/photos/statephotos>[cid:image006.png@01CF5314.69A33A30]<http://www.youtube.com/user/statevideo>[cid:image007.png@01CF5314.69A33A30]<https://plus.google.com/u/0/102630068213960289352#102630068213960289352/posts>

WASHAR0035628