1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STATE OF WASHINGTON, *et al.*,

Plaintiffs,

v.

UNITED STATES DEPARTMENT OF
STATE, *et al.*,

Defendants.

NO. C18-1115RSL

ORDER INVALIDATING JULY 27,
2018, TEMPORARY
MODIFICATION AND LETTER

This matter comes before the Court on the parties' cross-motions for summary judgment. Dkt. #170, #173, and #174. Plaintiffs seek a summary determination that the federal defendants violated the Administrative Procedures Act ("APA") when they modified the United States Munitions List ("USML") and issued a letter authorizing the on-line publication of certain computer aided design ("CAD") data files in July 2018. They request that the Court vacate the agency action and permanently enjoin the federal defendants from removing the CAD files at issue from the USML unless and until they comply with the statutory procedural requirements.

**BACKGROUND AND PROCEDURAL HISTORY**

Since at least 2013, the federal government had taken the position that the Arms Export Control Act ("AECA"), 22 U.S.C. § 2778, authorizes restrictions on the internet publication of

ORDER INVALIDATING TEMPORARY
MODIFICATION AND LETTER - 1

CAD files that allow users to create guns and their components with a 3D printer. When defendant Defense Distributed posted CAD files for various weapons on its website at the end of 2012, the Directorate of Defense Trade Controls ("DDTC"), which is part of the Department of State, notified Defense Distributed that the publication may have been unauthorized and in violation of the AECA's implementing regulations, the International Traffic in Arms Regulations ("ITAR"), 22 C.F.R. §§ 120-30. The DDTC explained that making the CAD files available on the internet constituted a disclosure or transfer of technical data to foreign persons and was considered an "export" subject to the AECA and ITAR. The government advised Defense Distributed to remove the files from its website and, if it believed the files were not properly subject to export control, to utilize the commodity jurisdiction ("CJ") procedure to obtain an official determination from the DDTC.

Defense Distributed filed a number of determination requests. When the DDTC failed to make timely rulings, Defense Distributed filed a lawsuit in the United States District Court for the Western District of Texas. Defense Distributed v. U.S. Dep't of State, C15-0372RP (W.D. Tex). That litigation pitted Defense Distributed and the Second Amendment Foundation on one side against the Department of State, the DDTC, and various federal employees on the other. Defense Distributed challenged the federal government's power to regulate its publication of the CAD files on the internet, arguing that the regulation subjected its gun-related speech to a system of prior restraints that was applied in an arbitrary manner in violation of Defense Distributed's First, Second, and Fifth Amendment rights. A month after the Texas litigation was filed, the DDTC determined that some, but not all, of the CAD data files Defense Distributed wanted to publish on the internet were technical data subject to the AECA and ITAR.

ORDER INVALIDATING TEMPORARY
MODIFICATION AND LETTER - 2

Defense Distributed filed a motion for preliminary injunction in the Texas litigation to preclude the federal government from imposing prepublication approval requirements on any of its CAD files. The federal government opposed the motion, arguing that:

- "export of Defense Distributed's CAD files could cause serious harm to U.S. national security and foreign policy interests" that "warrant subjecting [the files] to ITAR's export licensing of technical data;"

- Defense Distributed's "CAD files constitute the functional equivalent of defense articles: capable, in the hands of anyone who possesses commercially available 3D printing equipment, of 'automatically' generating a lethal firearm that can be easily modified to be virtually undetectable in metal detectors and other security equipment;"

- "The State Department is particularly concerned that [Defense Distributed's] proposed export of undetectable firearms technology could be used in an assassination, for the manufacture of spare parts by embargoed nations, terrorist groups, or guerrilla groups, or to compromise aviation security overseas in a manner specifically directed at U.S. persons;" and

- both the government and the public "have a strong interest in curbing violent regional conflicts elsewhere in the world, especially when such conflict implicates the security of the United States and the world as a whole."

Id., Dkt. #32 at 19-20 (W.D. Tex.) (internal quotation marks and citations omitted). The then-Director of the Office of Defense Trade Controls Management, Lisa V. Aguirre, concluded that the unrestricted export of Defense Distributed's CAD files would result in the production of plastic firearms that are fully operable and virtually undetectable by conventional security measures, that their use to commit terrorism, piracy, assassinations, or other serious crimes would cause serious and long-lasting harm to the foreign policy and national security interests of the United States, that efforts to restrict the availability of these articles to enemies of the United

ORDER INVALIDATING TEMPORARY
MODIFICATION AND LETTER - 3

States would fail, that the proliferation of weapons and related technologies would contribute to a more dangerous international environment, and that the export would undercut the domestic laws of nations that have more restrictive firearm controls and the United States' foreign relations with those nations would suffer. Id., Dkt. #32-1 at ¶ 35.

The Honorable Robert L. Pitman denied Defense Distributed's motion for preliminary injunction, noting that Defense Distributed's avowed purpose is to facilitate "*global* access to, and the collaborative production of, information and knowledge related to the three-dimensional ('3D') printing of arms," and that such activities "undoubtedly increase[] the possibility of outbreak or escalation of conflict" and are of the type Congress authorized the President to regulate through the AECA. Id., Dkt. #43 at 8-9 (emphasis in original). The Fifth Circuit affirmed, finding that "the State Department's stated interest in preventing foreign nationals - including all manner of enemies of this country - from obtaining technical data on how to produce weapons and weapons parts" constitutes "a very strong public interest in national defense and national security." Defense Distributed v. U.S. Dep't of State, 838 F.3d 451, 458 (5th Cir. 2016).

In April 2018, the federal government moved to dismiss Defense Distributed's claims in the Texas litigation, reiterating that what was at stake was "the United States' ability to control the export of weapons - a system of laws and regulations that seeks to ensure that articles useful for warfare or terrorism are not shipped from the United States to other countries (or otherwise provided to foreigners) without authorization, where, beyond the reach of U.S. law, they could be used to threaten U.S. national security, U.S. foreign policy interests, or international peace and stability." C15-0372RP, Dkt. #92 at 1 (W.D. Tex). Later that month, the parties reached a

ORDER INVALIDATING TEMPORARY
MODIFICATION AND LETTER - 4

tentative settlement agreement. Pursuant to the settlement, which was not signed until July 29, 2018, the Department of State changed course, abandoning its prior regulatory and litigation positions and allowing the private defendants, Defense Distributed, the Second Amendment Foundation, and Conn Williamson, to publish on the internet CAD files for the automated production of 3D-printed weapons. The federal government specifically agreed, among other things, to publish a notice of proposed rulemaking and final rule revising the United States Munitions List ("USML") that would allow the distribution of the CAD files, to announce a temporary modification of the USML to allow immediate distribution while the final rule was in development, and to issue a letter to Defense Distributed and other defendants advising that the CAD files are approved for public release and unlimited distribution. The federal defendants also acknowledged and agreed that the temporary modification and letter "permits any United States person . . . to access, discuss, use, reproduce, or otherwise benefit from" the CAD files. The announcement of the temporary modification and the issuance of the letter were to occur on or before July 27, 2018. No findings of fact or other statements are provided in the settlement agreement that address, much less invalidate, the federal government's prior analysis regarding the likely impacts of publication on national security or world peace or that otherwise explain the federal government's change of position.

On May 24, 2018, the Department of State published a notice of proposed rulemaking ("NPRM") that implicated the technical data at issue in the litigation. The NPRM proposed an amendment to the ITAR to, *inter alia*, remove certain Category I items (primarily small caliber weapons and their related technical data) from the USML, thereby lifting the requirement to obtain a license for their export. 83 Fed. Reg. 24,198 (May 24, 2018). Although the NPRM did

ORDER INVALIDATING TEMPORARY
MODIFICATION AND LETTER - 5

not explicitly mention 3D-printed firearms or their related technical data, approximately 12% of the comments received in response to the NPRM did, and all of them opposed lifting the license requirement. The public comment period end on July 9, 2018. The settlement agreement was made public the following day. The temporary modification was published and the letter to the private defendants was issued on July 27, 2018. The temporary modification contains an assertion that the DDTC "has determined that it is in the interest of the security and foreign policy of the United States" to immediately modify Category I of the USML to exclude the technical data at issue in the Texas litigation. Dkt. #171-2 at 2. The public comments opposing exclusion were not considered by the agency when it issued the temporary modification and letter. Dkt. #179-2 at ¶ 7.

Three days after the temporary modification was published, eight states and the District of Columbia filed this lawsuit, alleging that the federal defendants' conduct was *ultra vires* and in violation of the APA and the Tenth Amendment to the United States Constitution.[1] In response to plaintiffs' motion for preliminary injunctive relief, the federal defendants justified the deregulation of the CAD files (along with the delisting of other items within Category I of the USML) by pointing to a Department of Defense determination that the items "do not provide the United States with a critical military or intelligence advantage" and "are already commonly available and not inherently for military end-use." Dkt. #64-1 at 10. After an expedited hearing, the Court found that plaintiffs had shown a likelihood of success on the merits of their APA claim insofar as the temporary modification resulted in the removal of one or more items from

---

[1] An amended complaint, adding eleven more States/Commonwealths as plaintiffs, was filed on August 2, 2018. Dkt. # 29.

ORDER INVALIDATING TEMPORARY
MODIFICATION AND LETTER - 6

the USML, that plaintiffs had shown a likelihood of irreparable injury if an injunction did not issue because Defense Distributed had announced its intent to make the CAD files downloadable from its website on August 1, 2018,[2] and that the balance of hardships and the public interest tipped sharply in plaintiffs' favor. The federal defendants were enjoined from implementing or enforcing the temporary modification of the USML and/or the July 27th letter and were required to preserve the status quo *ex ante* as if the modification had not occurred and the letter had not been issued. Dkt. #23 and #95.

In the context of the States' challenge to the issuance of the temporary modification and letter, the federal defendants produced and supplemented the administrative record on which the decision to issue the temporary modification and letter was based.[3] Plaintiffs now seek an order invalidating the temporary modification and letter under the APA and permanently enjoining the federal defendants from removing the computer files at issue from the USML unless and until they comply with the governing procedural requirements. The federal and private defendants oppose plaintiffs' motion and request judgment in their favor.

## DISCUSSION

### A. Jurisdiction

Both the federal and private defendants challenge the Court's jurisdiction over this matter. The federal defendants argue that the States cannot meet prudential standing

---

[2] The private defendants now assert that they published the subject CAD files to the internet immediately upon receipt of the letter and the issuance of the temporary modification. Dkt. #174-1 at 5-6. The publication does not change the following analysis.

[3] Plaintiffs do not concede that the record, as supplemented, is complete or that defendants' various claims of privilege are proper.

ORDER INVALIDATING TEMPORARY
MODIFICATION AND LETTER - 7

requirements. The private defendants argue that the issuance of the temporary modification and letter are "committed to agency discretion by law" and not subject to judicial review under 5 U.S.C. § 701(a)(2) and 22 U.S.C. § 2278(h), that listing on the USML is a political question over which the Court lacks subject matter jurisdiction, and that the claims are barred by the Tucker Act.[4]

### 1. Zone of Interests

The question of standing involves both constitutional limitations imposed by Article III of the U.S. Constitution and prudential limitations imposed by the judiciary to limit the exercise of federal jurisdiction. See Warth v. Seldin, 422 U.S. 490, 498 (1975); Allen v. Wright, 468 U.S. 737, 751 (1984). To present a justiciable case or controversy under Article III, plaintiffs must demonstrate an "injury in fact" that is "fairly traceable" to the actions of the defendants and that will likely be redressed by a favorable decision. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). The prudential limitations are "founded in concern about the proper - and properly limited - role of the courts in a democratic society." Warth, 422 U.S. at 498. The prudential requirement at issue here is that a plaintiff's grievance must arguably fall within the zone of interests protected or regulated by the statutory provision on which the claim is based. See Ass'n of Data Processing Serv. Orgs., Inc. v. Camp, 397 U.S. 150, 153 (1970).

The zone-of-interests test is a standing requirement of general applicability, but "the zone of interests of a statute for purposes of obtaining judicial review of administrative action under

---

[4] Defendants also incorporate by reference arguments made in the preliminary injunction context regarding Article III standing and this lawsuit being an impermissible collateral attack on the outcome of the litigation in the Western District of Texas. Those arguments are again rejected. See Dkt. #95 at 9-12.

ORDER INVALIDATING TEMPORARY
MODIFICATION AND LETTER - 8

the generous review provisions of the APA" is fairly expansive. Bennett v. Spear, 520 U.S. 154, 163 (1997) (internal quotation marks and citations omitted). The test "is not meant to be especially demanding" in the APA context, and the Supreme Court applies "the test in keeping with Congress's evident intent when enacting the APA to make agency action presumptively reviewable." Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak, 567 U.S. 209, 225 (2012) (internal quotation marks and citations omitted). Plaintiffs need not establish a congressional purpose to benefit them through passage of the underlying statute, they need simply have interests that relate to and are not inconsistent with the purposes implicit in the statute. Id. The Supreme Court has "always conspicuously included the word 'arguably' in the test to indicate that the benefit of any doubt goes to the plaintiff." Id.

The AECA "was intended to authorize the President to control the import and export of defense articles and defense services in 'furtherance of world peace and the security and foreign policy of the United States." U.S. v. Chi Mak, 683 F.3d 1126, 1134 (9th Cir. 2012) (quoting 22 U.S.C. § 2778(a)(1)). In keeping with the goals of the statute, the federal government has, in the past, justified subjecting the CAD files at issue to ITAR's export licensing scheme based on their characteristics and functionality, which make them especially dangerous to U.S. national security and foreign policy interests. The agency properly focused its analysis on the factors specified in the AECA and deemed it important to keep plastic, undetectable firearms out of foreign hands where they were not subject to U.S. laws and controls. The agency's focus on exports, national security, and world peace does not, however, mean that the States' domestic interests are unrelated or marginally related to the AECA's purposes. The State Department found that the firearms generated by the subject CAD files "can be easily modified to be

ORDER INVALIDATING TEMPORARY
MODIFICATION AND LETTER - 9

virtually undetectable in metal detectors and other security equipment," could be used in assassinations or terrorist activities "specifically directed at U.S. persons," and could lead to violent regional conflicts that implicate the security of the United States. <u>Defense Distributed v. U.S. Dep't of State</u>, C15-0372RP, Dkt. #32 at 19-20 (W.D. Tex). Given that the CAD files and the resulting weapons can be transported, undetected, virtually anywhere in the world, these same impacts would likely arise within the United States even if the plastic weapons are manufactured abroad. The States' interests in curbing violence, assassinations, terrorist threats, aviation and other security breaches, and violations of gun control laws within their borders are at least marginally related to the interests protected or regulated by the AECA. The state and federal interests, while not identical, are aligned and not in any way inconsistent. Because the States' grievance arguably falls within the zone of interests protected or regulated by the AECA, there is no judicially-imposed limit on the Court's exercise of jurisdiction in this matter.

## 2. Agency Discretion and Judicial Review

The private defendants argue that this Court lacks jurisdiction over plaintiffs' APA claims because the APA does not apply "to the extent that . . . agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). The AECA expressly commits one type of decision to agency discretion, namely the decision to designate an item as a defense article or defense service. 22 U.S.C. § 2778(h). The decision at issue here, however, is the removal of an item from the USML. Plaintiffs are challenging the federal defendants' failure to comply with statutory procedures and/or to consider certain congressionally-specified factors when making removal decisions under AECA. Congress did not expressly make such removal decisions unreviewable.

Even absent a statutory bar to judicial review, certain agency decisions have traditionally

ORDER INVALIDATING TEMPORARY
MODIFICATION AND LETTER - 10

been considered wholly discretionary and beyond review. To be sure, the AECA confers broad

discretion on the President when determining whether to add or remove items from the USML,

but that discretion is not unbounded: Congress has imposed both procedural and substantive

benchmarks to guide the agency's action. In order to honor the "basic presumption of judicial

review" embodied in the APA and to "give effect to the command that courts set aside agency

action that is an abuse of discretion," the Supreme Court has "read the § 701(a)(2) exception for

action committed to agency discretion quite narrowly, restricting it to those rare circumstances

where the relevant statute is drawn so that a court would have no meaningful standard against

which to judge the agency's exercise of discretion" and has "generally limited the exception to

certain categories of administrative decisions that courts traditionally have regarded as

committed to agency discretion, . . . such as a decision not to institute enforcement proceedings .

. . or a decision by an intelligence agency to terminate an employee in the interest of national

security . . . ." Dep't of Commerce v. N.Y., __ U.S. __, 139 S. Ct. 2551, 2567-68 (2019)

(internal quotation marks and citations omitted).

      The procedural and substantive requirements at issue in this case are clearly stated, and

whether the agency complied with those requirements can be judicially evaluated without fear of

treading on any matter that implicates agency expertise, involves a complicated balancing of

factors, or has been traditionally regarded as beyond judicial review. The Court finds that the

process through which defendants removed items from the USML in July 2018, defendants'

compliance with the standards furnished by the AECA, and the adequacy of the agency's

analysis of and explanation for its decision are subject to judicial review under the APA.

### 3. Political Question

The private defendants also argue that the regulation or deregulation of defense articles or services under the AECA is a political question that is nonjusticiable under the separation of powers doctrine. This argument fails for much the same reasons as the agency discretion and judicial review arguments. While the decision to include an item on the USML or to grant or deny an export license for a listed item is statutorily excluded from judicial review and/or requires an exercise of discretion within the agency's expertise, whether the agency complied with clear procedural requirements and considered factors Congress deemed relevant when removing an item from the USML is neither a political question nor one committed to the agency's discretion as a matter of statute or case law.

### 4. Tucker Act

Finally, the private defendants assert that the Court of Federal Claims has exclusive jurisdiction "to render judgment upon any claim against the United States founded . . . upon any express or implied contract with the United States . . . ." 28 U.S.C. § 1491(a)(1). Plaintiffs seek to invalidate agency action under the APA because it violates the procedural requirements of the AECA and/or is arbitrary and capricious. These claims are statutory and, as plaintiffs point out, the Tucker Act has no application in this context. Dkt. #186 at 22. The private defendants abandoned this argument in reply.

## B. Administrative Procedures Act Claims

The APA authorizes judicial review of final agency action and provides that a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; . . . in

ORDER INVALIDATING TEMPORARY
MODIFICATION AND LETTER - 12

excess of statutory jurisdiction, authority, or limitations; . . . [or] without observance of procedure required by law." 5 U.S.C. § 706. Plaintiffs argue that the federal government's efforts to immediately remove items from the USML through issuance of a temporary modification and letter were not in accordance with law and were without observance of procedure required by law insofar as the State Department failed to give thirty days' notice to the Congressional foreign relations committees specified in 22 U.S.C. § 2778(f)(1). Plaintiffs also seek to invalidate the decision to allow the CAD files to be published on the internet on the ground that the temporary modification violates the limitations on federal power imposed by the Tenth Amendment. Finally, plaintiffs argue that the agency action was arbitrary and capricious because the agency failed to consider the factors identified by Congress and because the delisting is not supported by substantial evidence in the administrative record.

**1. Congressional Notice**

The AECA requires that the President or his designee periodically review the items on the USML to ensure that export controls are warranted. 22 U.S.C. § 2778(f)(1). The results of the review must be reported to Congress, and the Department "may not remove any item from the Munitions List until 30 days after the date on which [it] has provided notice of the proposed removal to the Committee on International Relations of the House of Representatives and to the Committee on Foreign Relations of the Senate . . . ." Id. The federal defendants argue that the Congressional notice requirement does not apply because the CAD files at issue here are not specifically enumerated on the USML and are therefore not "items" for purposes of § 2778(f)(1). This argument was rejected at the preliminary injunction stage, and the Court sees no reason to reconsider its decision.

ORDER INVALIDATING TEMPORARY
MODIFICATION AND LETTER - 13

The President has the power to designate "defense articles and defense services" and to control their import and export "[i]n furtherance of world peace and the security and foreign policy of the United States." 22 U.S.C. § 2778(a)(1). The articles and services (*i.e.*, items) so designated constitute the USML. Id. See also 22 C.F.R. § 121.1(a) (describing the organization of the USML and noting each USML category is composed of related defense articles). Category I of the USML includes all firearms up to .50 caliber (22 C.F.R. § 121.1(I)(a) and (b)) and all technical data "required for the design, development, production, manufacture, assembly, operation, repair, testing, maintenance or modification of" such firearms (22 C.F.R. § 120.10(a)). Through the CJ process, the Department of State specifically determined that the subject CAD files are subject to the export controls of ITAR.

The Department of State argues that its decision to immediately allow the unlicensed export of previously-regulated items does not trigger the Congressional notice requirement because the temporary modification did not deregulate a whole group or category of defense articles described in the USML, such as "nonautomatic and semi-automatic firearms to caliber .50 inclusive (12.7 mm)," 22 C.F.R. § 121.1(I)(a). This argument conflates "category" with "item." As described in the statute, the USML is a list of items designated by the President as "defense articles and defense services." 22 U.S.C. § 2778(a)(1). Rather than generate an exhaustive list of every individual article or service that is subject to export control under the AECA, the Department of State opted to populate the USML with generally descriptive categories. Those categories describe actual items, however, and it is those items that are the "defense articles and defense services" subject to export control under the AECA. 22 C.F.R. § 121.1.

ORDER INVALIDATING TEMPORARY
MODIFICATION AND LETTER - 14

The congressional review and notice requirements specifically apply to items, not categories of items. 22 U.S.C. § 2778(f). The Department's CJ regulation further confirms that it is the removal of a particular article or service - an item rather than a category - that triggers the review and notice requirements. The Department describes the CJ procedure as a means of resolving doubts "as to whether an article or service is covered by the U.S. Munitions List" and to seek "redesignation of an article or service currently covered by the U.S. Munitions List." 22 C.F.R. § 120.4(a). Immediately after the reference to redesignation, the regulations reiterate that the "Department must provide notice to Congress at least 30 days before any item is removed from the U.S. Munitions List." Id. Given the language, structure, and purpose of the statute and implementing regulations, the Court finds that the attempt to revoke the listing of an item previously covered by the USML through the issuance of a "temporary modification," thereby lifting all export controls under the AECA and ITAR, triggers the congressional notice requirement of the statute.

It is undisputed that Congress was not notified prior to the removal of the subject CAD files from the USML. This procedural failure cannot be rectified by providing Congressional notice thirty days in advance of making the "temporary" removal "final:" the temporary modification implemented the removal immediately, without waiting for the proposed rule to become final and without giving Congress notice and an opportunity to exercise its oversight role. Because the removal to which the States object occurred as of July 27, 2018, a subsequent notice is obviously not timely under the statute.[5]

---

[5] To the extent the federal defendants are relying on 22 C.F.R. § 126.2 as authority for the temporary modification (see Dkt. #173 at 6), its use of that procedure to immediately redesignate an item that was previously covered by the USML without Congressional notice violates the governing

ORDER INVALIDATING TEMPORARY
MODIFICATION AND LETTER - 15

The Court finds that the temporary modification of the USML to allow immediate publication of the previously-regulated CAD files constitutes the removal of one or more items from the USML without the required Congressional notice. Because the agency action was "without observance of procedure required by law," it must be held unlawful and set aside under § 706 of the APA.

### 2. Tenth Amendment Claim

As part of the settlement agreement in the Texas litigation, the federal defendants agreed that the temporary modification that would be issued on or before July 27, 2018, would permit "any United States person" including the private defendants' customers and members, "to access, discuss, use, reproduce, or otherwise benefit from the technical data" contained in the CAD files at issue. Dkt. #171-2 at 6. Plaintiffs argue that this provision exceeds the limits imposed on the federal government by the Tenth Amendment in that it conflicts with, and presumably abrogates, state laws restricting certain persons from possessing, manufacturing, owning, and/or using firearms in general or 3D-printed firearms in particular. Plaintiffs therefore argue that the temporary modification must be invalidated as "otherwise not in accordance with law" under the APA.

Both the federal and private defendants have, at various times during this litigation, disavowed any intent to alter or in any way impact existing prohibitions or limitations on the possession of firearms, and the federal defendants recognize the continuing viability of state law gun control measures. Plaintiffs find no comfort in these statements "given the plain language of

---

statute. "It is beyond dispute that a federal regulation cannot empower the Government to do what a federal statute prohibits it from doing." <u>Tuan Thai v. Ashcroft</u>, 366 F.3d 790, 798 (9th Cir. 2004).

ORDER INVALIDATING TEMPORARY
MODIFICATION AND LETTER - 16

the operative Temporary Modification and Letter." Dkt. #186 at 14. A review of the notice of

temporary modification and letter shows, however, that neither communication expressly

permits "any United States person" to "use" the CAD files or 3D-printed firearms. Nor do they

contain a reference incorporating the settlement agreement or the promises set forth therein.

Without assistance from the parties, the Court declines to determine whether a contractual

provision regarding the intended meaning of a promised, future statement would have any effect

on state law or be otherwise enforceable when the statement, when finally issued, contains no

language regarding the subject matter.

### 4. Arbitrary and Capricious

Plaintiffs allege that the federal defendants' decision to allow Defense Distributed to

upload to the internet CAD files containing 3D printing instructions for the manufacture of

undetectable weapons was arbitrary and capricious because the State Department failed to

consider the factors set forth in the AECA, failed to offer an explanation supported by

substantial evidence in the administrative record, and/or has asserted justifications that are

pretextual. In determining whether agency action was arbitrary and capricious, the Court's scope

of review is "narrow" and focused on determining whether the agency "examined the relevant

data and articulated a satisfactory explanation for [its] decision, including a rational connection

between the facts found and the choice made." Dep't of Commerce, 139 S. Ct. at 2569 (citing

Motor Vehicles Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43

(1983) (internal quotation marks omitted). In order for the Court to be able to determine whether

the agency has acted within the bounds imposed by the governing statute, the agency is required

to disclose the basis for its action, making the findings necessary to support the decision, and

ORDER INVALIDATING TEMPORARY
MODIFICATION AND LETTER - 17

produce an administrative record that substantially supports those findings. Burlington Truck
Lines, Inc. v. U.S., 371 U.S. 156, 168 (1962).

The federal defendants, citing 22 C.F.R. § 120.3(b), argue that only items that "provide[]
a critical military or intelligence advantage" belong on the USML and that a multi-year, inter-
agency review process led to the determination that firearms up to .50 caliber do not satisfy that
standard. There are a number of problems with this argument. First, the regulation cited states
that articles or services that provide "a critical military or intelligence advantage" "shall be"
included on the USML. Items that fit that description must be on the USML, but they are not the
only items that can be included. Thus, an agency determination that small-caliber firearms do not
provide critical military or intelligence advantages does not explain why those previously-
controlled items were removed from the list.

Second, Congress granted the President and his designees the discretion to remove an
item from the USML in light of certain considerations and factors. Congress directed the agency
to consider how the proliferation of weaponry and related technical data would impact world
peace, national security, and foreign policy. The State Department essentially concedes that,
despite the specified statutory considerations, it evaluated the export controls on small caliber
firearms only through the prism of whether restricting foreign access would provide the United
States with a military or intelligence advantage. Because the delisting was not "based on
consideration of the relevant factors and within the scope of the authority delegated to the
agency by the statute," it must be invalidated under the APA. Motor Vehicle Mfrs., 463 U.S. at
42.

Third, given the agency's prior position regarding the need to regulate 3D-printed

ORDER INVALIDATING TEMPORARY
MODIFICATION AND LETTER - 18

firearms and the CAD files used to manufacture them, it must do more than simply announce a

contrary position.

> [T]he requirement that an agency provide reasoned explanation for its action
> would ordinarily demand that it display awareness that it *is* changing position. . . .
> [T]he agency need not always provide a more detailed justification than what
> would suffice for a new policy created on a blank slate . . . [But s]ometimes it must
> - when, for example, its new policy rests upon factual findings that contradict
> those which underlay its prior policy . . . . It would be arbitrary or capricious to
> ignore such matters. In such cases it is not that further justification is demanded by
> the mere fact of policy change; but that a reasoned explanation is needed for
> disregarding facts and circumstances that underlay . . . the prior policy.

F.C.C. v. Fox Television Stations, Inc., 556 U.S. 502, 515-16 (2009) (emphasis in original).

Until April 2018, the federal government regulated technical data related to the design and

production of weapons using a 3D printer because the data and weapons posed a threat to world

peace and the security and foreign policy of the United States. Some of its concerns related

specifically to the undetectable nature of a gun made from plastic: because they could slip

through conventional security equipment, the State Department feared that they could be used in

assassination attempts, hijackings, piracy, and terrorist activities. Other concerns related to the

portability and ease of a manufacturing process that would allow terrorist groups and embargoed

nations to evade sanctions, repair weapons, restock arms supplies, and fuel violent regional

conflicts. Both aspects of the technical data at issue would, the State Department feared, subvert

the domestic laws of nations with restrictive firearm controls, impairing the United States'

foreign relations with those nations. Overall, the Department of State concluded that the

worldwide publication of computerized instructions for the manufacture of undetectable firearms

was a threat to world peace and the national security interests of the United States and would

ORDER INVALIDATING TEMPORARY
MODIFICATION AND LETTER - 19

cause serious and long-lasting harm to its foreign policy. Against these findings, the federal

defendants offer nothing: no analysis of the potential impacts of removing the CAD files for 3D-

printed firearms from the USML, no response to the public comments raising concerns about

such a removal, no acknowledgment in the NPRMs of its change in position with regards to the

CAD files, and no justification in the temporary modification, the letter, or the administrative

record for the change.[6]

The federal defendants argue that the agency appropriately evaluated whether import and

export restrictions on small caliber firearms were warranted and that the results of the multi-year

inter-agency review apply to 3D-printed guns and the technical data related to them. The only

parts of the administrative record cited in support of this argument are the NPRMs issued by the

Departments of State and Commerce regarding the delisting of certain items in Category I of the

USML. A review of those documents shows that:

> ● the goal of the proposed revisions is to limit Category I to only those items "that
> provide the United States with a critical military or intelligence advantage or, in

---

[6] The private defendants point to a PowerPoint presentation made at an Additive Manufacturing Symposium in February 2014 and a law review article written by their former counsel that same year as support for the agency's 2018 decision to remove the subject CAD files from the USML. The law review article merely raises constitutional arguments against the regulation of 3D-printed guns and is seemingly unrelated to any justification the agency has offered for its action. The symposium presentation includes two slides related to 3D-printed guns, one displaying a picture of a 3D-printed gun (courtesy of Cody Wilson) and another including text stating that export controls offer no benefit to U.S. manufacturing or national security. Dkt. #116-1 at 32. There is no indication that the agency actually relied on this document when issuing the temporary modification in 2018: in fact, it tacitly concedes that it did not because the multi-year review upon which the decision was apparently based focused on small caliber firearms generally, not 3D-printed guns specifically. Just as importantly, the slides do not reflect consideration of the factors Congress intended the agency to consider or constitute a "reasoned explanation" for disregarding the agency's prior findings regarding the impact of 3D-printed weapons on world peace, national security, and foreign policy. Fox Television Stations, 556 U.S. at 516.

ORDER INVALIDATING TEMPORARY
MODIFICATION AND LETTER - 20

the case of weapons, are inherently for military end use" (83 Fed. Reg. 24,198);[7]

● the revised Category I will no longer cover small-caliber non-automatic and semi-automatic firearms (Id.);

● the revised Category I will no longer cover "commercial items widely available in retail outlets and less sensitive military items" (83 Fed. Reg. 24,166);

● the proposed changes are based on an inter-agency review (Id.).

These statements are merely descriptions of the changes proposed and the process used, not an analysis of or justification for the changes. The Department of Commerce goes on to say that it believes that, unless an item provides a critical military or intelligence advantage to the United States or is generally unavailable at retail outlets for civil and recreational activities, the burdens of subjecting U.S. manufacturers to the obligations of the ITAR are not warranted by any proportionate benefits to national security or foreign policy objectives. 83 Fed. Reg. 24,167.

Whatever the merits of this analysis with regards to the rim fire rifles, pistols, and other popular shooting implements specifically mentioned in the NPRMs, it does not provide a "reasoned explanation" for the action with regards to the CAD files and 3D-printed weapons at issue here. Less than two months before the NPRMs were published, the State Department had taken the position that 3D-printed weapons posed unique threats to world peace, national

---

[7] The descriptions of what will be covered by the revised Category I vary in the NPRMs. The Department of State asserts that the revised Category I will cover "only defense articles that are inherently military or that are not otherwise widely available for commercial sale." 83 Fed. Reg. 24, 198. The Department of Commerce describes Category I items under the amended USML as those which are "inherently military and otherwise warrant control on the USML" or "possess parameters or characteristics that provide a critical military or intelligence advantage to the United States[] and are almost exclusively available from the United States." 83 Fed. Reg. 24,166.

ORDER INVALIDATING TEMPORARY
MODIFICATION AND LETTER - 21

security, and the foreign policy of the United States: the agency's specific concerns regarding the proliferation of these weapons are well-documented in the administrative record. The NPRMs neither display an awareness that the agency is changing its position with regards to the data files, nor provide a reasoned explanation for a new policy that necessarily "rests upon factual findings that contradict those which underlay its prior policy." Fox Television Stations, 556 U.S. at 515-16. The agency has simply abandoned, without acknowledgment or analysis, its previous position and has sub silentio found that the delisting is consistent with world peace, national security, and U.S. foreign policy despite explicit, recent findings to the contrary. See Motor Vehicles Mfrs. Ass'n, 463 U.S. at 46-51 (acknowledging that an agency need not consider and reject all policy alternatives when reaching a decision, but noting that where an alternative is within the ambit of the existing standard or policy, "it may not be abandoned without any consideration whatsoever").[8] Because it is arbitrary and capricious to ignore the contradiction in these circumstances, the agency action must be invalidated.

The Court finds that the agency action is arbitrary and capricious in two, independent respects. First, the agency failed to consider aspects of the problem which Congress deemed important before issuing the temporary modification and letter on July 27, 2018. Second, the agency failed to identify substantial evidence in the administrative record explaining a change of position that necessarily contradicts its prior determinations and findings regarding the threats posed by the subject CAD files and the need to regulate the same under the AECA. Because the agency action was arbitrary and capricious, it is unlawful and must be set aside under § 706 of

---

[8] In addition, there are no findings (and no evidence in the administrative record) that the CAD files at issue here were widely available before the agency abruptly deregulated them on July 27, 2018.

ORDER INVALIDATING TEMPORARY
MODIFICATION AND LETTER - 22

the APA.[9]

## C. The Private Defendants' Other Arguments

### 1. Motion to Dismiss

The private defendants incorporate by reference a motion to dismiss that was denied almost a year ago. Having offered no reason to reconsider the prior ruling and no explanation for the delay in seeking reconsideration, the motion is denied.

### 2. Personal Jurisdiction

Defense Distributed argues that the Court lacks jurisdiction over its person. Such a defense can be, and has been, waived. Although Defense Distributed asserted a personal jurisdiction defense in its answer, it omitted it from the motion to dismiss it filed on October 11, 2018, and has therefore waived the defense under Fed. R. Civ. P. 12(h)(1)(A).

### 3. First Amendment Justification for Agency Action

The private defendants argue that the CAD files are protected speech under the First Amendment and assert that the files were removed from the USML in order to avoid constitutional problems. The agency, however, has not relied on the First Amendment as justification for its action, and neither the Court nor the private defendants may supply a basis for the decision that the agency itself did not rely upon. Nat'l Ass'n of Home Builders v. Defenders of Wildlife, 551 U.S. 644, 683-84 (2007).

### 4. First Amendment Violation

The private defendants again assert that restrictions on their ability to publish the files

---

[9] Because the agency action must be invalidated on other grounds, the Court has not considered whether the agency's justifications were pretextual or whether such a finding would warrant invalidation under the APA.

ORDER INVALIDATING TEMPORARY
MODIFICATION AND LETTER - 23

constitute a prior restraint that is presumed to be unconstitutional and that the regulations should be subjected to strict scrutiny. Whether or not the First Amendment precludes the federal government from regulating the publication of technical data under the authority granted by the AECA is not relevant to the merits of the APA claims plaintiffs assert in this litigation. Plaintiffs allege that the federal defendants failed to follow prescribed procedures and acted in an arbitrary and capricious manner when they issued the temporary modification and letter authorizing the immediate publication of the CAD files. The State Department has not attempted to justify its action as compelled by the First Amendment, nor have the private defendants shown that their First Amendment interests are a defense to plaintiffs' claims or a talisman that excuses the federal defendants' failures under the APA.

**D. Remedy**

The presumptive remedy for unlawful agency action is vacatur and remand. All. for the Wild Rockies v. United States Forest Serv., 907 F.3d 1105, 1121 (9th Cir. 2018). Plaintiffs also seek an injunction preventing the federal defendants from again issuing a temporary modification purporting to deregulate the subject CAD files with no warning. Plaintiffs have not shown that the harm they fear is likely to occur, however. There is no indication that the federal defendants are poised to immediately modify the USML as soon as their previous efforts are invalidated or are otherwise inclined to ignore the procedural and substantive requirements of the AECA discussed in this order. See Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008) ("Our frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is likely in the absence of an injunction.").

ORDER INVALIDATING TEMPORARY
MODIFICATION AND LETTER - 24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CONCLUSION

For all of the foregoing reasons, plaintiffs' motion for summary judgment (Dkt. #170) is

GRANTED in part and DENIED in part. The July 27, 2018, "Temporary Modification of

Category I of the United States Munitions List" and letter to Cody R. Wilson, Defense

Distributed, and the Second Amendment Foundation were unlawful and are hereby VACATED.

Defendants' motions for summary judgment (Dkt. #173 and #174) are DENIED.


Dated this 12th day of November, 2019.


_Robert S. Lasnik_

Robert S. Lasnik
United States District Judge

ORDER INVALIDATING TEMPORARY
MODIFICATION AND LETTER - 25